# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APOLLO HEALTHCARE CORP. d/b/a APOLLO HEALTH AND BEAUTY CARE,<br><br>Plaintiff,<br><br>v.<br><br>SOL DE JANEIRO USA INC. and SOL DE JANEIRO IP, INC.,<br><br>Defendants.<br><br>SOL DE JANEIRO USA INC. and SOL DE JANEIRO IP, INC.,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APOLLO HEALTHCARE CORP. d/b/a APOLLO HEALTH AND BEAUTY CARE and COSTCO WHOLESALE CORP.,<br><br>Counterclaim-Defendants. | Civil Action No.: 1:22-cv-07719 |

**SOL DE JANEIRO'S MEMORANDUM OF LAW**
**IN OPPOSITION TO COUNTERCLAIM-DEFENDANTS' MOTION TO EXCLUDE**
<u>**THE REPORT AND TESTIMONY OF JOHN PLUMPE**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................1

1.  Mr. Plumpe's Qualifications as a Damages Expert ............................................1

2.  Mr. Plumpe's Opinion on Defendants' Sales .....................................................2

3.  Mr. Plumpe's Opinion on Defendants' Profits ...................................................2

4.  Mr. Plumpe's Opinion on Reasonable Royalty Damages ..................................3

LEGAL STANDARD...........................................................................................................5

DISCUSSION .....................................................................................................................7

A.  Mr. Plumpe's Reasonable Royalty Opinion is Based on Well-Supported, Reliable Data and Methods ..................................................................................7

    1.  Mr. Plumpe's Reasonable Royalty Calculations are Admissible and Based on Reliable Comparable Licenses ...............................................................7

    2.  Defendants' Other Arguments to Exclude Mr. Plumpe's Testimony Go to Weight, Not Admissibility ...........................................................................9

B.  Mr. Plumpe's Sales and Profits Calculations are Relevant, Reliable, and Not Prejudicial ..........................................................................................................13

 CONCLUSION.................................................................................................................15

## **TABLE OF AUTHORITIES**

### **CASES**

*adidas America, Inc. v. Payless Shoesource, Inc.*,
    01-CV-1655 (KI), 2008 WL 4279812 (D. Or. Sept. 12, 2008) ............................................. 8-9

*American Honda Motor Co. v. Two Wheel Corp.*,
    918 F.2d 1060 (2d Cir. 1990) .................................................................................................13

*Amorgianos v. National Railroad Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002) ....................................................................................................6

*Arista Records LLC v. Lime Group LLC*,
    06-CV-5936 (KMW), 2011 WL 1674796 (S.D.N.Y. May 2, 2011) ........................................5

*Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*,
    967 F.3d 1353 (Fed. Cir. 2020) ...............................................................................................9

*Boucher v. U.S. Suzuki Motor Corp.*,
    73 F.3d 18 (2d Cir. 1996) ........................................................................................................6

*Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*,
    606 F. Supp. 2d 571 (M.D.N.C. 2009) ....................................................................................8

*Celebrity Cruises Inc. v. Essef Corp.*,
    434 F. Supp. 2d 169 (S.D.N.Y. 2006) ...................................................................................10

*Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*,
    14-CV-8467 (JMF), 2016 WL 5416498 (S.D.N.Y. Sept. 28, 2016) ........................................6

*Chico's Fas, Inc. v. Clair*, 13-CV-0792 (SPC),
    2015 WL 3496003 (M.D. Fla. June 3, 2015) ........................................................................11

*Christian Care Ministry, Inc. v. Sureco Insurance Agency, Inc.*,
    18-CV-1313 (WWB)(GJK), 2020 WL 11233539 (M.D. Fla. Feb. 26, 2020) .......................15

*Coryn Group II, LLC v. O.C. Seacrets, Inc.*,
    08-CV-2764 (WDQ), 2010 WL 1375301 (D. Md. Mar. 30, 2010) ...................................8, 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) .............................................................................................................5, 6

*Ericsson, Inc. v. D-Link Systems, Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) ...............................................................................................9

*GeigTech East Bay LLC v. Lutron Electronics Co.*, 18-CV-5290 (CM), 19-CV-4693 (CM),
    20-CV-10195 (CM), 2023 WL 6614486 (S.D.N.Y. Sept. 20, 2023) .....................................14

*Gucci America, Inc. v. Guess?, Inc.*,
    858 F. Supp. 2d 250 (S.D.N.Y. 2012) .................................................................................7, 8

*Federal Trade Commission v. Quincy Bioscience Holding Co.*,
    646 F. Supp. 3d 518 (S.D.N.Y. 2022) ...................................................................................14

