UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

APOLLO HEALTHCARE CORP. d/b/a
APOLLO HEALTH AND BEAUTY CARE,

                    Plaintiff,

            - against -

SOL DE JANEIRO USA INC. and
SOL DE JANEIRO IP, INC.,

                    Defendants.
- - - - - - - - - - - - - - - - - X        22 Civ. 7719 (LLS)

SOL DE JANEIRO USA INC. and                 OPINION & ORDER
SOL DE JANEIRO IP, INC.,

        Counterclaim-Plaintiffs,

            - against -

APOLLO HEALTHCARE CORP. d/b/a
APOLLO HEALTH AND BEAUTY CARE
and COSTCO WHOLESALE CORP.,

        Counterclaim-Defendants.
- - - - - - - - - - - - - - - - - X

    Plaintiff Apollo Healthcare Corporation, doing business as

Apollo Health and Beauty Care, brought a declaratory judgment

action against defendants Sol de Janeiro USA Inc. and Sol de

Janeiro IP, Inc. (together, "SDJ") concerning trade dress and

trademark rights in body cream products. SDJ filed counterclaims

against Apollo Healthcare Corporation and Costco Wholesale Corp.

(together, "Apollo") for trade dress and trademark infringement

and unfair competition under the Lanham Act and the laws of New

York, seeking actual and compensatory damages.

Pending before this Court are two motions for summary judgment. Apollo moves for summary judgment to dismiss SDJ's trade dress and trademark infringement counterclaims (Dkt. No. 137), as well as partial summary judgment to dismiss two of SDJ's damages claims, prospective corrective advertising damages and reasonable royalty damages (Dkt. No. 167).

For the reasons that follow, all questions on Apollo's liability for trade dress and trademark infringement are preserved for trial, and SDJ's claims for prospective corrective advertising damages and reasonable royalty damages are dismissed.

## BACKGROUND

SDJ is a beauty company that launched its first products in 2015. SDJ's Rule 56.1 Counterstatement of Material Facts on Liability ("COFL") ¶¶ 76, 88 (Dkt. No. 231). SDJ began when cofounder Heela Yang moved to Brazil and was inspired "by the beauty confidence of Brazilian women." Id. ¶ 78. In 2014, she began working with her cofounder, Marc Capra, to develop a brand that would "celebrate women's natural beauty." Id. ¶ 79. SDJ's "hero" product is BRAZILIAN BUM BUM CREAM, a best-selling moisturizer. Id. ¶ 93. Ms. Yang was primarily responsible for the design of the cream and chose a round jar with a large, overhanging lid to represent "curvaceous oversize more real women versus skinny models" and a name that would evoke the

2

"body confidence of Brazilian women." Id. ¶¶ 81-82. Images of SDJ's BRAZILIAN BUM BUM CREAM product and displays are below:



Apollo's Rule 56.1 Statement of Material Facts on Liability ("SOFL") ¶ 25 (Dkt. No. 142).[1]

In 2016, BRAZILIAN BUM BUM CREAM debuted in Sephora stores nationwide and quickly became a hit. COFL ¶ 89. BRAZILIAN BUM BUM CREAM became the #1 bestselling skincare product at Sephora and the #1 bestselling product in the "body cream" category on Amazon.com. Id. ¶¶ 89-91. It retails for $48 for a single 240 ml or 8.1 oz container. SOFL ¶ 30. Many companies have sought to carry BRAZILIAN BUM BUM CREAM in their stores, including Costco, which reached out to SDJ in 2020. COFL ¶¶ 95, 107. SDJ's CEO and corporate designee testified that SDJ "would never consider selling [its] product at Costco." SOFL ¶ 29.

---

[1] These images are illustrative and do not represent every possible form of packaging or product display.

Apollo manufactures personal care products and has been in business with Costco for at least 20 years. Id. ¶ 4. In late 2020, Costco and Apollo started working together to create a new moisturizer, NUTRIUS® BRAZILIAN BODY BUTTER CREAM, which was first sold at Costco in June 2022. Id. ¶¶ 5-6, 12. NUTRIUS® BRAZILIAN BODY BUTTER CREAM retails for $19.99 for a two-pack of 6 oz products at Costco. Id. ¶ 14. As of summer 2023, over 91% of NUTRIUS® BRAZILIAN BODY BUTTER CREAM sales were through Costco's warehouses. Id. ¶ 13. Images of the NUTRIUS® BRAZILIAN BODY BUTTER CREAM product and displays are below:

  

Id. ¶ 11.[2]

On or about August 30, 2022, SDJ's former counsel sent a demand letter to Apollo's Co-Chief Executive Officers, Charles and Richard Wachsberg. Id. ¶ 39. SDJ claimed to own trade dress rights in the BRAZILIAN BUM BUM CREAM's "very distinctive packaging, comprised of a bright yellow round tub with a white

---

[2] These images are illustrative and do not represent every possible form of packaging or product display.

oversized cap/lid, and the product name printed in black around the outside of the cap/lid," as well as trademark rights in the BRAZILIAN BUM BUM mark. Id. ¶¶ 40-41.

