IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APOLLO HEALTHCARE CORP. d/b/a APOLLO HEALTH AND BEAUTY CARE<br><br>Plaintiff,<br><br>v.<br><br>SOL DE JANEIRO USA INC. and SOL DE JANEIRO IP, INC.,<br><br>Defendants.<br><br>SOL DE JANEIRO USA INC. and SOL DE JANEIRO IP, INC.,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APOLLO HEALTHCARE CORP. d/b/a APOLLO HEALTH AND BEAUTY CARE and COSTCO WHOLESALE CORP.,<br><br>Counterclaim-Defendants. | Civil Action No.: 1:22-cv-07719-LLS |

**Declaration of Nikola Cline Regarding Trial Testimony**

I, Nikola Cline, do hereby declare as follows:

1.  The statements made in this declaration are based on my personal knowledge and are known by me to be true and correct. I am fully competent to provide this

1

declaration, which I offer to summarize my trial testimony.

**Professional Background and Qualifications**

2. I submit this summary of my professional background and the expected trial testimony I will offer as an expert witness on behalf of Plaintiffs and Counterclaim Defendants Apollo Healthcare Corp. d/b/a Apollo Health and Beauty Care ("Apollo") and Costco Wholesale Corp. ("Costco") (Apollo and Costco are collectively referred to as the "Apollo Parties") in the above-captioned case. True and correct copies of my expert reports submitted in this matter on November 15, 2023, is attached hereto as **Exhibit A** ("Expert Report") and my supplemental expert report submitted in this matter on January 9, 2025, is attached hereto as **Exhibit B**.

3. I am founder of Brandettes, a brand development and marketing agency located in Los Angeles, California.

4. My fields of expertise include product development – the total oversight of product formulation including key ingredients, fragrance direction, product testing and evaluation, product packaging (functional and design), and product features; brand strategy – the total oversight of a brand's audience target, distribution channel strategy, and sales initiatives; marketing management – the total oversight of a brand's positioning, product assortment, product position, and pricing and promotion strategies; and digital marketing – the total oversight of influencer and social marketing campaigns to drive brand awareness and trust around product launches, marketing initiatives, and campaigns.

5. My experience extends to beauty products such as hair, skin, body, nail, electrical tool, color cosmetics, and hair color. I have over twenty-five-years' experience working across numerous channels and markets in the beauty industry, both online and in-

store.

6. Since 1995, I have acted as a marketing manager leading the marketing teams for a diverse range of top-ranking beauty brands, including Nexxus, Sebastian International, Wella, Paul Mitchell and the Spilo brand portfolio. During my roles as an in-house marketing and product development leader, I developed hundreds of products from scratch, restaged and repackaged hundreds more, and have been directly responsible for managing the strategic and tactical marketing for brand portfolios across hair, skin, body, nail, electrical tool, color cosmetic and hair color categories. For the past 10 years I have run a product development and marketing agency, Brandettes, where my team and I work with brands across the same categories in beauty. The products my team and I have created have won five Allure® Best of Beauty Awards, along with other industry-specific "best of" awards.

7. I have a bachelor's degree in Business Administration from the University of Phoenix and an associate's degree in Visual Presentation and Space Design from the Fashion Institute of Design and Merchandising in Los Angeles, California.

8. Additional information about my professional background and qualifications can be found in my Expert Report. **Ex. A** at pp. 2-4. My Curriculum Vitae which was served as an attached to my Expert Report and is attached hereto at **Exhibit C.**

## Summary of Opinions

9. My trial testimony will include my **Opinion #1: The purported trademarks and the accused trademark have many material differences.**

   a) These differences include, but are not limited to, packaging (e.g., prominent and repeated use of NUTRIUS® house mark), use of different words (e.g.,

3

Apollo's trademark's inclusion of "Body Butter", only two words overlap that are of no significance because they are descriptive, non-overlapping words have very different meanings and connotations, different syllables, different number of letters).

    b) It is my opinion, based on my expertise in beauty industry product development and marketing, that the parties' marks are very dissimilar

10. My trial testimony will include my **Opinion #2: The purported trade dress and the accused trade dress have many material differences.**

    a) Counterclaim Plaintiff Sol De Janeiro USA, Inc. and Sol De Janeiro IP, Inc. ("SDJ's") asserted trade dress has many material differences as compared to the accused Apollo trade dress.

    b) The container image is different (e.g., different name, different color scheme, different lettering color, a different lettering style, a different design on the top of the jar, a different container size, a different packaged quantity, a different packaging format, and a significantly lower price point).

    c) In my expert opinion, these nine differences are significant differences between the parties' packaging and design.

    d) Consumers are not likely to see each of the parties' products sold by side as they are sold through different channels (e.g., Sephora vs. via Costco's members - only warehouses).

    e) Apollo's accused trade dress comes in the form of a blister two-pack with a clear clamshell-type window that contains two jars; SDJ's product is sold in a single, solid box packaging with no window.

    f) 91% of these Apollo's blister two-packs are sold on pallets in Costco's

4

warehouse stores. SDJ's alleged trade dress is not sold on a pallet or in a blister pack. SDJ's packaging is made of paper, completely opaque and contains a single jar of product predominantly merchandised and sold through Sephora.

