## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

APOLLO HEALTHCARE CORP. d/b/a
APOLLO HEALTH AND BEAUTY CARE

        Plaintiff,

    v.

SOL DE JANEIRO USA INC. and
SOL DE JANEIRO IP, INC.,

        Defendants.

 

SOL DE JANEIRO USA INC. and
SOL DE JANEIRO IP, INC.,

        Counterclaim-Plaintiffs,

    v.

APOLLO HEALTHCARE CORP. d/b/a
APOLLO HEALTH AND BEAUTY CARE
and COSTCO WHOLESALE CORP.,

        Counterclaim-Defendants.

Civil Action No.: 1:22-cv-07719-LLS

## APOLLO HEALTHCARE CORP. AND COSTCO WHOLESALE CORP.'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR BENCH TRIAL CLAIMS

Apollo Healthcare Corp. d/b/a Apollo Healthcare Corp. d/b/a Apollo Health and Beauty Care ("Apollo") and Costco Wholesale Corp. ("Costco") (collectively Apollo and Costco will be

ACTIVE 706029293v2

referred to as "Apollo Parties") respectfully submit this Proposed Findings of Fact and Conclusions of Law for Bench Trial Claims.[1]

**PROPOSED FINDINGS OF FACT**

**I.    THE PARTIES, THEIR PRODUCTS AND THIRD PARTY PRODUCTS.**

    **A.    Apollo**

1.    Apollo is a leading provider of personal care products. (ECF No. 172-1, Deposition Transcript of Charles Wachsberg dated September 15, 2023 ("Wachsberg Dep. Tr."), 14:6-17, 19:12-21:20, 23:12-26:11.)

2.    Apollo produces and sells private label and white label beauty products, including skin and body care products.  (Declaration of Tiffany A. Blofield in Support of Apollo Healthcare Corp. and Costco Wholesale Corp.'s Proposed Findings of Facts and Conclusions of Law for Bench Trial Claims ("Blofield Decl.") Ex. 60, SDJ 0003191-92.)

3.    Among other products, Apollo markets and sells NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ ("NUTRIUS® Product"), a body cream product designed to moisturize and hydrate skin. (*Id.,* Wachsberg Dep. Tr. 142:4-17.)

4.    Apollo has developed strategic relationships with some of the most significant, global consumer products companies to provide unique product offerings.  (ECF No. 274-1, Wachsberg Dep. Tr. at 21:17-22:3.)

---

[1] The Apollo Parties contend that there is no right to a jury trial and the remaining equitable claims should be tried to the Court.  On December 3, 2024, after the parties fully briefed the motion to strike SDJ's jury demand, the Court issued a Memorandum Endorsement. (ECF No. 319.) The Court stated it would make a final determination on the Apollo Parties' motion when the case is much closer to trial. (*Id.*) As explained in the Apollo Parties' October 25, 2024 and November 26, 2024 Letter Briefs, SDJ's remaining claims concern equitable relief that should be tried before the Court, not a jury. (ECF Nos. 307, 317.)

2

**B.    Costco**

5.    Costco is a Washington corporation with offices in Issaquah, Washington. (ECF No. 70, Costco Answer at ¶ 127.)

6.    Costco sells a wide variety of goods, including beauty products, nationwide through its website and through members-only retail warehouses.  (Blofield Decl. Ex. 26, Deposition Transcript of Lindsay Bubitz dated August 25, 2023 ("Bubitz Dep. Tr.") at 19:17-20:10, 126:12-15; trial testimony of Lindsay Bubitz ("Bubitz trial testimony").)

7.    Costco operates a chain of membership warehouses that carry merchandise at substantially lower prices than are typically found at conventional retail sources.  (ECF No. 153, Declaration of Lindsay Bubitz ("Bubitz Decl.") ¶ 3.)

8.    Costco is able to offer products with low prices and great values because Costco eliminated virtually all the frills and costs historically associated with conventional retailers, including salespeople, fancy buildings, delivery, billing and accounts receivable.  (*Id.* at ¶ 4.) This enables Costco to pass dramatic savings to its members.  (*Id.*)

9.    Apollo and Costco have had a business relationship for at least 20 years.  (ECF No. 274-1, Wachsberg Dep. Tr. at 11:4-12:15.)

**C.    SDJ**

10.    SDJ USA is a Delaware corporation with offices in New York, New York.  (ECF No. 52 Sec. Am. Compl. ¶ 2.)

11.    SDJ IP is a Delaware corporation with the same New York offices as SDJ USA. (ECF No. 52 Sec. Am. Compl. ¶ 2.)

3

12.     In May 2014, Heela Yang and Marc Capra co-founded Sol de Janeiro USA Inc. and Sol de Janeiro IP, Inc. ("SDJ") and began developing a cream product known as Brazilian Bum Bum ("BUM BUM Product").  (Blofield Decl. Ex. 2, Deposition of Heela Yang Tsuzuki Rule 30(b)(6) on September 12, 2023 ("Yang Dep. Tr.") 81:20-82:2, 82:20-83:8; ECF No. 218-4, Yang Dep. Tr. at 102:17-103:6, 117:7-10; ECF No. 230, 231 at ¶ 80, SDJ's Rule 56.1 Counter Statement Material Facts & Resp to Cntercl.-Defs.' Rule 56.1 Statement Liab.; ECF No. 235 at p. 12, SDJ's Mem. of Law Opp'n Cntercl. Defs' Mot. Summ. J. Liab.)

**D.     Third-Party Vendor TOLY'S Pre-Existing Stock Jar**

13.     Ms. Yang did not create the design and shape of the BUM BUM Product jar.  Ms. Yang merely purchased a generic, pre-existing, functional, round-bottomed jar with an oversized lid which she saw at a cosmetics trade show in Las Vegas.  (ECF No. 295-4, Deposition of Haley Menkis dated September 8, 2023 ("Menkis Dep. Tr.") at 113:4-114:5; Blofield Decl. Ex. 3A, Apollo0005183-85 (video at 23:56-25:55) & 3B, Apollo0005309-49 transcript of video at 25:2-26:7) (Blofield Decl. Ex. 4, Apollo0005244-74 at 5267; Blofield Decl. Ex. 5, Apollo0005275-86 at 5275 (bottom picture under May 2013); Blofield Decl., Ex. 6, *see, e.g.,* Quotation from TOLY Apollo0005350; Blofield Decl. Ex. 2, Yang Dep. Tr. at 226:8-18, 227:18-228:16 & Blofield Decl. Ex. 7, Yang Dep. Ex. 14 SDJ 0003137 (picture of stock TOLY Jar under the caption "Started Building the Product Line-up"); Blofield Decl. Ex. 8, SDJ 0001783.)

14.     Specifically, on or about July 13, 2014, Ms. Yang and two other individuals attended a trade show in Las Vegas, Nevada.  (Blofield Decl. Ex. 9, Apollo0005243; Blofield Decl. Ex. 10, Apollo0005238-42; Blofield Decl. Ex. 3A, Apollo0005183-85 (video at 23:56-25:55); Blofield Decl. Ex. 3B, Apollo0005309-49, transcript of video at 25:2-26:7.)

4

15.    According to Ms. Yang, while attending the Las Vegas trade show, she noticed a third-party vendor's jar on display and selected it for use in connection with the Brazilian Bum Bum product.  (Blofield Decl. Ex. 3A, Apollo0005183-85 (video at 23:56-25:55) & 3B transcript of video at 25:2-26:7)

16.    During an interview with Founded Beauty's Akash Mehta, Ms. Yang described the third-party vendor's jar as follows:

> . . . I'll tell you a quick story about packaging. . . , so the three of us before we launched the brand. . . We had this idea, this concept of Brazilian Bum Bum cream, this body cream, and we were being good students.
>
> So we took a trip to a cosmetics trade show in Las Vegas, and . . . we wanted to see what was out there and study.  And I remember there was a packaging vendor that had lots of white jars, white tubes, and white pumps, and they're on the shelves.
>
> And I remember seeing this jar shape all in white from far.  And I looked at it and I thought, oh my God, that's our, that's our Bum Bum cream jar. And I walked over, I grabbed it, and then I held it up for my partners to see. They were a few steps behind me, and I pointed to it and I like said, this is it, this is our Bum Bum cream jar. And they were both like, you know, thumbs up and big smiles, like yup that's it. . . .

(*Id.*)

17.    The trade show Ms. Yang attended was the July 13 – 15, 2014 Cosmoprof North America Las Vegas Trade Show.  (Blofield Decl. Ex. 9, Apollo0005243.)

18.    The third-party vendor that Ms. Yang noticed at the trade show was an exhibitor known as TOLY Products.  (Blofield Decl. Ex. 4, Apollo0005244-5274 at 5267.)

19.    The jar Ms. Yang noticed was a generic, functional, standard, pre-existing stock jar that TOLY was displaying at the trade show and had been offering for sale on its web site since at least May 2013 (the "stock TOLY Jar").  (Blofield Decl. Ex. 5, Apollo0005275-86 at 5275 (bottom picture under May 2013); Blofield Decl., Ex. 6, *see*, *e.g.*, Quotation from TOLY Apollo0005350.)

5

20.    Ms. Yang subsequently made a presentation at Clemson University and included a picture of the pre-existing stock TOLY Jar in one of her presentation documents as set forth below:



(Blofield Decl. Ex. 2, Yang Dep. Tr. at 226:8-18, 227:18-228:16 & Blofield Decl. Ex. 7, Yang Dep. Ex. 14 at SDJ 0003137 (picture of stock TOLY Jar under the caption "Started Building the Product Line-up").)

21.    On August 8, 2014, just 26 days after Ms. Yang first noticed the pre-existing stock TOLY Jar at the Las Vegas trade show, TOLY prepared a drawing of the stock TOLY Jar with the product name BRAZILIAN BUM BUM CREAM and other words depicted on the lid. (Blofield Decl. Ex. 8, SDJ 0001783.)

22.    In 2015, SDJ used the pre-existing stock TOLY Jar, with the BUM BUM Product name and other words depicted on the lid and with a caramel-colored jar, to launch SDJ's BUM BUM Product.  (Blofield Decl. Ex. 2, Yang Dep. Tr. at 83:4-8; *compare* ECF No. 67, at ¶ 137, Answer to Sec. Am. Compl. and Am. Cntercl. (picture) *with* Blofield Decl. Ex. 7, Yang Dep. Ex.

ACTIVE 706029293v2

14 SDJ 0003137 (top right picture under "Started Building the Product Line-up"); *see also* Blofield Decl. Ex. 8, SDJ 0001783.)

23.    The final combination of elements in the Bum Bum Trade Dress was not unique and was not wholly designed by SDJ because SDJ chose to use TOLY's pre-existing stock jar. (Blofield Decl. Ex. 9, Apollo0005243; Blofield Decl. Ex. 4, Apollo0005244-74 at 5267; Blofield Decl. Ex. 5, Apollo0005275-86 at 5275 (bottom picture under May 2013); Blofield Decl., Ex. 6, *see*, *e.g.*, Quotation from TOLY Apollo0005350; Blofield Decl. Ex. 2, Yang Dep. Tr. at 226:8-18, 227:18-228:16 & Blofield Decl. Ex. 7, Yang Dep. Ex. 14  SDJ 0003137 (picture of stock TOLY Jar under the caption "Started Building the Product Line-up"); Blofield Decl. Ex. 8, SDJ 0001783; Blofield Decl. Ex. 3A, Apollo0005183-85 (video at 23:56-25:55) & 3B, Apollo0005309-49 transcript of video at 25:2-26:7.)

24.    Based on legal advice SDJ received from an intellectual property law firm, SDJ did not apply for a trade dress registration concerning the jar it used to launch the BRAZILIAN BUM BUM product.  (ECF No. 274-3, Yang Rule 30(b)(6) Dep. Tr. 101:6-19.)

25.    In its Amended Counterclaims, SDJ purports to own an unregistered trade dress in a product design that "includes a colored jar that has no writing on it which is gently rounded at its bottom; a large, overhanging lid that extends nearly half the height of the product and protrudes outward over the jar body (rather than screwing flush); a color-block combination of yellow and white components; the product name presented in capitalized dark-gray lettering framed by smaller text above and below."

ACTIVE 706029293v2



(ECF No. 67 at ¶ 137, Answer to Sec. Am. Compl. and Am. Cntercl.)

26.    The pre-existing stock TOLY Jar includes a colored jar that has no writing on it which is gently rounded at its bottom; a large, overhanging lid that extends nearly half the height of the product and protrudes outward over the jar body (rather than screwing flush); and a color-block combination of white and white components.



(Blofield Decl. Ex. 7, Yang Dep. Ex. 14, SDJ 0003137 (top right picture under "Started Building the Product Line-up"); Blofield Decl. Ex. 5, Apollo0005275-86 at 5275 (bottom picture under May 2013); Blofield Decl. Ex. 11, Apollo0005235-37 at 5235.)

### E.    SDJ'S BRAZILIAN BUM BUM PRODUCT

27.    The term "BUM BUM" (pronounced "boom boom") is the word most commonly used in Brazil to refer to someone's "rear end." (ECF No. 274-11, Yang Dep. Ex. 13 at SDJ 0002696; ECF No. 274-12, Menkis Dep. Ex. 10 at SDJ 0001923).

ACTIVE 706029293v2

28.     SDJ's BUM BUM Product is intended to be used on the user's butt and upper thigh area as reflected in SDJ's 2014 Brand Overview states that SDJ's BUM BUM Product "[t]ones, tighten, firms and lifts the butt and upper thigh area…".  (ECF No. 274-5, SDJ 0000001-12 at SDJ 0000004; ECF No. 146-6, SDJ 0001957-959 at SDJ 0001957.)

29.     The public perception is that the BUM BUM Product is a cream targeted to the consumer's butt. (*See e.g.*, ECF No. 213-2 Declaration of Haley Menkis dated May 29, 2024 ("Menkis Decl."), Ex. B, at pp. 2-4.)  The public perception is that SDJ's BUM BUM Product is a cream targeted to the consumer's butt.  (*See e.g.*, ECF No. 213-1, Menkis Decl. Ex. A; ECF No. 213-2 Menkis Decl., Ex. B at pp. 2-3 & 2-4.)

30.     Public comments include: "Does this viral bum bum cream really work? An investigation . . . While the name leads you to believe it's strictly for your behind."  (ECF No. 213-2 Menkis Decl., Ex. B, at pp. 1-2)

31.     SDJ's SOL DE JANEIRO® house mark always appears on the top of the BUM BUM Product.  (ECF 274-4, Menkis Dep. Tr. at 168:13-23; ECF No. 274-3, Yang Dep. Tr. at 114:5-7, 178:13-16.)

32.     Images of SDJ's BUM BUM Product packaging, in-store display, and product design are reproduced below:

  

(Blofield Decl. Ex. 12, SDJ 0000319-41 at SDJ 000320-22; ECF No. 152-1, Rebuttal Expert Report of Nikola Cline date November 15, 2023 ("Cline Rebuttal Rpt.") at pp. 7, 9-11, 14; Blofield Decl. Ex. 13, Supplemental Rebuttal Expert Report of Nikola Cline ("Supp. Cline Rpt.") dated January 9, 2025 at pp. 7, 9-11, 16.)