*Focus Products Group International, LLC v. Kartri Sales Co.*,
  647 F. Supp. 3d 145 (S.D.N.Y. 2022) ................................................................. 8, 12

*In re Fosamax Products Liability Litigation*, 645 F. Supp. 2d 164 (S.D.N.Y. 2009) ..................... 5

*Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) ................................................................. 5

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) ........................................................................... 4

*International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A., Inc.*,
  146 F.3d 66 (2d Cir. 1998) ........................................................................................ 14

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*,
  04-CV-7203 (DLC), 2006 WL 1359955 (S.D.N.Y. May 18, 2006) ......................... 9

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007) ....................................................................... 5

*McGinley v. Luv n' Care, Ltd.*,
  17-CV-0821 (TAD)(KDM), 2023 WL 6289977 (W.D. La. Sept. 26, 2023) ........... 11

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ................................................ 5

*On Site Energy Co. v. MTU Onsite Energy Corp.*,
  10-CV-1671 (JS)(WDW), 2012 WL 2952424 (E.D.N.Y. July 19, 2012) ................ 8

*Open Sea Distribution Corp. v. Artemis Distribution, LLC*,
  20-CV-1440 (TJC)(PDB), 2023 WL 8651255 (M.D. Fla. Sept. 19, 2023) ............. 10

*In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717 (3d Cir. 1994) ............................ 6

*QS Wholesale, Inc. v. World Marketing, Inc.*,
  12-CV-0451 (DOC)(RNBx), 2013 WL 12114508 (C.D. Cal. July 9, 2013) ............ 8

*Sands, Taylor & Wood v. Quaker Oats Co.*,
  34 F.3d 1340 (7th Cir. 1994) ..................................................................................... 8

*Uniloc USA, Inc. v. Samsung Electronics America, Inc.*,
  17-CV-0651 (JRG), 2019 WL 2267212 (E.D. Tex. May 28, 2019) ......................... 10

*Zerega Avenue Realty Corp. v. Hornbeck Offshore Transportation., LLC*,
  571 F.3d 206 (2d Cir. 2009) ...................................................................................... 6

*In re Zyprexa Products Liability Litigation*,
  489 F. Supp. 2d 230 (E.D.N.Y. 2007) ....................................................................... 6

**STATUTE**

15 U.S.C. § 1117 ........................................................................................................... 13, 14

**RULE**

Fed. R. Evid. 702 ................................................................................................................. 5

# INTRODUCTION

Counterclaim-Plaintiffs Sol de Janeiro has retained John G. Plumpe, Managing Director of Epsilon Economics, as a damages expert in this litigation against Counterclaim-Defendants Apollo Healthcare Corp. ("Apollo") and Costco Wholesale Corp. ("Costco"; together, "Defendants"). Mr. Plumpe has offered two opinions: First, he has calculated a reasonable royalty to account for a portion of the damages Sol de Janeiro has suffered from Defendants' infringing conduct. Second, he has calculated the sales and profits Defendants enjoyed from their sales of the infringing product. Both opinions are well grounded in reliable data and methods and flow from Mr. Plumpe's expertise.

Defendants do not dispute his qualifications or expertise but argue his testimony and opinions should be excluded under *Daubert*. For the reasons below, their arguments fail.

# BACKGROUND

**1.    Mr. Plumpe's Qualifications as a Damages Expert**

Mr. Plumpe is a Managing Director of Epsilon Economics, an economic consulting firm. (Plumpe Rpt. ¶ 3.)[1] He holds Bachelor of Science and Master of Science degrees in Mechanical Engineering from the University of Illinois and a Master of Business Administration degree from the University of Chicago Booth School of Business, where he graduated with honors. (*Id.*) Since 1999, his practice has focused on the analysis of damages, monetary relief, and valuation issues in complex commercial disputes and transactions, especially trademark and other intellectual property matters. (*Id.* ¶ 4.) He has written articles and spoken extensively to professional organizations and law schools on subjects such as intellectual property damages,

---

[1] References throughout to "Plumpe Rpt." and "Plumpe Tr." refer, respectively, to the Expert Report of John G. Plumpe, dated October 16, 2023, and the transcript of the Deposition of Mr. Plumpe attached as Exhibits 4 and 8 to the Declaration of Craig S. Krummen in Support of Defendants' Motion for Summary Judgment (ECF 131).

defendant's profits, reasonable royalties, and valuation. (*Id.*) Mr. Plumpe has held leadership positions in industry-leading organizations, including as co-Chair of the 2022 Presidential Task Force on Intellectual Property Reporting for the International Trademark Association, and was appointed to the World Intellectual Property Organization's Expert Consultative Group on the Valuation of Intangible Assets. (*Id.* ¶ 5.) Defendants do not dispute Mr. Plumpe's qualifications as a damages expert.