After the demand letter, Apollo brought suit for a declaratory judgment that SDJ's trade dress rights in BRAZILIAN BUM BUM CREAM were unenforceable, and that Apollo's NUTRIUS® BRAZILIAN BODY BUTTER CREAM did not infringe any valid trade dress or trademark rights owned by SDJ. Second Amended Complaint (Dkt. No. 55). SDJ counterclaimed that Apollo's NUTRIUS® BRAZILIAN BODY BUTTER CREAM infringes its BRAZILIAN BUM BUM® CREAM trade dress and trademark rights. Answer to Second Amended Complaint and Amended Counterclaims (Dkt. No. 67). SDJ seeks actual and compensatory damages, including $37.7 million in prospective corrective advertising damages and $1.15 million in reasonable royalty damages. Apollo's Rule 56.1 Statement of Material Facts on Damages ("SOFD") ¶ 3 (Dkt. No. 170). Apollo now moves for summary judgment to dismiss SDJ's trade dress and trademark infringement counterclaims (Dkt. No 137) and both of those damages claims (Dkt. No. 167).

**DISCUSSION**

**Summary Judgment Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986). A fact is material if, based on the substantive law, it "might affect the outcome of the suit under the governing law," and it is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Baez v. JetBlue Airways Corp., 793 F.3d 269, 274 (2d Cir. 2015) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.").

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. If the moving party meets its burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (internal quotations and citations omitted); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist.").

Courts are "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed., 444 F.3d 158, 162 (2d Cir. 2006) (internal quotations and

6

citations omitted). Courts "must construe all the evidence in the light most favorable to the nonmoving party and draw all inferences and resolve all ambiguities in that party's favor." Cartier, Inc. v. Sardell Jewelry, Inc., 294 Fed. Appx. 615, 617 (2d Cir. 2008). "Summary judgment should not be granted where the record discloses facts that could reasonably support a jury's verdict for the non-moving party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

### Summary Judgment on Liability

Apollo moves for summary judgment dismissing SDJ's trade dress and trademark infringement counterclaims. As the Court made clear in its conferences with the parties, those Lanham Act claims are particularly fact-intensive and multi-pronged, making them ill-suited for resolution on summary judgment. There are numerous factual disputes regarding Apollo's alleged trade dress and trademark infringement. As a result, Apollo's motion for summary judgment on liability is denied.

**1. Trade Dress Infringement**

Trade dress "encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the consumer." Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 999 (2d Cir.1997). "To prevail in a trade dress infringement suit under the Lanham Act, plaintiff must first

prove that its identifying mark is itself inherently distinctive or that it has become distinctive by acquiring a secondary meaning. Second, plaintiff must show that a likelihood of confusion exists between its product and the defendant's." Mana Prod., Inc. v. Columbia Cosms. Mfg., Inc., 65 F.3d 1063, 1068 (2d Cir. 1995).

### A. Secondary Meaning

"Trade dress generally falls into one of two categories: product packaging or product design." Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 537 (S.D.N.Y. 2011). Product packaging trade dress may be inherently distinctive and protectable without a showing of secondary meaning. See Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 212 (2000) ("The attribution of inherent distinctiveness to certain categories of . . . product packaging derives from the fact that the very purpose of . . . encasing [a product] in a distinctive packaging, is most often to identify the product's source.").

Product design trade dress, however, is only protectible when it has acquired secondary meaning. Landscape Forms, Inc. v. Columbia Cascade Co., 117 F. Supp. 2d 360, 365 (S.D.N.Y. 2000). Trade dress acquires secondary meaning when, "in the minds of [consumers], the primary significance of a product feature or term is to identify the source of the product rather than the

8

product itself." Id. at 366 (quoting Inwood Laboratories, Inc. v. Ives Lab., Inc., 456 U.S. 844, 851 n.11 (1982)). Courts in this Circuit "exercise particular caution when extending protection to product designs," as product designs "almost invariably" are used "not to identify the source of the product, but to render the product itself more useful or more appealing." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 114-15 (2d Cir. 2001) (internal quotations and citations omitted). "[A] party seeking to prove secondary meaning has a heavy burden." 20th Century Wear, Inc. v. Sanmark-Stardust, Inc., 815 F.2d 8, 10 (2d Cir. 1987) (internal quotations and citations omitted). Factors relevant to the secondary meaning analysis include: (1) advertising expenditures, (2) consumer studies, (3) unsolicited media coverage, (4) sales success, (5) attempts to plagiarize the dress, and (6) the length and exclusivity of the dress's use. Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 226 (2d Cir. 2012).