g) The SDJ display includes SDJ branding, on-shelf merchandising that is color-coded and features text highlighting product features and fragrances. SDJ's BRAZILIAN BUM BUM is also surrounded by a large number of other products (line extensions) that carry the same branding and similar trade dress. Conversely, Apollo offers a single product in NUTRIUS BRAZILIAN BODY BUTTER CREAM with no adjacency to other Apollo or Nutrius products.

h) In my experience advising brands on their brand strategy, it is my opinion that SDJ and Apollo's customers are getting very different in-store experiences, and that the product packaging, merchandising and overall brand experience between SDJ and Apollo are far more different than alike, meaning they are vastly different.

i) The containers themselves are also very different as more fully explained in my Expert Report on pp. 17-18.

j) For these reasons, in my expert opinion, SDJ's purported trade dress is very different than the accused Apollo trade dress.

11.     My trial testimony will include my **Opinion #3: In the health and beauty industry, containers for cream products with large lids and rounded bottoms are very common and used by those in the industry that employ best practices. The rounded bottom affects the quality of the container and is essential for easily scooping cream out of the bottom of the container with your fingers. The large lid affects the quality of the container and is essential for obtaining the grip necessary to tighten and seal**

5

the container after using the cream product. **Printing words on the lid of the container is also very common and used by those in the industry that employ best practices. The print location on the lid is essential because there is not a sufficient amount of decoration space to place the words on the container.**

  a) In my expert opinion, when looking at these elements in combination, SDJ's alleged trade dress, as a whole, is essential to the design of the packaging and impacts the quality of the containers that are prevalent in the body cream market, including Apollo's container.

  b) Many other companies in the beauty cream market utilize these elements for their beauty cream containers (examples are included in my Expert Report at pp. 21-24).

12. My trial testimony will include my **Opinion #4: In the health and beauty industry, colors are commonly used to designate characteristics or qualities of a product. SDJ uses a caramel color to denote a visibly firming beauty cream with a guarana ingredient and a gourmand fragrance. Apollo uses bright yellow to denote a moisturizer with a butter/shea ingredient and an almond coconut fragrance.**

  a) Based on my knowledge and experience as an expert in brand strategy, product development, and marketing management within the beauty industry, in my opinion SDJ uses different colors on its product packaging to highlight these different tangible product attributes. SDJ uses a caramel color to denote the salted caramel/warm gourmand fragrance. SDJ uses a light red color to denote the warm floral fragrance. SDJ uses a light green or teal color to denote the tropical gourmand fragrance.

  b) In my expert opinion, SDJ's purported trade dress, particularly its colors, are not

6

used or advertised to indicate the source or origin of the product. Rather, they are used to advertise and differentiate the different qualities and characteristics of SDJ's products.

13. My trial testimony will include my **Opinion #5: In the health and beauty industry, the word "dupe" means an alternative product from a different source, typically at a lower price. The use of the word "dupe" does not reflect confusion as to the source of the product.**

    a) The word "dupe" is a shorter form of "duplicate." It is my understanding, from my experience in the beauty industry, particularly in online and social media marketing, that "dupe" refers to users sharing their findings of affordable alternatives to trending brands or products that come from a different source.

    b) It is important to understand that the word "dupe" does not mean counterfeit.

    c) Dupes are sold by brands and online platforms as their own products. Dupes are openly marketed as alternative options to the trending products, often at a lower price. They do not claim to be the trending products and often have their own branding or labeling to avoid confusion.

    d) The documents and videos referenced in SDJ's interrogatory response that use the word "dupe" do not reflect confusion as to the source of the product. The use of the word "dupe" in these materials does not support a claim of actual confusion among consumers.

14. **Opinion #6: SDJ's product and Apollo's accused product are sold through very different channels and are not sold in proximity to one another.**

    a) In my expert opinion, SDJ's product and Apollo's accused product are sold

7

through very different channels and are not sold in proximity to one another.

15. I reserve my right to respond to any other questions elicited by SDJ at trial or any new opinions offered by their experts at trial.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _11_ day of _Feb_ 2025 in _LOS ANGELES_, _CA_

_____
Nikola Cline

State of _CA_

County of _LOS ANGELES_

This document was signed before me on this _11th_ day of _feb, 2025_ by Nikola Cline.

My commission expires: _11/11/2025_.

**CALIFORNIA ACKNOWLEDGMENT**  CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

On 02/11/2025 before me, Daniel Alberto Flores, Notary Public,
           Date                      Here Insert Name and Title of the Officer
personally appeared Nikola Cline
                     Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

DANIEL ALBERTO FLORES
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2382614
LOS ANGELES COUNTY
My Comm. Exp. November 11, 2025

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
            Signature of Notary Public

Place Notary Seal and/or Stamp Above

──────────── OPTIONAL ────────────

Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: Declaration of Nikola Cline Regarding...
Document Date: _____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual       ☐ Attorney in Fact
☐ Trustee          ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual       ☐ Attorney in Fact
☐ Trustee          ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

©2019 National Notary Association