**F.    SDJ's PURPORTED TRADEMARKS AND TRADE DRESS ARE INVALID AND UNENFORCEABLE.**

33.    The BRAZILIAN BUM BUM and BRAZILIAN BUM BUM CREAM trademarks and the Bum Bum Trade Dress are not valid or enforceable.  (ECF No. 274-4, Menkis Dep. Tr. at 122:6-123:4, 124:2-14, 173:4-174:7, 189:18-191:11; ECF No. 274-3, Yang Dep. Tr. at 100:8-101:19; 153:21-154:9, 200:7-202:14, 208:3-15; Blofield Decl. Ex. 5, Apollo0005275-86 at 5275 (bottom picture under May 2013); Blofield Decl. Ex. 2, Yang Dep. Tr. at 226:8-18, 227:18-228:16 & Blofield Decl. Ex. 7, Yang Dep. Ex. 14  SDJ 0003137 (picture of stock TOLY Jar under the caption "Started Building the Product Line-up"); Blofield Decl. Ex. 8, SDJ 0001783; Blofield Decl. Ex. 11, Apollo0005235-37 at 5235; *see, e.g.,* Blofield Decl., Ex. 6, Quotation from TOLY Apollo0005350; Blofield Decl. Ex. 14, SDJ 0002668-748 at 2690-725; ECF No. 274-11, Yang Dep. Ex. 13 at SDJ 0002695-2698. *See id. compare with* Blofield Decl. Ex. 15, Apollo0003938;

*See also* Blofield Decl. Ex. 16, SDJ 0000912; Blofield Decl. Ex. 17, SDJ 0000955; ECF No. 274-1, Wachsberg Dep. Tr. at 186:7-187:24, 199:14-19, 200:2-6, 200:24-201:3; Wachsberg trial testimony; ECF No. 152-1, Cline Rebuttal Rpt. at pp. 18-24, 25-32; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 18-35; *See generally* ECF Nos. 280-3, Expert Report of David Neal dated October 16, 2023 ("Neal Rpt."), 284-4, Expert Report of John G. Plumpe dated October 16, 2023, SDJ's expert reports; ECF No. 233, Supplemental Declaration of E. Deborah Jay ("Jay Supp. Decl.") at ¶ 7; ECF No. 233-4, Ex. 4 to Jay Decl., ECF No. 150-4, Deposition of E. Deborah Jay, PhD dated January 12, 2024 ("Jay Dep. Tr.") at 12:13-20; ECF No. 150-1, Rebuttal Declaration of E. Deborah Jay, Ph.D. dated November 9, 2023 ("Jay Rebuttal Decl.") at ¶ 10; ECF No. 150-2, Jay Survey 1 Rpt. at pp. 7-8 and fn. 16, 15-16; Blofield Decl. Ex. 18, Apollo0005465-541 at 5466-67 & Blofield Decl. Ex. 19, Apollo0005377-452 at 5378-79; Blofield Decl. Ex. 20, Apollo0005456-64 at 5456; *See also* Blofield Decl. Ex. 21, Apollo0005453-55 at 5453; Blofield Decl. Ex. 22, Apollo0005542; Blofield Decl. Ex. 23, Apollo0005351-60 at 5351; *See also* Blofield Decl. Ex. 24, Apollo0005374-76 at 5374.)

### 1. BRAZILIAN BUM BUM Is Not A Source Identifier.

34.    SDJ sells many different body cream products with different properties, different ingredients, and different fragrances. (ECF No. 152-1, Cline Rebuttal Rpt. at pp. 25-32; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 28-35.)

35.    SDJ does not use its alleged BRAZILIAN BUM BUM trade dress or trademarks as source identifiers, but instead uses them to denote differences amongst SDJ's products, including different properties, different ingredients, and different fragrances. (*Id.*)

ACTIVE 706029293v2

36.    For example, SDJ's BRAZILIAN BUM BUM is advertised to have skin firming properties, and SDJ uses a caramel color to denote the visibly firming attribute. (ECF No. 152-1, Cline Rebuttal Rpt. at p. 26; Blofield Decl. Ex. 13, Supp. Cline Rpt. at p. 31.)

37.    SDJ's BOM DIA BRIGHT CREAM is advertised to retexturize and brighten skin, and SDJ uses a light red color to denote the retexturizing and brightening attributes. (*Id.*)

38.    SDJ's COCO CABANA CREAM is advertised to hydrate skin, and SDJ uses a light green or teal color to denote the hydration attribute. (*Id.*)

39.    SDJ's BRAZILIAN BUM BUM is advertised to come in a warm gourmand (pistachio, salted caramel) fragrance, and SDJ uses a caramel color to denote this fragrance. (ECF No. 152-1, Cline Rebuttal Rpt. at pp. 29-32; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 32-35.)

40.    SDJ's BOM DIA BRIGHT CREAM is advertised to come in a warm floral (black amber plum, vanilla woods) fragrance, and SDJ uses a light red color to denote this fragrance. (ECF No. 152-1, Cline Rebuttal Rpt. at p. 30; Blofield Decl. Ex. 13, Supp. Cline Rpt. at p. 33.)

41.    SDJ's COCO CABANA CREAM is advertised to come in a tropical gourmand (coconut cream, toasted praline) fragrance, and SDJ uses a light green or teal color to denote this fragrance. (*Id.*)

### 2.    SDJ's BRAZILIAN BUM BUM Office Action

42.    On October 14, 2016, SDJ applied to register the BRAZILIAN BUM BUM mark with the USPTO. (Blofield Decl. Ex. 14, SDJ 0002668-748, at SDJ 0002742-48.)

43.    On January 27, 2017, the Examining Attorney issued an Office Action requiring the applicant to disclaim the word "BRAZILIAN" because "it merely describes a feature of applicant's goods and is primarily geographically descriptive of the origin of applicant's goods." (*Id.* at SDJ 0002727.)

44.    The Examining Attorney also stated that "[a]n applicant may not claim exclusive rights to terms that others may need to use to describe their goods and/or services, including the geographic origin thereof, in the marketplace." (*Id.*)

45.    The Examining Attorney further stated that "applicant's goods contain guarana, which originates in Brazil." (*Id.*)

46.    The Examining Attorney concluded that "the term BRAZILIAN is primarily geographically descriptive of the origin of a main ingredient in applicant's goods." (*Id.*)

47.    On July 27, 2017, SDJ's counsel, Mr. Howard Aronson, filed a Response to the Examining Attorney's Office Action and made the following representations on behalf of SDJ:

- "BRAZILIAN as used in Applicant's mark is suggestive, not descriptive, and therefore, Applicant respectfully disputes the requirement for a disclaimer" (at SDJ 0002695);

- "Applicant argues that consumers of such goods would not recognize the word 'BRAZILIAN' as geographically descriptive of 'body creams' when encountering Applicant's goods" (*Id.*);

- "Upon seeing Applicant's mark as a whole, prospective consumers would not immediately make a mental leap and understand the significance of the term 'BRAZILIAN' in the context in which the Examining Attorney has argued in the instant Office Action" (*Id.*);

- "'BRAZILIAN' is a suggestive term when applied to Applicant's goods" (*Id.*);

- "The word 'BRAZILIAN' as used in the Applicant's mark is not descriptive of the origin of the Applicant's goods, but rather it is suggestive of just one of the essential components to creating the overall 'Brazilian bum bum'" (at SDJ 0002696);

- "Applicant contends that the word 'BRAZILIAN', as used in Applicant's mark, does not describe with any degree of particularity features or the geographic origin of applicant's goods" (*Id.*);

- "Furthermore, applicant contends that the term 'guarana' is not solely used to identify goods that originate in Brazil" (at SDJ 0002697); and

- "Accordingly, the ingredient 'guarana' does not indicate the geographic origin of Brazil any more than it does for any of the other seven countries that are a part of the Amazon basin." (*Id.*)

13

(Blofield Decl. Ex. 14, SDJ 0002668-748 at 2690-725; ECF No. 274-11, Yang Dep. Ex. 13 at SDJ 0002695-98.)

48.    The above statements made on behalf of SDJ were false representations regarding a material fact (*i.e.*, whether the term "BRAZILIAN" is geographically descriptive).  (*See id. compare with* Blofield Decl. Ex. 15, Apollo0003938.   *See also* Blofield Decl. Ex. 16, SDJ 0000912; Blofield Decl. Ex. 17, SDJ 0000955.)

49.    As shown below, for example, SDJ has expressly represented that the ingredients in the goods sold under the BRAZILIAN BUM BUM mark (including the ingredient "guarana") are "Brazilian ingredients":



(Blofield Decl. Ex. 15, Apollo0003938.  *See also* Blofield Decl., Ex. 16, SDJ 0000912; Blofield Ex. 17, SDJ 0000955.)

ACTIVE 706029293v2

50.    SDJ's Rule 30(b)(6) witness, Ms. Yang, admitted that the BUM BUM Product contains Brazilian ingredients including cupuaçu butter, guaraná extract, coconut oil and açaí oil. (ECF No. 274-3, Yang Rule 30(b)(6) Dep. Tr. at 153:21-154:9, 200:7-202:14, 208:3-15.)

51.    If SDJ had not made the false and/or misleading statements discussed above to the USPTO during prosecution the registration for BRAZILIAN BUM BUM Product would not have issued.  (Blofield Decl. Ex. 14, SDJ 0002668-748 at 2690-725; ECF No. 274-11, *Compare* Yang Dep. Ex. 13 at SDJ 0002695-2698 *with* Blofield Decl. Ex. 15, Apollo0003938; *See also* Blofield Decl. Ex. 16, SDJ 0000912; Blofield Decl. Ex. 17, SDJ 0000955; ECF No. 274-3, Yang Dep. Tr. at 153:21-154:9, 200:7-202:14, 208:3-15.)

### G.    DEVELOPMENT OF APOLLO'S NUTRIUS® PRODUCT

52.    In late 2020, Costco began exploring the idea of creating a scented body cream. (ECF No. 274-2, Bubitz Dep. Tr. at 29:1-19; Bubitz trial testimony.)

53.    From June 2021 – June 2022, Costco and Apollo worked together to create and launch the NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ product ("NUTRIUS® Product"), a scented body cream product designed to, among other things, moisturize skin.  (ECF No. 153, Bubitz Decl. at ¶ 5; Bubitz trial testimony; ECF No. 172-1, Wachsberg Dep. Tr. at 13:19-22; Wachsberg trial testimony; ECF No. 273-1, Rebuttal Expert Report of Thomas J. Gorowsky dated November 15, 2023 ("Gorowsky Rebuttal Rpt.") at p. 7.)

54.    SDJ's BUM BUM Product is not the only product reference point Ms. Bubitz emailed to Charles Wachsberg on June 29, 2021 during this collaboration.  Ms. Bubitz also emailed Mr. Wachsberg an image of Aquaphor's product, stating: "We would look at it as possible 2 jars.  Almost packaged like this:"

We would look at it as



(ECF No. 295-10 at Costco0000819.)

55.    Costco wanted a scented cream product and provided references, including, the BUM BUM Product, Triad product, Trader Joe's product, Olay product, Neutrogena product, and Body Shop and Bath & Body Works product.  (ECF No. 295-2, Wachsberg Dep. Tr. at 49:2-15; Wachsberg trial testimony.)

56.    Costco wanted a tropical smelling cream, but there were no discussions about the packaging or the formulation around June 2021.  (*Id.* at 51:6-12; *See* ECF No. 295-11, Bubitz Dep. Tr. at 33:7-34:3; Bubitz trial testimony.)

57.    Costco did not want a cream that targeted the butt or that had similar packaging to the BUM BUM Product, because Costco wanted to make sure its members knew the NUTRIUS® Product is not the BUM BUM Product.  (ECF No. 295-11, Bubitz Dep. Tr. at 33:7-34:3; Bubitz trial testimony).

58.    The purpose of choosing the NUTRIUS® Product name was so that it would not be associated with SDJ. (*Id.*)

59.    On July 1, 2021, Ms. Bubitz emailed Mr. Wachsberg asking that they consider other names such as Trader Joe's just launched "Brazilian Nut Body Butter" which emphasized the "body" rather than the butt. (ECF No. 295-12 at Costco0000842.)

60.    The Trader Joe product included the word Brazil, which along with the word Brazilian, was already being used by other cream products in the marketplace because many cream products use common ingredients sourced from Brazil. (ECF No. 295-2, Wachsberg Dep. Tr. at 116:17-117:6; Wachsberg trial testimony.)

61.    Apollo did not intend to create confusion among consumers. (ECF No. 295-2, Wachsberg Dep. Tr. at 221:8-24, 224:19-227:2; Wachsberg trial testimony.)

62.    Ms. Bubitz sent an email on December 13, 2021 (ECF No. 214-6, Costco0001296) to her international counterparts to give them a point-of-reference for the scent of the NUTRIUS® Product. (ECF No. 295-11, Bubitz Dep. Tr. at 132:23-133:15; Bubitz trial testimony.)

63.    The jar and lid selected for the NUTRIUS® Product were, and are, stock items offered by a variety of suppliers. (ECF No. 295-2, Wachsberg Dep. Tr. at 221:14-16, 225:8-226:15; *see*, *e.g.*, Blofield Decl. Ex. 25, Apollo005190-234; *See* Blofield Decl., Ex. 6, Quotation from TOLY Apollo0005350.)

64.    Like other competitors in the health and beauty industry, Apollo uses different colors on the jar of its NUTRIUS® Product to advertise and differentiate the product's qualities and characteristics. (Blofield Decl. Ex. 26, Bubitz Dep. Tr. at 74:1-82:19, 94:9-95:20, 142:2-24; Bubitz trial testimony; Blofield Decl. Ex. 1, Charles Wachsberg Dep. Tr. at 182:3-188:25; Wachsberg trial testimony.)

65.    For example, the bright yellow color for one of the lids Apollo uses serves as a common signal for the shea/butter ingredient and moisturizing property, which was used generally

in the industry and at Costco in particular on products such as the Olay Ultra Moisture Body Wash that had shea as an ingredient. (*Id.* at 185:16-187:12; Wachsberg trial testimony.)

66.     The bright yellow color for the lid was also used to denote an almond coconut fragrance. (*Id.* at 185:2-187:2; Wachsberg trial testimony.)

67.     Apollo uses "NUTRIUS" as its brand or house mark. (ECF No. 274-1, Wachsberg Dep. Tr. at 32:3-33:9; Wachsberg trial testimony.)

68.     Images of the NUTRIUS® Product packaging, in-store displays, and product design are reproduced below:



(ECF No. 152-1, Cline Rebuttal Rpt. at pp. 7, 9-12; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 7, 9-12; ECF No. 274-1, Wachsberg Dep. Tr. at 106:9-107:2; Wachsberg trial testimony; Blofield Decl. Ex. 27, Apollo0003236; Blofield Decl. Ex. 28, Apollo0000245; Blofield Decl. Ex. 29, Apollo0005306; Blofield Decl. Ex. 30, Apollo0005294; Blofield Decl. Ex. 31, Apollo0005181-82; Blofield Decl. Ex. 32, Apollo0005300; Blofield Decl. Ex. 33, Apollo0005308; Blofield Decl. Ex. 34, Apollo0005297; Blofield Decl. Ex. 35, Apollo0005295.)

69.    As shown above, Apollo's NUTRIUS® house mark is prominently displayed (i) on the pallet displays at Costco; (ii) on the product's two-pack clamshell packaging; and (iii) on the product itself.   (ECF No. 274-1, Wachsberg Dep. Tr. at 106:9-107:2; Wachsberg trial testimony; ECF No. 152-1, Cline Rebuttal Rpt. at pp. 7, 9-12; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 7, 9-12.)

**H.    SDJ'S DEMAND LETTER**

70.    On or about August 30, 2022, SDJ's former counsel sent a demand letter addressed to Apollo's Co-Chief Executive Officers, Charles and Richard Wachsberg ("Demand Letter"). (ECF No. 274-1, Wachsberg Dep. 68:15-70:3, 76:6-77:3 & ECF No. 274-8, Wachsberg Dep. Ex. 39 SDJ 0001982-85.)

71.    In its Demand Letter, SDJ claimed to own unregistered trade dress rights in the BUM BUM Product's "very distinctive packaging, comprised of a bright yellow round tub with a white oversized cap/lid, and the product name printed in black around the outside of the cap/lid." (ECF No. 274-8, Wachsberg Dep. Ex. 39 SDJ 0001982-85 at SDJ 0001982; Wachsberg trial testimony.)

72.    SDJ also claimed to own trademark rights in the mark BRAZILIAN BUM BUM. (*Id.*)

73.    SDJ stated in its Demand Letter that Apollo's BRAZILIAN BODY BUTTER CREAM trademark is "not necessarily independently infringing" SDJ's BRAZILIAN BUM BUM trademark.  (*Id.* at SDJ 0001984; ECF No. 274-1, Wachsberg Dep. 86:15-87:14 (italics added); Wachsberg trial testimony).