2.  **Mr. Plumpe's Opinion on Defendants' Sales**

Mr. Plumpe derived Defendants' sales revenues relating to the infringing product. He reviewed Apollo's financial records, which show that it realized net sales revenue in the U.S. of ▮▮▮▮▮ from June 2022 through July 2023. (Plumpe Rpt. ¶¶ 10, 40.) He reviewed Costco's financial records, which show it realized net sales revenue in the U.S. of ▮▮▮▮▮ from January 2022 through August 6, 2023. (*Id.* ¶¶ 10, 44.) These figures align with those of Defendants' expert, Thomas J. Gorowsky, whose report states that Apollo's net sales revenue was ▮▮▮▮▮ and Costco's net sales revenue was ▮▮▮▮▮ in the U.S. during the same period. (Gorowsky Rpt. at 26, 34.)[2]

3.  **Mr. Plumpe's Opinion on Defendants' Profits**

Next, Mr. Plumpe deducted certain undisputed costs from Defendants' net sales revenues relating to the infringing product, resulting in a measure of profits. Based on the deduction of those undisputed costs, he calculated Apollo's profits for the relevant period as ▮▮▮▮▮. (Plumpe Rpt. ¶¶ 10, 42.) To do so, he used Apollo's financial records to identify its cost of goods sold, advertising expenses specific to the infringing product, and reimbursements that Costco

---

[2] References throughout to "Gorowsky Rpt." refer to the Rebuttal Expert Report of Thomas J. Gorowsky, dated November 15, 2023, attached as Exhibit 1 to the Declaration of Thomas J. Gorowsky in Support of Defendants' Motion for Summary Judgment (ECF 176).

imposed on Apollo for price discounts for the product, then he deducted these amounts from Apollo's net sales. (Plumpe Rpt. ¶¶ 10, 41-42.) He calculated Costco's profits for the same period as ▮▮▮▮▮. (Plumpe Rpt. ¶¶ 10, 46.) To arrive at this number, he deducted from Costco's net sales revenues the amount it paid Apollo for the infringing product. (Plumpe Rpt. ¶¶ 10, 45-46.) Mr. Gorowsky, in his profit analysis, deducted the same amounts.[3] (Gorowsky Rpt. Exhs. 2, 5, B.)

4.    **Mr. Plumpe's Opinion on Reasonable Royalty Damages**

Mr. Plumpe offered his expert opinion as to what a reasonable royalty damages award would be in a hypothetical negotiation between the parties. (Plumpe Rpt. ¶ 52.) He presumed Sol de Janeiro will prove harm and that a reasonable royalty is an appropriate proxy for some portion of the harm. (Plumpe Rpt. ¶ 50.) He next determined the royalty rate the parties might agree to in a hypothetical negotiation. (*Id.* ¶¶ 55-93.) To obtain a "starting point" for this estimate, he searched for analogous trademark and trade dress license agreements using RoyaltySource, a well-known database of publicly available agreements. (*Id.* ¶¶ 62, 64-70.) Considering the issues most likely to shape the hypothetical negotiation, Mr. Plumpe culled licenses for personal care products related to toiletries, the industry that includes the infringing product. (*Id.* ¶ 64.) He reviewed "the initial 100+ search results" and selected eight "licenses he believed to be most informative in this matter." (*Id.* ¶ 64.) These licenses "were trademark-related, were not between related parties, occurred after 2000, were not celebrity-related, and were for personal care products." (*Id.*) The royalty rates in these licenses ranged from 4% to 20%. The median rate was 7%, with "an interquartile range of 5% to 8%." (*Id.*)

---

[3] Mr. Gorowsky deducted the same amount from Apollo's sales figures. (Plumpe Rpt. Tab 3; Gorowsky Rpt. Exh. 2.) Mr. Gorowsky's measure of Costco's gross profits vary from Mr. Plumpe's by less than one-tenth of a percent. (Plumpe Rpt. Tab 4; Gorowsky Rpt. Appx. B.). Gross profits – as calculated by Mr. Plumpe – is an accepted financial accounting measure of profits.