"Although the Second Circuit has stated that district courts should be cautious in weighing these factors at the summary judgment stage, it has nonetheless supported summary judgment in cases where the proponent of the alleged trademark has failed to raise a material issue of fact on the question of secondary meaning." Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc., 478 F. Supp. 2d 340, 344 (E.D.N.Y. 2007) (citing

Mana Prod., 65 F.3d at 1071). If a plaintiff fails to establish that its trade dress is entitled to protection, the Court's analysis is complete. Mana, 65 F.3d at 1071.

There are clear questions of fact at every juncture here. The parties dispute whether SDJ's trade dress is in product design or product packaging. SOFL ¶¶ 43, 45; COFL ¶¶ 43, 45. Apollo argues that "SDJ has admitted that its alleged trade dress falls in the product design category," citing two references to "product design" in SDJ's Answers. Apollo's Memorandum in Support of Summary Judgment on Liability (Apollo Liab. Mem.) at 15 (Dkt. No 140). SDJ contests this, stating that the "product is the cream to be massaged into the user's skin" and "[a]lthough the product design may contain source-identifying elements, such as its singular scent, no such element is part of the asserted trade dress in this case. Instead, the decorative elements of the jar, lid, and labeling that comprise the Bum Bum Trade Dress are all product packaging elements." SDJ's Memorandum in Opposition to Summary Judgment on Liability (SDJ Liab. Mem.) at 13 (Dkt. No 234); COFL ¶¶ 43, 45.

Since there is a factual dispute as to whether the trade dress is in product design or product packaging, the Court need not analyze secondary meaning, which may or may not be required depending on the jury's findings. Secondary meaning analysis is similarly fact-intensive, and the Second Circuit has warned

against deciding it on summary judgment, as it is apt to require a trial.

### B. Functionality

"[A] product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." Yurman Design, 262 F.3d at 116 (internal quotations and citations omitted). "On one end, unique arrangements of purely functional features constitute a functional design. On the other end, distinctive and arbitrary arrangements of predominantly ornamental features that do not hinder potential competitors from entering the same market with differently dressed versions of the product are non-functional and hence eligible for trade dress protection." Fabrication Enters., Inc. v. Hygenic Corp., 64 F.3d 53, 59 (2d Cir. 1995) (internal quotations and citations omitted). "[T]he functionality of the trade dress must be assessed with respect to the trade dress as a whole." Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd., 626 F. Supp. 3d 635, 648 (S.D.N.Y. 2022). "[T]he person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3).

Once again, the parties dispute nearly all key facts related to functionality. Apollo argues that the following features are functional:

11

> The rounded bottom of the jar and the large, overhanging lid serve several utilitarian purposes, such as: (i) allowing consumers to more easily remove, or scoop out, the cream; (ii) providing strength to the container so that it does not break during packaging, transport, merchandising, or shipping to end consumers, which is particularly important for products containing heavy, thick creams where the weight of the product makes the container especially vulnerable to breakage during transport; and (iii) allowing consumers to more easily grasp the lid and tighten it to create a seal that preserves the remaining cream.

SOFL ¶ 65. Apollo also states that the writing is on the lid because there is not enough space on the container itself, and the color identifies the product's scent. Id. ¶¶ 66-67. SDJ disputes those statements, explaining that Ms. Yang, SDJ's co-founder and CEO, who was primarily responsible for the packaging and shape, testified that those purported functional benefits had "nothing to do with" the design of the product packaging, and that it "was a hundred percent aesthetics." COFL ¶¶ 65, 81. "[T]he fact that it's round at the bottom was very, very important to the brand, and then the overhang cap was a design element that represents more of like a curvaceous oversize more real women versus skinny models." Id. ¶ 82. "We're not a skinny brand. We're not a tall skinny pump. We're chunky. We're like that yellow bucket of sunshine and so, that's having an oversize cap, we decided that that added to the overall aesthetics of being chunky and that added to our brand experience." Id. These

are genuine disputes of material fact that are best left for the
jury.