I.      **SDJ'S LEGAL CLAIMS**

74.      In its Counterclaims, SDJ alleged that it owns trade dress rights in the product design of its BUM BUM Product, as well as trademark rights in the marks BRAZILIAN BUM BUM and BRAZILIAN BUM BUM.  (ECF No. 67 at ¶¶ 137, 139, Answer to Sec. Am. Compl. and Am. Cntercl.) (emphasis added.)

75.      SDJ asserted counterclaims for both trade dress infringement (*see id.* at Counterclaims I-IV) and trademark infringement (*id.* at Counterclaims V-VIII).

76.      SDJ's alleged trade dress is unregistered. (ECF No. 274-4, Menkis Dep. Tr. at 122:6-123:4, 124:2-14; ECF No. 274-3, Yang Dep. Tr. at 100:8-101:19.)

77.      SDJ defined its alleged product design trade dress as follows:

> The resulting product design is unique and instantly recognizable and includes a colored jar that has no writing on it which is gently rounded at its bottom; a large, overhanging lid that extends nearly half the height of the product and protrudes outward over the jar body (rather than screwing flush); a color-block combination of yellow and white components; the product name presented in capitalized dark-gray lettering framed by smaller text above and below.

(*Id.*, ¶ 137 (the "alleged trade dress").)

78.      SDJ refers to its jar as "product design" in its internal brand guidelines. (*See* ECF No. 295-3 at SDJ 0002897 & 931 at SDJ 0002931.)

79.      SDJ markets its claimed trade dress as "product design" because SDJ sells its jars with the intent that consumers will keep them.  SDJ sells specific refill products for its jar at a lower price, seemingly, to entice consumers to keep their jars. (*See* ECF No. 295-6, at SDJ 000371-376 at 371.)

80.      During discovery and through summary judgment, SDJ did not produce any information or documents demonstrating that SDJ has enforced its alleged trade dress rights

21

against any third parties in the U.S. (ECF No. 295, Reply Declaration of Molly Littman-Johnson dated June 20, 2024 ("Littman-Johnson Decl.") at ¶ 9.)

81.    Following the filing of this lawsuit, SDJ changed its packaging, including its lid.

 

(ECF No. 273-1, Gorowsky Rebuttal Rpt. at pp. 16-17 at Table 2.)

### 3.    Damage to Apollo as a Result of SDJ Filing This Lawsuit

82.    Apollo's customer relationships were harmed when SDJ sent its Demand Letter to Apollo's customers Walmart and Costco making baseless accusations of trade dress infringement. (ECF No. 284-1, Wachsberg Dep. Tr. at 67:3-68:4, 69:2-3, 70:20-71:11; Wachsberg trial testimony.)  NUTRIUS® products were not even sold to Walmart.  (*Id.*)  SDJ also sued Costco for trademark and trade dress infringement.  (ECF No. 29, Answer Am. Complaint and Cntercl.)

83.    The Apollo Parties' reputations have been damaged by being accused of trademark and trade dress infringement.   (ECF No. 284-1, Wachsberg Dep. Tr. at 67:3-68:4, 69:2-3, 70:20-71:11, Blofield Decl. Ex. 1, Wachsberg Dep. Tr. at 73:21-74:4, 78:19-79:15; Wachsberg trial testimony.)

84.    The Apollo Parties have had to spend money and time defending against SDJ's baseless claims.  (Wachsberg trial testimony; Bubitz trial testimony.)

J.    **SURVEYS**

1.    **Consumer Confusion Surveys**

85.    Dr. Jay conducted a consumer confusion survey concerning SDJ's purported trade dress and Apollo's accused trade dress.  (ECF No. 150-3, Survey 2 Report E. Deborah Jay, Ph.D. dated November 9, 2023 ("Jay Survey 2 Rpt.") at pp. 1-2.)

86.    Dr. Jay's survey results demonstrate that the relevant consumers are not likely to be confused as to the source, the sponsor, or the affiliation of the NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ either at the point of purchase or in a post-sale environment.  (*Id.*, Jay Survey 2 Rpt. at pp. 3, 30-31.)

87.    After accounting for noise, the Jay Survey found that the level of forward confusion was only 3%, and the level of post-sale confusion was only 5%.  (ECF No. 150-3, Jay Survey 2 Rpt. at pp. 3, 30.)

88.    The Jay Survey strongly supports the conclusion that relevant consumers are not likely to be confused as to the source, the sponsor, or the affiliation of the NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ either at the point of purchase or in a post-sale environment.  (*Id.*, Jay Survey Rpt. at p. 31; ECF No. 150-4, Jay Dep. Tr. at 114:1-11, 171:8-172:2.)

89.    Dr. Itamar Simonson ("Dr. Simonson") is another expert witness that Apollo retained to conduct a consumer confusion survey concerning SDJ's purported trade dress and Apollo's accused trade dress.  (ECF No. 151-1, Expert Report of Dr. Itamar Simonson, Ph.D. dated November 15, 2023 ("Simonson Rpt.") at p. 6 ¶ 13.)

90.    Dr. Simonson's survey results of 3.8% net confusion are consistent with the conclusion that there is no confusion between Apollo's NUTRIUS® BRAZILIAN BODY

BUTTER CREAM™ product and SDJ's BRAZILIAN BUM BUM® product.  (*Id.*, Simonson Rpt. at pp. 8, ¶ 18; 23, ¶ 46.)

91.     Dr. Simonson also testified as an expert and opined that there is no confusion between Apollo's NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ product and SDJ's BRAZILIAN BUM BUM® product.  (ECF No. 151-2, Deposition of Itamar Simonson dated January 18, 2024 ("Simonson Dep. Tr.") at 50:11-51:24.)

92.     Dr. David Neal was retained by SDJ to conduct a scientific survey to investigate whether Apollo's accused NUTRIUS®s product causes a likelihood of confusion with SDJ's product.   (ECF No. 280-3, Neal Rpt. at p. 7 ¶ 2.3.)

93.     Dr. Neal's survey results reflect only 15.1% net confusion.  (*Id.*, Dr. Neal Rpt. at p. 9 ¶ 3.1.)

94.     Dr. Neal's survey used screenshots from Amazon.com; however, Apollo sells less than 1% of its accused NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ product on Amazon.com.  (ECF No. 136-2, Neal Dep. Tr. at 68:5-7; ECF No. 273-1, Gorowsky Rebuttal Rpt. at Ex. E.)

95.     Dr. Neal's survey did not address, and is not relevant to, over 99% of Apollo's sales of its accused NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ product that were made through Costco and similar big-box retailers.  (ECF No. 136-2, Neal Dep. Tr. at 68:5-7, 71:17-21; ECF No. 273-1, Gorowsky Rebuttal Rpt. at Ex. E; ECF No. 151-1, Simonson Rpt. at p. 24-27 ¶¶ 49-55.)

### 2.     SDJ's Internal Surveys And Analysis Regarding Brand Awareness

96.     An analysis of studies conducted in May 2021 and June 2021 found that SDJ had only 4% brand awareness in the general beauty market.  (Blofield Decl. Ex. 36, SDJ 0000209-68,

at SDJ 000219.)  The survey sample was comprised of "[f]emales, ages 13-65" who "have purchased beauty products for self in P3M [past 3 months]."  (*Id*.)

97.    An internal SDJ survey from May 2021 states that SDJ had "low awareness relative to other Prestige body care brands (9% vs. 24%)" and that SDJ's number two barrier to purchase was "lack of informed awareness."  (ECF No. 274-10, SDJ 0001656-76 at 1656 and 1670.)

98.    An internal SDJ survey from June 2021 found that SDJ had only 5% brand awareness in the general beauty market.  (Blofield Decl. Ex. 37, SDJ 0000013-104, at 23.)  The survey sample was comprised of "[f]emales, ages 13-65" who had "purchased beauty products for self in past 3 months."  (*Id*.)

### 3.    Secondary Meaning Survey

99.    SDJ did not conduct a secondary meaning survey. (*See generally* ECF Nos. 280-3, Neal Rpt.; 284-2, Serdari Rpt.; 284-4, Plumpe Rpt.; SDJ's expert reports.)

100.    Apollo commissioned a secondary meaning survey conducted by renowned expert E. Deborah Jay ("Dr. Jay"), who has conducted over 800 surveys over the course of her career, at least 400 of which were in the context of litigation.  (ECF No. 233, Jay Supp. Decl. at ¶ 7, ECF No. 233-4, Ex. 4 to Jay Decl., ECF No. 150-4, Jay Dep. Tr. at 12:13-20.)

101.    In her survey, Dr. Jay concluded that "[i]n all, only 17% of relevant consumers associated the appearance of the Brazilian Bum Bum Cream jar with scented body creams exclusively from Sol de Janeiro, or a single anonymous source." (ECF No. 150-1, Jay Rebuttal Decl. at ¶ 10.)

102.    Dr. Jay's survey results strongly support the conclusion that the Brazilian Bum Bum trade dress has not acquired distinctiveness or secondary meaning.  (ECF No. 150-2, Jay Survey 1 Rpt. at pp. 15-16).

25

103. In addition, Dr. Jay's survey results demonstrate that SDJ's purported trade dress lacks commercial strength and is weak.  (*Id.* at pp. 7-8 & n.16.)

104. Dr. Jay's survey results also demonstrate that SDJ's purported trademarks lack commercial strength and are weak.  (*Id.*)

### a)  SDJ's advertising

105. SDJ does not do "look for" advertising for its alleged trade dress.  (ECF No. 274-4, Menkis Dep. Tr. at 199:4-15.)

106. SDJ's advertisements do not always show or mention the BUM BUM Product; SDJ's advertisements sometimes show or mention the BUM BUM Product together with one or more other SDJ products.  (ECF No. 274-3, Yang Dep. Tr. at 232:25-233:14; ECF No. 274-4, Menkis Dep. Tr. 208:2:16.)

107. SDJ does not know what percentage of SDJ's advertisements show or mention the BUM BUM Product, or what percentage of SDJ's advertisements show or mention the BUM BUM Product and no other SDJ products.  (ECF No. 274-3, Yang Dep. Tr. at 233:15-234:4.)

108. There is no way to investigate whether SDJ's advertising spend data for the BUM BUM Product is solely for the BUM BUM Product and no other SDJ products.  (ECF No. 274-7, Deposition of Atsushi Hayakawa dated September 14, 2023 ("Hayakawa Dep. Tr.") at 52:2-20; 54:8-55:7, 55:20-56:7, 58:2-5.)

109. SDJ does not keep track of unsolicited media coverage.  (ECF No. 274-3, Yang Dep. Tr. at 238:11-13.)

110. SDJ works with a public relations ("PR") agency, spends more than a million dollars a year on PR, and uses its PR agency to solicit media coverage.  (*Id.*, Yang Dep. Tr. at 234:5-7, 236:8-237:23.)

### K.     SDJ'S TRADE DRESS IS FUNCTIONAL

#### 1.     Body Cream Products With Rounded-Bottom Jars And Large, Overhanging Lids Are Functional.

111.     Apollo procured its jar for the NUTRIUS® Product from a vendor that used a pre-existing, readily available, stock mold to manufacture the functional rounded-bottom jar and large, overhanging lid.   (ECF No. 274-1, Wachsberg Dep. 199:14-19, 203:5-20, 205:6-19, 208:2-7, 225:8-226:15; Wachsberg trial testimony; *see, e.g.,* Blofield Decl. Ex. 25, Apollo0005190-234.)

112.     Body cream products are commonly sold in functional rounded-bottom jars with large, overhanging lids.   (ECF No. 274-1, Wachsberg Dep. Tr. at 199:14-19, 200:2-6, 200:24-201:3; Wachsberg trial testimony.)

113.     Jars with functional rounded-bottom jars and large, overhanging lids are pervasive in the marketplace.   (*Id.*, Wachsberg Dep. Tr. 199:6-201:3; Wachsberg trial testimony.)

114.     As shown below, the market contains numerous third-party body cream products that incorporate these elements and others listed in SDJ's definition of its alleged trade dress:



| Brazilian Vibrant Bum Bum Cream | Rozino Brazil Bum Bum Cream | Brazilian Bum Bum Cream | Lakerain Body Bum Bum Cream |

| | | | |
|---|---|---|---|
|  Fatazen Bum Bum Cream |  Coconut Milk Moisturizing & Softening Body Cream |  Collagen Boosting and Elastic Body Cream |  AHA Brightening and Smoothing Body Cream |
|  Koec Shea Butter Vitamin C Moisture Body Cream |  Babaria Vit C+ Body Cream |  Rozino Moisturizing Cream Retinol |  Brazilian Booty Cream |
|  Kojic Acid Body Cream |  Collagen Retinol & Hyaluronic Acid Recovery Cream Proven by Science |  Aurany Body Massage Cream |  Seline Girl Real Coconut All-In-One Cream |

ACTIVE 706029293v2

| | | | |
|---|---|---|---|
|  Brazilian Bum Bum Cream |  Brazilian Bum Cream |  Fatazen Elasti-Cream |  Lanemax Peach & Retinol Body Lotion Daily Moisturizing |
|  Koec Sweet Almond Oil Rose Moisture Body Cream |  Koec Strawberry Milk Ha Moisture Body Cream |  Yaraycin Shea Butter Vitamin C |  Seline Girl Real Peach All-In-One Cream |
|  NatureWell Cheeky Cream |  Bye Bye! Cellulite |  Koec Coconut Milk Vitamin E Moisture Body Cream |  Yaracin Coconut Milk Vitamin E |
|  LaneMay Brazilian Brightening Cream |  Brazilian Bum Cream |  Seline Girl Real Avocado All-In-One Cream |  Ronzino Moisturizing Cream Coconut |

29







(ECF No. 273-1, Gorowsky Rebuttal Rpt. at Table 4; ECF No. 152-1, Cline Rebuttal Rpt. at pp. 20-24; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 20-27.)

115.    Prior to the close of discovery and through summary judgment, other than this lawsuit, SDJ has never enforced its alleged trade dress rights against any third party in the U.S., including the third-party products listed above.  (ECF No. 274-4, Menkis Dep. Tr. at 261:12-22.)

116.    The rounded bottom of the jar and the large, overhanging lid serve several utilitarian purposes, such as: (i) allowing consumers to more easily remove, or scoop out, the cream; (ii) providing strength to the container so that it does not break during packaging, transport, merchandising, or shipping to end consumers, which is particularly important for products containing heavy, thick creams where the weight of the product makes the container especially vulnerable to breakage during transport; and (iii) allowing consumers to more easily grasp the lid and tighten it to create a seal that preserves the remaining cream.  (ECF No. 274-1, Wachsberg

ACTIVE 706029293v2

Dep. Tr. at 200:2-201:19; Wachsberg trial testimony; ECF No. 152-1, Cline Rebuttal Rpt. at pp. 18-24; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 18-28.)

117.    Printing words on the lid of the container is also very common and used by those in the industry that employ best practices. (*Id.*)

118.    The writing is located on the lid because there is simply insufficient space on the container itself to decorate the brand name, product, product descriptor, and key ingredient call outs and because it is not possible to meaningfully decorate the sloped surface of the jar. (ECF No. 274-1, Wachsberg Dep. Tr. at 201:20-202:23; Wachsberg trial testimony; ECF No. 274-4, Menkis Dep. Tr. at 159:4-22.)

119.    The color of the product serves to identify which scent the consumer is purchasing. (ECF No. 274-1, Wachsberg Dep. Tr. at 186:7-187:24; Wachsberg trial testimony; ECF No. 274-4, Menkis Dep. Tr. at 173:4-174:7, 189:18-191:11; ECF No. 152-1, Cline Rebuttal Rpt. at pp. 29-32; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 32-35.)

## 2.    Office Actions Related to SDJ's Purported Trade Dress

120.    The USPTO has decided on two separate occasions that trade dresses that are virtually identical to SDJ's purported trade dress asserted in this case (except the pink or coral bottom as opposed to a caramel colored bottom) are functional. (Blofield Decl. Ex. 18 Apollo0005465-541 at 466-67, Blofield Decl. Ex. 21A, Apollo0005840-6031 & Ex. 19, Apollo0005377-452 at 379, Blofield Decl. Ex. 23A, Apollo0005604-839.)