3

In reviewing the agreements, Mr. Plumpe considered "evidence of royalty rates paid by others in similar contexts, the benefits and costs to the intellectual property owner of licensing, the willingness of the intellectual property owner to enter into a license agreement, the benefits to the licensee associated with the use of the intellectual property, and other relevant factors specific to the hypothetical negotiation," so as to determine which of these licenses were more relevant than others. (Plumpe Rpt. ¶ 60.) He also analyzed throughout his report many of the factors set out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), a patent decision listing factors courts have considered instructive in trademark cases. (Plumpe Rpt. ¶¶ 15-18, 20, 23, 28-34, 40, 42, 44, 46-48, 51-52, 58-59, 61, 64-70, 73-91, 93.)

Then, "[a]s a reasonableness check," Mr. Plumpe reviewed *Licensing Royalty Rates*, a resource "respected within the industry" that "provides a 'working range' of royalty rates based on a survey of industry experts." (Plumpe Rpt. ¶ 70.) It provided a range of 5% to 8% for the industry category that includes body creams, specifically those in the most relevant "Corporate" category. (*Id.*) Applying all the information he gathered to the facts of the case based on his expertise in the field, Mr. Plumpe concluded that, here, "a hypothetical negotiation would result in a reasonable royalty rate . . . of at least 8%" of Apollo's net sales, resulting in a reasonable royalty of at least ▮▮▮▮▮▮▮▮. (*Id.* ¶¶ 88, 93.)

Defendants' financial damages expert, Mr. Gorowsky, also performed a reasonable royalty calculation in his rebuttal report. (Gorowsky Rpt. 55-59.) Despite Defendants' criticisms of Mr. Plumpe's methods, Mr. Gorowsky did not engage in his own search for analogous third-party licenses. For his starting point, he selected two licenses that he deemed appropriately informative from Mr. Plumpe's set. (*Id.* 55-56.) He "considered the influence of various factors

4

identified by Mr. Plumpe." (*Id.* 56.) And on this basis, he determined a reasonable royalty damages award of just over ▮. (*Id.* at 59.)

## LEGAL STANDARD

Federal Rule of Evidence 702, which governs admissibility of expert testimony, provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The rule incorporates principles established in *Daubert* to provide courts with a gatekeeping role to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions, representing a departure from the previously widely followed, and more restrictive, standard of *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923)." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). "[E]xcluding expert testimony is the exception rather than the rule . . . ." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 562 (S.D.N.Y. 2007). Once the court determines that an expert is qualified, the court "should presume [her testimony] is reliable." *Arista Recs. LLC v. Lime Grp. LLC*, 06-CV-5936 (KMW), 2011 WL 1674796, at *3 (S.D.N.Y. May 2, 2011) (internal quotation marks omitted); *see also In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 179 (S.D.N.Y. 2009) ("The strength of an expert's qualifications provides circumstantial evidence of reliability."). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of

5

proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) ("[O]ur adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony.").

A judge may "exclude expert testimony if it is speculative or conjectural or based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence 'an apples and oranges comparison.'" *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2d Cir. 2009) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). However, "contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Boucher*, 73 F.3d at 21 (internal quotation marks omitted). Even "subjectively improbable" conclusions do not warrant exclusion. *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007) (citing *Daubert*, 509 U.S. at 594). "The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Amorgianos*, 303 F.3d at 267 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)). Particularly where the opposing party has retained a rebuttal expert, "it should be left to the jury to decide which expert engaged in the proper analysis." *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, 14-CV-8467 (JMF), 2016 WL 5416498, at *10 (S.D.N.Y. Sept. 28, 2016) (denying motion to exclude testimony and finding arguments expert used "flawed methodology," "did not consider all relevant data," and "made several unsupported assumptions" all go to the weight of testimony, not admissibility).

6

DISCUSSION

A.  **Mr. Plumpe's Reasonable Royalty Opinion is Based on Well-Supported, Reliable Data and Methods**

   1.  **Mr. Plumpe's Reasonable Royalty Calculations are Admissible and Based on Reliable Comparable Licenses**

Mr. Plumpe analyzed eight licenses that he found comparable and helpful, engaged in a hypothetical negotiation analysis, considered the relevant factors set forth in *Georgia-Pacific*, and arrived at the expert conclusion that, if Defendants are ordered to pay a reasonable royalty rate, the amount should be at least ▮▮▮▮▮▮▮. (Plumpe Rep. ¶¶ 10, 93.)