### C. Specificity

"Plaintiff must articulate the elements of their product
design with specificity to be afforded trade dress protection."
Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods,
Inc., 2012 WL 3240442, at *4 (S.D.N.Y. Aug. 7, 2012) (internal
quotations and citations omitted). "A trade dress infringement
claimant must enumerate which features of its purported dress
are distinctive and indicate how they are distinctive." GeigTech
E. Bay LLC v. Lutron Elecs. Co., 352 F. Supp. 3d 265, 276
(S.D.N.Y. 2018). A "plaintiff's inability to explain to a court
exactly which aspects of its product design(s) merit protection
may indicate that its claim is pitched at an improper level of
generality, i.e., the claimant seeks protection for an
unprotectable style, theme or idea." Landscape Forms, Inc. v.
Columbia Cascade Co., 113 F.3d 373, 381 (2d Cir. 1997). "Without
such a precise expression of the character and scope of the
claimed trade dress, litigation will be difficult," as courts
may struggle to "evaluate how unique and unexpected the design
elements are in the relevant market" or "shape narrowly tailored
relief." Id. However, "trade dress may protect the overall look
of a product"; "[a]lthough each element of a trade dress
individually might not be inherently distinctive, ... the

13

combination of elements" may be indicative of source." Id.

(internal quotations and citations omitted).

SDJ describes the elements of its trade dress as follows:

> [A] colored jar that has no writing on it which is
> gently rounded at its bottom; a large, overhanging lid
> that extends nearly half the height of the product and
> protrudes outward over the jar body (rather than
> screwing flush); a color-block combination of yellow
> and white components; the product name presented in
> capitalized dark-gray lettering framed by smaller text
> above and below.

Answer to Second Amended Complaint and Amended Counterclaims

¶ 137 (Dkt. No. 67).

Apollo argues that SDJ has failed to describe its trade
dress with the requisite specificity. However, SDJ does not
simply list general elements of its trade dress but enumerates
the particular features that make them unique, namely the
overhanging lid that does not sit flush with the base, the
specific shape of the jar, the yellow and white color scheme,
and the presence of SDJ's trademark on the product's oversized
lid in a particular color and style. Id. SDJ also includes a
number of photographs to demonstrate how those elements create a
unique overall look that differs from other lotions and creams
on the market. Id. ¶¶ 137-38, 142-45. That description is not so
generalized as to render litigation difficult, and SDJ will have
ample opportunity to describe its trade dress with specificity
to the jury at trial.

14

### D. Likelihood of Confusion

If a plaintiff does establish that its trade dress is entitled to protection, the Court must then consider likelihood of confusion, which is determined by eight <u>Polaroid</u> factors: (1) strength of the trade dress; (2) similarity of the goods; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative trade dress was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1961).

Likelihood of confusion is typically a question of fact, "given the complexity of the test and the likelihood of material factual disputes about a number of the factors," but summary judgment is appropriate if "the products or marks are so dissimilar that no question of fact is presented." <u>Best Cellars, Inc. v. Wine Made Simple, Inc.</u>, 320 F. Supp. 2d 60, 73 (S.D.N.Y. 2003) (internal quotations and citations omitted). The Court must "determine whether any reasonable trier of fact could conclude that confusion is likely, and if so whether no reasonable trier of fact could conclude that confusion is not likely." <u>Id.</u> at 74.

15

The parties dispute every one of the _Polaroid_ factors, making them inappropriate for resolution on summary judgment. Nonetheless, the Court will briefly explore each one to outline the factual disputes.

### i. Strength of the Trade Dress

First, "strength of a mark is determined by its tendency to uniquely identify the source of the product. This tendency is strong to the extent that the mark is distinctive, either inherently or by virtue of having acquired secondary meaning." _Star Indus., Inc. v. Bacardi & Co._, 412 F.3d 373, 384 (2d Cir. 2005). (internal quotations and citations omitted). Apollo argues that "SDJ's alleged trade dress falls in the product design category, and thus cannot be inherently distinctive." Apollo Liab. Mem. at 27; SOFL ¶ 43, 45. SDJ states that the "jury could reasonably conclude that the Bum Bum Trade Dress is inherently distinctive" and "find that the Bum Bum Trade Dress has acquired secondary meaning and is commercially strong." SDJ Liab. Mem. at 28. As outlined in more detail above, the questions of whether SDJ's trade dress is inherently distinctive or has acquired secondary meaning are best left for the jury, and the Court need not answer them on summary judgment.