121.    First, in U.S. Application Ser. No. 98607370, SDJ described its mark as virtually identical to SDJ's purported trade dress asserted in this case (except the pink bottom as opposed to a caramel colored bottom):

> The mark consists of a two-dimensional mark for product packaging. The mark depicts a pink rounded jar with an elongated opaque white cap over the rounded jar

ACTIVE 706029293v2

on which are lines of gray dots on the left and the right of the cap with the wording "BEIJA FLOR" in gray below the gray dotted lines.

(Blofield Decl. Ex. 20, Apollo0005456-464 at 456; Ex. 21A, Apollo0005840-6031 at 020, Ex. 21, Apollo0005453-5455 at 453, Blofield Decl. Ex. 21A, Apollo0005840-6031 at 840.)

122.    An Office Action issued wherein the Examining Attorney stated that:   "The drawing of applicant's applied-for three-dimensional mark is not acceptable because it includes *functional* elements depicted in solid lines rather than broken or dotted lines. . . . ***In the present case, the following elements are functional: the shape of the screw-on cap and the shape of the rounded jar***."   (Blofield Decl. Ex. 18, Apollo0005465-541 at 5466-67, Blofield Decl. Ex. 21A, Apollo0005840-6031 at 845-46.) (emphasis added.)

123.    SDJ did not respond to the Office Action and the application was deemed abandoned on November 12, 2024 with notification of the abandonment provided on December 12, 2024.  (Blofield Decl. Ex. 22, Apollo0005542; Blofield Decl. Ex. 21A, Apollo0005840-6031 at 843 & *see also* Ex. 21, Apollo0005453-55 at 453; Blofield Decl. Ex. 21A, Apollo0005840-6031 at 840.)

124.    Second, in U.S. Application Ser. No. 98607110, SDJ again described its mark as virtually identical to SDJ's purported trade dress asserted in this case (except the coral bottom as opposed to a caramel colored bottom):

> The mark consists of a three-dimensional configuration for product packaging. The mark depicts a coral rounded jar with an elongated opaque white cap over the rounded jar. On the white cap is the stylized gray wording "BOM DIA BRIGHT" below an incomplete gray dotted line with a gap above the wording "DIA". The broken lines depicting the shape of the top of the lid and the bottom of the jar indicate placement of the mark on the goods and are not part of the mark.

(Blofield Decl. Ex. 23, Apollo0005351-60 at 351, Blofield Decl. Ex. 23A, Apollo0005604-5839 at 826; Blofield Decl. Ex. 24, Apollo0005374-76 at 5374; Blofield Ex. 23A, Apollo0005604-839 at 604.)

125.    An Office Action issued wherein the Examining Attorney stated that: "The drawing of applicant's applied-for three-dimensional mark is not acceptable because it includes *functional* elements depicted in solid lines rather than broken or dotted lines. . . . ***In the present case, the following elements are functional: the shape of the screw-on cap and the shape of the rounded jar***." (Blofield Decl. Ex. 19, Apollo0005377-452 at 5378-79; Blofield Decl. Ex. 23A, Apollo0005604-839 at 5739-40.) (emphasis added.)

126.    On February 26, 2025, the Examining Attorney then issued a Final Office Action refusing registration of the trademark application for SDJ's purported trade dress ***because the "configuration drawing [with the shape of the screw-on cap and the shape of the rounded jar] includes functional elements . . . .***" (Blofield Decl. Ex. 23A, Apollo0005604-839 at 5608.) (emphasis added.)

127.    In doing so, the Examining Attorney attached ninety-three pages of evidence in support of her decision that the trade dress was functional. (*Id*.) The Apollo Parties' NUTRIUS® Product was the first page of evidence of functionality the Examining Attorney relied upon. (*Id*. at 5612)

128.    The Examining Attorney also identified the same products that had been identified by Apollo's Expert Cline in her Reports in support of functionality: (1) Naturewell Cheeky Cream (Blofield Decl. Ex. 23A, Apollo0005604-839 at 5657; ECF No. 152-1, Cline Rebuttal Rpt. at p. 21; Blofield Decl. Ex. 13, Suppl. Cline Rpt. at p. 21); (2) SOLAR FLARE Body Butter product (Blofield Decl. Ex. 23A, Apollo0005604-839 at 5623; Blofield Decl. Ex. 13, Supp. Cline Rpt. at

p. 25-26); and (3) Palmer's Brazilian Coco Whipped Bum, Bust & Body Cream.  Blofield Decl.

Ex. 23A Apollo0005604-839 at 5645; Blofield Decl. Ex. 13, Supp. Cline Rpt. at p. 27.)

129.    The Examining Attorney explained that "[t]he evidence of record from Glow

Recipe, Aveda, Tatcha, Pacifica, Beekman 1802, Target, Amazon, Pistache, Nutrius Body, Five

Below, Alibaba, Palmers, Lovery, Sam's Club, Etsy, Berlin Packaging, The Body Shop, and The

Packaging Company *shows that round, wide-mouth jars with screw on caps are a common

feature of product packaging for cosmetic and body products*."    (Blofield Decl. Ex. 23A

Apollo0005604-839 at 5610.) (emphasis added.)  "The attachments from A Packaging Group and

Containers and Packaging shows that product packaging for cosmetic/body products in the form

of jars with screw on caps are, by their very nature, functional because (1) round wide-mouth jars

are used to facilitate easy user access to the product, especially for thicker creams and butters, and

(2) screw on caps are used to seal product within a container for sanitation and preservation

purposes."  (*Id.*) (citing *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41, 213 U.S.P.Q.

9, 15-16 (C.C.P.A. 1982); TMEP §1202.02(a)(v)).

### L.    THERE IS NO EVIDENCE SUPPORTING THE LIKELIHOOD OF CONFUSION FACTORS.

#### 1.    SDJ's Purported Evidence Of Actual Confusion

130.    SDJ has failed to produce any evidence of infringement by the Apollo Parties of

SDJ's purported trade dress rights and/or purported trademark rights claimed by SDJ.  (ECF No.

274-10, SDJ 0001656-67 at 1656 and 1670;  ECF No. 274-3, Yang Dep. Tr. at 232:25-233:14;

ECF No. 274-4, Menkis Dep. Tr. at 208:2:16; ECF No. 274-7, Hayakawa Dep. Tr. at 52:2-20;

54:8-55:7, 55:20-56:7, 58:2-5; ECF No. 274-3, Yang Dep. Tr. at 238:18-14; ECF No. 295,

Littman-Johnson Decl. at ¶19.)

131.    Apollo and Costco sent SDJ an interrogatory and asked SDJ to identify each and every instance of actual consumer confusion of which it is aware, and to provide the name and contact information for each such allegedly confused consumer.  (ECF No. 73-11, Apollo's Fourth Set of Interrogs. at Nos. 13-14 to SDJ USA, Inc. & Blofield Decl. Ex. 38, Costco's First Set of Interrog. at Nos. 1-2 to SDJ USA & Blofield Decl. Ex. 39, Apollo's Fourth Set of Interrogs. at 13-14 to SDJ IP & Blofield Decl. Ex. 40 Costco's First Set of Interrog. at 1-2 to SDJ IP.)

132.    In its interrogatory response, SDJ never disclosed the names of the allegedly confused consumers, their contact information, or any information about the nature and extent of the alleged confusion.  (ECF No. 146-9, SDJ, IP's Am. Objs. & Resps. Apollo's Fourth Set of Interrogs. at Nos. 13-14, ECF No. 146-9 SDJ IP, Inc.'s Am. Objs. & Resps. to Costco's First Set of Interrogs. at Nos. 1-2 & ECF No. 80-10, SDJ, USA's Am. Obj. & Resps. Apollo's Fourth Set of Interrogs. at Nos. 13-14 and ECF No. 73-12, SDJ USA's, Inc.'s Am. Objs. & Resps. to Costco's First Set of Interrogs. at Nos. 13-14; ECF No. 295, Littman-Johnson Decl. at ¶ 18.)

133.    Instead, SDJ identified a variety of articles, videos, and posts discussing the accused NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ product and/or SDJ's BRAZILIAN BUM BUM Product.  (ECF No. 146-9, SDJ, IP's Am. Objs. & Resps. Apollo's Fourth Set of Interrogs. at Nos. 13-14; ECF No. 146-9 SDJ IP, Inc.'s Am. Objs. & Resps. to Costco's First Set of Interrogs. at Nos. 1-2; ECF No. 80-10, SDJ, USA's Am. Obj. & Resps. Apollo's Fourth Set of Interrogs. at Nos. 13-14; ECF No. 73-12, SDJ USA's, Inc.'s Am. Objs. & Resps. to Costco's First Set of Interrogs. at Nos. 13-14.)

134.    SDJ did not talk to any of the allegedly confused consumers, does not have their contact information, and knows nothing about the nature or extent of the alleged confusion. (ECF No. 274-4, Menkis Dep. Tr. at 251:7-259:2.)

135.    Substantially all of these articles, videos, and posts refer to the NUTRIUS®
BRAZILIAN BODY BUTTER CREAM™ as a "dupe."  (Blofield Decl. Exs. 41-55B.)

136.    References to a product as a "dupe" are not evidence of confusion, but rather
references to an alternative product from a different source typically sold at a lower price that
consumers will distinguish and not be confused.  (ECF No. 152-1, Cline Rebuttal Rpt. at pp. 32-
34; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 35-37; ECF No. 249-1, Dr. Simonson's
Evaluation of the Report of Dr. Serdari dated November 29, 2023 ("Simonson Rebuttal Rpt.") at
pp. 10-11 ¶¶ 24, 26; Blofield Decl. Ex. 2, Yang Dep. Tr. at 265:19-266:13.)

### 2.    There Are Material Differences Between The NUTRIUS® Product And SDJ's BUM BUM Product.

137.    SDJ's purported trade dress and Apollo's accused trade dress have many material
differences.  (ECF No. 152-1, Cline Rebuttal Rpt. at pp. 9-18; Blofield Decl. Ex. 13, Supp. Cline
Rpt. at pp. 9-18.)

138.    The parties' products have (i) different names (*i.e.*, NUTRIUS® BRAZILIAN
BODY BUTTER CREAM vs. BRAZILIAN BUM BUM); (ii) different color schemes (*i.e.*, white
jar with bright yellow lid vs. caramel jar with bone color lid); (iii) different lettering colors (*i.e.*,
black vs. gray); (iv) different lettering styles (*i.e.*, small upright capital letters vs. small italicized
script using upper and lower-case letters); (v) different designs on the top of the product (*i.e.*,
NUTRIUS® vs. SDJ's SOL DE JANEIRO house mark and logo); and (vi) different container
sizes (i.e., 6 oz vs. 8.1 oz).  (ECF No. 152-1, Cline Rebuttal Rpt. at pp. 9-10; ECF No. 273-1,
Gorowsky Rebuttal Rpt. at pp. 16-18.)

139.    The parties' products are sold (i) in different packaged quantities (*i.e.*, a two-pack
vs. individually); (ii) in different packaging formats (*i.e.*, a plastic clamshell vs. a decorative

cardboard box); and (iii) at significantly different price points (*i.e.*, $1.67/oz versus $5.93/oz). (*Id.*)

140.    SDJ's BUM BUM Product retails for $48 for a single 240 ml or 8.1 oz container (ECF No. 274-4, Menkis Dep. Tr. at 215:4-6.) whereas the NUTRIUS® Product retails for $19.99 for a two-pack of 6 oz. products in Costco stores.  (ECF 274-2, Bubitz Dep. Tr. at 157:13-16; Bubitz trial testimony.)

141.    As shown below, the parties' packaging, in-store displays, and product designs are markedly different as shown below:

| | Apollo's NUTRIUS BRAZILIAN BODY BUTTER CREAM | SDJ's BRAZILIAN BUM BUM CREAM |
|---|---|---|
| **Packaging** | | |



| Apollo's NUTRIUS BRAZILIAN BODY BUTTER CREAM | SDJ's BRAZILIAN BUM BUM CREAM |
|---|---|
| **In-Store Display**  |  |

| | Apollo's NUTRIUS BRAZILIAN BODY BUTTER CREAM | SDJ's BRAZILIAN BUM BUM CREAM |
|---|---|---|
| **Product Design** |  | |

(ECF No. 273-1, Gorowsky Rebuttal Rpt. at pp. 16-18; ECF No. 152-1, Cline Rebuttal Rpt. at pp. 7, 9-12, 16; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 7, 9-12, 16; ECF No. 274-1, Wachsberg Dep. Tr. at 106:9-107:2; Wachsberg trial testimony; Blofield Decl. Ex. 27, Apollo0003236; Blofield Decl. Ex. 28, Apollo0000245; Blofield Decl. Ex. 29, Apollo0005306; Blofield Decl. Ex. 30, Apollo0005294; Blofield Decl. Ex. 31, Apollo0005181-82; Blofield Decl. Ex. 32, Apollo0005300; Blofield Decl. Ex. 33, Apollo0005308; Blofield Decl. Ex. 34, Apollo0005297; Blofield Decl. Ex. 35, Apollo0005295; Blofield Decl. Ex. 12, SDJ 0000319-41 at 000320-22.)

42

142.    Around SDJ's BUM BUM PRODUCT container's cap is printed the product name (BRAZILIAN BUM BUM), a descriptor (Infused with All-Powerful Guarana Extract) in English with a French translation, a product promise (Fast-Absorbing Body Cream Helps Visibly Tighten the Appearance of Skin) in English with a French translation, product size (8.1 fl. Oz. US, 240mL e), a brand tagline (Love It. Flaunt It. You've Got It), company information (registered address US, registered address EU, Made in USA, website), as well as floral and dotted line graphic design elements unique to forming the brand.  (ECF No. 152-1, Cline Rebuttal Rpt. at p. 17.)

143.    Apollo's NUTRIUS® Product has the Apollo house mark (NUTRIUS) printed around the container's cap in the same font as on top of the container along with the product name (BRAZILIAN BODY BUTTER) and product descriptor (Infused with Cupuacu Butter + Coconut Oil + Acai Oil + Guarana Extract) twice.  There is no product promise, no product size, no brand tagline, no company information, no French translations and no graphic design elements present on the Apollo product (six additional differentiators).  (*Id.* at pp. 17-18.)

### 3.    There Are Material Differences Between The Parties' Trademarks.

144.    Apollo's NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ trademark and SDJ's SOL DE JANEIRO® BRAZILIAN BUM BUM® trademark have many material differences.  (ECF No. 152-1, Cline Rebuttal Rpt. at pp. 6-9; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 6-9.)

145.    Apollo's NUTRIUS® house mark always prominently appears before the BRAZILIAN BODY BUTER CREAM™ mark, such that the mark appears as "NUTRIUS® BRAZILIAN BODY BUTTER CREAM™" on the boxes, on the blister pack, and on the containers themselves.  (ECF No. 274-1, Wachsberg Dep. Tr. at 106:9-107:2; Wachsberg trial

43

testimony; ECF No. 152-1, Cline Rebuttal Rpt. at p. 7; Blofield Decl. Ex. 13, Supp. Cline Rpt. at p. 7.)

146.    SDJ uses the house mark SOL DE JANEIRO® and this house mark always appears on the top of the BUM BUM Product.  (ECF 274-4, Menkis Dep. Tr. at 168:13-23; ECF No. 274-3, Yang Dep. Tr. at 114:5-7, 178:13-16.)

147.    Apollo's trademark also includes the words "BODY BUTTER," whereas SDJ's purported trademarks incorporate the words "BUM BUM."  (ECF No. 152-1, Cline Rebuttal Rpt. at p. 7; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 7-8.)

148.    The words NUTRIUS, BODY, and BUTTER do not appear in the SDJ marks. (ECF No. 152-1, Cline Rebuttal Rpt. at p. 8; Blofield Decl. Ex. 13, Supp. Cline Rpt. at p. 8.)