Defendants assert that Mr. Plumpe's conclusion is "based entirely on speculation and, therefore, does not meet the threshold for admissibility under Rule 702." (Br. at 8.) Defendants' main argument in this regard is a retread of their summary judgment argument that reasonable royalty damages cannot be awarded where there is no prior licensing relationship. *Id*. As Sol de Janeiro demonstrates in its opposition to that motion, (*see* Sol de Janeiro's Memorandum of Law in Opposition to Counterclaim-Defendants' Motion for Partial Summary Judgment on Damages at 17-20 (filed concomitantly)), Defendants' argument is wrong. Sol de Janeiro is aware of no Second Circuit or Supreme Court opinion holding that reasonable royalty damages are available only where the parties have a prior licensing arrangement—and Defendants cite no such binding precedent in any of their briefs.

The opinion in *Gucci America, Inc. v. Guess?, Inc.*, 858 F. Supp. 2d 250 (S.D.N.Y. 2012), is instructive. In *Gucci*, the defendant, Guess, argued, "Gucci cannot recover 'reasonable royalty' damages as a matter of law because the parties did not engage in previous licensing discussions or have a previous licensing agreement." *Id.* at 255. It asserted that, without a prior licensing relationship, an expert's reasonable royalty opinion would be "utterly speculative." *Id.* These are the very same arguments Defendants submit here. But the *Gucci* court rejected them:

7

"Even in cases without such agreements . . . courts have awarded or approved of 'reasonable royalty' damages if the evidence provides a sufficiently reliable basis from which to calculate them." *Id.* at 253-54 & n.15 (collecting cases). The court allowed the expert opinion to go to the jury—even noting that "a plaintiff's unwillingness to license supports a **higher-than-normal royalty rate**." *Id.* at 256 & n.30 (emphasis added).

Other courts, both within and outside this Circuit, agree. *See Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 647 F. Supp. 3d 145, 233 (S.D.N.Y. 2022) (citing *Gucci America* and awarding reasonable royalty damages for trade dress infringement after bench trial); *On Site Energy Co. v. MTU Onsite Energy Corp.*, 10-CV-1671 (JS)(WDW), 2012 WL 2952424, at *2 (E.D.N.Y. July 19, 2012) ("[T]here is no *per se* rule against reasonable royalties in cases with no evidence of licensing history."); *see also Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1345 (7th Cir. 1994) (approving of reasonable royalty based on *Georgia Pacific* factors); *Adidas Am., Inc. v. Skechers USA, Inc.*, 15-CV-1741 (HZ), 2017 WL 3319190, at *29 (D. Or. Aug. 3, 2017) (denying summary judgment upon finding reasonable royalty available even "in the absence of prior licensing agreements between the parties where evidence provided a sufficiently reliable basis from which the courts could calculate such damages"); *QS Wholesale, Inc. v. World Mktg., Inc.*, 12-CV-0451 (DOC)(RNBx), 2013 WL 12114508, at *2 (C.D. Cal. July 9, 2013) (allowing reasonable royalty damages to go to the jury); *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 08-CV-2764 (WDQ), 2010 WL 1375301, at *8 (D. Md. Mar. 30, 2010) (finding that "[n]o court has announced a *per se* bar against the presentation or consideration of such evidence" and that "courts have recognized [the *Georgia-Pacific* factors] as useful in trademark cases"); *Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 585-86 (M.D.N.C. 2009) (upholding jury award of reasonable royalty damages); *adidas Am., Inc. v.*

8

*Payless Shoesource, Inc.*, 01-CV-1655 (KI), 2008 WL 4279812, at *12 (D. Or. Sept. 12, 2008) (upholding jury award of "a reasonable royalty as a surrogate measure of damage to the marks, even though [adidas] concedes that it would not have licensed the marks to Payless").

The only case that Defendants cite in support of their argument is *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, 04-CV-7203 (DLC), 2006 WL 1359955 (S.D.N.Y. May 18, 2006). But this decision predates those cited above and did not exclude the reasonable royalty testimony only because of the lack of a licensing history. *Id.* at *4. Instead, it found the proposed royalty rate too speculative because 8% was both higher than relevant industry norms and based on a hypothetical negotiation that would have taken place four years before the claims in dispute. *Id.* By contrast, Mr. Plumpe's selected 8% royalty rate is within the relevant industry range here and his hypothetical negotiation would not have taken place in a different time period. Defendants do not explain why, despite these differences, *Juicy Couture* should control over *Focus Products* and more recent decisions.

### 2. Defendants' Other Arguments to Exclude Mr. Plumpe's Testimony Go to Weight, Not Admissibility

Defendants next launch a slew of criticisms against Mr. Plumpe's comparable licenses and proposed royalty rate, all of which go to the weight of his testimony, not its admissibility.