### ii. Similarity of the Goods

"In assessing similarity, courts look to the overall impression created by the logos and the context in which they

16

are found and consider the totality of factors that could cause confusion among prospective purchasers." Gruner + Jahr USA Pub. v. Meredith Corp., 991 F.2d 1072, 1078 (2d Cir. 1993). SDJ argues that the products are not confusingly similar given the different brand names and logos that are prominently displayed on both products. SOFL ¶ 11. SDJ disputes that the marks are prominently displayed, claiming that Apollo only added the large label after SDJ asserted its counterclaims. COFL ¶ 11. SDJ also highlights a number of similarities that could confuse consumers, including an "identical packaging impression," with the same rounded jar and overhanging lid, yellow and white color schemes, similar product names, and smaller text above and below the product names. COFL ¶¶ 113-14, 118. A jury is in the best position to weigh these differences and similarities.

### iii. Proximity of the Products

Proximity of the products "focuses on whether the two products compete with each other. In assessing this factor, the court may consider whether the products differ in content, geographic distribution, market position, and audience appeal." It's a New 10, LLC v. Harmon Stores, Inc., 2017 WL 3208611, at *4 (S.D.N.Y. July 28, 2017) (internal quotations and citations omitted). Apollo argues that the products are not proximate, as they are sold in different markets; 91% of NUTRIUS® BRAZILIAN BODY BUTTER CREAM is sold in Costco warehouses, where SDJ has

never sold its product, and 70% of SDJ's product is sold at
Sephora, where SDJ has an exclusivity agreement. SOFL ¶¶ 2-4,
13, 26-29. However, SDJ argues that both parties sell their
products on Amazon, and SDJ has begun selling at less expensive
retailers like Kohl's, JCPenney, and Ulta, while Apollo now
sells in Walmart. COFL ¶¶ 13, 26, 116. The parties also disagree
on whether their products cater to different age ranges and
price points. SOFL ¶¶ 15, 31; COFL ¶ 31. This is a clear factual
dispute that should be held for trial.

### iv. Bridging the Gap

Bridging the gap "refers to the likelihood that the senior
user will enter the junior user's market in the future or that
consumers will perceive the senior user as likely to do so."
Juicy Couture, Inc. v. L'Oreal USA, Inc., 2006 WL 1012939, at
*23 (S.D.N.Y. 2006). This factor does not apply here, as both
parties sell body creams and are in the same market.

### v. Actual Confusion

"Evidence of actual confusion may consist of anecdotal or
survey evidence." Paco Sport, Ltd. v. Paco Rabanne Parfums, 86
F. Supp. 2d 305, 319 (S.D.N.Y. 2000) (citing Centaur
Communications, Ltd. v. A/S/M Communications, Inc., 830 F.2d
1217, 1227 (2d Cir. 1987)). Apollo argues that SDJ has no
admissible evidence of actual confusion, as the evidence it has
produced is lacking specificity and may be inadmissible hearsay.

18

Apollo Liab. Mem. at 34-35; SOFL ¶¶ 49-50. However, SDJ outlines a range of different evidence that it plans to present at trial, including written inquiries from consumers seeking to purchase NUTRIUS® BRAZILIAN BODY BUTTER CREAM from SDJ, questions about whether SDJ manufactures NUTRIUS® BRAZILIAN BODY BUTTER CREAM, comments on social media confusing the two products, Costco's return history, and survey evidence. SDJ Liab. Mem. at 29-32; COFL ¶¶ 123-28. It is well established that evidence of actual confusion is not "admitted for the truth of the matter asserted" but as "probative of the declarant's confusion" and is therefore not hearsay. See Fun-Damental Too, 111 F.3d at 1003-04. Genuine disputes of material fact exist here, and the jury is in the best position to weigh the evidence.

### vi. Good Faith

In assessing good faith, courts consider whether a defendant adopted its mark "with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." Nora Beverages, 269 F.3d at 124. Apollo argues that it "did not intend to capitalize on SDJ's reputation or goodwill, or to cause confusion," and it cites to its prominent placement of the NUTRIUS® logo on its product. SOFL ¶¶ 11, 19. However, SDJ counters that Apollo has "created an enormous paper trail evidencing otherwise," citing evidence that Costco's head buyer was a fan of SDJ's product and

19

wanted to capitalize on its name recognition and create similar
packaging. SDJ Liab. Mem. at 28; COFL ¶¶ 107-09, 113-14, 116.
Clear factual disputes exist here that are best left to the
jury.