149.    With the exception of the word "BRAZILIAN," the parties' NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ mark and SDJ's SOL DE JANEIRO® BRAZILIAN BUM BUM® mark use different words. (*See e.g.*, ECF No. 152-1, Cline Rebuttal Rpt. at pp. 7-8.)

150.    The overlapping word in the purported and accused trademarks is descriptive of the origin of the parties' products' ingredients ("Brazilian").  (*Id.*)

151.    The term "BRAZILIAN" is commonly used in the marketplace by third parties in association with a multitude of body products in the marketplace, including Brazilian body butters, Brazilian creams, Brazilian lotions, and Brazilian shampoos.  (ECF No. 295-2, Wachsberg Dep. Tr. at 132:17-23; 133:16-134:9; Wachsberg trial testimony; ECF No. 152-1, Cline Rebuttal Rpt. at pp. 21-24; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 20-27; *see also* Blofield Decl. Ex. 56, Apollo00001347-64.)

152.    It is common to use Brazilian ingredients in the cosmetics that Apollo produces, and Brazil is known for its ingredients and building block contribution to the broader personal care marketplace, so Apollo uses Brazilian ingredients in body washes, soaps, creams, ointment, in lotions, in shampoos.  (ECF No. 295-2, Wachsberg Dep. Tr. at 56:15-57:5; Wachsberg trial testimony.)

153.    Both parties' cream products contain ingredients (e.g., acai, guarana, and cupuacu butter) that are widely recognized and understood as originating, or being sourced from, Brazil or are commonly incorporated into "Brazilian" products.  (*See e.g.*, ECF No. 152-1, Cline Rebuttal Rpt. at p. 8; ECF No. 274-1, Wachsberg Dep. Tr. at 55:11-56:18; Wachsberg trial testimony.)

154.    The non-overlapping words in the parties' marks have very different meanings and connotations.  (*See e.g.*, ECF No. 152-1, Cline Rebuttal Rpt. at p. 8.)

155.    BUM BUM is a Portuguese word for butt, and SDJ's product is a cream designed to be applied to the consumer's butt; therefore, BUM BUM is descriptive of a cream product designed to be applied to the consumer's butt.  (*Id.*)

156.    The term "BODY BUTTER" suggests the buttery texture of Apollo's product and denotes a cream product that is intended to be applied to the consumer's entire body (as opposed to a cream targeted to the consumer's butt).  (ECF No. 274-1, Wachsberg Dep. Tr. at 136:22-137:24; Wachsberg trial testimony.)

157.    The words BODY and BUTTER are different and have different syllables than the words BUM BUM.  (ECF No. 152-1, Cline Rebuttal Rpt. at pp. 8-9.)

158.    BODY BUTTER is comprised of two, two-syllable words, whereas BUM BUM is comprised of two, one-syllable words.  (ECF No. 152-1, Cline Rebuttal Rpt. at p. 8; Blofield Decl. Ex. 13, Supp. Cline Rpt. at p. 9.)

45

159.    The words BODY BUTTER are comprised of ten letters, whereas the words BUM BUM are comprised of six letters.  (*Id.* at p. 9.)

160.    The word "CREAM" is generic or descriptive of the NUTRIUS® Product itself. (ECF No. 152-1, Cline Rebuttal Rpt. at p. 8.)

### 4.    None of the Other Likelihood of Confusion Factors Are Met.

161.    Apollo designed its NUTRIUS® Product to be very different than SDJ's BUM BUM Product.  (ECF No. 274-1, Wachsberg Dep. Tr. at 105:18-109:20, 121:5-123:7, 144:4-25, 183:20-184:14, 208:8-209:22; Wachsberg trial testimony.)

162.    Apollo and Costco had no intention of copying SDJ's purported trademark or purported trade dress.  (Blofield Decl. Ex. 1, Wachsberg Dep. Tr. at 223:14-19, 246:10-25; Wachsberg trial testimony; Blofield Decl. Ex. 26, Bubitz Dep. Tr. at 76:9-19; Bubitz trial testimony.)

163.    Apollo did not intend to capitalize on SDJ's reputation or goodwill, or to cause confusion with SDJ's BUM BUM Product.  (ECF No. 274-1, Wachsberg Dep. Tr. at 105:18-109:20, 121:5-123:7, 144:13-25, 183:20-184:14, 208:8-209:22; Wachsberg trial testimony.)

164.    As part of its good faith design effort and to ensure no consumer was confused about the source of the product, Apollo prominently displayed its NUTRIUS® mark in multiple locations on the boxes, the blister packs, and the containers for the NUTRIUS® Product.  (*Id.*, Wachsberg Dep. Tr. at pp. 106:6-107:18; Wachsberg trial testimony.)

165.    SDJ does not have an opinion on the quality of Apollo's NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ product.  (ECF No. 274-3, Yang Dep. Tr. at 292:18-25.)

166.    Apollo's NUTRIUS® Product was first sold at Costco in June of 2022.  (ECF No. 273-1, Gorowsky Rebuttal Rpt. at p. 7.)

46

167.    Since June 2022, Apollo has sold over 91% of the NUTRIUS® Product through Costco's warehouses.  (*Id.*; *see* Blofield Decl. Ex. 57, Apollo0003215.xlsx, Apollo0005162.xlsx.)

168.    Apollo sells less than 1% of its accused NUTRIUS® Product on Amazon.com. (ECF No. 136-2, Deposition of Dr. David Neal dated January 10, 2024 ("Neal Dep. Tr.") at 68:5-7; ECF No. 273-1, Gorowsky Rebuttal Rpt., Ex. E.)

169.    There is no evidence that Apollo intends to sell the NUTRIUS® Product outside the big-box retailer channel it currently sells through (Costco, Sam's Club, BJ's, etc.). (ECF No. 273-1, Gorowsky Rebuttal Rpt., Ex. E.)

170.    The only medium through which Costco advertised the NUTRIUS® Product in its Costco Connection magazine.  (ECF No. 153, Bubitz Decl. ¶ 6; ECF 274-2, Bubitz Dep. Tr. at 121:24-122:24; Bubitz trial testimony.)

171.    The accused NUTRIUS® Product sales are predominately to females. (ECF No. 275, Bubitz Decl. ¶ 6-8; ECF No. 275-1, Bubitz Decl. Ex. A; ECF No. 274-2, Bubitz Dep. Tr. at 121:24-122:24; Bubitz trial testimony; ECF No. 274-13, Costco0004421 at 4423.)

172.    The median age of readers of the *Costco Connection* magazine is 53 years old. (ECF No. 150-3, Dr. Jay Survey 2 Rpt. at p 5, n.13; Bubitz trial testimony; Blofield Decl. Ex. 58, Costco0004507.)

173.    *Costco Connection* readers have attained high levels of education: 90.3% have attended college, 63.6% are college graduates, and 32.2% hold postgraduate degrees.  (ECF No. 274-13, Costco0004421-4432 at 4423.)

174.    *Costco Connection* readers have a mean household income of $179,100 per year. (*Id.* at Costco0004424.)

175.    Over 92% of *Costco Connection* readers own their own home.  (*Id.*)

176.    SDJ's core consumers are millennials.  (ECF No. 274-4, Menkis Dep. Tr. at 70:9-19; 284:11-285:17.)

177.    SDJ's business records identify millennials as its core consumers. (ECF No. 233-2, Jay Dep. Ex. 3, SDJ0003018-23 & 3030-32 at 3031.)

178.    SDJ has an exclusivity agreement with Sephora, and approximately 70% of SDJ's sales of its BUM BUM Product are made through Sephora.  (ECF No. 274-7, Hayakawa Dep. Tr. at 68:19-69:8; ECF No. 274-3, Yang Dep. Tr. at 52:18-20, 60:23-62:11.)

179.    Sephora is a premium beauty retailer of expensive beauty products.  (ECF No. 274-3, Yang Dep. Tr. at 51:21-52:7)

180.    SDJ's products are sold through Sephora stores and Sephora "stores" located inside of Kohl's. (ECF No. 295-4, Menkis Dep. Tr. at 109:22-110:6; ECF No. 130-1, 131-1, Expert Report of John G. Plumpe dated October 16, 2023 ("Plumpe Rpt.") at p. 11 & n. 37.)

181.    SDJ "talked to Macy's," but decided not to sell to Macy's, in part, because of SDJ's exclusivity agreement with Sephora. (ECF No. 295-4, Menkis Dep. Tr. at 243:7-244:8.)

182.    SDJ's exclusivity agreement, which has been in effect since the "beginning of the company [SDJ]", permitted SDJ to sell to small "legacy" retailers that Sephora "doesn't really care about." (*Id.* at 77:15-78:7; ECF No. 295-9, Yang Dep. Tr. 60:23-63:3.)

183.    SDJ does not sell, and has never sold, its BUM BUM Product in Costco or any other membership-only big box store.  (ECF No. 274-4, Menkis Dep. Tr. at 237:14-239:12.)

184.    SDJ's CEO and corporate designee testified that SDJ "would never consider selling [its] product at Costco."  (ECF No. 274-3, Yang Dep. Tr. at 49:17-50:3.)

185.    Costco's consumers are very sophisticated.  (ECF No. 274-1, Wachsberg Dep. Tr. at 108:11-14; Wachsberg trial testimony.)

186.    SDJ believes that Apollo's consumers are sophisticated.  (ECF No. 274-4, Menkis Dep. Tr. at 246:23-247:24.)

187.    SDJ believes that its consumers are sophisticated.  (ECF No. 274-4, Menkis Dep. Tr. at 246:23-247:8.)

**M.    SDJ's Alleged Damages**

188.    On February 9, 2023, Apollo served its First Set of Interrogatories and sought information concerning SDJ's alleged damages.  (ECF No. 157-3, Apollo's First Set of Interrogs. to SDJ USA, Inc., Nos. 4 & 5; ECF No. 157-4, Apollo's First Set of Interrogs. to SDJ IP, Inc., ECF Nos. 4 & 5.)

189.    SDJ responded to Apollo's interrogatories as follows:

Interrogatory No. 4: Provide a computation, and total for, each and every category of damages you are seeking against Apollo.

Response: SDJ objects to this Interrogatory as prematurely seeking information that is the subject of expert disclosures . . . Subject to the foregoing General and Specific Objections, ***SDJ states that it will produce expert disclosures responsive to this Interrogatory in accordance with Federal Rule of Civil Procedure 26(a)(2) at the time provided in the operative Scheduling Order in this case***, currently ECF No. 45.

Interrogatory No. 5: Provide a computation of, and total for, each and every category of damages you are seeking against Costco.

Response: SDJ objects to this Interrogatory as prematurely seeking information that is the subject of expert disclosures . . . Subject to the foregoing General and Specific Objections, ***SDJ states that it will produce expert disclosures responsive to this Interrogatory in accordance with Federal Rule of Civil Procedure 26(a)(2) at the time provided in the operative Scheduling Order in this case***, currently ECF No. 45.

(ECF No. 158-7, SDJ USA Inc.'s Am. Resp. to Interr. Nos. 4 & 5; ECF No. 158-8, SDJ IP Inc.'s Am. Resp. to Interr. Nos. 4 & 5.)

190.    The only expert damages opinions that SDJ disclosed during the expert discovery period were those of Dr. Serdari and Mr. Plumpe. (ECF No, 284-2, Serdari Rpt.; ECF No. 114-7, Expert Report of John G.  Plumpe dated October 16, 2023 ("Plumpe Rpt.").)

191.    Dr. Serdari quantified and disclosed only one damages claim: prospective corrective advertising damages.  (ECF No, 284-2, Serdari Rpt.)

192.    Dr. Serdari's damages claim was dismissed as a matter of law on summary judgment, and Dr. Serdari's related opinions and testimony were excluded in their entirety.  (ECF No. 306, Opinion & Order dated October 23, 2024 ("Opinion & Order") at p. 25; ECF No. 309 In Limine Order dated October 28, 2024 ("In Limine Order") at p. 1.)

193.    Mr. Plumpe quantified and disclosed two damages claims: (1) reasonable royalty damages; and (2) disgorgement of profits damages.  (ECF No. 114-7, Plumpe Rpt. at pp. 21-23, ¶¶ 37-46 and pp. 24-47, ¶¶ 47-93.)

194.    Mr. Plumpe's reasonable royalty damages claim was dismissed on summary judgment.  (ECF No. 306, Opinion & Order at p. 25.)

195.    The only surviving category of damages that SDJ disclosed and quantified in its expert reports is Mr. Plumpe's disgorgement of profits claim.  (ECF No. 114-7, Plumpe Rpt. at pp. 21-23, ¶¶ 37-46.)

**1.    Mr. Plumpe's Disgorgement of Profits Damages Claim**

196.    In his disgorgement of profits claim, Mr. Plumpe did not calculate the net profits of Apollo that are attributable to the alleged infringement of SDJ's trademarks and/or trade dress. (ECF No. 114-7, Plumpe Rpt. at pp. 22-23, ¶¶ 39-42; ECF No. 131-3, Deposition Transcript of John G. Plumpe dated December 19, 2023 ("Plumpe Dep. Tr.") at 76:8-19.)

197.    Instead, Mr. Plumpe calculated Apollo's revenue from sales of the NUTRIUS® product, and then deducted cost of goods sold, advertising expenses, and a temporary price discount, and derived a "profits" number of $6.06 million.  (ECF No. 114-7, Plumpe Rpt. at p. 22, ¶ 42.)

198.    Mr. Plumpe did not deduct all of the expenses Apollo incurred in connection with the NUTRIUS® Product.  (ECF No. 131-3 Plumpe Dep. Tr. at 45:4-46:6.)

199.    Mr. Plumpe expected that the Apollo Parties would deduct the expenses they incurred in connection with the NUTRIUS® Product in this case.  (ECF No. 131-3, Plumpe Dep. Tr. at 45:25-46:6.)

200.    Mr. Plumpe did not conduct an apportionment analysis to determine the amount of profits Apollo earned that are attributable to the allegedly infringing trademark and/or trade dress. (ECF No. 131-3, Plumpe Dep. Tr. at 76:8-19.)

201.    Instead, Mr. Plumpe computed something "sort of akin to a -- to an incremental profit".  (ECF No. 131-3, Plumpe Dep. Tr. at 34:15-35:5.)

202.    When Mr. Plumpe analyzed Costco's financial statements, he did not calculate a disgorgement of profits claim based on the net profits of Costco that are attributable to the alleged infringement of SDJ's trademarks and/or trade dress.  (ECF No. 114-7, Plumpe Rpt. at p. 23, ¶¶ 43-46; ECF No. 131-3, Plumpe Dep. Tr. at 76:8-19.)

203.    Instead, Mr. Plumpe calculated Costco's revenue from sales of the NUTRIUS® Product, and then deducted cost of goods sold, and derived a "gross profits" number of $1.57 million.  (ECF No. 114-7, Plumpe Rpt. at p. 23, ¶¶ 43-46.)

ACTIVE 706029293v2

204.    Mr. Plumpe admitted the term "gross profit" is not found in the Lanham Act, and he further admitted the scope of his assignment was only to determine Costco's "gross profit," not "profits" as defined by the Lanham Act.  (ECF No. 131-3, Plumpe Dep. Tr. at 60:3-9, 61:3-4).)

### 2.  Mr. Gorowsky's Rebuttal of Mr. Plumpe's Disgorgement of Profits Damages Claim

205.    Apollo retained Tom Gorowsky as a damages expert, and he issued an expert report that rebuts Mr. Plumpe's disgorgement of profits damages claim.  (ECF No. 273-1, Gorowsky Rebuttal Rpt.)

206.    Mr. Gorowsky determined that Apollo's cost of goods sold specific to the Accused Product through July 2023 totals $7,377,949 (USD).  (ECF No. 273-1, Gorowsky Rebuttal Rpt. at p. 28 & Ex. 2.)

207.    Other expenses incurred specific to the Accused Product must also be deducted from Apollo's profits including: the total marketing expense of $1,132,752 (USD) (*Id.* at p. 28, & Exs. 2 & 5), legal expense totaling $26,568 (USD) *(Id.* at p. 29 & Exs. 2 & 6), salaries - development totaling $3,537,782.  (*Id*. at pp. 29-30 & Exs. 2, 4), and other indirect costs and expenses totaling $1,038,817.  (*Id.* at p. 30-32 & Exs. 2 & 3).