They argue that the third-party license agreements Mr. Plumpe relied upon are irrelevant because the licenses differ to some degree from the hypothetical license here. (Br. at 10.) But such arguments are for the jury to hear and go to weight not admissibility. *See Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020) ("the degree of comparability of the license agreements is a factual issue[] best addressed by cross-examination and not by exclusion") (internal quotation marks omitted); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("[T]he fact that a license is not perfectly analogous generally goes

9

to the weight of the evidence, not its admissibility."); *Open Sea Distrib. Corp. v. Artemis Distrib., LLC*, 20-CV-1440 (TJC)(PDB), 2023 WL 8651255, at *64 (M.D. Fla. Sept. 19, 2023).

In *Open Sea*, the court applied "the persuasive reasoning of the Federal Circuit," noting the many "issues [that] are best addressed by cross-examination and not by exclusion of [expert] Rogers's testimony: the differences in the licensing agreements; the ages of the agreements; the absence of details about the licensors and licensees in the agreements; Rogers's failure to account for differences; and Rogers's asserted failure to investigate the reliability of the [] data." *Id.* As one court noted in an analogous context, "the selection of comparators will seldom approach the 'Utopian ideal' of identifying the perfect clone" and thus such criticisms "go more to the weight afforded to [the expert's] analysis than to its admissibility." *Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 189 (S.D.N.Y. 2006) (denying motion to exclude damages expert under *Daubert* in negligence suit).[4]

Next, Defendants attack the credibility of RoyaltySource, the database from which Mr. Plumpe pulled the comparable licenses. (Br. at 10). In fact, Mr. Plumpe used RoyaltySource only to identify relevant agreements, and then he subsequently obtained the actual agreements (or the most detailed information publicly available). (Plumpe Rpt. ¶ 64.) As with other aspects of their motions, Defendants' argument lacks credibility because their own damages expert calculated a reasonable royalty using agreements from this same database. (Gorowsky at 55-56.) In addition, the cases Defendants cite to assail the credibility of RoyaltySource as "inherently unreliable" hold no such thing. In *Uniloc USA, Inc. v. Samsung Electronics America, Inc.*, 17-CV-0651 (JRG), 2019 WL 2267212, at *12 (E.D. Tex. May 28, 2019), the expert relied upon "some

---

[4] Moreover, Defendants rely merely on Mr. Plumpe's deposition testimony to assert that these differences between the third-party licensees' and licensors' businesses and the parties here, even though he is "not sure" about and does not recall many such facts. (Plumpe Tr. 213:25-214:2; 286:16-288:15.)

10

screening process done by" the database, something Mr. Plumpe did not rely on. In *McGinley v. Luv n' Care, Ltd.*, 17-CV-0821 (TAD)(KDM), 2023 WL 6289977, at *2 (W.D. La. Sept. 26, 2023), the expert relied on "royalty rate industry studies" published by RoyaltySource, not the underlying license agreements themselves. *Id.* at *3 ("[T]he RoyaltySource Royalty Reports are speculative and unreliable, because they are derived from unidentified and unquantified products marketed and sold by unidentified and unquantified businesses."). Mr. Plumpe did not rely on RoyaltySource Royalty Reports; he did a substantive review of the agreements themselves. (Plumpe Rpt. ¶ 64.) And in *Chico's Fas, Inc. v. Clair*, 13-CV-0792 (SPC), 2015 WL 3496003, at *4 (M.D. Fla. June 3, 2015), though an expert chose licenses from RoyaltySource, the court excluded his opinion not because the database was unreliable but because none of the licenses pertained to the relevant goods—something that cannot be said of Mr. Plumpe's licenses. *Id.*

Defendants next resort to mischaracterizing Mr. Plumpe's testimony by claiming that the RoyaltySource licenses are the sole basis for his reasonable royalty opinion. (Br. at 5.) In fact, as discussed above, Mr. Plumpe selected eight agreements from RoyaltySource, took as a "starting point" the range of royalty rates they contained (Plumpe Rpt. ¶ 62), weighed each agreement individually to determine the extent of its relevance (Plumpe Rpt. ¶¶ 67-69), engaged in a hypothetical negotiation analysis (Plumpe Rpt. ¶¶ 71-91), considered the relevant *Georgia-Pacific* factors (Plumpe Rpt. ¶¶ 15-18, 20, 23, 28-34, 40, 42, 44, 46-48, 51, 52, 58, 59, 61, 64-70, 73-91, 93), and, finally, consulted *Licensing Royalty Rates* "[a]s a reasonableness check." (Plumpe Rpt. ¶ 70). Defendants' argument is not credible.