### vii. Quality

"Under this factor a court first examines whether
defendant's products or services are inferior to plaintiff's,
thereby tarnishing plaintiff's reputation if consumers confuse
the two." Morningside Grp. Ltd. v. Morningside Cap. Grp.,
L.L.C., 182 F.3d 133, 142 (2d Cir. 1999). Apollo argues that
SDJ's CEO and corporate designee testified that SDJ has no
opinion on the quality of NUTRIUS® BRAZILIAN BODY BUTTER CREAM,
meaning this factor is uncontested. SOFL ¶ 17. However, SDJ
claims that it is contested; Ms. Yang simply testified that she
had "no comment" on the quality, and, while SDJ did not spend
time testing the formulation, there is evidence that a
substantial number of purchasers returned NUTRIUS® BRAZILIAN
BODY BUTTER CREAM to Costco due to rashes or allergic reactions.
COFL ¶ 17. This creates a dispute of material fact for the jury.

### viii. Sophistication

The final Polaroid factor is consumer sophistication.
"Generally, the more sophisticated and careful the average
consumer of a product is, the less likely it is that
similarities in trade dress or trade marks will result in

confusion concerning the source or sponsorship of the product."
Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033,
1046 (2d Cir. 1992). The parties agree that SDJ's purchasers are
knowledgeable about beauty brands, but they disagree as to the
sophistication of Apollo's consumers. SOFL ¶¶ 18, 32; COFL ¶¶
18, 32. SDJ states that its witness "merely speculated that
[Apollo's customers] 'probably' were sophisticated" but did not
have firsthand knowledge. SDJ Liab. Mem. at 40; COFL ¶¶ 18, 32.
While those facts may weigh against confusion, questions remain
for the jury. Additionally, "when there is a strong likelihood
of confusion created by other factors, even a high level of care
exercised by an ordinary purchaser in a certain setting will not
be sufficient to tip the scales in the other direction." 3 J.
Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §
23:95 (5th ed. 2024).

Clear disputes across almost every Polaroid factor
demonstrate that summary judgment is inappropriate on likelihood
of confusion. The two trade dresses at issue here are not "so
dissimilar that no question of fact is presented," and summary
judgment is denied. Best Cellars, 320 F. Supp. 2d at 73. The
question of liability for trade dress infringement is preserved
for trial.

**2. Trademark Infringement**

21

Section 32(1) of the Lanham Act prohibits trademark infringement and imposes liability on any person who, without the consent of the registrant, uses in commerce any copy of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods for which such use is likely to cause confusion. 15 U.S.C. § 1114(1)(a).

To prevail on a claim for trademark infringement, "a plaintiff must show, first, that its mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause consumer confusion." Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC, 823 F.30 153, 160 (2d Cir. 2016). Consumer confusion can arise "not just as to source, but also as to sponsorship, affiliation or connection." Int'l Info. Sys., 823 F.3d at 161. Additionally, "the mere possibility of confusion is not enough. [A] plaintiff must prove a probability of confusion ... affecting numerous ordinary prudent purchasers." Tiffany & Co. v. Costco Wholesale Corp, 971 F.3d 74, 84 (2d Cir. 2020) (internal quotations and citations omitted).

To determine whether an alleged infringement is likely to cause confusion, courts in this Circuit also apply the eight-factor balancing test from Polaroid explained above. Analysis of most of the Polaroid factors is the same for trade dress infringement and trademark infringement. Specifically, the

22

Court's earlier analyses of sophistication, quality, bridging the gap, proximity, good faith, and actual confusion apply with equal force to trademark infringement, and genuine disputes of material fact exist for all of the factors except bridging the gap. The Court therefore need only examine the two <u>Polaroid</u> factors that are specific to the marks at issue, strength and similarity of the marks.

### i. Strength of the Mark

Apollo argues that the BRAZILIAN BUM BUM CREAM trademark is descriptive and generic, as the cream contains products sourced from Brazil and is meant to be used on one's buttocks. SOFL ¶¶ 10, 21-22. SDJ counters that the mark is not descriptive, as the product is not made in Brazil and can be used all over one's body. COFL ¶¶ 10, 21-22, 77. Additionally, SDJ argues that it is suggestive, as it "evokes a beauty aspiration — of confident, bikini-clad Brazilian women — that requires imagination to connect it to the product." SDJ Liab. Mem. at 43. When SDJ applied to register its similar mark, BRAZILIAN BUM BUM, the USPTO examiner accepted that the mark was suggestive and allowed registration without proof of secondary meaning. COFL ¶¶ 86-87. Clearly, factual disputes exist here that should be heard by the jury.