208.    From sales of the Accused Product through July 2023, Mr. Gorowsky determined that Apollo earned net profits of $486,046 off sales of the NUTRIUS® Product after accounting for all relevant costs and expenses, but this amount is before apportionment of Apollo's profits for factors unrelated to the alleged trade dress and trademark infringement.  (ECF No. 273-1, Gorowsky Rebuttal Rpt. at pp. 25-32.)

209.    Mr. Gorowsky determined that after apportionment of profits for factors unrelated to the alleged infringement, the portion of Apollo's profits (after accounting for all relevant costs and expenses) from sales of the NUTRIUS® Product attributable to the alleged infringement

through July 2023 ranges from $9,721 to $85,917.  (ECF No. 273-1, Gorowsky Rebuttal Rpt. at pp. 38-45.)

210.    Costco's cost of goods sold specific to the Accused Product through August 6, 2023 totals $11,472,699 (USD). (*Id.* at p. 34-35 & Ex. B.)

211.    Other expenses incurred specific to the Accused Product must be deducted from Costco's profits including controllable expenses in the amount of $928,251 and non-controllable expenses in the amount of $226,001.   (*Id.* at p. 35-37, & Ex. B.)

212.    The sales of the Accused Product through August 6, 2023 earned net profits after further accounting for non-controllable expenses of $639,029 and net profits after further accounting for non-controllable expenses of $413,028 (before apportionment of Costco's profits for factors unrelated to the alleged trade dress and trademark infringement).  (*Id.* at p. 37, & Ex. B).

213.    Mr. Gorowsky further determined that after apportionment of profits for factors unrelated to the alleged infringement, the portion of Costco's profits (after accounting for all relevant costs and expenses) from sales of the NUTRIUS® Product attributable to the alleged infringement through July 2023 ranges from $8,261 to $12,781.  (ECF No. 273-1, Gorowsky Rebuttal Rpt. at pp. 38-45.)

214.    Mr. Plumpe did not prepare and serve a sur-rebuttal expert report that rebuts Mr. Gorowsky's damages opinions, nor did any other SDJ expert.  The Gorowsky Report is unrebutted by SDJ.  (ECF No. 131-3 Plumpe Dep. Tr. at 34:15-35:5, 45:4-46:6, 76:8-19; ECF No. 114-7, Plumpe Rpt. at p. 23, ¶¶ 43-46.)

### 3. There are No Damages Claims Other Than Disgorgement of Profits in this Case.

215.    SDJ has produced no evidence that it has been damaged.

216.    SDJ has not produced any financial information for year-end 2023, year-end 2024, or year-to-date 2025 that would support the purported fact that "Revenue from sales of Brazilian Bum Bum Cream exceeded $100 million through 2022 and continues to grow each year."

217.    SDJ has not suffered any damages as a result of any alleged trade dress or trademark infringement.  (ECF No. 273-1, Gorowsky Rebuttal Rpt. at pp. 14, 27-32, 38-45 & Exs. 2-6.)

218.    There is no evidence to support the assertion that SDJ's BUM BUM Product is a premium beauty brand.  (ECF No. 151-1, Simonson Rebuttal Rpt. at p. 8 ¶ 20.)

219.    SDJ's goodwill in the Bum Bum Trade Dress and Marks has not been harmed because SDJ has not shown any alleged trade dress and/or trademark infringement.  *See* ECF No. 285-1, Rebuttal Expert Report of Brian Buss ("Buss Rpt.") at pp. 11-13, 16 (no evidence that SDJ's brand was damaged); Letter Brief seeking to allow the Apollo Parties to file a motion to strike SDJ's references to previously undisclosed and unquantified damages, including purported damages related to harm to SDJ's goodwill in Trade Dress and Marks and vague trial testimony from Yang and Menkis.  (ECF No. 324, Blofield Letter Brief dated January 14, 2025 ("1/14/2025 Letter Brief".)

220.    There has not been any misperception that SDJ has authorized a lower-cost product.  (ECF No. 150-3, Dr. Jay Survey 2 Rpt. at pp. 1-2, 3, 30-31; ECF No. 150-4, Jay Dep. Tr. at 114:1-11, 171:8-172:2; ECF No. 151-1, Simonson Rpt. at pp. 6 ¶ 13, 8 ¶ 18, 23, ¶ 46, 24-27 ¶¶ 49-55; Simonson Dep. Tr. at 50:11-51:24; ECF No. 274-15, Neal Rpt. at pp. 7 ¶ 2.3, 9 ¶ 3.1; ECF No. 136-2, Neal Dep. Tr. at 68:5-7, 71:17-21; ECF No. 273-1, Gorowsky Rebuttal Rpt. at Ex. E; *See* ECF No. 264 at pp. 2-6, the Apollo Parties' Objs. SDJ's Actual Confusion Evid., Reply

56.1 Statement Undisputed Fact Liab. & Supp. 56.1 Statement Undisputed Fact Liab. (containing arguments that support this assertion.).)

221.    SDJ has not been harmed by losing control of the quality of goods associated with the Bum Bum Trade Dress because SDJ has not shown any evidence of SDJ's purported damages. *See* ECF No. 285-1, Buss Rpt. at pp. 11-13, 16 (there is no evidence that SDJ's brand was damaged).  *See also* (ECF No. 324, 1/14/2025 Letter Brief.)

222.    SDJ failed to disclose any damages theory or damages calculation related to harm from loss of control over quality of goods in SDJ's interrogatory responses.  (ECF Nos. 157-5, SDJ USA Inc.'s Resp. to Apollo's First Interrogs.; 157-6, SDJ IP Inc.'s Resp. to Apollo's First Interrogs.; 157-7, SDJ USA Inc.'s Am. Resp. to Apollo's First Interrogs.; 157-8, SDJ IP Inc.'s Am. Resp. to Apollo's First Interrogs.)

223.    SDJ has produced no evidence that it has lost control over the quality of goods.

224.    Consumer trust in SDJ has not been harmed because SDJ has not shown any alleged damages it suffered as a result of any alleged trade dress or trademark infringement.  (ECF No. 274-10, SDJ 0001656-167 at 1656 and 1670;  ECF No. 274-3, Yang Dep. Tr. at 232:25-233:14; ECF No. 274-4, Menkis Dep. Tr. at 208:2:16; ECF No. 274-7, Hayakawa Dep. Tr. at 52:2-20; 54:8-55:7, 55:20-56:7, 58:2-5; ECF Nos. 274-3, Yang Dep. Tr. at 238:18-14; ECF No. 295, Littman-Johnson Decl. at ¶19.)  *See* (ECF No. 324, 1/14/2025 Letter Brief.)

225.    SDJ failed to disclose any damages theory or damages calculation related to damage to consumer trust in SDJ's interrogatory responses.  (ECF Nos. 157-5, SDJ USA Inc.'s Resp. to Apollo's First Interrogs.; 157-6, SDJ IP Inc.'s Resp. to Apollo's First Interrogs.; 157-7, SDJ USA Inc.'s Am. Resp. to Apollo's First Interrogs.; 157-8, SDJ IP Inc.'s Am. Resp. to Apollo's First Interrogs.)

226.     SDJ has produced no evidence that there has been damage to the consumer trust in the Trade Dress and Marks.

227.     Employee morale has not been harmed because SDJ has not shown any alleged damages it suffered as a result of any alleged trade dress or trademark infringement.  (ECF No. 274-10, SDJ 0001656-167 at 1656 and 1670;  ECF No. 274-3, Yang Dep. Tr. at 232:25-233:14; ECF No. 274-4, Menkis Dep. Tr. at 208:2:16; ECF No. 274-7, Hayakawa Dep. Tr. at 52:2-20; 54:8-55:7, 55:20-56:7, 58:2-5; ECF Nos. 274-3, Yang Dep. Tr. at 238:18-14; ECF No. 295, Littman-Johnson Decl. at ¶19.) *See* (ECF No. 324, 1/14/2025 Letter Brief.)

228.     SDJ failed to disclose any damages theory or damages calculation related to related to damage to employee morale in SDJ's interrogatory responses and no disclosure of any fact witness who would testify about SDJ's damages.  (ECF Nos. 157-5, SDJ USA Inc.'s Resp. to Apollo's First Interrogs.; 157-6, SDJ IP Inc.'s Resp. to Apollo's First Interrogs.; 157-7, SDJ USA Inc.'s Am. Resp. to Apollo's First Interrogs.; 157-8, SDJ IP Inc.'s Am. Resp. to Apollo's First Interrogs.)

229.     SDJ has produced no evidence that there has been damage to employee morale.

230.     SDJ has not been harmed by fewer customers being willing to pay the premium price SDJ charges for its BUM BUM Product as a result of infringement because SDJ has not shown any alleged trade dress and/or trademark infringement.  *See* (ECF No. 324, 1/14/2025 Letter Brief.)

231.     There was no disclosure of any damages theories or damages calculations related to purported damage from fewer customers being willing to pay premium prices for SDJ's products in SDJ's interrogatory responses.  (ECF Nos. 157-5, SDJ USA Inc.'s Resp. to Apollo's

First Interrogs.; 157-6, SDJ IP Inc.'s Resp. to Apollo's First Interrogs.; 157-7, SDJ USA Inc.'s Am. Resp. to Apollo's First Interrogs.; 157-8, SDJ IP Inc.'s Am. Resp. to Apollo's First Interrogs.)

232.    SDJ has produced no evidence that it has been damaged from fewer customers being willing to pay premium prices for SDJ's products.

233.    SDJ did not disclose any fact witnesses that would purportedly try to testify about damages in SDJ's interrogatory responses. (ECF No. 157-1, SDJ's Initial Disclosures; ECF No. 157-2, SDJ's Am. Initial Disclosures.)  Moreover, when they were deposed, SDJ's 30(b)(6) witnesses Ms. Yang and Ms. Menkis provided no testimony regarding damages and failed to provide any damages calculations. (ECF No. 318-1, Yang Dep. Tr. at 15:9-16:5, 308:12-313:25; ECF No. 278-11, Menkis Dep. Tr. at 264:3-9, 271:22-272:3.)  Instead, they relied on SDJ's experts. (ECF No. 278-12, Yang Dep. Tr. at 310:24-25, 312:13-17, 312:24-313:25; ECF No. 278-11, Menkis Dep. Tr. at 264:3-9, 271:22-272:3.)

234.    The Apollo Parties have not caused any harm to SDJ, much less irreparable harm and SDJ has produced no evidence of irreparable harm caused to SDJ by the Apollo Parties.  (ECF No. 150-3, Survey 2 Report E. Deborah Jay, Ph.D. dated Nov. 9, 2023 ("Dr. Jay Survey 2 Rpt.") at pp. 1-3, 30-31; ECF No. 150-4, Jay Dep. Tr. at 114:1-11, 171:8-172:2; ECF No. 151-1, Simonson Rpt. at p. 6 ¶ 13, p. 8, ¶ 18; 23, ¶ 46, p. 24-27 ¶¶ 49-55; ECF No. 151-2, Simonson Dep. Tr. at 50:11-51:24; ECF No. 274-15, Neal Rpt. at p. 7 ¶ 2.3, p. 9 ¶ 3.1; ECF No. 136-2, Neal Dep. Tr. at 68:5-7, 71:17-21; ECF No. 273-1, Gorowsky Rebuttal Rpt. at Ex. E; ECF No. 274-4, Menkis Dep. Tr. at 251:7-259:2; ECF No. 264 at pp. 2-6, the Apollo Parties' Objs. SDJ's Actual Confusion Evid., Reply 56.1 Statement Undisputed Fact Liab. & Supp. 56.1 Statement Undisputed Fact Liab. which contains arguments that support this assertion; ECF No. 274-1, Wachsberg Dep. Tr. at 106:6-107:18, 105:18-109:20, 121:5-123:7, 144:4-25, 183:20-184:14, 208:8-209:22; Blofield

Decl. Ex. 1, Wachsberg Dep. Tr. at  223:14-19, 246:10-25; Wachsberg trial testimony; Blofield

Decl. Ex. 26, Bubitz Dep. Tr. at 76:9-19; Bubitz trial testimony; *See* ECF No. 284-4, Plumpe Rpt.;

ECF No. 306, Summ. J. Order, ECF No. 309 at 1, Daubert ruling.)

235.    SDJ has an adequate remedy at law, as SDJ is seeking disgorgement of Apollo and

Costco's profits. (ECF No. 284-4. Plumpe Rpt. at pp. 21-23, 48, Tab 4; ECF No. 152-1, Cline

Rebuttal Rpt. at p. 12; ECF No. 273-1, Gorowsky Rebuttal Rpt. at p. 7, Ex. E; ECF No. 136-2,

Neal Dep. Tr. at 68:5-7; *see* Blofield Decl. Ex. 57, Apollo0003215.xlsx, Apollo0005162.xlsx;

Blofield Decl. Ex. 26, Bubitz Dep. Tr. at 142:2-143:2; Bubitz trial testimony; (ECF 67 ¶ 137, Sec.

Am. Countercl.; ECF No. 150-3, Dr. Jay Survey 2 Rpt. at pp. 1-2, 3, 30-31; No. 150-4, Jay Dep.

Tr. at 114:1-11, 171:8-172:2; ECF No. 151-1, Simonson Rpt. at p. 6 ¶ 13, p. 8, ¶ 18; 23, ¶ 46; 24-

27 ¶¶ 49-55, 50:11-51:24; ECF No. 274-15, Neal Rpt. at p. 7 ¶ 2.3; p. 9 ¶ 3.1; ECF No. 136-2,

Neal Dep. Tr. at 68:5-7; 71:17-21; ECF No. 274-4, Menkis Dep. Tr. at 251:7-259:2. *See also* ECF

No. 264 at pp. 2-6, the Apollo Parties' Objs. SDJ's Actual Confusion Evid., Reply 56.1 Statement

Undisputed Fact Liab. & Supp. 56.1 Statement Undisputed Fact Liab. (containing arguments that

support this assertion).)

236.    An injunction would impose hardship on the Apollo Parties.  (Wachsberg trial

testimony; Bubitz trial testimony.)

237.    An injunction would harm the public's interest in purchasing beauty products at a

lower price with the NUTRIUS® Product retailing for $19.99 for a two-pack of 6 oz. products in

Costco stores (ECF 274-2, Bubitz Dep. Tr. at 157:13-16; Bubitz trial testimony) as compared with

SDJ's BRAZILIAN BUM BUM product retails for $48 for a single 240 ml or 8.1 oz jar. (ECF

No. 274-4, Menkis Dep. Tr. at 215:4-6.)

ACTIVE 706029293v2

238.    SDJ failed to disclose any punitive or treble damages or damages calculations related thereto in SDJ's interrogatory responses.  (ECF Nos. 157-5, SDJ USA Inc.'s Resp. to Apollo's First Interrogs.; 157-6, SDJ IP Inc.'s Resp. to Apollo's First Interrogs.; 157-7, SDJ USA Inc.'s Am. Resp. to Apollo's First Interrogs.; 157-8, SDJ IP Inc.'s Am. Resp. to Apollo's First Interrogs.) *See* (ECF No. 324, 1/14/2025 Letter Brief.)