Finally, Defendants assert Mr. Plumpe's opinion is not reliable because he did not consider **enough** of the fifteen *Georgia-Pacific* factors. (Br. at 11 ("Mr. Plumpe skipped at least 10 of the 15 *Georgia-Pacific* factors").) This is simply incorrect. In fact, he considered at least

11

10 of the 15 factors.[5] Moreover, this argument goes to weight, not admissibility, and Defendants cite no authority for the proposition that reasonable royalty testimony can be excluded on a *Daubert* motion because the expert did not consider one or more of the *Georgia-Pacific* factors– especially if the non-considered factors are not relevant to the matter being analyzed. Indeed, "the *Georgia-Pacific* factors are not required for royalty calculation." *Coryn Grp. II*, 2010 WL 1375301, at *8 (observing some "courts have recognized them as useful in trademark cases"). Even the sole case Defendants cite here instructs that, in the trademark context, the *Georgia-Pacific* factors serve merely "as a guiding framework." *Focus Prods.*, 647 F. Supp. 3d at 233.

Notably, in *Focus Products* the court **denied** the defendants' motion to exclude an expert who did not consider several of the *Georgia-Pacific* factors in his report. *Id.* at 234-35 (affirming the pre-trial *Daubert* decision and finding the expert qualified, his data reliable, and his report persuasive). Defendants cite the decision because the court refused to **award** a reasonable royalty post-verdict, which is irrelevant here. *Id.* at 259. (The court declined to give the award for several reasons, including because the expert chose licenses not limited to the relevant industry—a mistake Mr. Plumpe did not make—and used a resource the court deemed unreliable. *Id.*[6]) Thus, even under *Focus Products*, Defendants' motion should be denied.

---

[5] Mr. Plumpe considered Factor No. 3, "The nature and scope of the license" (Plumpe Rpt. ¶¶ 48, 67, 74, 87, 88, 90), Factor No. 4, "The licensor's established policy and marketing program to maintain his patent monopoly" (*id.* ¶¶ 75-80), Factor No. 5, "The commercial relationship between the licensor and licensee" (*id.* ¶¶ 48, 67, 74, 87, 88, 90), Factor No. 7, "The duration of the patent and the term of the license" (*id.* ¶¶ 59, 93), Factor No. 8, "The established profitability of the product made under the patent" (*id.* ¶¶ 15-18, 28-31, 32-33, 61, 81, 83), Factor No. 10, "The nature of the patented invention" (*id.* ¶¶ 15-18, 20, 23, 28-34, 40, 42, 44, 46,61,82-86), Factor No. 11, "The extent to which the infringer has made use of the invention" (*id.* ¶¶ 20, 23, 33, 34, 40, 42, 44, 46, 61, 82, 84-86), Factor No. 12, "The portion of the profit or of the selling price that may be customary in the particular business" (*id.* ¶¶ 51, 64-70), Factor No. 14, "The opinion testimony of qualified experts" (*id.* ¶¶ 47, 52, 73, 77, 91), and Factor No. 15, the amount the parties would have agreed upon (*id.* ¶¶ 47 to 93). Several of the remaining factors do not apply.

[6] The unreliable database was Markables. Mr. Plumpe did not use Markables. Both he and the expert in *Focus Products* used RoyaltySource. But the court's complaint about RoyaltySource was the licenses the expert chose from it, not the database itself. Defendant's brief muddles the facts entirely with a false statement. (Br. at 11 ("Like the expert in *Focus Products*, Mr. Plumpe's sole basis for a reasonable royalty was RoyaltySource, an unreliable online database.").)

12

### B. Mr. Plumpe's Sales and Profits Calculations are Relevant, Reliable, and Not Prejudicial

To compute profits under the Lanham Act, the plaintiff's burden is to put forward the defendant's sales revenue, and the defendant has the burden of proving each cost that should be deducted. *See* 15 U.S.C. § 1117(a) ("[i]n assessing profits the plaintiff shall be required to prove defendant's sales only"); *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990) ("Ordinarily, a plaintiff that has proved the amount of infringing sales would be entitled to that amount unless the defendant adequately proved the amount of costs to be deducted from it."). "This sequence of proof thus places the burden of proving costs on the party with the superior access to such information, namely the infringing defendant." *Am. Honda Motor*, 918 F.2d at 1063.

Here, Mr. Plumpe calculated Defendants' sales, satisfying Sol de Janeiro's minimal burden. (Plumpe Rpt. ¶¶ 10, 39-40, 43-44.) His conclusions were essentially identical to Mr. Gorowsky's. (*Supra* Background.2.)