### ii. Similarity of the Marks

23

Apollo argues that BRAZILIAN BUM BUM CREAM and NUTRIUS®
BRAZILIAN BODY BUTTER CREAM are not confusingly similar. They
reference different body parts (buttocks versus entire body),
and both the SDJ and NUTRIUS® house marks are displayed
prominently to avoid confusion. SOFL ¶¶ 10-11, 20-24. Their
shared terms, "Brazilian" and "Cream," are descriptive and
generic in the body cream market. Id. ¶¶ 9-10, 20-23. SDJ
counters that the overall impression of the two marks is quite
similar, as they "begin and end with the same words that both
frame an alliterative repetition of short words beginning with
'B.'". SDJ Liab. Mem. at 44-45; COFL ¶ 118. These are factual
questions that are best left to the jury.

There are factual disputes across almost all of the
Polaroid factors, making summary judgment on SDJ's trademark
infringement counterclaim inappropriate.

### 3. Contributory Trade Dress Infringement and New York Common Law Unfair Competition

SDJ also brings counterclaims for contributory trade dress
and trademark infringement and New York common law unfair
competition. In its briefing, Apollo argues that, if the Court
dismisses SDJ's trade dress and trademark infringement claims,
it should dismiss the remaining counterclaims as well. See Info.
Superhighway, Inc. v. Talk Am., Inc., 395 F. Supp. 2d 44, 56
(S.D.N.Y. 2005) (dismissing state unfair competition claim upon

dismissal of Lanham Act claims because the "elements necessary to prevail on common law causes of action for trademark infringement and unfair competition mirror Lanham Act claims"). Since those claims were not dismissed, and Apollo submitted no additional briefing on the matter, SDJ's remaining counterclaims may proceed to trial.

## Partial Summary Judgment on Damages

Apollo also moves for partial summary judgment dismissing two of SDJ's damages theories: prospective corrective advertising and reasonable royalties (Dkt. No 167). Those claims are dismissed.

### 1. Prospective Corrective Advertising Damages

Under a theory of prospective corrective advertising, "damages may be awarded to a plaintiff even absent any evidence that a plaintiff made corrective advertising expenditures to remedy the harm caused by a defendant's trademark infringement." Kargo Glob., Inc. v. Advance Mag. Publishers, Inc., 2007 WL 2258688, at *2, n.2 (S.D.N.Y. Aug. 6, 2007). This is "an extraordinary remedy." Lurzer GMBH v. Am. Showcase, Inc., 75 F. Supp. 2d 98, 101 (S.D.N.Y. 1998) (internal quotations and citations omitted). "[N]o court in this Circuit has ever awarded damages under that theory." Kargo Glob., Inc., 2007 WL 2258688, at *2, n.2.

Prospective corrective advertising has two legal requirements. First, the trademark owner must prove lost profits, lost sales, or reputational damage. See Juicy Couture, Inc. v. L'Oreal USA, Inc., 2006 WL 1359955, at *2 (S.D.N.Y. May 18, 2006). Second, prospective corrective advertising is "reserved for cases in which a plaintiff lacks the financial ability to pay for reparative ads." Lurzer GMBH, 75 F. Supp. 2d at 101. And "where a plaintiff could afford corrective advertising, but did not conduct such a campaign," it may indicate that it was in fact not injured. Juicy Couture, 2006 WL 1359955, at *2.

SDJ could have afforded a corrective advertising campaign but did not engage in one. Apollo began selling its product over twenty-four months ago, but SDJ has spent nothing on corrective advertising. SOFD ¶ 4. Two of Apollo's damages experts, Tom Gorowsky and Brian Buss, reviewed SDJ's financial information and concluded that SDJ has the financial resources to pay for corrective advertising. Id. ¶ 5. SDJ has not produced expert reports to rebut that. Id. ¶ 6; SDJ's Rule 56.1 Counterstatement of Material Facts on Damages ("COFD") ¶ 6 (Dkt. No. 228).