239.    SDJ has produced no evidence of any attempts to mitigate its purported damages.

240.    There was no bad-faith conduct by the Apollo Parties.  (ECF No. 274-1, Wachsberg Dep. Tr. at 32:34-33:9, 105:18-109:20, 121:5-123:7, 144:13-25, 183:20-184:14, 208:8-209:22; ECF No. 295-2, Wachsberg Dep. Tr. at 49:2-15, 51:6-12, 116:17-117:6, 220:14-22, 221:8-24, 224:19-227:2, 263:2-265:23;  Blofield Decl. Ex. 1, Wachsberg Dep. Tr. at 35:2-9, 35:20-23, 191:10-21, 192:6-11, 192:15-17, 223:14-19, 246:10-25; Wachsberg trial testimony; ECF 274-2, Bubitz Dep. Tr. at 157:13-16; ECF No. 295-11, Bubitz Dep. Tr. at 33:7-34:3, 132:23-133:18; ECF No. 218-2, Bubitz Dep. Tr. at 71:18-22; Blofield Decl. Ex. 26, Bubitz Dep. Tr. at 58:7-19, 76:9-19, 93:13-25; ECF No. 153, Bubitz Decl. at ¶¶ 6-8, Ex. A; ECF No. 274-13, Costco0004421-4432 at 4423; ECF No. 275-1, Bubitz Decl., Ex. A at p. 4; Bubitz trial testimony; ECF No. 273-1, Gorowsky Rebuttal Rpt. at p. 7, Ex. E; ECF No. 136-2, Neal Dep. Tr. at 68:5-7; *see* Blofield Decl. Ex. 57, Apollo0003215.xlsx, Apollo0005162.xlsx; ECF No. 274-4, Menkis Dep. Tr. at 70:9-19, 237:14-239:12, 215:4-6, 284:11-285:17; ECF No. 274-7, Hayakawa Dep. Tr. at 68:19-69:8; ECF No. 274-3, Yang Dep. Tr. at 52:18-20, 60:23-62:11; ECF No. 233-2, Jay Dep. Ex. 3, SDJ 0003018-23 & 3030-32 at 3031; ECF No. 295-10, Costco0000819; Blofield Decl. Ex. 59, Costco0004473; ECF No. 261-13, Costco0000842; ECF No. 295-2, ECF No. 152-1, Cline Rebuttal Rpt. at p. 32, *See id*. at 32-34; Blofield Decl. Ex. 13, Supp. Cline Rpt. at pp. 35, *see id.* at pp. 35-37; ECF No. 285-1, Buss Rpt. at 13; ECF No. 295-1, Rebuttal Expert Report of Itamar Simonson, Ph.D. dated

November 29, 2023 ("Simonson Rebuttal Rpt.") at pp. 10-11 ¶ 24; Blofield Decl. Ex. 3A, Apollo0005183-85 (video at 23:56-25:55) & 3B, Apollo0005309-49 transcript of video at 25:2-26:7; Blofield Decl. Ex. 4, Apollo0005244-74 at 5267; Blofield Decl. Ex. 5, Apollo0005275-86 at 5275 (bottom picture under May 2013); Blofield Decl. Ex. 6, *see, e.g.*, Quotation from TOLY Apollo0005350.) (Blofield Decl. Ex. 2, Yang Dep. Tr. at 226:8-18, 227:18-228:16 & Blofield Decl. Ex. 7, Yang Dep. Ex. 14 SDJ 0003137 (picture of stock TOLY Jar under the caption "Started Building the Product Line-up"); Blofield Decl. Ex. 8, SDJ 0001783.)

## PROPOSED CONCLUSIONS OF LAW

I.    **Neither Apollo Nor Costco Has Infringed SDJ's Claimed Trade Dress Rights.**

A.    **SDJ Does Not Own a Protectable Product Design Trade Dress.**

1.    SDJ's Claimed Trade Dress is generic because the jar that SDJ now claims encompasses its trade dress is a pre-existing, standard, stock jar that is sold by suppliers, including, TOLY Products since at least May 2013.

2.    SDJ's Claimed Trade Dress is Not Protectable because SDJ's alleged trade dress, taken as a whole, is functional.

a)    The rounded bottom of the jar and the large, overhanging lid are common features of product design for cosmetic and body products.

b)    The rounded bottom of the jar and the large, overhanging lid serve several utilitarian functions, such as: (i) allowing consumers to more easily remove, or scoop out, the cream; (ii) providing strength to the container so that it does not break during packaging, transport, merchandising, or shipping to end consumers, which is particularly important for products containing heavy, thick creams where the weight of the product makes the container especially vulnerable to breakage

during transport; and (iii) allowing consumers to more easily grasp the lid and tighten it to create a seal that preserves the remaining cream and for sanitation purposes.

     c)     The writing on the lid is also functional because there is simply insufficient space on the container itself to decorate the brand name, product, product descriptor, and key ingredient call outs.

     d)     The color of the product serves the functional purpose of identifying which scent the consumer is purchasing.

     e)     The stock jar is available through multiple suppliers, including SDJ's original supplier TOLY and Apollo's suppliers, thereby lowering the cost to produce the jar.

3.   SDJ's Claimed Product Design Trade Dress Is Not Inherently Distinctive Nor Did It Acquire Secondary Meaning Before Apollo's NUTRIUS® Product First Became Available in June 2022.

     a)     Factor 1 regarding a secondary meaning survey weighs heavily against a finding of secondary meaning because SDJ did not conduct a secondary meaning survey and the SDJ's only consumer survey evidence is a 2021 study which found that SDJ's "brand has low awareness relative to other prestige brands, with a rate of recognition of just 9% compared to the industry standard of 24%."

        i.   The Apollo Parties submitted an unrebutted secondary meaning survey finding that "only 17% of relevant consumers associated the appearance of the Brazilian Bum Bum Cream jar with scented body creams exclusively from [SDJ], or a single anonymous source."

     b)     Factor 2 regarding advertising expenditures weighs against a finding of secondary meaning with only an insignificant $2.5 to $4 million spent each year with

no evidence as to whether its advertising spend is "significant." In addition, SDJ does not know what percentage of SDJ's advertisements show or mention the BRAZILIAN BUM BUM CREAM product, or what percentage of SDJ's advertisements show or mention the BRAZILIAN BUM BUM CREAM product and no other products.

c)    Factor 3 regarding unsolicited media coverage weighs heavily against a finding of secondary meaning because SDJ does not keep track of unsolicited media coverage and has identified a handful of articles many that make no mention of the claimed trade dress – the BRAZILIAN BUM BUM CREAM jar – nor show any images of the jar.

d)    Factor 4 regarding sales success weighs against a finding of secondary meaning because SDJ does not provide any context for its alleged "sales success," and  in any event "sales success alone cannot establish secondary meaning."

e)    Factor 5 regarding attempts to plagiarize sales success weighs heavily against a finding of secondary meaning because SDJ only submitted evidence shows that SDJ has coexistence with numerous third parties selling moisturizing cream in a jar with an overhanging lid, with the product name on the lid (including product names like "Brazilian Vibrant Bum Bum Cream," "Rozino Brazilian Bum Bum Cream," and "Brazilian Booty Cream") in a yellow and white color scheme.

f)    Factor 6 regarding length and exclusivity of use weighs heavily against a finding of secondary meaning because SDJ's use of the claimed elements of its trade dress since 2016 has not been exclusive.

g)    Because each of the secondary meaning factors weigh against a finding of secondary meaning, SDJ has not met its burden to prove that its claimed product

design trade dress has acquired secondary meaning; and as a result, SDJ's claimed trade dress is, therefore, not protectable trade dress and its trade dress infringement claims fail.

II.     **SDJ Has Not Met Its Burden To Articulate Its Trade Dress With Particularity.**

1.     SDJ's claimed trade dress with imprecise descriptors like "gently rounded," "large, overhanging lid," and "color-block combination of yellow and white components." lack the requisite level of specificity required under the Lanham Act so its trade dress claim fails.

III.    **There is No Likelihood Of Confusion Between SDJ's Claimed Trade Dress And The NUTRIUS® Product Jar.**

A.    **There is no likelihood of confusion between SDJ's claimed trade dress and the stock NUTRIUS® Product Jar.**

1.     *Polaroid* Factor 1 regarding the strength of SDJ's product design trade dress weighs heavily against a finding of a likelihood of confusion because a product design trade dress cannot be inherently distinctive and SDJ failed to establish acquired distinctiveness so its trade dress is weak.

2.     *Polaroid* Factor 2 regarding the similarity of the parties' product designs weighs heavily against a finding of a likelihood of confusion because Apollo prominently displays Apollo's NUTRIUS® house mark on its product and packaging and SDJ prominently displays SDJ's SOL DE JANEIRO house mark on SDJ's BRAZILIAN BUM BUM CREAM product and packaging.

a)    There are many other prominent distinctions between the parties' product designs, including: the parties' products have (i) different names (i.e., NUTRIUS® BRAZILIAN BODY BUTTER CREAM vs. BRAZILIAN BUM

BUM CREAM); (ii) different color schemes (i.e., white jar with bright yellow lid vs. caramel jar with bone color lid); (iii) different lettering colors (i.e., black vs. gray); (iv) different lettering styles (i.e., small upright capital letters vs. small italicized script using upper and lower-case letters); (v) different designs on the top of the product (i.e., NUTRIUS® vs. SDJ's SOL DE JANEIRO house mark and logo); and (vi) different container sizes (i.e., 6 oz vs. 8.1 oz).

b)      In addition, the contexts in which the parties' products are found in the marketplace are very dissimilar including being primarily sold (i) in different packaged quantities (i.e., two-pack vs. individually); (ii) in different packaging formats (i.e., a plastic clamshell vs. a decorative cardboard box); and (iii) at significantly different price points (i.e., $1.67/oz vs. $5.93/oz).

3.      *Polaroid* Factor 3 regarding the degree to which the parties' products compete weighs heavily against a finding of a likelihood of confusion because the parties' products are sold in disparate markets.

a)      Over 91% of the accused NUTRIUS® Product is sold through Costco's chain of membership warehouses that carry merchandise at lower prices than are typically found at conventional retail sources whereas SDJ does not sell, and has never sold, its BRAZILIAN BUM BUM CREAM product through Costco or any other big box store.  Rather, SDJ primarily sells its BRAZILIAN BUM BUM CREAM product through Sephora (a premium beauty retailer of expensive beauty products) with whom SDJ has had an exclusivity agreement since approximately 2016 and SDJ has sold approximately 70% of its BRAZILIAN BUM BUM CREAM product through Sephora.

b)      The parties' products are sold to disparate consumers with Costco's consumers, the median age of readers of the Costco Connection magazine is 53 years-old (ECF No. 150-3, Dr. Jay Survey 2 Rpt. at p 5, n.13; Bubitz trial testimony; Blofield Decl. Ex. 58, Costco0004507.), whereas SDJ's core consumers are millennials. (ECF No. 274-4, Menkis Dep. Tr. at 70:9-19; 284:11-285:17.).

c)      The parties' products also do not compete on price where the accused NUTRIUS® Product retails for $19.99 for a two-pack of 6 oz products in Costco stores versus SDJ's BRAZILIAN BUM BUM CREAM product retails for $48 for a single 240 ml or 8.1 oz jar.

4.      *Polaroid* Factor 4 regarding the likelihood SDJ will expand into the Apollo Parties' Markets degree to which the parties' products compete weighs heavily against a finding of a likelihood of confusion because over 91% of the accused NUTRIUS® Product is sold at Costco and SDJ has never sold its BRAZILIAN BUM BUM CREAM product in Costco or any other membership-only big box store and would never consider selling its product at Costco.

5.      *Polaroid* Factor 5 regarding evidence of actual confusion weighs heavily against a finding of a likelihood of confusion because SDJ presented no admissible or persuasive evidence of actual confusion.

a)      SDJ's confusion survey, conducted by Dr. Neal only showed, at best, a 15.1% net confusion which is far below the acceptable rates of confusion in this Circuit.

b)      Dr. Neal's survey, at best, shows 15.1% of confusion in less than 1% of Apollo's sales because he failed to replicate market conditions when he tested only sales through Amazon where Apollo makes less than 1% of sales of its NUTRIUS® Product.

c)      Apollo's two survey experts also found no confusion with Dr. Jay's confusion survey that concluded that the level of forward confusion was only 3% and the level of post-sale confusion was only 5% and Dr. Simonson similarly found a net confusion rate of just 3.8%.

6.      *Polaroid* Factor 6 *regarding* the good faith of the Apollo Parties weighs heavily against a finding of a likelihood of confusion because there is no evidence demonstrating that the Apollo Parties' acted with the intent to deceive and to confuse consumers.

a)      The Apollo Parties took many deliberate steps to avoid confusion between the parties' jars, including: (1) choosing a bright yellow top and white bottom compared to SDJ's gold bottom and white top; (2) choosing the mark BRAZILIAN BODY BUTTER CREAM and not a product referencing the "bum" or "butt;" (3) choosing an entirely different font and style of writing for the jar; (4) primarily packaging its product in a blister two-pack, compared to SDJ's single-packaged jar; and (5) prominently features its house mark NUTRIUS® on the jar, on the packaging, and on the pallets on which the product is sold at Costco stores.

ACTIVE 706029293v2

b) Apollo's placement of its distinctive house mark NUTRIUS® on its jar, packaging, and pallets, defeats SDJ's claim of bad faith.

c) It is not bad faith to copy functional elements of the claimed trade dress such as the jar itself which is a stock jar common to the industry.

7.     *Polaroid* Factor 7 regarding the quality of Apollo's products weighs heavily against a finding of a likelihood of confusion because there is no evidence that Apollo's product is of poor quality or a lesser quality than SDJ's product.

a) The evidence showing the number returns of Apollo's NUTRIUS® Product at Costco in 2022 provides that less than 0.04 of 1% of consumers had an allegedly negative reaction to product shows that it is a quality product.

8.     *Polaroid* Factor 8 regarding the sophistication of SDJ's customers weighs heavily against a finding of a likelihood of confusion because purchasers of fragrances and skin care products tend to exercise a high degree of care and brand consciousness and SDJ has admitted that both SDJ and Apollo's consumers are sophisticated.

9.     Each of the each of the *Polaroid* likelihood of confusion factors weighs against a finding of likelihood of confusion; and therefore, declaratory judgment is entered of no infringement of SDJ's claimed trade dress.

II.   **The Apollo Parties Have Not Infringed SDJ's Rights In The Trademarks BRAZILIAN BUM BUM® and BRAZILIAN BUM BUM CREAM.**

    A.   **SDJ's BRAZILIAN BUM BUM CREAM Marks Are Not Entitled to Trademark Protection.**

       1.   SDJ'S BRAZILIAN BUM BUM CREAM Marks are merely descriptive without any acquired distinctiveness, and therefore, are not entitled to trademark protection.

         a)   The BRAZILIAN BUM BUM products contain ingredients sourced from Brazil, such as cupuaçu butter, guarana extract, coconut oil and açaí oil, and thus, the term "Brazilian" is merely descriptive of the origin of these ingredients.

         b)   The term "Bum Bum" is the word most commonly used in Brazil to refer to someone's "rear end" and the BRAZILIAN BUM BUM product is intended to be used on the consumer's rear end, therefore, the term "Bum Bum" is merely descriptive of what the product is for and how its intended to be used.

         c)   SDJ's common law mark includes the word "cream" which is generic for the type of product that BRAZILIAN BUM BUM CREAM is – a body cream; and therefore, SDJ's BRAZILIAN BUM BUM Marks are merely descriptive.

    B.   **There Is Not Likelihood of Confusion between SDJ's BRAZILIAN BUM BUM CREAM Marks and the Apollo Parties' NUTRIUS® BRAZILIAN BODY BUTTER CREAM Mark.**

       1.   SDJ admitted in pre-suit communications that Apollo's BRAZILIAN BODY BUTTER CREAM Mark is "not necessarily independently infringing" of SDJ's BRAZILIAN BUM BUM Marks.