Then, "to be conservative" **in Defendants' favor**, Mr. Plumpe accepted on their face several significant costs submitted by Defendants and reduced his profit calculations accordingly, far below Defendants' respective gross sales. (Plumpe Rpt. ¶¶ 41-42, 45-46.) Again, the costs Mr. Plumpe deducted were identical or virtually identical to certain of the costs that Mr. Gorowsky deducted. (*Supra* Background.3.)

Despite the similarities in the experts' calculations, Defendants argue Mr. Plumpe's effort to reduce their sales revenues renders his report irrelevant, unhelpful, and unduly prejudicial. (Br. at 12-14.) They cite no instance in which a court has ever stricken an expert report in a Lanham Act case because a plaintiff's damages expert offered favorable deductions to the defendant, deductions that are not in dispute. (*Id.*) Sol de Janeiro is aware of no such case. The

13

only case they rely on in this section of their brief is *International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 72 (2d Cir. 1998). They assert Mr. Plumpe made the same mistake as the expert did in the case. (Br. At 13.) But as a post-trial appeal, it has nothing to do with excluding expert testimony.

Defendants repeatedly contend that Mr. Plumpe's profit calculation is something other than how the term is "defined in the Lanham Act." (Br. At 1, 6, 13.) However, the term is not defined in the Lanham Act; the Act merely refers to "profits." (Plumpe Tr. 34:5-7.) Mr. Plumpe deducted costs that were not in dispute and used common measures of profits in doing so. (Plumpe Rpt. ¶¶ 37-46; Plumpe Tr. 34:15-52:21.)

Defendants' criticisms once again go to the weight of the testimony and provide no basis to exclude Mr. Plumpe's opinions. They make no effort to explain how his profit calculations are purportedly irrelevant or would be anything but helpful to a jury. (Br. At 12-14.) The Lanham Act allows a defendant to deduct from its sales any costs the plaintiff does not dispute. *See* 15 U.S.C. § 1117. A credible expert such as Mr. Plumpe—one who aims to provide appropriate measures of profits—will help the jury by narrowing the dispute to only the disputed costs.

Defendants are, of course, free to cross-examine Mr. Plumpe and offer their own expert testimony in rebuttal. But disagreement with a profit calculation does not provide a basis to exclude. *See GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 18-CV-5290 (CM), 19-CV-4693 (CM), 20-CV-10195, 2023 WL 6614486, at *41 (S.D.N.Y. Sept. 20, 2023) (allegations that expert is using "an unreliable methodology and data to calculate" recoverable profits goes to weight, not admissibility); *Fed. Trade Comm'n v. Quincy Bioscience Holding Co.*, 646 F. Supp. 3d 518, 529 (S.D.N.Y. 2022) ("The law does not specify what evidence the expert is to take into consideration. The appropriate response to the experts' choice of omissions is to test that opinion

at trial through cross examination."); *Christian Care Ministry, Inc. v. Sureco Ins. Agency, Inc.*, 18-CV-1313 (WWB)(GJK), 2020 WL 11233539, at *2 (M.D. Fla. Feb. 26, 2020) ("Defendants also argue that Mr. Lindsey failed to consider relevant data in reaching his cost per lead figure or included costs that should have been excluded. The fact that Defendants do not agree with the way in which the number used was reached is not a basis for exclusion."). Defendants' true objection appears to be that Mr. Plumpe did not do ***all*** their work for them; he did not deduct Defendants' unjustified and disputed costs too. (Br. at 12-14; *see also* Plumpe Tr. 45:12-13 ("Q. Yeah. Why didn't you take out all costs?").) Mr. Plumpe need not go so far.

## CONCLUSION

Mr. Plumpe is a seasoned financial damages expert who has put forth reasonable expert opinions valuing a reasonable royalty and Defendants' profits. Nothing that Defendants have argued approaches a basis on which his testimony should be excluded. Accordingly, the motion should be denied.

Dated: May 29, 2024
New York, New York

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: /s/ John Margiotta
John P. Margiotta
Leo Kittay
Brian Leary
Shelby P. Rokito
Fross Zelnick Lehrman & Zissu, P.C.
151 West 42nd Street, 17th Floor
New York, New York 10036
Tel: (212) 813-5900
Email: jmargiotta@fzlz.com
lkittay@fzlz.com
bleary@fzlz.com
srokito@fzlz.com

*Attorneys for Defendants/Counterclaim-Plaintiffs*

15