Instead, SDJ argues that there is no financial requirement for prospective corrective advertising damages in this District, as the Second Circuit has not yet decided the issue. SDJ's Memorandum in Opposition to Summary Judgment on Damages (SDJ

26

Dam. Mem.) at 13 (Dkt. No 237). SDJ cites decisions in the Seventh, Eighth, Ninth, and Eleventh Circuits holding that there is no such requirement. Id.; See Zelinski v. Columbia 300, Inc., 335 F.3d 633, 640-41 (7th Cir. 2003); Lawn Managers, Inc. v. Progressive Lawn Managers, Inc., 959 F.3d 903, 914 (8th Cir. 2020); Adray v. Adry-Mart, Inc., 76 F.3d 984, 988-89 (9th Cir. 1995), as amended on denial of reh'g (Feb. 15, 1996); Aronowitz v. Health-Chem Corp., 513 F.3d 1229, 1241 (11th Cir. 2008). However, courts in the Southern District of New York have routinely adopted the Tenth Circuit's test from Big O Tire Dealers v. Goodyear Tire & Rubber Co., 561 F.2d 1365, 1375 (10th Cir. 1977), which held that, although a plaintiff "did not spend any money prior to trial," prospective corrective advertising damages were proper because the plaintiff "did not have the economic resources to conduct an advertising campaign." See Lurzer GMBH, 75 F. Supp. 2d at 101; Juicy Couture, 2006 WL 1359955, at *1-2; Mastercard Int'l v. Arbel Corp., 1989 WL 125781, at *8 (S.D.N.Y. Oct. 18, 1989); Playtex Prod., Inc. v. Procter & Gamble Co., 2003 WL 21242769, at *8 (S.D.N.Y. May 28, 2003), aff'd, 126 F. App'x 32 (2d Cir. 2005). Just last August, Judge Subramanian dismissed a claim for prospective corrective advertising damages where there was no proof of payments for repair of any injury. See Makina Ve Kimya Endustrisi A.S. v.

A.S.A.P. Logistics Ltd., 2024 WL 3638054, at *13-16 (S.D.N.Y. Aug. 2, 2024) (slip opinion).

There is no factual dispute as to SDJ's ability to afford corrective advertising, and beyond the absence of any need for damage-correcting payments, the period as a whole was a profitable one for SDJ. SDJ's claim for $37.7 million in prospective corrective advertising damages is dismissed.

**2. Reasonable Royalty Damages**

SDJ also seeks $1.15 million in reasonable royalty damages. Apollo argues that there is no basis for awarding those damages and moves for summary judgment. The Court agrees, and that claim is dismissed.

Reasonable royalties are a "seldom-used method for computing trademark damages" and are typically "limited to situations where the parties have had a trademark licensing relationship that facilitates computation of the reasonable royalty damages." The Apollo Theater Found., Inc. v. W. Int'l Syndication, 2005 WL 1041141, at *13 (S.D.N.Y. May 5, 2005). "[W]hen the courts have awarded a royalty for past trademark infringement, it was most often for continued use of a product beyond authorization, and damages were measured by the license the parties had or contemplated." Juicy Couture, 2006 WL 1359955, at *4 (quoting A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 208-09 (3d Cir.1999))

(excluding expert testimony on reasonable royalties where the parties did "not have a previous licensing arrangement on which to base an award for royalty payments," and the expert's calculations were "speculative"). "Otherwise, courts have granted royalty awards for trademark infringement only where the evidence provides a sufficiently reliable basis from which to calculate that award." Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co., 647 F. Supp. 3d 145, 258 (S.D.N.Y. 2022) (internal quotations and citations omitted). Typically, that is where the parties "have a history of negotiating and concluding licensing agreements governing the Trademark" at issue. Apollo Theater, 2005 WL 1041141, at *13; see also Makina, 2024 WL 3638054, at *8-11 (dismissing reasonable royalty claim on summary judgment where "there was no prior licensing agreement contemplated by the parties" and "no sufficiently reliable basis on which to calculate a royalty," and excluding expert testimony that was "speculative and ill-explained").

Here, both parties agree that they had no prior licensing arrangement; SDJ never licensed its trademarks or trade dress to Apollo or Costco or even engaged in discussions to do so. SOFD ¶ 17; COFD ¶ 17. In fact, SDJ's CEO specifically testified that SDJ would "never sell" its product at Costco, and SDJ has never licensed its trademark or trade dress rights to any other third party. SOFD ¶ 17. The facts here do not align with the

traditional case for reasonable royalties, and there is no "sufficiently reliable basis from which to calculate that award." <u>Focus Prod.</u>, 647 F. Supp. at 258. SDJ's claim for reasonable royalty damages is dismissed.

### CONCLUSION

For the foregoing reasons, all questions related to Apollo's liability for trade dress and trademark infringement are preserved for trial, and SDJ's claims for prospective corrective advertising damages and reasonable royalty damages are dismissed.

So ordered.

Dated:  New York, New York
        October 23, 2024

_Louis L. Stanton_
LOUIS L. STANTON
U.S.D.J.