2.    The *Polaroid* factors weigh heavily in favor of the Apollo Parties and a finding of no likelihood of confusion.

a)    *Polaroid* Factor 1 regarding the strength of SDJ's BRAZILIAN BUM BUM Marks weighs heavily against a finding of a likelihood of confusion because SDJ's BRAZILIAN BUM BUM Marks are merely descriptive and have not acquired secondary meaning so they are not entitled to any trademark protection.

b)    *Polaroid* Factor 2 regarding the similarity of the parties' marks weighs heavily against a finding of a likelihood of confusion because the parties' marks differ significantly in sight, sound, and meaning.

  i.    While both parties' marks use the terms "Brazilian" and "Cream," the shared use of these term is legally insufficient to prove confusing similarity as the term "Brazilian" is merely descriptive of where the parties' ingredients are sourced, and because the term "cream" is generic for the type of product the parties sell.

  ii.    The terms "body butter" and "bum bum" which make up the rest of the parties marks (BRAZILIAN BUM BUM and BRAZILIAN BODY BUTTER CREAM) are not similar in sight, sound, or meaning because the term "body butter" indicates that the product is meant to be applied to the consumer's entire body while the term "bum bum" indicates that SDJ's product is intended to be applied to the consumer's rear end (this intended use is amplified by SDJ's marketing).

  iii.    Apollo always displays the BRAZILIAN BODY BUTTER CREAM mark alongside its fanciful house mark NUTRIUS® and SDJ always displays its BRAZILIAN BUM BUM Marks alongside its house mark SOL DE JANEIRO.

c)    The remaining *Polaroid* likelihood of confusion factors weigh against SDJ and in favor of the Apollo Parties on the trademark infringement claims for the same reasons they weigh against SDJ and in favor of the Apollo Parties on the trade dress infringement claims.

69

ACTIVE 706029293v2

III.   **Because SDJ's Trade Dress and Trademark Infringement Claims Fail, So Too Must SDJ's Contributory Trade Dress and Trademark Infringement Claims and New York Common Law Unfair Competition Claim.**

### A. Contributory Infringement

1.     Because SDJ has not proven trade dress infringement, SDJ's contributory trade dress infringement claim also fails.

2.     SDJ failed to establish the underlying direct trade dress infringement in order to prove contributory trade dress infringement.

3.     Because SDJ has not proven trademark infringement, SDJ's contributory trademark infringement claim also fails.

4.     SDJ failed to establish the underlying direct infringement in order to prove contributory trademark infringement.

5.     SDJ has not met its burden to prove that Apollo intentionally induced Costco to infringe SDJ's claimed trade dress.

6.     SDJ has not met its burden to prove that Apollo intentionally induced Costco to infringe SDJ's claimed trademark.

### B. Unfair Competition Under New York Law

1.     SDJ cannot prove that Apollo and Costco are liable to SDJ for trade dress infringement.

2.     SDJ cannot prove that Apollo and Costco are liable to SDJ for trademark infringement.

3.     SDJ has not shown that there is actual confusion among purchasers or potential purchasers about the source, origin, sponsorship, or approval of Apollo's and Costco's product; and

ACTIVE 706029293v2

4.      SDJ has not proven that Apollo and Costco acted in bad faith in misappropriating the goodwill of SDJ.

5.      SDJ failed to prove all of the elements of a Lanham Act unfair competition claim.

6.      For the reasons set forth above, SDJ's trade dress infringement claims fails; therefore, SDJ's New York common law unfair competition claim also fails.

7.      For the reasons set forth above, SDJ's trademark infringement claim fails, therefore, SDJ's New York common law unfair competition claims also fail.

## IV.    Apollo is Entitled to Declaratory Judgment Relief.

1.      Because SDJ has not proven trade dress infringement under the Lanham Act, Apollo is entitled to declaratory judgment that Apollo's BRAZILIAN BODY BUTTER CREAM product design does not infringe SDJ's claimed trade dress rights.

2.      Because SDJ has not proven trademark infringement under the Lanham Act, Apollo is entitled to declaratory judgment that Apollo's BRAZILIAN BODY BUTTER CREAM trademark does not infringe SDJ's claimed trademark rights.

3.      Because SDJ has not proven its state and common law claims, Apollo is entitled to declaratory judgment that Apollo's BRAZILIAN BODY BUTTER CREAM product design does not infringe SDJ's claimed common law trade dress rights.

4.      Because SDJ has not proven its state and common law claims, Apollo is entitled to declaratory judgment that Apollo's BRAZILIAN BODY BUTTER CREAM product trademark does not infringe SDJ's claimed common law trademark rights.

## V.    SDJ Is Not Entitled To Injunctive Relief Because It Has Not Suffered Any Injury, Let Alone Irreparable Injury.

1.      SDJ has not proven that it has suffered any injury,

2.      SDJ has not proven that it has suffered an irreparable injury.

71

3.    SDJ is not entitled to a permanent injunction.

**VI.    SDJ Is Not Entitled to Monetary Damages**

1.    SDJ is not entitled to any monetary damages.

2.    SDJ's disgorgement of Apollo's profits (the only remaining damages in this case) is limited to, at most, $9,721 to $85,917.00. (ECF No. 273-1, Gorowsky Rebuttal Rpt. at pp. 38-45.)

3.    SDJ's disgorgement of Costco's profits is limited to, at most, $8,261 to $12,781. (ECF No. 273-1, Gorowsky Rebuttal Rpt. at pp. 38-45.)

4.    The Apollo Parties' damages expert, Mr. Gorowsky, determined that Apollo earned net profits of $486,046 off sales of the NUTRIUS® Product after accounting for all relevant costs and expenses.  (ECF No. 273-1, Gorowsky Rebuttal Rpt. at pp. 38-45.)

5.    This amount is before apportionment of Apollo's profits for factors unrelated to the alleged trade dress and trademark infringement.  (*Id.* at p. 25.)

6.    Mr. Gorowsky further determined that after apportionment of profits for factors unrelated to the alleged infringement, the portion of Apollo's profits (after accounting for all relevant costs and expenses) from sales of the NUTRIUS® Product attributable to the alleged infringement through July 2023 ranges from $9,721 to $85,917. (ECF No. 273-1, Gorowsky Rebuttal Rpt. at pp. 38-45.)

7.    Mr. Gorowsky also determined that Costco earned net profits of $413,028 off sales of the NUTRIUS® Product after accounting for all relevant costs and expenses. (ECF No. 114-1, at pp. 32-37.)

8.    This amount is before apportionment of Costco's profits for factors unrelated to the alleged trade dress and trademark infringement. (ECF No. 273-1, Gorowsky Rebuttal Rpt. at

72

p. 32.)

9.      Mr. Gorowsky further determined that after apportionment of profits for factors unrelated to the alleged infringement, the portion of Costco's profits (after accounting for all relevant costs and expenses) from sales of the NUTRIUS® Product attributable to the alleged infringement through July 2023 ranges from $8,261 to $12,781. (ECF No. 273-1, Gorowsky Rebuttal Rpt. at pp. 38-45.)

10.     SDJ's damages expert did not prepare and serve a sur-rebuttal expert report that rebuts Mr. Gorowsky's damages opinions; and therefore, Mr. Gorowsky's damages opinions are unrebutted and are accepted by the Court. (Findings of Fact ¶ 214.)

## VII.    SDJ Cannot Obtain Treble Damages or Attorney's Fees

1.      SDJ cannot show that the Apollo Parties' actions in violating section 1125(c) were willful.  *See* 15 U.S.C.A. § 1117(a).

2.      SDJ is not the prevailing party.

3.      This is not an exceptional case where deliberate and flagrant infringement has occurred.

4.      Apollo did not act in bad faith.

5.      Costco did not act in bad faith.

6.      There is no evidence of fraud on the part of Apollo.

7.      There is no evidence of fraud on the part of Costco.

8.      There was no willful infringement by Apollo.

9.      There was no willful infringement by Costco.

10.     This is not an exceptional case and there is no basis to award treble damages.

11.     This is not an exceptional case and there is no basis to award attorney's fees.

73

VIII.   **Affirmative Defenses**

    A.   **Failure to State a Claim of Upon Which Relief Can Be Granted**

    1.   SDJ has failed to plead the requisite elements to establish a protectable interest in the trade dress identified in its Amended Complaint; and therefore, SDJ has failed to state a claim upon which relief can be granted.

    2.   SDJ cannot establish a likelihood of confusion; and therefore, SDJ has failed to state a claim on which relief can be granted.

    3.   SDJ's Trade Dress, as defined in the Amended Complaint, is not subject to protection; and therefore, SDJ cannot claim ownership rights therein *See supra* at page at pp. 7-44 (ECF No. 69, First Aff. Defense at p. 11 Apollo's Answer & Aff. Def. to Am. Countercl.; ECF No. 70, First Aff. Def. at p. 11, Costco Answer & Aff. Def. to Am. Countercl.).

    B.   **Trade Dress Invalidity**

    1.   SDJ's purported unregistered trade dress is invalid and unenforceable.

    C.   **Trademark Invalidity**

    1.   SDJ's purported unregistered trademark is invalid and unenforceable. *See supra.* pp. 37-40.

    D.   **Failure to Describe Trade Dress**

    1.   SDJ failed, as a matter of law, to offer a precise expression of the character and scope of the claimed trade dress.

    2.   SDJ's purported trade dress referenced in SDJ's Amended Counterclaim conflicts with the purported trade dress referenced in SDJ's August 20, 2022 demand letter, and both are pitched at an improper level of generality.

ACTIVE 706029293v2

E.      **No Identifier of Origin**

1.      SDJ is not entitled to relief because the Apollo Parties used no source identifying words or designs.

2.      SDJ is not entitled to relief because the Apollo Parties made no statements that either deceived or had the capacity to deceive a substantial segment of potential consumers.

F.      **Ornamental/Decorative/Informational**

1.      SDJ has no valid, protectable trade dress in the packaging features SDJ identified because they are informational, decorative, and or ornamental.

2.      Although Apollo asserts that SDJ's infringement claim is based on product design, if the Court determines there is any claim of packaging infringement, then SDJ has no valid, protectable trade dress in the packaging features SDJ identified because they are informational, decorative, and or ornamental.

3.      The word "Brazilian" in both marks is descriptive and informational as to where the ingredients in the products come from.

4.      The word "Cream" in both marks is descriptive of the products themselves.

5.      The trade dress is decorative and ornamental and does not create a distinct commercial impression.

G.      **Functional**

1.      The use of the purported trade dress, is functional and therefore the relief sought is barred.

**H.    Non-Distinctive**

1.    The purported trade dress lacks distinctiveness, including, without limitation, inherent distinctiveness or secondary meaning; and therefore, the claim of trade dress infringement is barred.

**I.    Generic**

1.    SDJ's claimed trade dress is not protectable because it is generic.

2.    SDJ's co-founder Heela Yang acquired a pre-existing, standard, stock jar that TOLY Products had been offering for sale on its web site since at least May 201 that SDJ now claims encompasses its trade dress from a vendor at a trade show in July 2014.

3.    Apollo's suppliers also had the stock jar available for use.

4.    SDJ's trade dress infringement claim is barred on the basis that the alleged trade dress is generic.

5.    The term "CREAM" is generic because both the parties' products are creams.

6.    SDJ's trademark infringement claim is barred on the basis that the alleged trademark is generic.

**J.    No Infringement**

1.    SDJ's trademark claims are barred because Apollo did not, and does not, infringe SDJ's purported trademark rights as claimed by SDJ.

2.    SDJ's claims are barred because Apollo did not, and does not, infringe SDJ's purported trade dress rights claimed by SDJ.

ACTIVE 706029293v2

**K.**     **No Likelihood of Confusion**

1.      SDJ's claims are barred because SDJ is unable to carry their burden in establishing likelihood of confusion, particularly in light of the prominent display of the NUTRIUS® brand name on Apollo's accused packaging.

**L.**     **Adequate Remedy at Law**

1.      SDJ's claims are barred because SDJ is unable to carry their burden in establishing there is not an adequate remedy at law such as its claim for disgorgement of the Apollo Parties' profits.

**M.**     **No Irreparable Harm**

1.      SDJ's claims for injunctive relief are barred because SDJ cannot show that they will suffer any irreparable harm from the Apollo Parties' actions.

**N.**     **No Equitable Relief**

1.      As a result of SDJ's actions, SDJ is not entitled to equitable relief, including but not limited to SDJ's request for injunctive relief.

2.      SDJ cannot show irreparable harm so they are not entitled to injunctive relief.

**O.**     **No Willful Infringement**

1.      SDJ's claims for enhanced damages and an award of fees and costs against the Apollo Parties is denied. (ECF No. 69, Fifteenth Aff. Defense at p. 14; ECF No. 70, Fifteenth Aff. Def. at p. 14.)   *See Supra.*

**P.**     **No Damages**

1.      There has been no damage in any amount or manner to SDJ by reason of any act alleged against the Apollo Parties in the Amended Counterclaim.

ACTIVE 706029293v2

2.      Because there is no damage in any amount or manner to SDJ, SDJ's claims must be dismissed.

3.      Because there is no damage in any amount or manner to SDJ, Apollo is entitled to declaratory judgment relief that Apollo's BRAZILIAN BODY BUTTER CREAM product design does not infringe SDJ's claimed trade dress rights.

4.      Because there is no damage in any amount or manner to SDJ, Apollo is entitled to declaratory judgment relief that Apollo's BRAZILIAN BODY BUTTER CREAM trademark does not infringe SDJ's claimed trademark rights.

5.      Because there is no damage in any amount or manner to SDJ, Apollo is entitled to declaratory judgment relief that Apollo's BRAZILIAN BODY BUTTER CREAM product design does not infringe SDJ's claimed common law trade dress rights.

6.      Because there is no damage in any amount or manner to SDJ, Apollo is entitled to declaratory judgment relief that Apollo's BRAZILIAN BODY BUTTER CREAM product trademark does not infringe SDJ's claimed common law trademark rights.

7.      Because there is no damage in any amount or manner to SDJ, SDJ's claims must be dismissed.

**Q.      <u>Failure to Mitigate</u>**

1.      SDJ failed to mitigate their damages; and therefore, SDJ's claims in the Amended Counterclaim are dismissed.

ACTIVE 706029293v2

R.    **SDJ Has Unclean Hands Because of its Deception.**

1.    SDJ's BRAZILIAN BUM BUM Mark is Deceptive Because the Primary Significance of the Term "BRAZILIAN" in SDJ's BRAZILIAN BUM BUM Mark is a Generally Known Geographic Location (i.e., Brazil).

2.    SDJ's goods sold under the BRAZILIAN BUM BUM mark are not manufactured in Brazil and do not contain ingredients sourced from Brazil while at the same time led purchasers of SDJ's goods sold under the BRAZILIAN BUM BUM mark to believe that SDJ's goods are manufactured in Brazil and/or contain ingredients sourced from Brazil.

3.    SDJ's use of the deceptive BRAZILIAN BUM BUM mark renders SDJ's BRAZILIAN BUM BUM registration and mark invalid and unenforceable.

S.    **SDJ Has Unclean Hands Because It Acquired Its BRAZILIAN BUM BUM Mark Through Fraud on the United States Patent and Trademark Office ("USPTO").**

1.    SDJ's false representations regarding the nature of the ingredients in the goods sold under the BRAZILIAN BUM BUM mark that were made on behalf of SDJ were done knowingly and were material because SDJ would have had to disclaim "BRAZILIAN" in order to obtain the BRAZILIAN BUM BUM registration in order to be obtain the registration if the true facts had been known to the Examining Attorney.

2.    SDJ intended to deceive the USPTO to avoid disclaiming the term so that SDJ could attempt to claim the exclusive right to use the term "BRAZILIAN" separate and apart from the term "BUM BUM."

3.    Because SDJ committed fraud on the USPTO, its BRAZILIAN BUM BUM Registration is invalid and unenforceable.

Dated: March 19, 2025

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ Craig S. Krummen
Craig S. Krummen (*Admitted Pro Hac Vice*)
Tiffany A. Blofield (*Admitted Pro Hac Vice*)
Benjamin P. Gilford (*Admitted Pro Hac Vice*)
Molly R. Littman-Johnson (*Admitted Pro Hac Vice*)
90 South 7th Street, Suite 3500
Minneapolis, Minnesota 55402
Phone: (612) 259-9719
Fax: (612) 677-3101
krummenc@gtlaw.com
blofieldt@gtlaw.com
gilfordb@gtlaw.com
Molly.Littman@gtlaw.com

Jonathan Peter Presvelis (5693197)
GREENBERG TRAURIG, LLP
1 Vanderbilt Ave
New York, New York  10017
Phone: (212) 801-9368
Fax: (212) 801-6400
presvelisj@gtlaw.com

*Counsel for Apollo Healthcare Corp. d/b/a Apollo Health and Beauty Care and Costco Wholesale Corp.*

ACTIVE 706029293v2