**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| APOLLO HEALTHCARE CORP. d/b/a APOLLO HEALTH AND BEAUTY CARE,<br><br>Plaintiff,<br><br>v.<br><br>SOL DE JANEIRO USA INC. and SOL DE JANEIRO IP, INC.,<br><br>Defendants. | Civil Action No. 1:22-cv-07719-LLS |
| SOL DE JANEIRO USA INC. and SOL DE JANEIRO IP, INC.,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>APOLLO HEALTHCARE CORP. d/b/a APOLLO HEALTH AND BEAUTY CARE and COSTCO WHOLESALE CORP.,<br><br>Counterclaim-Defendants. | **APOLLO HEALTHCARE CORP AND COSTCO WHOLESALE CORP'S TRIAL BRIEF**<br><br>**[oral argument requested]** |

Apollo Healthcare Corp. d/b/a Apollo Health and Beauty Care ("Apollo") and Costco

Wholesale Corp. ("Costco") (together, "the Apollo Parties"), respectfully submit their Trial Brief

in connection with the claims against and alleged by Sol de Janeiro IP, Inc. and Sol de Janeiro

USA Inc. (together, "SDJ"). The facts on which the Apollo Parties rely are set forth in the Consent

Pretrial Order filed herewith.

## TABLE OF CONTENTS

Page

CLAIMS RESOLVED ON SUMMARY JUDGMENT.................................................................. 1

ISSUES TO BE TRIED ........................................................................................................... 1

REMEDIES.............................................................................................................................. 2

JURY ISSUES AND BENCH ISSUES..................................................................................... 2

QUESTIONS OF LAW ........................................................................................................... 5

    I.      Apollo's Declaratory Judgment Claims for No Trade Dress Infringement ............ 5

         A.      SDJ Does Not Own a Protectable Product Design Trade Dress ................ 5

                1.      SDJ's Claimed Trade Dress is Generic.................................. 5
                2.      SDJ's Claimed Trade Dress Is Functional ............................ 6
                3.      SDJ's Claimed Trade Dress Is Not Inherently Distinctive Nor Did It Acquire Secondary Meaning Before Apollo's NUTRIUS® Product First Became Available. ............................ 12

                        Factor 1: Secondary Meaning Survey........................... 15
                        Factor 2: Advertising Expenditures .............................. 17
                        Factor 3: Unsolicited Media Coverage ......................... 19
                        Factor 4: Sales Success ................................................ 19
                        Factor 5: Attempts to Plagiarize .................................. 20
                        Factor 6: Length and Exclusivity of Use ...................... 21

         B.      SDJ Has Not Met Its Burden To Articulate Its Trade Dress With Particularity................................................................................................ 21
         C.      There is No Likelihood Of Confusion Between SDJ's Claimed Trade Dress And The NUTRIUS® Product Jar. ..................................... 23

                        Factor 1: Strength of SDJ's Claimed Product Design ............... 23
                        Factor 2: Similarity of the Parties' Product Designs ................ 24
                        Factor 3: The Degree to Which the Parties' Products Compete. ............. 28
                        Factor 4: Likelihood SDJ Will Expand Into the Apollo Parties' Markets ......................................................................... 29
                        Factor 5: Evidence of Actual Consumer Confusion ................ 29
                        Factor 6: The Good Faith Weighs Against a Finding of Likelihood of Confusion.......................................................... 33
                        Factor 7: The Quality of Apollo's Products Weighs Against Likelihood of Confusion .............................................. 35
                        Factor 8: The Sophistication of SDJ's Customers Factor Weighs Against Likelihood of Confusion................................... 36

ACTIVE 708751020v1

II.     Apollo's Declaratory Judgment Claims for No Trademark Infringement............ 36

        A.      SDJ's BRAZILIAN BUM BUM CREAM Marks Are Not Entitled
                to Trademark Protection ........................................................................ 37
        B.      No Likelihood of Confusion Exists Between the Parties' Marks. ........... 39

                Factor 1: Strength of SDJ's BRAZILIAN BUM BUM Marks
                        Weighs Against Likelihood Of Confusion ................................... 40
                Factor 2: Similarity of the Marks Factor Weighs Heavily Against
                        Likelihood of Confusion .............................................................. 40

III.    Because SDJ's Trade Dress and Trademark Infringement Claims Fail, So
        Too Must SDJ's Contributory Trade Dress and Trademark Infringement
        Claims and New York Common Law Unfair Competition Claims..................... 41

        A.      Contributory Infringement ......................................................................... 41
        B.      Unfair Competition Under New York Law ................................................. 42

IV.     Apollo Is Entitled to Declaratory Judgment Relief.......................................... 43
V.      SDJ Is Not Entitled to Injunctive Relief ......................................................... 44
VI.     SDJ Is Not Entitled to Monetary Damages ..................................................... 44
VII.    SDJ Is Not Entitled To Disgorgement Of Profits; However, If The Court
        Decides It Is, The Profits Must Be Apportioned.............................................. 44
VIII.   SDJ Cannot Obtain Treble Damages or Attorney's Fees ................................. 46
IX.     Affirmative Defenses ....................................................................................... 47

        A.      Failure to State a Claim of Upon Which Relief Can Be Granted ............ 47
        B.      Trade Dress Invalidity............................................................................... 47
        C.      Trademark Invalidity.................................................................................. 48
        D.      Failure to Describe Trade Dress ............................................................... 48
        E.      No Identifier of Origin .............................................................................. 48
        F.      Ornamental/Decorative/Informational ...................................................... 48
        G.      Functional ................................................................................................. 49
        H.      Non-Distinctive ......................................................................................... 49
        I.      Generic ...................................................................................................... 49
        J.      No Infringement......................................................................................... 50
        K.      No Likelihood of Confusion ..................................................................... 50
        L.      Adequate Remedy at Law .......................................................................... 51
        M.      No Irreparable Harm .................................................................................. 51
        N.      No Equitable Relief.................................................................................... 51
        O.      No Willful Infringement ............................................................................ 51
        P.      No Damages ............................................................................................... 51
        Q.      Failure to Mitigate..................................................................................... 52
        R.      Unclean Hands: Deceptive Trademark ...................................................... 52
        S.      Unclean Hands: Fraud................................................................................ 52

X.      Anticipated Evidentiary Issues ....................................................................... 55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 Pillar Dynasty LLC v. New York & Co.*,
   933 F.3d 202 (2d Cir. 2019)...........................................................................................45

*20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*,
   815 F.2d 8 (2d Cir. 1987)................................................................................................14

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
   537 F.2d 4 (2d Cir. 1976)..........................................................................................37, 38

*ABF Freight Sys., Inc. v. NLRB*,
   510 U.S. 317 (1994)........................................................................................................53

*Alzheimer's Disease & Related Disorders Ass'n v. Alzheimer's Found. of Am., Inc.*,
   307 F. Supp. 3d 260 (S.D.N.Y. 2018)......................................................................30, 31

*Am. Honda Motor Co. v. Two Wheel Corp.*,
   918 F.2d 1060 (2d Cir. 1990).........................................................................................45

*Amusement Art, LLC v. Life is Beautiful, LLC*,
   No. 2-14-cv-08290, 2016 WL 6998566 (C.D. Cal. Nov. 29, 2016) ............................52-53

*B2B Rocket, LLC v. Kalendar Inc.*,
   No. 24-cv-1063, 2024 WL 3833970 (S.D.N.Y. Aug. 15, 2024).....................................42

*Banff Ltd. v. Express, Inc.*,
   921 F. Supp. 1065 (S.D.N.Y. 1995)...............................................................................12

*Bart Schwartz Int'l Textiles, Ltd. v. Fed. Trade Comm'n*,
   289 F.2d 665 (C.C.P.A. 1961) .......................................................................................54

*Bauer Bros., LLC v. Nike, Inc.*,
   159 F. Supp. 3d 1202 (S.D. Cal. 2016)..........................................................................53

*Beech-Nut, Inc. v. Warner-Lambert Co.*,
   346 F. Supp. 547 (S.D.N.Y. 1972) ..................................................................................8

*Big Dog Motorcycles, L.L.C. v. Big Dog Holdings., Inc.*,
   400 F. Supp. 2d 1273 (D. Kan. 2005) .............................................................................4

*Birmingham v. Mizuno USA, Inc.*,
   No. 5:09-CV-0566, 2011 WL 1299356 (N.D.N.Y. Mar. 31, 2011) ...............................46

*Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*,
   554 F. Supp. 3d 606 (S.D.N.Y. 2020), *aff'd*, 839 F. App'x (Fed. Cir. 2021).............14, 17, 20

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
   973 F.2d 1033 (2d Cir. 1992)..........................................................................................25

ACTIVE 708751020v1

*C=Holdings B.V. v. Asiarim Corp.*,
    992 F. Supp. 2d 223 (S.D.N.Y. 2013)............................................................43

*Capri Sun GmbH v. Am. Beverage Corp.*,
    595 F. Supp. 3d 83 (S.D.N.Y. 2022)..............................................15, 17, 19

*Car-Freshner Corp. v. D & J Distrib. & Mfg. Co.*,
    No. 14-cv-391, 2015 WL 3385683 (S.D.N.Y. May 26, 2015) ................................8

*Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*,
    20-cv-07899, 2022 WL 4109721 (S.D.N.Y. Sept. 8, 2022) ...........................21, 22

*Chanel, Inc. v. WGACA, LLC*,
    No. 18 Civ. 2253 (LLS), Am. Order (S.D.N.Y. Dec. 11, 2023)................................3

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*,
    696 F.3d 206 (2d Cir. 2012).....................................................................15

*Chum Ltd. v. Lisowski*,
    198 F. Supp. 2d 530 (S.D.N.Y. 2002)...........................................................20

*Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*,
    201 F. Supp. 3d 428 (S.D.N.Y. 2016)........................................................5, 37

*Coach Leatherware Co. v. AnnTaylor, Inc.*,
    933 F.2d 162 (2d Cir. 1991).............................................................14, 15, 38

*Conopco, Inc. v. Campbell Soup Co.*,
    95 F.3d 187 (2d Cir. 1996).......................................................................47

*Coty Inc. v. Excell Brands, LLC*,
    277 F. Supp. 3d 435 (S.D.N.Y. 2017)...........................................................47

*CTB, Inc. v. Hog Slat, Inc.*,
    No. 7:14-CV-157, 2018 WL 4035945 (E.D. N.C. Aug. 22, 2018)
    *aff'd*, 954 F.3d 647 (4th Cir. 2020).............................................................9

*Cumberland Packaging Corp. v. Monsanto Co.*,
    140 F. Supp. 2d 241 (E.D.N.Y. 2001) ..........................................................35

*Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*,
    283 F. Supp. 3d 182 (S.D.N.Y. 2018)............................................................7

*Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*,
    369 F.3d 1197 (11th Cir. 2004) ..................................................................8

*Duffy-Mott Co. v. Cumberland Packing Co.*,
    424 F.2d 1095 (C.C.P.A. 1970) .................................................................53

*Eagle Comtronics, Inc. v. Pico Prods., Inc.*,
    256 A.D.2d 1202, 682 N.Y.S.2d 505, 506-07 (1998)), *aff'd*, 551 F. App'x 1
    (2d Cir. 2013)....................................................................................43

*Easy Spirit, LLC v. Skechers U.S.A., Inc.*,
    515 F. Supp. 3d 47 (S.D.N.Y. 2021) (*Easy Spirit I*).......................................14, 36

iv

*Easy Spirit, LLC v. Skechers U.S.A., Inc.*,
   571 F. Supp. 3d 185 (S.D.N.Y. 2021) .................................................................. 32

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) .......................................................................................... 44

*Elec. Info. Publ'ns, Inc. v. C-M Periodicals, Inc.*,
   No. 68 C 136, 1969 WL 9623 (N.D. Ill. Nov. 12, 1969), *aff'd*, 768 F. App'x
   683 (9th Cir. 2019) ...................................................................................... 53, 54

*Eliya, Inc. v. Steve Madden, Ltd.*,
   No. 15-CV-1272, 2018 WL 1796228 (E.D.N.Y. Jan. 11, 2018) .............................. 41, 42, 43

*Emmpresa Cubana del Tabaco v. Culbro Corp.*,
   123 F. Supp. 2d 203 (S.D.N.Y. 2000), *reconsideration granted on other*
   *grounds*, No. 97 Civ. 8399, 2001 WL 487960 (S.D.N.Y. May 8, 2001) ............................. 3, 4

*Empresa Cubana del Tabaco v. Culbro Corp.*,
   No. 97 Civ. 8399, 2004 WL 602295 (S.D.N.Y. Mar. 26, 2004), *aff'd in part*
   *and rev'd in part on other grounds*, 399 F.3d 462 (2d Cir. 2005) ................................ 15

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
   629 F.3d 1278 (Fed. Cir. 2010) .......................................................................... 9

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
   642 F. Supp. 2d 276 (S.D.N.Y. 2009) .................................................................. 45

*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*,
   No. 15 Civ. 10154 (PAE), 2021 WL 22630 (S.D.N.Y. Jan. 4, 2021) ................................. 16

*Fort James Corp. v. Kimberly-Clark Tissue Co.*,
   No. 98 C 7834, 1999 WL 966144 (N.D. Ill. Oct. 8, 1999) ........................................... 49

*G.A. Modefine S.A. v. Burlington Coat Factory Warehouse Corp.*,
   888 F. Supp. 44 (S.D.N.Y. 1995) ..................................................................... 2, 3, 4

*Gaffrig Performance Indus. v. Livorsi Marine, Inc.*,
   No. 99 C 7778, 2003 WL 23144859 (N.D. Ill. Dec. 22, 2003) ...................................... 53, 54

*Gameologist Grp. v. Sci. Games Int'l, Inc.*,
   838 F. Supp. 2d 141 (S.D.N.Y. 2011), *aff'd*, 508 F. App'x 31 (2d Cir. Jan. 25,
   2023) ......................................................................................................... 19

*George Basch Co. v. Blue Coral, Inc.*,
   968 F.2d 1532 (2d Cir. 1992) .......................................................................... 34

*Gidatex, S.r.L. v. Campaniello Imps., Ltd.*,
   82 F. Supp. 2d 136 (S.D.N.Y. 2000) .................................................................. 47

*Giggle, Inc. v. netFocal, Inc.*,
   856 F. Supp. 2d 625 (S.D.N.Y. 2012) ................................................................. 19

*Girl Scouts of U.S. of Am. v. Bantam Doubleday Dell Pub. Grp.*,
   808 F. Supp. 1112 (S.D.N.Y. 1992), *aff'd*, 996 F.2d 1477 (2d Cir. 1993) ........................ 31

ACTIVE 708751020v1

*Glow Indus., v. Lopez*,
  252 F. Supp. 2d 962 (C.D. Cal. 2002) ..................................................................36

*Greenpoint Fin. Corp. v. Sperry & Hutchinson Co.*,
  116 F. Supp. 2d 405 (S.D.N.Y. 2000)...........................................................14, 15

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*,
  730 F.3d 494 (6th Cir. 2013) ...........................................................................35

*Gruner + Jahr USA Publ'g Co. v. Meredith Corp.*,
  991 F.2d 1072 (2d Cir. 1993)....................................................................24, 40

*Gucci Am., Inc. v. Guess
  ?, Inc.*, 831 F. Supp. 2d 723,743-44 (S.D.N.Y. 2011), *reconsideration granted
  on other grounds*, No. 09 Civ. 4373(SAS), 2011 WL 6326032 (S.D.N.Y. Dec.
  16, 2011) .........................................................................................................33

*Hallwood Realty Partners v. Gotham Partners*,
  286 F.3d 613 (2d Cir. 2002)...............................................................................4

*Hamil Am. Inc. v. GFI*,
  193 F.3d 92 (2d Cir. 1999)...............................................................................45

*Hamilton Int'l Ltd. v. Vortic LLC*,
  13 F.4th 264 (2d Cir. 2021) ...............................................................................5

*Harlequin Enters. Ltd. v. Gulf & W. Corp.*,
  644 F.2d 946 (2d Cir. 1981)...............................................................................15

*I.P. Lund Trading ApS v. Kohler Co.*,
  118 F. Supp. 2d 92 (D. Mass 2000) ...................................................................13

*In Design v. K-Mart Apparel Corp.*,
  13 F.3d 559 (2d Cir.), *overruled on other grounds*, *Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994)...........................................................................................45

*In Design v. Lauren Knitwear Corp.*,
  782 F. Supp. 824 (S.D.N.Y. 1991) ...................................................................45

*In re Becton Dickinson & Co.*,
  675 F.3d 1368 (Fed. Cir. 2012).............................................................................9

*In re Reelex Packaging Solutions, Inc.*,
  834 F. App'x 574 (Fed. Cir. 2020) .......................................................................9

*In re R.M. Smith, Inc.*,
  734 F.2d 1482, 1283 (Fed. Cir. 1984)...................................................................8

*In re Water Gremlin Co.*,
  635 F.2d 841 (C.C.P.A. 1980) ...........................................................................10

vi

*Info. Superhighway, Inc. v. Talk Am., Inc.*,
   395 F. Supp. 2d 44 (S.D.N.Y. 2005)................................................................43

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
   146 F.3d 66 (2d Cir. 1998)...........................................................................45

*Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*,
   456 U.S. 844 (1982).................................................................................9, 42

*It's a New 10, LLC v. Harmon Stores, Inc.*,
   No. 17-CV-4231, 2017 WL 3208611 (S.D.N.Y. Jul. 28, 2017) ......................28

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
   58 F.3d 27 (2d. Cir. 1995)..........................................................................7, 42

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*,
   No. 04 Civ. 7203, 2006 WL 1012939 (S.D.N.Y. Apr. 19, 2006) ....................29

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*,
   No. 04 Civ. 7203, 2006 WL 559675 (S.D.N.Y. Mar. 7, 2006) .........................2

*Karmikel Corp. v. May Dep't Stores Co.*,
   658 F. Supp. 1361 (S.D.N.Y. 1987)................................................................37

*Kind LLC v. Clif Bar & Co.*,
   No. 14 Civ. 770, 2014 WL 2619817 (S.D.N.Y Jun. 12, 2014).............24, 31, 35

*Knitwaves, Inc. v. Lollytogs Ltd.*,
   71 F.3d 996 (2d Cir. 1995)............................................................................12

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
   113 F.3d 373 (2d Cir. 1997)............................................................14, 22, 34

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
   117 F. Supp. 2d 360 (S.D.N.Y. 2000).............................................................14

*Lang v. Ret. Living Pub. Co.*,
   949 F.2d 576 (2d. Cir. 1991).........................................................................29

*Lee Valley Tools, Ltd. v. Indus. Blade Co.*,
   288 F.R.D. 254 (W.D.N.Y. 2013)....................................................................45

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
   209 F. Supp. 3d 612 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017)
   ..............................................................................14, 15, 17, 21, 23, 40

*Major League Baseball Prop., Inc. v. Opening Day Prod., Inc.*,
   385 F. Supp. 2d 256 (S.D.N.Y. 2005).............................................................43

*Makina Ve Kimya Endustrisi A.S. v. A.S.A.P. Logistics Ltd.*,
   No. 22-cv-3933, 2024 WL 3638054 (S.D.N.Y. Aug. 2, 2024).........................43

*Malaco Leaf, AB v. Promotion In Motion, Inc.*,
   287 F. Supp. 2d 355 (S.D.N.Y. 2003)..........................12, 32, 35, 36, 39, 50

*Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007).............................................................45

vii

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC,*
  571 U.S. 191 (2014)...........................................................................................37

*Meese, Inc. v. Int'l Leisure Prods., Inc.,*
  No. 03 Civ.8684, 2003 WL 22902594 (S.D.N.Y. Dec. 9, 2003)..........................21

*Merriam-Webster, Inc. v. Random House, Inc.,*
  No. 91 Civ. 1221 (LMM), 1993 WL 205043 (S.D.N.Y. Jun. 10, 1993), *rev'd
  on other grounds,* 35 F.3d 65 (2d Cir. 1994) ......................................................2

*MiniFrame Ltd. v. Microsoft Corp.,*
  No. 11 Civ. 7419, 2013 WL 1385704 (S.D.N.Y. Mar. 28, 2013) ..........................43

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.,*
  316 U.S. 203 (1942)...........................................................................................45

*In re Morton-Norwich Prods., Inc.,*
  671 F.2d 1332, 213 U.S.P.Q. 9 (C.C.P.A. 1982) ...............................................8, 12

*MPC Franchise, LLC v. Tarntino,*
  19 F. Supp. 3d 456 (W.D.N.Y. 2014), *aff'd,* 826 F.3d 653 (2d Cir. 2016) ...........54

*MZ Wallace Inc. v. Fuller,*
  No. 18cv2265, 2018 WL 6715489 (S.D.N.Y. Dec. 20, 2018)...............................18

*Nirvana, Inc. v. Nestle Waters N. Am. Inc*
  123 F. Supp. 3d 357 (N.D.N.Y. 2015) ............................................................42, 43

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,*
  164 F.3d 736 (2d Cir. 1998) (*Nora Beverages I*).................................................6

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,*
  269 F.3d 114 (2d Cir. 2001)......................................................................24, 25, 34, 35

*Nulux, Inc. v. Ramirez,*
  No. 01 CV 3023, 2008 WL 11411300 (E.D.N.Y. Oct. 31, 2008) .........................20

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.,*
  590 F. Supp. 2d 500 (S.D.N.Y. 2008)..................................................................24

*P.F. Cosmetique, S.A. v. Minnetonka Inc.,*
  605 F. Supp. 662 (S,D,N,Y, 1985) ......................................................................36

*Paco Sport, Ltd. v. Paco Rabanne Parfums,*
  86 F. Supp. 2d 305 (S.D.N.Y.), *aff'd,* 234 F.3d 1262, 2000 WL 1721126 (2d
  Cir. 2000) ..........................................................................................................31

*Paddington Corp. v. Attiki Imps. & Distribs., Inc.,*
  996 F.2d 577 (2d Cir. 1993)................................................................................6

*PaperCutter, Inc. v. Fay's Drug Co.,*
  900 F.2d 558 (2d Cir. 1990)................................................................................37

*Parenting Unlimited Inc. v. Columbia Pictures Television Inc.,*
  743 F. Supp. 221 (S.D.N.Y. 1990) ......................................................................37

viii

*Pastificio Spiga Societa Per Azioni v. De Martini Macaroni Co.*,
    200 F.2d 325 (2d Cir. 1952).................................................................................4

*Patsy's Italian Rest., Inc. v. Banas*,
    575 F. Supp. 2d 427 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011)...........47

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*,
    618 F.2d 950 (2d Cir. 1980)..............................................................................42

*Pfizer Inc. v. Perrigo Co.*,
    988 F. Supp. 686 (S.D.N.Y. 1997) .....................................................................34

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961)..............................................................................23

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
    813 F. Supp. 2d 489 (S.D.N.Y. 2011).................................................................13

*Radiancy, Inc. v. Viatek Consumer Prods. Grp.*,
    138 F. Supp. 303 (S.D.N.Y. 2014) .....................................................................53

*Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. Travel Dev.*,
    955 F. Supp. 598 (E.D. Va. 1997) ........................................................................4

*RiseandShine Corp. v. PepsiCo, Inc.*,
    41 F.4th 112 (2d Cir. 2022) ........................................................................23, 40

*RiseandShine Corp. v. PepsiCo. Inc.*,
    No. 21 Civ. 6324, 2023 WL 4936999 (S.D.N.Y. Aug. 2, 2023), *aff'd*, No. 23-
    1176-cv, 2024 WL 5165388 (2d Cir. Dec. 19, 2024)......................................17, 18

*Rockland Exposition, Inc. v. All. Of Auto. Serv. Providers of N.J.*,
    894 F. Supp. 2d 288 (S.D.N.Y. 2012).............................................................17, 43

*Rosetta Stone Ltd. v. Google, Inc.*,
    676 F.3d 144 (4th Cir. 2012) ........................................................................42, 43

*RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*,
    No. 18-CV-6449, 2023 WL 3092918 (E.D.N.Y. Apr. 26, 2023) ...........................3, 20

*Sara Designs, Inc. v. A Classic Time Watch Co.*,
    234 F. Supp. 3d 548 (S.D.N.Y. 2017).................................................................22

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
    193 F. Supp. 3d 245 (S.D.N.Y. 2016), *aff'd*, 699 F. App'x 93 (2d Cir. 2017).........35

*SLY Mag., LLC v. Weider Pub'lns L.L.C.*,
    529 F. Supp. 2d 425 (S.D.N.Y. 2007)..................................................................36

*Stop & Shop Supermarket Co. v. Big Lots Stores, Inc.*,
    NO. 09-11113, 2009 WL 10694158 (D. Mass. Nov. 19, 2009) ...............................15

*Stormy Clime Ltd. v. ProGroup, Inc.*,
    809 F.2d 971 (2d Cir. 1987)..........................................................................24, 25

*Strange Music, Inc. v. Strange Music, Inc.*,
    326 F. Supp. 2d 481 (S.D.N.Y. 2004).................................................................19

ix

*Streetwise Maps, Inc. v. VanDam, Inc.*,
  159 F.3d 739 (2d Cir. 1998) ................................................................34

*Sulzer Mixpac AG v. A&N Trading Co.*,
  988 F.3d 174 (2d Cir. 2021) ........................................................6, 7, 8

*THOIP v. Walt Disney Co.*,
  690 F. Supp. 2d 218 (S.D.N.Y. 2010) ..................................................33

*Thompson Med. Co. v. Pfizer Inc.*,
  753 F.2d 208 (2d Cir. 1985) ................................................................14

*Tiffany & Co. v. Costco Wholesale Corp.*,
  971 F.3d 74 (2d Cir. 2020) ..................................................................23

*Tiffany (NJ) Inc. v. eBay Inc.*,
  600 F.3d 93 (2d Cir. 2010) ..................................................................42

*Tone Bros. v. Sysco Corp.*,
  28 F.3d 1192 (Fed. Cir. 1994) .......................................................12, 13

*Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc.*,
  No. 03 CV 2420(RMB), 2006 WL 1153354 (S.D.N.Y. May 1, 2006) ................33

*Top Producer Sys. Inc. v. Software Scis. Ltd.*,
  No. 97-0415, 1997 WL 723049 (D. Or. July 21, 1997) ........................54

*Tough Traveler, Ltd. v. Outbound Prods.*,
  989 F. Supp. 203 (N.D.N.Y. 1997), *aff'd*, 165 F.3d 15 (2d Cir. 1998) ................42

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
  532 U.S. 23 (2001) ........................................................................9, 13

*Trs. of Columbia Univ. v. Columbia/HCA Healthcare Corp.*,
  964 F. Supp. 733 (S.D.N.Y. 1997) ......................................................31

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
  505 U.S. 763 (1992) ............................................................................37

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
  800 F. Supp. 2d 515 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) ................43

*U.S. Shoe Corp. v. Brown Grp.*,
  740 F. Supp. 196 (S.D.N.Y.), *aff'd*, 923 F.2d 844 (2d Cir. 1990) ................30

*Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
  No. 12 Civ. 3599, 2012 WL 3240442 (S.D.N.Y. Aug. 7, 2012) ................21

*Van Leeuwen Ice Cream LLC v. Rebel Creamery LLC*,
  No. 21-CV-2356, 2024 WL 1072046 (E.D.N.Y. Mar. 11, 2024) ................3

*W.W.W. Pharm. Co. v. Gillette Co.*,
  984 F.2d 567 (2d Cir. 1993) ................................................................42

*Wal-Mart Stores, Inc. v. Samara Bros.*,
  529 U.S. 205 (2000) ..........................................................13, 14, 15, 38

x

*WE Media, Inc. v. Gen. Elec. Co.*,
    218 F. Supp. 2d 463 (S.D.N.Y. 2002), *aff'd sub nom. WE Media, Inc. v. Cablevision Sys. Corp.*, 94 F. App'x 29 (2d Cir. 2004)..........................30

*Weight Watchers Int'l, Inc. v. Stouffer Corp.*,
    744 F. Supp. 1259 (S.D.N.Y. 1990)..........................32

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001)..........................5, 6, 14

*Zippo Mfg. Co. v. Rogers Imports, Inc.*,
    216 F. Supp. 670 (S.D.N.Y. 1963) ..........................15

**Statutes**

15 U.S.C. § 1114(1)(a)..........................1, 37

15 U.S.C. § 1117..........................45

15 U.S.C. § 1117(b)(1) ..........................46

15 U.S.C. § 1125(a) ..........................1, 5

15 U.S.C. § 1125(c) ..........................46

**Rules**

Fed. R. Evid. § 401 ..........................30

Fed. R. Evid. § 402 ..........................30

Fed. R. Evid. § 403 ..........................30

Fed. R. Evid. § 602 ..........................30

Fed. R. Evid. § 802 ..........................30

Fed. R. Evid. § 901 ..........................30

**Other Authorities**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:1
    (5th ed. 2022)..........................12

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:85
    (5th ed. 2022)..........................24

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15:49
    (5th ed. 2022)..........................19, 20

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23.17
    (5th ed. 2022)..........................31

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:48
   (5th ed. 2024) ..................................................................................................................53

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:58
   (5th ed. 2024) ..................................................................................................................53

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:184
   (5th ed. 2022) ..................................................................................................................31

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:189
   (4th ed. 2003) ..................................................................................................................32

Trademark Manual of Examining Procedure
   TMEP §1202.02(a)(v)
   (8th ed. Nov. 2024). .......................................................................................................12

## CLAIMS RESOLVED ON SUMMARY JUDGMENT

Following the close of discovery in this action, the Apollo Parties filed a Motion for Summary Judgment on Liability (ECF No. 137) and a Motion for Summary Judgment on Damages (ECF No. 167). On October 23, 2024, the Court entered its Order ("MSJ Order") dismissing SDJ's claim for prospective corrective advertising damages and reasonable royalty damages. (ECF No. 306.)

## ISSUES TO BE TRIED

The claims and issues that remain for trial include:

1. Apollo's request for a declaratory judgment that Apollo is not liable for trade dress or trademark infringement for its sale of NUTRIUS® BRAZILIAN BODY BUTTER CREAM ("the NUTRIUS® Product") in a yellow and white jar with a rounded bottom and an oversized lid under the mark BRAZILIAN BODY BUTTER CREAM™.  (*See* ECF No. 52, Sec. Am. Compl.)

2. SDJ's allegation that the Apollo Parties are liable for trade dress, trademark infringement, and unfair competition under 15 U.S.C. §§ 1114(1)(a) and 1125(a) for their sale of NUTRIUS® Product in a yellow and white jar with a rounded bottom and an oversized lid under the mark BRAZILIAN BODY BUTTER CREAM™. (*See* ECF No. 67, Am. Countercl.)

3. SDJ's allegation that Costco is liable for contributory trade dress and trademark infringement for their sale of NUTRIUS® Product in a yellow and white jar with a rounded bottom and an oversized lid under the mark BRAZILIAN BODY BUTTER CREAM™.  (*Id.*)

4. SDJ's allegation that the Apollo Parties are liable for unfair competition under New York common law for their sale of NUTRIUS® Product in a yellow and white jar with a rounded bottom and an oversized lid under the mark BRAZILIAN BODY BUTTER CREAM™. (*Id.* at ¶¶ 218-223.)

5. Apollo's affirmative defenses discussed *infra* pp. 48-56.

## REMEDIES

Apollo seeks a declaratory judgment that it is not infringing and has not infringed SDJ's claimed trademark and purported trade dress rights. SDJ seeks an injunction. SDJ also seeks disgorgement of profits under the Lanham Act. SDJ did not calculate and disclose any other damages claim that survived summary judgment.

## JURY ISSUES AND BENCH ISSUES

On December 3, 2024, after the parties fully briefed the motion to strike SDJ's jury demand, the Court issued a Memorandum Endorsement. (ECF No. 319.) The Court stated it would make a final determination on the Apollo Parties' motion when the case is much closer to trial. (*Id.*) As explained in the Apollo Parties' October 25, 2024 and November 26, 2024 Letter Briefs, SDJ's remaining claims concern equitable relief that should be tried before the Court, not a jury. (ECF Nos. 307, 317.)

SDJ only quantified and disclosed one damages claim that survived summary judgment: a disgorgement of profits claim under the Lanham Act. This claim is equitable, as it is based on purported unjust enrichment. SDJ also seeks equitable relief in the form of an injunction. Apollo seeks equitable relief in the form of a declaratory judgment.

The Lanham Act does not contain a right to a jury trial, and where a party seeks only equitable remedies, a jury trial is not available. *See Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04 Civ. 7203, 2006 WL 559675 (S.D.N.Y. Mar. 7, 2006) (striking demand for a jury trial where plaintiffs sought an accounting, disgorgement of profits, corrective advertising damages, and a royalty for future sales); *G.A. Modefine S.A. v. Burlington Coat Factory Warehouse Corp.*, 888 F. Supp. 44, 45-46 (S.D.N.Y. 1995) (denying request for jury trial for accounting and disgorgement of profits claims); *Merriam-Webster, Inc. v. Random House, Inc.*, No. 91 Civ. 1221 (LMM), 1993 WL 205043, at *2-3 (S.D.N.Y. Jun. 10, 1993) (same), *rev'd on other grounds*, 35 F.3d 65 (2d Cir.

ACTIVE 708751020v1

1994); *Emmpresa Cubana del Tabaco v. Culbro Corp.*, 123 F. Supp. 2d 203, 206-213 (S.D.N.Y. 2000) (same), *reconsideration granted on other grounds*, No. 97 Civ. 8399, 2001 WL 487960 (S.D.N.Y. May 8, 2001); *see also Van Leeuwen Ice Cream LLC v. Rebel Creamery LLC*, No. 21-CV-2356, 2024 WL 1072046, at *5-7 (E.D.N.Y. Mar. 11, 2024) (same).

Recently, this Court held that disgorgement of profits and injunctive relief sought in a trade dress infringement case was equitable relief to be tried to the Court. *Chanel, Inc. v. WGACA, LLC*, No. 18 Civ. 2253 (LLS), Am. Order (S.D.N.Y. Dec. 11, 2023) ("[T]he parties will present evidence to the Court . . . related to: equitable remedies, such as disgorgement (which, since there are no lost sales requiring a proxy for measurement, is an equitable claim) and injunctive relief."). Likewise, in this case, SDJ's disgorgement of profits claim is grounded in unjust enrichment and is not a proxy for lost sales. Accordingly, no jury trial is available.

SDJ's unfair competition claim under New York common law is also equitable, as it is grounded in unjust enrichment and seeks injunctive relief. (*See* ECF No. 67, Countercl. at ¶¶ 194-199, 218-223) (SDJ's unfair competition claims are grounded in unjust enrichment and seek injunctive relief). SDJ is not entitled to a jury trial on its unfair competition claim. *Emmpresa Cubana del Tabaco*, 123 F. Supp. 2d at 210 (noting that "misappropriation claim [wa]s a species of unfair competition recognized under New York case law . . . [i]t is beyond dispute that such a claim is 'essentially equitable in nature'" and not triable by a jury). The court, not a jury, decides whether the plaintiff has established "bad faith" to support a claim under common law for unfair competition or to qualify for an award of punitive damages. *See RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, No. 18-CV-6449, 2023 WL 3092918, at *7 (E.D.N.Y. Apr. 26, 2023) (striking jury demand and court finding no bad faith was fatal to plaintiff's unfair competition claim and fatal to its claim for punitive damages); *G.A. Modefine*, 888 F. Supp. at 45-46 (holding

3

that plaintiff's claim of unfair competition under New York common law was triable without a jury). Therefore, like its Lanham Act claims, SDJ's New York common law claims should be decided by the Court.

Apollo's declaratory judgment claim should also be decided by the Court. *See Hallwood Realty Partners v. Gotham Partners*, 286 F.3d 613, 621 (2d Cir. 2002) (affirming district court's decision to strike jury demand with respect to declaratory judgment action, request for injunctive relief and statutory violation claim); *Emmpresa Cubana del Tabaco*, 123 F. Supp. 2d at 211 (holding that "[a] complaint for declaratory relief does not give rise to a right to jury trial when the underlying issues in the action do not give rise to a right to a jury trial"); *see Big Dog Motorcycles, L.L.C. v. Big Dog Holdings., Inc.,* 400 F. Supp. 2d 1273, 1276 (D. Kan. 2005) (striking jury trial demand in declaratory judgment action involving trademark infringement and unfair competition claims).

Finally, whether to award attorney's fees and costs or to award treble damages does not trigger any right to a jury trial. *See, e.g.*, *Emmpresa Cubana del Tabaco*, 123 F. Supp. 2d at 211 ("a claim for attorneys' fees and costs under the Lanham Act does not entitle a party to a trial by jury."); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. Travel Dev.*, 955 F. Supp. 598, 605 (E.D. Va. 1997) (striking jury demand; "the availability of a costs remedy, by itself, provides no basis for a constitutionally mandated jury right. Costs are merely incidental to and intertwined with other available remedies."); *Pastificio Spiga Societa Per Azioni v. De Martini Macaroni Co.*, 200 F.2d 325, 327 (2d Cir. 1952) (stating that "Under the statute [trebling damages] is a discretionary matter for the trial court"); *G.A. Modefine*, 888 F. Supp. at 46 ("[T]he mere fact that the [p]laintiffs are seeking such a trebled award would in no way trigger the Seventh Amendment right to a jury trial.").

4

For each of the above reasons, and for the reasons set forth in the Apollo Parties' October 25, 2024 and November 26, 2024 Letter Briefs (ECF Nos. 307, 317), all of the remaining claims in this case should be tried before the Court. None of the remaining claims are entitled to a jury trial.

## QUESTIONS OF LAW

I. **APOLLO'S DECLARATORY JUDGMENT CLAIMS FOR NO TRADE DRESS INFRINGEMENT**

Apollo seeks a declaratory judgment that Apollo is not infringing and has not infringed SDJ's claimed trade dress rights. SDJ asserts claims against the Apollo Parties for trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a). Relatedly, SDJ asserts claims against Costco for contributory trade dress infringement.

The burden of proof to prove infringement rests with SDJ. *Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th 264, 274 (2d Cir. 2021); *see also Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 440 (S.D.N.Y. 2016) ("[D]eclaratory judgment plaintiffs do not have the burden of proving non-infringement.").

To prevail on its trade dress infringement claims relating to its unregistered product design trade dress, SDJ must prove (1) that SDJ's product design has acquired distinctiveness; (2) that SDJ's product design is not functional; and (3) that Apollo and Costco used a product design in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of their product. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115-16 (2d Cir. 2001).

A. **SDJ Does Not Own a Protectable Product Design Trade Dress**

1. **SDJ's Claimed Trade Dress is Generic**

SDJ's claimed trade dress is not protectable because it is generic. A trade dress is generic where it is the custom of an industry to package products in a particular manner. For example,

packaging of lime-flavored soda in green twelve-ounce cans is generic. *See Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 583 (2d Cir. 1993); *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 743 (2d Cir. 1998) (*Nora Beverages I*).

The evidence shows that SDJ's co-founder Heela Yang acquired the jar that SDJ now claims encompasses its trade dress from a vendor at a trade show in July 2014. (Apollo Healthcare Corp. and Costco Wholesale Corp.'s Proposed Findings of Fact ("Apollo Parties Proposed Findings of Fact") at ¶¶ 13-18.) The jar was a standard, stock jar that a trade show exhibitor, TOLY Products, was displaying at the trade show and had been offering for sale on its web site since at least May 2013. (Apollo Parties Proposed Findings of Fact at ¶¶ 17-18.) Apollo's suppliers also had the stock jar available for use. (Declaration of Craig S. Krummen in Support of Apollo Healthcare Corp. and Costco Wholesale Corp.'s Trial Brief ("Krummen Decl.") Ex. 1, Quotation from TOLY Apollo0005350.) Finally, the Apollo Parties' expert Nikola Cline identified numerous third-parties using this stock jar design. (ECF No. 152-1, Rebuttal Expert Report of Nikola Cline, dated November 15, 2023 ("Cline Rebuttal Rpt.") at pp. 21-24.) Accordingly, SDJ's claimed trade dress is generic.

### 2.    SDJ's Claimed Trade Dress Is Functional

SDJ's claimed trade dress is also not protectable because it is functional. It is SDJ's burden to prove that its alleged trade dress is not functional. *Yurman Designs, Inc.*, 262 F.3d at 116. A product design or feature is functional if it is: "(1) essential to the use or purpose of the article, or if it (2) affects the cost or quality of the article." *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 182 (2d Cir. 2021) (quotation omitted). "Product features are essential when they are dictated by the functions to be performed by the article." *Id.* (quotation omitted). A product feature or design "affects cost or quality when it 'permits the article to be manufactured at a lower cost or constitutes an improvement in the operation of the goods.'" *Id.* A product design or feature may

ACTIVE 708751020v1

also be functional if giving a person or entity "the right to use [the design] exclusively would put competitors at a significant non-reputation-related [competitive] disadvantage." *Id.* (quotation omitted). A trade dress that is composed exclusively of commonly used or functional elements might suggest that the trade dress is functional. *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d. Cir. 1995); *Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*, 283 F. Supp. 3d 182, 187 (S.D.N.Y. 2018).

SDJ's alleged trade dress, taken as a whole, is functional. The rounded bottom of the jar and the large, overhanging lid serve several utilitarian functions, such as: (i) allowing consumers to more easily remove, or scoop out, the cream; (ii) providing strength to the container so that it does not break during packaging, transport, merchandising, or shipping to end consumers, which is particularly important for products containing heavy, thick creams where the weight of the product makes the container especially vulnerable to breakage during transport; and (iii) allowing consumers to more easily grasp the lid and tighten it to create a seal that preserves the remaining cream. (ECF No. 274-1, Deposition of Charles Wachsberg dated September 15, 2023 ("Wachsberg Dep. Tr.") at 200:2-201:19; ECF No. 152-1, Cline Rebuttal Rpt. at 18-20.) The writing on the lid is also functional because there is simply insufficient space on the container itself to decorate the brand name, product, product descriptor, and key ingredient call outs. (ECF No. 284-1, Wachsberg Dep. Tr. at 20-24; ECF No. 274-4, Deposition of Haley Menkis dated September 8, 2023 ("Menkis Dep. Tr.") at 159:4-22.) Like other competitors in the health and beauty industry, Apollo uses different colors on the container of its NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ product to advertise and differentiate the product's qualities and characteristics. (Krummen Decl. Ex. 2, Deposition of Lindsay Bubitz, dated August 25, 2023 ("Bubitz Dep. Tr.") at 74:1-82:19, 94:9-95:20, 142:2-24; Krummen Decl. Ex. 3, Wachsberg Dep. Tr. at 182:3-188:25.) The color of

the product serves the functional purpose of identifying which scent the consumer is purchasing. (ECF No. 274-1, Wachsberg Depo. 186:7-187:24; ECF No. 274-4, Menkis Dep. Tr. at 173:4-174:7, 189:18-191:11; ECF No. 152-1, Cline Rebuttal Rpt. at 29-32.)[1]

SDJ's claimed trade dress is also functional because the stock jar is available through multiple suppliers, including SDJ's original supplier TOLY and Apollo's suppliers, thereby lowering the cost to produce the jar. (*See* Krummen Decl. Ex. 4, Deposition of Heela Yang Tsuzuki dated September 12, 2023 ("Yang Dep. Tr.") Ex. 14, SDJ0003137 (top right picture under "Started the Product Line-up"); Krummen Decl. Ex. 5, SDJ0001783; Krummen Decl. Ex. 6, Apollo0005275-5286 at 5275 (bottom picture under May 2013); Krummen Decl. Ex. 7, Apollo0005235-5237 at 5235; ECF No. 249-3, Wachsberg Dep. Tr. at 221:14-16, 225:8-226:15; *see, e.g.*, Krummen Decl. Ex. 8, Apollo005190-5234.)

The USPTO examining attorneys and the Trademark Trial and Appeal Board ("Board") analyze functionality by applying the *Morton-Norwich* four factor test: "(1) the existence of utility patents, (2) advertising focusing on the utilitarian advantages of a design, (3) the availability of 'functionally equivalent designs,' and (4) the effect of the design on manufacturing." *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41 (C.C.P.A. 1982); *see In re R.M. Smith, Inc.*, 734 F.2d 1482, 1283 (Fed. Cir. 1984) (affirming Board's decision refusing to register and noting that examining attorney had denied registration "on the ground that the configuration sought to be registered is functional, is similar to the designs of many other nozzles, not particularly unusual .

---

[1] Courts in this Circuit and others have routinely held that such a use of color is functional and not protectible. *See, e.g.*, *Sulzer Mixpac AG*, 988 F.3d at 182-83; *Car-Freshner Corp. v. D & J Distrib. & Mfg. Co.*, No. 14-cv-391, 2015 WL 3385683, at *5 (S.D.N.Y. May 26, 2015) (holding that use of different colors to differentiate fragrances is functional); *Beech-Nut, Inc. v. Warner-Lambert Co.*, 346 F. Supp. 547, 550 (S.D.N.Y. 1972) (noting that breath mint colors corresponding to different flavors are functional); *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1205-06 (11th Cir. 2004) (finding ice cream's color signified flavor and was therefore functional).

ACTIVE 708751020v1

. .."); *TBL Licensing, LLC v. Vidal*, 644 F. Supp. 3d 190, 198-199, 203) (E.D. Va. 2022) (applying factors and noting that each of the claimed features is common in the industry and has been for decades and concluding that plaintiff failed to carry its burden to prove he features are nonfunctional).

It is well settled that where the design is functional in that it is "essential to the use or purpose of the article or if it affects the cost or quality of the article" then "there is no need to proceed further to consider if there is a competitive necessity for the feature." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 33 (2001) (quoting *Inwood Lab'ys, Inc. v. Ives Lab'ys*, 456 U.S. 844, 850 n.10 (1982); *see In re Reelex Packaging Solutions, Inc.*, 834 F. App'x 574, 580, 583 (Fed. Cir. 2020) (affirming the Board decision that the designs were functional and observing that where other factors demonstrate the designs are functional then there is no need to consider alternative designs); *In re Becton Dickinson & Co.*, 675 F.3d 1368, 1376 (Fed. Cir. 2012) (affirming the Board's decision that the mark was functional and stating that "if functionality is found based on other considerations, there is no need to consider the availability of alternative designs, because the feature cannot be given trade dress protection merely because there are alternative designs available."); *ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1289 (Fed. Cir. 2010) (affirming Board's refusal to register blue trade dress on Principal Register because it was functional despite the availability of numerous other colors); *CTB, Inc. v. Hog Slat, Inc.*, No. 7:14-CV-157, 2018 WL 4035945, at *13 (E.D. N.C. Aug. 22, 2018) (holding there was no need to consider whether the grill could be done with a different design where other functionality factors were strong), *aff'd*, 954 F.3d 647 (4th Cir. 2020).

"One who chooses a commonplace design for his package, or one different from competitors only in essentially functional features, even if he is the first to do so, must expect to

have to identify himself as the source of goods by his labelling or some other device." *In re Water Gremlin Co.*, 635 F.2d 841, 844 (C.C.P.A. 1980) (affirming examiner's refusal to register package design).

The USPTO has decided on two separate occasions that SDJ's trade dresses that are virtually identical to SDJ's purported trade dress asserted in this case (except the pink or coral bottom as opposed to a caramel colored bottom) are functional. (Krummen Decl. Ex. 9 Apollo0005465-541 at 5466-467; Krummen Decl. Ex. 12A, Apollo0005840-6031 & Ex. 10, Apollo0005377-452 at 5378-79; Krummen Decl. Ex. 10A, Apollo0005604-839.) First, regarding U.S. Application No. 98607370, an Office Action issued wherein the USPTO Examining Attorney stated that: "The drawing of applicant's [SDJ's] applied-for three-dimensional mark is not acceptable because it includes *functional* elements depicted in solid lines rather than broken or dotted lines. . . . ***In the present case, the following elements are functional: the shape of the screw-on cap and the shape of the rounded jar.***" (Krummen Decl. Ex. 9, Apollo0005465-541 at 5466-467; Krummen Decl. Ex. 12A, Apollo0005840-6031 at 5845-46) (emphasis added.) SDJ did not respond to the Office Action and the application was deemed abandoned on November 12, 2024 with notification of the abandonment provided on December 12, 2024. (Krummen Decl. Ex. 11, Apollo0005542; Krummen Decl. Ex. 12A, Apollo0005840-6031 at 5843 & *see also* Ex. 12 Apollo0005453-5455 at 5453; Krummen Decl. Ex. 12A, Apollo0005840-6031 at 5840.)

Second, regarding U.S. Application No. 98/607,110, an Office Action issued wherein the Examining Attorney stated that: "The drawing of applicant's applied-for three-dimensional mark is not acceptable because it includes *functional* elements depicted in solid lines rather than broken or dotted lines. . . . ***In the present case, the following elements are functional: the shape of the***

ACTIVE 708751020v1

**screw-on cap and the shape of the rounded jar**." (Krummen Decl. Ex. 10, Apollo0005377-452 at 5378-379; Krummen Decl. Ex. 10A, Apollo0005604-839 at 5739-40.) (emphasis added.)

On February 26, 2025, the Examining Attorney then issued a Final Office Action refusing registration of the trademark application for SDJ's purported trade dress **because the "configuration drawing [with the shape of the screw-on cap and the shape of the rounded jar] includes functional elements . . .** ." (Krummen Decl. Ex. 10A, Apollo0005604-839 at 5608.) (emphasis added.) In doing so, the Examining Attorney attached ninety-three pages of evidence in support of her decision that the trade dress was functional. (*Id.*) The Apollo Parties' NUTRIUS® Product was the first page of evidence of functionality the Examining Attorney relied upon. (*Id* at 5612.)[2]

Further, the Examining Attorney explained that "[t]he evidence of record from Glow Recipe, Aveda, Tatcha, Pacifica, Beekman 1802, Target, Amazon, Pistache, Nutrius Body, Five Below, Alibaba, Palmers, Lovery, Sam's Club, Etsy, Berlin Packaging, The Body Shop, and The Packaging Company **shows that round, wide-mouth jars with screw on caps are a common feature of product packaging for cosmetic and body products**." (*Id.* at 5610) (emphasis added.) "The attachments from A Packaging Group and Containers and Packaging shows that product packaging for cosmetic/body products in the form **of jars with screw on caps are, by their very nature, functional** because (1) round wide-mouth jars are used to facilitate easy user access to the product, especially for thicker creams and butters, and (2) screw on caps are used to seal product

---

[2] The Examining Attorney also identified the same products that had been identified by Apollo's Expert Cline in her Reports in support of functionality: (1) NatureWell Cheeky Cream (ECF No. 152-1, Cline Rebuttal Rpt. at p. 21; Krummen Decl. Ex. 13, Supplemental Expert Report of Nikola Cline ("Supp. Cline Rpt.") at p. 21); (2) SOLAR FLARE Body Butter product (Krummen Decl. Ex. 13, Supp. Cline Rpt. at p. 25-26); and (3) Palmer's Brazilian Coco Whipped Bum, Bust & Body Cream. Krummen Decl. Ex. 13, Supp. Cline Rpt. at p. 27.)

ACTIVE 708751020v1

within a container for sanitation and preservation purposes." (*Id.*) (citing *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41, 213 U.S.P.Q. 9, 15-16 (C.C.P.A. 1982); TMEP §1202.02(a)(v)).

There is no reason for the factfinder to not follow the well-reasoned decisions of the Examining Attorney, who is skilled in trademark law, in this case.

Finally, while it is SDJ's burden to prove that its claimed trade dress is not functional, SDJ did not provide any expert testimony on the issue of functionality. *See Malaco Leaf, AB v. Promotion In Motion, Inc.*, 287 F. Supp. 2d 355, 366 (S.D.N.Y. 2003) (granting summary judgment that plaintiff's alleged trade dress was functional where plaintiff "notably fail[ed] to provide this [c]ourt with any evidence concerning non-functionality").

In sum, as found by the USPTO Examining Attorney with respect to virtually identical trade dresses, SDJ's Trade Dress claims in this case fail because the claimed trade dress is functional, and therefore, not entitled to any trade dress protection.

### 3.  SDJ's Claimed Trade Dress Is Not Inherently Distinctive Nor Did It Acquire Secondary Meaning Before Apollo's NUTRIUS® Product First Became Available.

In order to have a valid trade dress, SDJ must prove that the primary purpose behind the elements making up its claimed trade dress is to identify the product's source. *Banff Ltd. v. Express, Inc.*, 921 F. Supp. 1065, 1070-71 (S.D.N.Y. 1995) (no valid trade dress because primary purpose of design was not source-identifying); J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:1 at p. 672 n.16 (5th ed. 2022) (citing *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1008 (2d Cir. 1995) (design on sweaters is not a valid trade dress: "since the primary purpose of [plaintiff's] sweater designs is aesthetic rather than source-identifying, [plaintiff's] sweater designs do not meet the first requirement of an action under § 43(a) of the Lanham Act–that they be used as a mark to identify or distinguish the source") (citing *Tone Bros. v. Sysco Corp.*, 28 F.3d

1192, 1206 (Fed. Cir. 1994) (noting that "the focus of the inquiry is whether or not the trade dress is of such a design that a buyer will immediately rely on it to differentiate the product from those of competing manufacturers").

"Trade dress generally falls into one of two categories: product packaging or product design." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 537 (S.D.N.Y. 2011). "[P]roduct design almost invariably serves purposes other than source identification." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) (quoting *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213 (2000)). There is a presumption that the product design does not serve as brand-identifier. *I.P. Lund Trading ApS v. Kohler Co.*, 118 F. Supp. 2d 92, 108 (D. Mass 2000) ("In a product configuration case, there is a presumption that the product design does *not* serve as a brand-identifier.") (citing *Wal-Mart Stores, Inc.*, 529 U.S. at 213).

SDJ pled a product design trade dress case. (ECF No. 67, Am. Countercl. ¶ 137.) In its Amended Counterclaims, SDJ stated:

> ***The resulting product design*** is unique and instantly recognizable and includes a colored jar that has no writing on it which is gently rounded at its bottom; a large, overhanging lid that extends nearly half the height of the product and protrudes outward over the jar body (rather than screwing flush); a color-block combination of yellow and white components; the product name presented in capitalized dark-gray lettering framed by smaller text above and below. ***The resulting product design (the "Trade Dress")*** is shown below. . .

(*Id*.) (emphasis added.)

Even if there was ambiguity as to whether the claimed trade dress is product packaging or product design (and there is no ambiguity because SDJ pled a product design trade dress), the Supreme Court has advised that "courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning." *Wal-Mart Stores, Inc.*, 529

ACTIVE 708751020v1

U.S. at 215; *see also Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 554 F. Supp. 3d 606, 617 (S.D.N.Y. 2020) (same), *aff'd*, 839 F. App'x (Fed. Cir. 2021).

SDJ must prove that its claimed product design trade dress has acquired distinctiveness through secondary meaning and that SDJ's product design acquired this alleged distinctiveness *before* Apollo's and Costco's allegedly infringing product came on the market in June 2022. *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377 (2d Cir. 1997) (*Landscape I*); *see also Landscape Forms, Inc. v. Columbia Cascade Co.*, 117 F. Supp. 2d 360, 365 (S.D.N.Y. 2000) (*Landscape II*) (product design trade dress is only protected "where the requisite product distinctiveness is proven through a showing of secondary meaning"); *Wal-Mart Stores, Inc.*, 529 U.S. at 211; *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir. 1991); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.,* 209 F. Supp. 3d 612, 654 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017); *Greenpoint Fin. Corp. v. Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405, 409 (S.D.N.Y. 2000).

Courts in this circuit "exercise 'particular "caution," when extending protection to product designs," because product designs almost invariably serve purposes other than source identification. *Yurman Designs, Inc.*, 262 F.3d at 114. As a result, proving acquired distinctiveness or secondary meaning is a "heavy burden." *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 815 F.2d 8, 10 (2d Cir. 1987) (internal quotation marks omitted); *Easy Spirit, LLC v. Skechers U.S.A., Inc.,* 515 F. Supp. 3d 47, 61 (S.D.N.Y. 2021) (*Easy Spirit I*) ("[P]roof of secondary meaning entails vigorous evidentiary requirements.") (quoting *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985)) (alteration in original). Specifically, SDJ must show: (1) that a substantial portion of the consuming public identified SDJ's product design with a single source; and (2) that SDJ's product design acquired distinctiveness before Apollo's and Costco's allegedly

14

infringing product came on the market. *See Wal-Mart Stores, Inc.*, 529 U.S. at 211; *Coach Leatherware Co.*, 933 F.2d at 168; *LVL XIII Brands, Inc.*, 209 F. Supp. 3d at 654; *Greenpoint Fin. Corp.*, 116 F. Supp. 2d at 409.

A fact-finder determining whether acquired distinctiveness or secondary meaning exists may consider: (1) advertising expenditures for SDJ's product design (unless the advertising expenditures were not made solely to promote the product at issue); (2) consumer studies or surveys; (3) unsolicited media coverage for SDJ's product design; (4) sales success of SDJ's product using SDJ's product design; (5) attempts to plagiarize the product design; and (6) the length and exclusivity of SDJ's use of the product design. *See, e.g.*, *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 226 (2d Cir. 2012). Where a plaintiff does not conduct a secondary meaning survey, its secondary meaning evidence must be "overwhelming." *See Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 154 (S.D.N.Y. 2022).

### *Factor 1: Secondary Meaning Survey*

"In the Second Circuit, survey data showing 50% or greater recognition has generally been *required* to establish secondary meaning." *Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97 Civ. 8399, 2004 WL 602295, at *36 (S.D.N.Y. Mar. 26, 2004) (emphasis added), *aff'd in part and rev'd in part on other grounds*, 399 F.3d 462 (2d Cir. 2005); *see also Harlequin Enters. Ltd. v. Gulf & W. Corp.*, 644 F.2d 946, 950 n.2 (2d Cir. 1981) (50% recognition of publisher's name found "not conclusive" of secondary meaning); *Stop & Shop Supermarket Co. v. Big Lots Stores, Inc.*, NO. 09-11113, 2009 WL 10694158, at *3 (D. Mass. Nov. 19, 2009) (37% awareness insufficient to establish secondary meaning); *Zippo Mfg. Co. v. Rogers Imports, Inc.*, 216 F. Supp. 670, 690 (S.D.N.Y. 1963) (25% recognition insufficient to establish secondary meaning). In this District, consumer surveys are "consistently cited as the most persuasive evidence of secondary

meaning" and are an "important, *if not a decisive*, means by which secondary meaning is established." *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, No. 15 Civ. 10154, 2021 WL 22630, at *5 (S.D.N.Y. Jan. 4, 2021) (emphasis added).

SDJ did not conduct a secondary meaning survey. (ECF No. 150-1, Rebuttal Declaration of E. Deborah Jay, Ph.D., ("Jay Rebuttal Decl.") at ¶ 16.)  An internal SDJ survey from June 2020 found that SDJ had only 4% brand awareness in the general beauty market.  (Krummen Decl. Ex. 46, SDJ 0000209-268, at SDJ 000219.)  The survey sample was comprised of "[f]emales, ages 13-65" who "have purchased beauty products for self in P3M [past 3 months]."  (*Id.*)  In addition, an internal SDJ survey from June 2021 found that SDJ had only 5% brand awareness in the general beauty market. (Krummen Decl. Ex. 47, SDJ 0000013-104, at SDJ 000023.)  The survey sample was comprised of "[f]emales, ages 13-65" who had "purchased beauty products for self in past 3 months."  (*Id.*)  Finally, SDJ's May 2021 consumer study found that SDJ's "brand has low awareness relative to other prestige brands[3], with a rate of recognition of just 9% compared to the industry standard of 24%." (ECF No. 147-6, SDJ0001656-1676 at 1656 and 1670.)

The Apollo Parties, on the other hand, submitted an unrebutted secondary meaning survey finding that "only 17% of relevant consumers associated the appearance of the Brazilian Bum Bum Cream jar with scented body creams exclusively from [SDJ], or a single anonymous source." (ECF No. 150-2, Dr. Jay Survey 1 Report, pp. 15-16.)  SDJ's lack of a secondary meaning survey combined with the very unfavorable survey evidence from SDJ weighs heavily against a finding that SDJ's claimed product design trade dress has acquired secondary meaning.

In addition, as explained below, SDJ's other claimed evidence of secondary meaning is hardly overwhelming. Therefore, SDJ cannot carry its burden and prove that SDJ's claimed trade

---

[3] The product category SDJ claims to fall within.

dress had acquired secondary meaning at the time the Apollo Parties' NUTRIUS® Product came on the market in June 2022. *See RiseandShine Corp. v. PepsiCo. Inc.*, No. 21 Civ. 6324, 2023 WL 4936999, at *7 (S.D.N.Y. Aug. 2, 2023) (*RiseandShine I*) (finding no secondary meaning where plaintiff did not submit survey evidence and other evidence of secondary meaning was "hardly overwhelming"), *aff'd*, No. 23-1176-cv, 2024 WL 5165388 (2d Cir. Dec. 19, 2024); *Capri Sun*, 595 F. Supp. at 154 ("[W]here the other evidence of consumer recognition is hardly overwhelming, the absence of survey evidence weighs heavily against plaintiff's position." (quotation omitted)); *Bobcar Media, LLC*, 554 F. Supp. 3d at 617-19 (S.D.N.Y. Aug. 16, 2020) (finding no secondary meaning where plaintiff failed to conduct a secondary meaning survey and only sales success factor weighed in plaintiff's favor).

### *Factor 2: Advertising Expenditures*

In analyzing whether advertising expenditures support secondary meaning, the Court should consider whether the advertising "specifically directed consumers to the [alleged trade dress] as an indication of source." *LVL XIII Brands, Inc.,* 209 F. Supp. 3d at 655. "[S]howing a certain amount was spent on advertising provides little support for secondary meaning absent some demonstration that the advertisements caused consumers to associate [the alleged trade dress] with [the p]laintiff." *Rockland Exposition, Inc. v. All. Of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 319 (S.D.N.Y. 2012). Advertising that "merely pictures the claimed trade dress and does nothing to emphasize or call attention to it" does not demonstrate secondary meaning. *LVL XIII Brands, Inc.*, 209 F. Supp. 3d at 655. Similarly, advertising that "does not use the design alone but instead with other marks" does not support secondary meaning. *Id.*

SDJ contends that its $2.5 to $4 million spend each year supports a finding of secondary meaning. These figures are insignificant and SDJ has provided no context as to whether its advertising spend is "significant." *RiseandShine I*, 2023 WL 4936999, at *7 (finding total spend

of $17.5 million did not support a finding of second meaning where the plaintiff failed to provide "context to determine whether this amount is significant in the relevant market"). SDJ's corporate designee also testified that (i) SDJ's advertisements do not always show or mention the SDJ BRAZILIAN BUM BUM CREAM product ("BUM BUM Product"), and (ii) SDJ's advertisements sometimes show or mention the BUM BUM Product together with one or more other SDJ products (ECF No. 147-2, Yang Dep. Tr. at 232:25-233:14; ECF No. 274-4, Menkis Dep. Tr. 208:2-16.) Therefore, SDJ does not know what percentage of SDJ's advertisements show or mention the BUM BUM Product, or what percentage of SDJ's advertisements show or mention the BUM BUM Product and no other products. (ECF No. 147-2, Yang Dep. Tr. at 233:15-234:4; ECF No. 274-4, Menkis Dep. Tr. at 208:17-25.) SDJ's CFO confirmed "there is no way to investigate" whether SDJ's advertising spend data for the BUM BUM Product is solely for the BUM BUM Product and no other SDJ products. (ECF No. 274-7, Deposition of Atsushi Hayakawa dated September 14, 2023 ("Hayakawa Dep. Tr.") at 52:15-20; 54:8-55:7, 55:20-56:7, 58:2-5.) In addition, SDJ has not called out the allegedly distinctive elements of the BUM BUM Product jar in its advertising, such as through "look for advertising."[4] (*See* ECF No. 274-4, Menkis Dep. Tr. at 199:4-15.)

SDJ's failure to conduct a secondary meaning survey coupled with the dearth of evidence about the extent of SDJ's advertising for BUM BUM Product jar alone, specifically advertising calling out the allegedly distinctive features of the jar, and consumer recognition of the same, weighs heavily against a finding of secondary meaning.

---

[4] "Look for" advertising is advertising that specifically directs consumers to "look for" a particular feature of a product design or packaging. Advertising that associates some elements of an alleged trade dress with a brand name is not "look for" advertising and does not support a finding of secondary meaning as to the alleged trade dress. *MZ Wallace Inc. v. Fuller*, No. 18cv2265, 2018 WL 6715489, at *10 (S.D.N.Y. Dec. 20, 2018).

ACTIVE 708751020v1

### *Factor 3: Unsolicited Media Coverage*

It is well known that public relations ("PR") spend or articles solicited by the plaintiff as part of its promotional strategy do not support a finding of unsolicited media coverage. *Gameologist Grp. v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 159 (S.D.N.Y. 2011), *aff'd,* 508 F. App'x 31 (2d Cir. Jan. 25, 2023). Rather, for this factor to weigh in favor of secondary meaning, the evidence must be extensive. *See Capri Sun*, 595 F. Supp. 3d at 155. A "handful of cursory mentions and brief blurbs in national and regional periodicals and a few industry-specific articles that discuss [the plaintiff's] business and goods" does not support a finding of secondary meaning. *Id.* (quotation omitted); *see also Giggle, Inc. v. netFocal, Inc.*, 856 F. Supp. 2d 625, 632 (S.D.N.Y. 2012) (handful of national and regional articles did not reflect market recognition because while a reporter may know the plaintiff by its mark, that "does not mean that the reporter's audience, or the consuming public, does as well"); *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 490 (S.D.N.Y. 2004) ("dozen or so unsolicited articles that praise[d plaintiffs' product]" not probative of secondary meaning).

SDJ works with a PR agency, spends more than a million dollars a year on PR, and uses its PR agency to solicit media coverage. (ECF No. 274-3, Yang Dep. Tr. at 234:5-7, 236:8-237:23.) SDJ's CEO and corporate designee testified that SDJ does not keep track of unsolicited media coverage. (ECF No. 274-3, Yang Dep. Tr. at 238:11-12.) Nevertheless, SDJ has identified a handful of articles which it contends support a finding of secondary meaning. Much of the evidence makes no mention of the claimed trade dress – the BUM BUM Product *jar* – nor show any images of the jar. Accordingly, this factor weighs against a finding of secondary meaning.

### *Factor 4: Sales Success*

Like advertising spend, "[r]aw sales figures need to be put into context to have any meaning." McCarthy, *supra* § 15:49. "[I]f a company says that its sales of goods or services under

the mark are $x, that number cannot be said to be 'impressive' or 'persuasive' evidence of secondary meaning without knowing how $x compares with the norms of that industry." *Id.*; *see also RVC Floor Decor, Ltd.*, 2024 WL 2847139, at *14-15 (finding plaintiff's sales, without evidence of market share or how sales compare to similarly-situated competitors, was not persuasive evidence of secondary meaning). SDJ does not provide any context for its alleged "sales success," and therefore, this factor weighs against a finding of secondary meaning. Furthermore, even if the Court finds that SDJ has carried its burden to show that its sales success has contributed to secondary meaning (and the Court should not make this finding), "sales success alone cannot establish secondary meaning." *Bobcar Media, LLC*, 554 F. Supp. 3d at 619 (quotation omitted).

### *Factor 5: Attempts to Plagiarize*

"[T]he absence of previous instances of plagiarism by third parties weighs against a finding of secondary meaning." *Nulux, Inc. v. Ramirez*, No. 01 CV 3023, 2008 WL 11411300, at *7 (E.D.N.Y. Oct. 31, 2008); *see also Bobcar Media, LLC*, 554 F. Supp. 3d at 619 (plaintiff's failure to present evidence of third-party copying, alone, is enough for this factor to weigh against plaintiff); *Chum Ltd. v. Lisowski*, 198 F. Supp. 2d 530, 536 (S.D.N.Y. 2002) ("Given that no more than one competitor has attempted to use a mark similar to Chum's, the court finds that this factor weighs against a finding of secondary meaning."). SDJ did not submit any evidence of alleged infringement. Rather, the evidence shows that SDJ has coexistence with numerous third parties selling moisturizing cream in a jar with an overhanging lid, with the product name on the lid (including product names like "Brazilian Vibrant Bum Bum Cream," "Rozino Brazilian Bum Bum Cream," and "Brazilian Booty Cream") in a yellow and white color scheme. (ECF No. 152-1, Cline Rebuttal Rpt. at 20-24; Krummen Decl. Ex. 13, Supp. Cline Rpt. at pp. 20-27; ECF No. 216-11, Deposition of Nikola Cline dated January 8, 2024 ("Cline Dep. Tr.") at 253:16-256:6.) This factor also weighs against a finding of secondary meaning.

20

**_Factor 6: Length and Exclusivity of Use_**

When the record shows third party use of the claimed trade dress elements, this factor weighs against a finding of secondary meaning. _See LVL XIII Brands, Inc._, 209 F. Supp. 3d at 663 (holding that exclusivity of use factor weighed against a finding of secondary meaning where "the record [was] replete with examples of toe plates and other metal shoe ornaments used by [defendants] and other . . . brands"); _Meese, Inc. v. Int'l Leisure Prods., Inc._, No. 03 Civ.8684, 2003 WL 22902594, at *3 (S.D.N.Y. Dec. 9, 2003) (holding that plaintiff could not show exclusive use of alleged trade dress where "other competitors . . . dressed their products with most of the features found in the [plaintiff's] basketball product").The evidence here shows that SDJ's use of the claimed elements of its trade dress since 2016 has not been exclusive. This factor also weighs against a finding of secondary meaning.

In summary, because each of the secondary meaning factors weighs against a finding of secondary meaning, SDJ has not met its burden to prove that its claimed product design trade dress has acquired secondary meaning. SDJ's claimed trade dress is, therefore, not a protectable trade dress and its trade dress infringement claims fail.

**B.    SDJ Has Not Met Its Burden To Articulate Its Trade Dress With Particularity.**

SDJ's trade dress claims also fail because SDJ has not "articulate[d] the elements of [its] product design with specificity." _Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc._, No. 12 Civ. 3599, 2012 WL 3240442, at *4 (S.D.N.Y. Aug. 7, 2012) (claimant of unregistered trade dress must specify, with particularity, which features of the claimed trade dress are distinctive, and how those features are distinctive); _see also Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc._, 20-cv-07899, 2022 WL 4109721, at *3 (S.D.N.Y. Sept. 8, 2022) (holding that a claim for infringement of an unregistered trade dress "will succeed only if [the plaintiff] specifies,

21

with particularity, *which* features of the [claimed trade dress] are distinctive, and *how* those features are distinctive"). "[A] plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea." *Landscape I*, 113 F.3d at 381.

Here, SDJ's claimed trade dress's description is amorphous and has changed several times. (ECF No. 67, Am. Countercl. at ¶ 137 (the "alleged trade dress"); ECF No. 274-4, Menkis Dep. Tr. at 122:6-123:4, 124:2-12; ECF No. 274-3, Yang Dep. Tr. at 100:8-101:19), and uses imprecise descriptors like "gently rounded," "large, overhanging lid," and "color-block combination of yellow and white components," (ECF No. 67, Am. Countercl. at ¶ 137 (the "alleged trade dress"), which courts in this District have held lack the requisite level of specificity required under the Lanham Act. *See Sara Designs, Inc. v. A Classic Time Watch Co.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017) (dismissing trade dress claims for "fail[ing] to articulate the precise nature of the trade dress" where the plaintiff's definition of its alleged trade dress "merely contain[ed] a high level description of features of several watches, such as 'gradient chain,' 'lobster claw closure,' and 'leaf-shaped logo,' without allegations as to whether and how those features are distinctive"); *Cardinal Motors, Inc.*, 2022 WL 4109721, at *4 (holding that plaintiff's alleged trade dress was not defined with specificity where the plaintiff defined its alleged trade dress using "imprecise descriptors" such as helmet that "substantially" curves at the top and sits on a "very roughly flattish" base). Because SDJ has failed to articulate its claimed trade dress with the requisite level of specificity, its trade dress claims fail.

**C.**    **There is No Likelihood Of Confusion Between SDJ's Claimed Trade Dress And The NUTRIUS® Product Jar.**

SDJ also cannot prove that there is a likelihood of confusion between SDJ's claimed trade dress and the NUTRIUS® Product Jar, and therefore, SDJ's trade dress claims should be denied. SDJ must prove that Apollo and Costco used a product design in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of their product. "[T]he mere possibility of confusion is not enough. . . . [A] plaintiff must prove a probability of confusion . . . affecting numerous ordinary prudent purchasers." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (emphasis and quotation omitted).

To determine whether an alleged infringement is likely to cause confusion, courts in this Circuit apply an eight-factor balancing test. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). The factors to consider include: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the parties' marks; (3) the competitive proximity of the parties' products; (4) the likelihood that the plaintiff will bridge the gap; (5) actual confusion; (6) the defendant's good faith; (7) the quality of defendant's product; and (8) the sophistication of the plaintiff's customers. *See, e.g., id.*; *see also LVL XIII Brands, Inc.*, 209 F. Supp. 3d at 666-67 (*Polaroid* factors also apply to a trade dress analysis). Each of these factors weighs against a finding of likelihood of confusion.

*Factor 1: Strength of SDJ's Claimed Product Design*

When assessing the strength of SDJ's product design, the fact-finder will assess the claimed trade dress's inherent distinctiveness and acquired distinctiveness. A product design trade dress cannot be inherently distinctive. *LVL XIII Brands, Inc.*, 209 F. Supp. 3d at 668. Third-party usage of a mark in related products generally weighs against a finding that a trademark is strong. *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 123 (2d Cir. 2022) (*RiseandShine II*). "[I]n a

'crowded' field of similar marks, each member of the crowd, is relatively 'weak' in its ability to prevent use by others in a crowd." *Id.* (alteration in original) (quoting McCarthy, *supra* § 11:85, at 11-163 (4th ed. 2001)).

As explained above, the acquired distinctiveness of SDJ's claimed product designs turns on various factors, including, the Apollo Parties' secondary meaning survey and SDJ's failure to conduct a secondary meaning survey. *See Kind LLC v. Clif Bar & Co.*, No. 14 Civ. 770, 2014 WL 2619817, at *6 (S.D.N.Y Jun. 12, 2014). This factor weighs heavily against a finding of likelihood of confusion.

### *Factor 2: Similarity of the Parties' Product Designs*

When assessing the similarity of the parties' product designs, "courts look to the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." *Gruner + Jahr USA Publ'g Co. v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993). "The Second Circuit has repeatedly found that the presence of a distinct brand name weighs against a finding of confusing similarity." *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 522 (S.D.N.Y. 2008); *see also Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 122-23 (2d Cir. 2001) (*Nora Beverages II*) ("prominent and distinctive labels . . . negates any possibility of a likelihood of confusion.").

Here, Apollo's distinctive NUTRIUS® house mark is prominently displayed (i) on the pallet displays at Costco; (ii) on the accused product's two-pack clamshell packaging; and (iii) on the accused product itself. (ECF No. 274-1, Wachsberg Dep. Tr. at 106:9-107:2; ECF No. 152-1, Cline Rebuttal Rpt. at pp. 7, 9-12, 14.) Apollo's prominent display of its NUTRIUS® house mark weighs heavily against a finding of consumer confusion. *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 977 (2d Cir. 1987) (no confusion between similar rain jackets when copier displays its

24

name prominently on label, zipper pull, hang tag, and package). Consumer confusion is especially unlikely here, because, just as Apollo prominently displays Apollo's NUTRIUS® house mark on its product and packaging, SDJ also prominently displays SDJ's SOL DE JANEIRO house mark on SDJ's BUM BUM Product and packaging. (ECF 274-4, Menkis Dep. Tr.) at 168:13-23; ECF No. 274-3, Yang Dep. Tr. at 114:5-7, 178:13-16; ECF No. 152-1, Cline Rebuttal Rpt. at pp. 7, 9-11, 14; Krummen Decl. Ex. 13, Supp. Cline Rpt. at 7, 9, 11, 14-16.); *Nora Beverages II*, 269 F.3d at 122 ("[T]he prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion[.]" (quoting *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1045-46 (2d Cir. 1992))).

Moreover, there are many other prominent distinctions between the parties' product designs, including: the parties' products have (i) different names (*i.e.*, NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ vs. BRAZILIAN BUM BUM CREAM); (ii) different color schemes (*i.e.*, white jar with bright yellow lid vs. caramel jar with bone color lid); (iii) different lettering colors (*i.e.*, black vs. gray); (iv) different lettering styles (*i.e.*, small upright capital letters vs. small italicized script using upper and lower-case letters); (v) different designs on the top of the product (*i.e.*, NUTRIUS® vs. SDJ's SOL DE JANEIRO house mark and logo); and (vi) different container sizes (*i.e.*, 6 oz vs. 8.1 oz). (ECF No. 273-1, Rebuttal Expert Report by Thomas J. Gorowsky, CPA, CMA, CVA, MBA dated November 15, 2023 ("Gorowsky Rebuttal Rpt.") at 16-18.) In addition, the contexts in which the parties' products are found in the marketplace are very dissimilar. For example, the parties' products are sold primarily (i) in different packaged quantities (i.e., two-pack vs. individually); (ii) in different packaging formats (i.e., a plastic clamshell vs. a decorative cardboard box); and (iii) at significantly different price points (i.e., $1.67/oz vs. $5.93/oz). (*Id.*)

As shown below, the parties' packaging, in-store displays, and product designs are markedly different:

| Apollo's NUTRIUS BRAZILIAN BODY BUTTER CREAM | SDJ's BRAZILIAN BUM BUM |
|---|---|
| **Packaging**  |  |

|  | **Apollo's NUTRIUS BRAZILIAN BODY BUTTER CREAM** | **SDJ's BRAZILIAN BUM BUM CREAM** |
|---|---|---|
| **In-Store Display** |    |  |

27

(ECF No. 273-1, Gorowsky Rebuttal Rpt. at pp. 16-18; ECF No. 152-1, Cline Rebuttal Rpt. at pp. 7, 9-12, 16; Krummen Decl. Ex. 13, Supp. Cline Rpt. at pp. 7, 9-12, 16; ECF No. 274-1, Wachsberg Dep. Tr. at 106:9-107:2; Krummen Decl. Ex. 14, Apollo0003236; Krummen Decl. Ex. 15, Apollo0000245; Krummen Decl. Ex. 16, Apollo0005306; Krummen Decl. Ex. 17, Apollo0005294; Krummen Decl. Ex. 18, Apollo0005181; Krummen Decl. Ex. 19, Apollo0005300; Krummen Decl. Ex. 20, Apollo0005308; Krummen Decl. Ex. 21, Apollo0005297; Krummen Decl. Ex. 22, Apollo0005295; Krummen Decl. Ex. 23, SDJ 000320-22.)

This factor weighs heavily against a finding of likelihood of confusion.

### *Factor 3: The Degree to Which the Parties' Products Compete.*

When assessing the proximity of the products at issue, the fact-finder may consider "whether the products differ in content, geographic distribution, market position, and audience appeal." *It's a New 10, LLC v. Harmon Stores, Inc.*, No. 17-CV-4231, 2017 WL 3208611, at *4 (S.D.N.Y. Jul. 28, 2017) (quotation omitted). Here, the parties' products are sold in disparate markets. Over 91% of the accused NUTRIUS® Product is sold through Costco's chain of membership warehouses that carry merchandise at lower prices than are typically found at conventional retail sources. (ECF No. 153, Declaration of Lindsay Bubitz ("Bubitz Decl.") at ¶ ¶ 3, 4; ECF No. 273-1, Gorowsky Rebuttal Rpt. at p. 7.) SDJ does not sell, and has never sold, its BUM BUM Product through Costco or any other big box store. (ECF No. 274-4, Menkis Dep. Tr. at 238:15-239:12; ECF No. 274-3, Yang Dep. Tr. at 49:17-50:3.) Rather, SDJ primarily sells its BUM BUM Product through Sephora, a premium beauty retailer of expensive beauty products. (ECF No. 274-7, Hayakawa Dep. Tr. at 68:19-69:8; ECF No. 274-3, Yang Dep. Tr. at 51:21-52:7, 52:18-20, 60:23-62:11.) SDJ has had an exclusivity agreement with Sephora since approximately

2016 and sells approximately 70% of its BUM BUM Product through Sephora. (ECF No. 274-7, Hayakawa Dep. Tr. at 68:19-69:8; ECF No. 274-3, Yang Dep. Tr. at 52:18-20, 60:23-62:11.)

Further, the parties' products are sold to disparate consumers. As for Costco's consumers, the median age of readers of the *Costco Connection* magazine is 53 years-old. (ECF No. 150-3, Dr. Jay Survey 2 Rpt. at p 5, n.13; Bubitz trial testimony; Krummen Decl. Ex. 24, Costco0004507.) In stark contrast, SDJ's core consumers are millennials. (ECF No. 274-4, Menkis Dep. Tr. at 70:9-19; 284:11-285:17.) The parties' products also do not compete on price. The accused NUTRIUS® Product retails for $19.99 for a two-pack of 6 oz products in Costco stores. (ECF 147-1, Bubitz Dep. Tr. at 157:13-16.) SDJ's BUM BUM Product retails for $48 for a single 240 ml or 8.1 oz jar. (ECF No. 274-4, Menkis Dep. Tr. 215:4-6.) This factor weighs against a finding of confusion.

### *Factor 4: Likelihood SDJ Will Expand Into the Apollo Parties' Markets*

This factor "refers to the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04 Civ. 7203, 2006 WL 1012939, at *23 (S.D.N.Y. Apr. 19, 2006) (quotation omitted). Here, over 91% of the accused Nutrius® BRAZILIAN BODY BUTTER CREAM™ product is sold at Costco. (ECF No. 273-1, Gorowsky Rebuttal Rpt. at p. 7.) SDJ has never sold its BUM BUM Product in Costco or any other membership-only big box store (ECF No. 274-4, Menkis Dep. Tr. at 238:15-239:12.) Moreover, SDJ's CEO testified that SDJ "would never consider selling [its] product at Costco." (ECF No. 274-3, Yang Dep. Tr. at 49:17-50:3.) This factor, therefore, also weighs against a finding of likelihood of confusion.

### *Factor 5: Evidence of Actual Consumer Confusion*

In the Second Circuit, "trademark infringement protects only against mistaken purchasing decisions and not against confusion generally." *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d. Cir. 1991) (quotation omitted). "[N]ot all confusion counts: evidence of actual confusion must

29

show more than a fleeting mix-up of names; rather it must show that the confusion was caused by the trademarks and it swayed consumer purchase." *Alzheimer's Disease & Related Disorders Ass'n v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 293 (S.D.N.Y. 2018) (quotation omitted). Actual confusion does not include accused party's ads that remind consumers of a trade dress owner's ads; instead, they must confuse consumers as to the source of the products. *U.S. Shoe Corp. v. Brown Grp.*, 740 F. Supp. 196, 200 (S.D.N.Y.), *aff'd*, 923 F.2d 844 (2d Cir. 1990)); *see also WE Media, Inc. v. Gen. Elec. Co.*, 218 F. Supp. 2d 463, 474 (S.D.N.Y. 2002) (finding evidence of "55 to 65 inquiries" about mistaken impression that parties were connected was "negligible"), *aff'd sub nom. WE Media, Inc. v. Cablevision Sys. Corp.*, 94 F. App'x 29 (2d Cir. 2004).

SDJ seeks to rely upon alleged evidence of actual confusion which is inadmissible under Federal Rules of Evidence 401/402, 403, 602, 802, and 901 because it lacks foundation, is irrelevant, unfairly prejudicial, cannot be authenticated, and constitutes inadmissible hearsay. *See* Mem. Mot. Limine Exclude SDJ's Purported Evid. Actual Confusion. The alleged instances of actual confusion lack any probative value because there is no evidence regarding (i) who the allegedly confused individuals are and whether they have a pre-existing relationship with SDJ; (ii) whether the allegedly confused individuals were actually confused or whether they understood that the parties' products originate from different sources; and (iii) assuming the allegedly confused individuals were actually confused (again, there is no evidence of this), whether the allegedly confused individually made, or forwent, a purchased based on this confusion. Indeed, SDJ's corporate designee testified that she did not talk to any of the allegedly confused customers, does not have their contact information, and knows nothing about the nature or extent of the alleged confusion. (ECF No. 274-4, Menkis Dep. Tr. at 251:7-259:2; ECF 274-9, SDJ IP's Am. Objs. &

Resps. Apollo's Fourth Set of Interrogs. at 13-14; ECF No. 146-9, SDJ IP's Am. Objs. & Resps. to Costco's First Set of Interrogs. at 1-2; ECF No. 80-10, SDJ USA's Am. Obj. & Resps. Apollo's Fourth Set of Interrogs. at 13-14; Krummen Decl. Ex. 25, SDJ USA's, Inc.'s Am. Objs. & Resps. to Costco's First Set of Interrogs. at 1-2; ECF No. 295, Reply Declaration of Molly Littman-Johnson dated June 20, 2024 ("Littman-Johnson Reply Decl.") at ¶ 18.)

However, even if this Court finds that SDJ's claimed actual confusion evidence is admissible (which it is not), it is, at best, de minimis, and therefore, does not support a finding of likelihood of confusion. *Trs. of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 746-47 (S.D.N.Y. 1997) (holding that evidence of a few third parties telling plaintiff that they thought defendant's advertisements were connected with plaintiff was *de minimis*).

In addition, while survey evidence "is not evidence of actual confusion" because surveys "do not measure the degree of actual confusion by real consumers," "in borderline cases where evidence of confusion is not available or is not persuasive, the gap can sometimes be filled by a properly conducted survey of the relevant class of prospective customers of the goods or services at issue." *Alzheimer's Disease & Related Disorders Ass'n*, 307 F. Supp. 3d at 289 (quoting McCarthy, *supra* §§ 23.17, 32:184 (5th ed.)).

Courts in this Circuit give little weight to a survey that shows only 15% net confusion. *Kind LLC*, 2014 WL 2619817, at *9-10 (collecting cases and giving "little weight" to a survey that showed "only 15% net confusion"); *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 320-24 (S.D.N.Y.), *aff'd*, 234 F.3d 1262, 2000 WL 1721126, at *5 (2d Cir. 2000) (survey result reporting 14.5% level of confusion insufficient); *Girl Scouts of U.S. of Am. v. Bantam Doubleday Dell Pub. Grp.*, 808 F. Supp. 1112, 1128 (S.D.N.Y. 1992) (survey showing 12.6% confusion between the Girl Scouts and a book series bearing the title "Pee Wee Scouts" insufficient

ACTIVE 708751020v1

to demonstrate actual confusion), *aff'd*, 996 F.2d 1477 (2d Cir. 1993); *Malaco Leaf, AB*, 287 F. Supp. 2d at 375 ("the survey's report that only 9.5% of respondents expressed confusion over the parties' packaging trade dress is too low to sustain Malaco's contention of actual confusion"); *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1274 (S.D.N.Y. 1990) (survey results reporting 9.2% confusion insufficient).

Moreover, a survey showing less than 10% of confusion using generally accepted survey techniques is evidence that confusion is *not* likely. *Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 571 F. Supp. 3d 185, 208 (S.D.N.Y. 2021) (*Easy Spirit II*) ("A confusion rate less than 10% indicates a lack of confusion based on generally accepted survey techniques and recognized by courts."); *Malaco Leaf, AB*, 287 F. Supp. 2d at 375 (citing McCarthy, *supra* § 32:189 (4th ed. 2003) (noting that survey's confusion figures below 10% "can become evidence which will indicate that confusion is not likely")).

In addition, confusion survey numbers that are below 20% must be carefully viewed against the background of other evidence weighing for and against a conclusion of likely confusion. *Malaco Leaf, AB*, 287 F. Supp. 2d at 375 (citing McCarthy, *supra* § 32:189 (4th ed. 2003) (nothing that survey's confusion figures below 20% are "'problematic' unless accompanied by other evidence of confusion").

SDJ's confusion survey, conducted by Dr. Neal found *at most* a 15.1% rate of confusion. This far below acceptable rates of confusion in this Circuit. (*See* ECF No. 274-15, Expert Report of David Neal dated October 16, 2023 ("Neal Rpt.") at p. 9 ¶ 3.1.) In addition, Dr. Neal's survey, at best, shows 15.1% of confusion in less than 1% of Apollo's sales. (ECF No. 136-2, Deposition of Dr. David Neal date January 10, 2024 ("Neal Dep. Tr.") at 68:5-7; ECF No. 273-1, Gorowsky Rebuttal Rpt. at Ex. E.) Dr. Neal's survey did not replicate market conditions as he tested only

32

sales through Amazon where Apollo makes less than 1% of sales of its NUTRIUS® Product. *Gucci Am., Inc. v. Guess?, Inc.*, 831 F. Supp. 2d 723,743-44 (S.D.N.Y. 2011) (excluding an expert's survey for failing to reflect actual marketplace conditions where more than 99% of bags bearing the allegedly infirming trade dress also bore "either the GUESS name on the front of the bag, or the GUESS name on large G-shaped hardware on the handbag, or both," but the expert's test bag "lacked permanent fixtures bearing the Guess name"), *reconsideration granted on other grounds*, No. 09 Civ. 4373(SAS), 2011 WL 6326032 (S.D.N.Y. Dec. 16, 2011); *see also THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 238 (S.D.N.Y. 2010) (excluding plaintiff's survey through expert's testimony where plaintiff "has not shown a reasonable likelihood that consumers would have proximately encountered its shirts and the Little Miss Disney shirts in a critical number of real world situations").

Apollo's two survey experts also found no confusion. Dr. Jay's confusion survey concluded that the level of forward confusion was only 3% and the level of post-sale confusion was only 5%. (ECF No. 150-3, Dr. Jay Survey 2 Rpt. at 3, 30-31.) Dr. Simonson similarly found a net confusion rate of just 3.8%. (ECF No. 151-1, Expert Report of Dr. Itamar Simonson, Ph.D. dated November 15, 2023 ("Simonson Rpt.") at p 8, ¶ 18; 23, ¶ 46.) SDJ's lack of evidence of actual confusion, coupled with Apollo's experts' survey evidence showing no likelihood of confusion, heavily tilts this factor against a finding of likelihood of confusion.

### *Factor 6: The Good Faith Weighs Against a Finding of Likelihood of Confusion*

The good faith factor further weighs against a finding of likelihood of confusion. This factor requires a showing that the Apollo Parties acted with "the intent to sow confusion between the two companies' products." *Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc.*, No. 03 CV 2420(RMB), 2006 WL 1153354, at *10 (S.D.N.Y. May 1, 2006) (quotation omitted). Under Second Circuit law, "[t]he intent to compete by imitating the successful features of another's

33

product is vastly different from the intent to deceive purchasers as to the source of the product." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 745 (2d Cir. 1998); *see also George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1541 (2d Cir. 1992) ("There is an essential distinction between a deliberate attempt to deceive and a deliberate attempt to compete. Absent confusion, imitation of certain successful features in another's product is not unlawful and to that extent a 'free ride' is permitted." (quotation omitted)). Prior knowledge of the alleged trade dress does not necessarily give rise to an inference of bad faith and may actually be consistent with good faith. *Nora Beverages II*, 269 F.3d at 125. Intent to sell a product that looks like another company's – as opposed to an intent to sell a product that is passed of as another company's product – is not enough to find bad faith. *Id.*; *see also Landscape I*, 113 F.3d at 383 ("[S]imulating the design of a competitor's successful products is not bad faith, unless there is reason to draw an inference of an intention to deceive."); *Pfizer Inc. v. Perrigo Co.*, 988 F. Supp. 686, 700 (S.D.N.Y. 1997).

There is no evidence demonstrating that the Apollo Parties' acted with the intent to deceive and to confuse consumers. Instead, the evidence shows that the Apollo Parties took many deliberate steps to *avoid* confusion between the parties' jars, including: (1) choosing a bright yellow top and white bottom compared to SDJ's gold bottom and white top; (2) choosing the mark BRAZILIAN BODY BUTTER CREAM™ and not a product referencing the "bum" or "butt;" (3) choosing an entirely different font and style of writing for the jar; (4) primarily packaging its product in a blister two-pack, compared to SDJ's single-packaged jar; and (5) prominently features its house mark NUTRIUS® on the jar, on the packaging, and on the pallets on which the product is sold at Costco stores. (ECF No. 273-1, Gorowsky Rebuttal Rpt. at 16-18.) Apollo's placement of its distinctive house mark NUTRIUS® on its jar, packaging, and pallets, alone, defeats SDJ's claim of bad faith. *See, e.g.*, *Nora Beverages II*, 269 F.3d at 125 ("By placing its [trade name]

34

prominently upon its [goods, the accused party] negate[s] an inference of intent to deceive consumers as to the source of its product."); *see also Kind LLC*, 2014 WL 2619817, at *11; *Cumberland Packaging Corp. v. Monsanto Co.*, 140 F. Supp. 2d 241, 255 (E.D.N.Y. 2001) ("Placement of the NutraSweet name in bold black capital letters and the unique NutraSweet logo just above the center of the box contradict allegations that the defendant sought to confuse consumers about the source of their product.").

Moreover, it is not bad faith to copy functional elements of the claimed trade dress. *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 282 (S.D.N.Y. 2016) (citing *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 514-15 (6th Cir. 2013)), *aff'd*, 699 F. App'x 93 (2d Cir. 2017). Here,  SDJ's claimed trade dress is functional – the jar itself is a stock jar common to the industry. (*See* Krummen Decl. Ex. 26, Apollo0005243; Krummen Decl. Ex. 27 Apollo0005244-5274 at 5267; Krummen Decl. Ex. 28 Apollo0005238-5242; Krummen Decl. Ex. 29A Apollo0005183-85 (video at 23:56-25:55); Krummen Decl. Ex. 29B transcript of video, Apollo0005309-5349 at 5315, 25:2-26:7.) Apollo's use of this common stock jar cannot constitute bad faith. Accordingly, this factor weighs against a finding of likelihood of confusion.

### *Factor 7: The Quality of Apollo's Products Weighs Against Likelihood of Confusion*

When there is no evidence that the defendant's product is of lesser quality than the plaintiff's product, the issue is resolved in the defendant's favor. *See Malaco Leaf, AB*, 287 F. Supp. 2d at 377. Here, there is no evidence that Apollo's product is of poor quality. Indeed, evidence showing the number returns of Apollo's NUTRIUS® Product at Costco in 2022 provides that less than 0.04 of 1% of consumers had an allegedly negative reaction to product. (*Compare* ECF No. 216-9, Costco0003942 *with* ECF Nos. 149-1, Gorowsky Rpt. at Ex 2.) This does not render Apollo's product "low quality." Because there is no evidence that Apollo's product is of lesser quality than SDJ's product, this factor weighs against a finding of likelihood of confusion.

*Malaco Leaf*, 287 F. Supp. 2d at 377 ("There is no evidence that defendants' Famous Sqwish Candy Fish are of lesser quality than Malaco's Swedish Fish. . . . Accordingly, this issue is resolved in defendants' favor.").

### ***Factor 8: The Sophistication of SDJ's Customers Factor Weighs Against Likelihood of Confusion***

In general, "greater sophistication of consumers reduces the likelihood of confusion." *Easy Spirit I*, 515 F. Supp. 3d at 75 (quoting *SLY Mag., LLC v. Weider Pub'lns L.L.C.*, 529 F. Supp. 2d 425, 442 (S.D.N.Y. 2007) (quotation marks omitted)). SDJ has admitted that both SDJ and Apollo's consumers are sophisticated. (ECF No. 274-4, Menkis Dep. Tr. at 246:23-247:24.) Moreover, "[c]ourts have previously recognized . . . that purchasers of fragrances and skin care products tend to exercise a high degree of care and brand consciousness." *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 1001-02 (C.D. Cal. 2002) (citing seven Southern District of New York cases and cases from other jurisdictions); *P.F. Cosmetique, S.A. v. Minnetonka Inc.*, 605 F. Supp. 662, 671 (S,D,N,Y, 1985) (concluding that purchasers of top-of-the-line beauty products in roughly similar product packaging often distinguish between products that share a number of common elements).

In sum, each of the *Polaroid* likelihood of confusion factors weighs against a finding of likelihood of confusion. Apollo should prevail on its declaratory judgment claim of no infringement of SDJ's claimed trade dress. Moreover, SDJ's trade dress infringement claims should fail as a matter of law.

## II.    APOLLO'S DECLARATORY JUDGMENT CLAIMS FOR NO TRADEMARK INFRINGEMENT

Apollo also seeks a declaratory judgment that Apollo is not infringing and has not infringed SDJ's claimed trademark rights in the marks BRAZILIAN BUM BUM and BRAZILIAN BUM BUM CREAM. SDJ asserts claims against the Apollo Parties for trademark infringement under

the Lanham Act, 15 U.S.C. § 1114(1)(a). Relatedly, SDJ asserts claims against Costco for contributory trademark and trade dress infringement.

The burden of proving infringement rests with SDJ. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 193-94 (2014); *see also Classic Liquor Imps., Ltd.*, 201 F. Supp. 3d at 440. To prevail on its trademark infringement claims, SDJ must prove (1) that SDJ's claimed trademarks are valid trademarks; and (2) that the Apollo Parties used a mark in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of their product. *See Karmikel Corp. v. May Dep't Stores Co.*, 658 F. Supp. 1361, 1367 (S.D.N.Y. 1987); *Parenting Unlimited Inc. v. Columbia Pictures Television Inc.*, 743 F. Supp. 221, 225 (S.D.N.Y. 1990).

### A.    SDJ's BRAZILIAN BUM BUM CREAM Marks Are Not Entitled to Trademark Protection

Trademarks that are not distinctive are not entitled to any trademark protection. *See PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 562 (2d Cir. 1990). While a federal trademark registration may constitute prima facie evidence of the validity of a trademark, a registered trademark may be considered invalid if the defendant can prove that the mark is not inherently distinctive. *Id.* at 563-64. If the defendant succeeds in showing that the mark is not inherently distinctive, the plaintiff must then prove that its mark has acquired distinctiveness. *Id.* SDJ owns a federal trademark registration for its claimed mark BRAZILIAN BUM BUM, but not for its claimed mark BRAZILIAN BUM BUM CREAM (together, the "BRAZILIAN BUM BUM Marks").

To determine whether a mark is inherently distinctive, courts group the trademark into one of the following categories of distinctiveness: fanciful, arbitrary, suggestive, descriptive, and generic. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (approving of categories of distinctiveness set out in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d

Cir. 1976)). Generic terms can never be trademarks, descriptive terms are not inherently distinctive, and suggestive, arbitrary, and fanciful terms are regarded as being inherently distinctive. *Id.* at 768-69.  If the claimed mark is generic it is not entitled to any trademark protection. *Id.* at 768. If it is descriptive, the court must determine whether the mark has acquired distinctiveness. *Id.* at 769. A trademark has acquired distinctiveness when, in the minds of the public, the primary significance of the mark is to identify a single producer or source rather than the product itself. *See Wal-Mart Stores, Inc.*, 529 U.S. at 211; *Coach Leatherware Co.*, 933 F.2d at 168. The court may consider the same factors as are used to consider acquired distinctiveness for the product design trade dress analysis.  *See Wal-Mart Stores, Inc.*, 529 U.S. at 215-16; *Coach Leatherware Co.*, 933 F.2d at 168-69.

SDJ'S BRAZILIAN BUM BUM CREAM Marks are merely descriptive without any acquired distinctiveness, and therefore, are not entitled to trademark protection. The BUM BUM Product contains ingredients sourced from Brazil, such as cupuaçu butter, guarana extract, coconut oil and açai oil, and thus, the term "Brazilian" is merely descriptive of the origin of these ingredients. (ECF No. 274-3, Yang Rule 30(b)(6) Dep. Tr. at 153:21-154:9, 200:7-202:14, 208:3-15.) Further, the term "Bum Bum" is the word most commonly used in Brazil to refer to someone's "rear end" and the BRAZILIAN BUM BUM product is intended to be used on the consumer's rear end, therefore, the term "Bum Bum" is merely descriptive of what the product is for and how it is intended to be used. (ECF No. 274-11, Yang Dep. Ex. 13 (SDJ 0002690-2729 at 2696); ECF No. 274-12, Menkis Dep. Ex. 10 at SDJ0001923; ECF No. 147-4, SDJ 0000001-12 at 0000004; ECF No. 274-6, SDJ 0001957-959 at 000957.) Additionally, SDJ's common law mark includes the word "cream" which is generic for the type of product that BRAZILIAN BUM BUM CREAM is – a body cream. (ECF No. 147-2, Yang Dep. Tr. at 216:13-19, 217:24-218:4.) Accordingly, SDJ's

BRAZILIAN BUM BUM Marks are merely descriptive. *Malaco Leaf, AB*, 287 F. Supp. 2d at 369-70 (holding that plaintiff's "SWEDISH FISH" mark was "merely descriptive and weak" where it "merely describe[d] the shape of the product, a fish, and the geographical origin of the product, Sweden"). For the same reasons that SDJ has not proven acquired distinctiveness in its claimed trade dress, SDJ also has not shown that its BRAZILIAN BUM BUM Marks have acquired distinctiveness. *See also* the argument related to affirmative defenses *infra* at pp. 49-51, 53-56 which provides additional reasons that the BRAZILIAN BUM BUM Marks are not entitled to trademark protection.

### B. No Likelihood of Confusion Exists Between the Parties' Marks.

If the Court finds that SDJ's BRAZILIAN BUM BUM and BRAZILIAN BUM BUM CREAM marks are valid (and the Court should not find that they are valid), SDJ must then prove that a likelihood of confusion exists as to the source, origin, sponsorship, or approval of the Apollo Parties' NUTRIUS® Product. SDJ must prove a likelihood of confusion among a significant number of people who buy or use, or consider buying or using, the product or similar products. Courts in this Circuit consider the same likelihood of confusion factors as are used to determine likelihood of confusion for the product design trade dress analysis.

SDJ admitted in pre-suit communications that Apollo's BRAZILIAN BODY BUTTER CREAM™ Mark is "not necessarily independently infringing" of SDJ's BRAZILIAN BUM BUM Marks. (ECF No. 274-8, Wachsberg Dep. Ex. 39 SDJ0001982-1985 at 1982, 1984; ECF No. 274-1, Wachsberg Dep. Tr. 86:15-87:14.) Moreover, none of the likelihood of confusion factors weigh in SDJ's favor. As demonstrated in the trade dress likelihood of confusion analysis above, the competitive proximity, bridging the gap, defendant's good faith, quality of defendant's product, and sophistication of plaintiff's customers factors weigh in favor of the Apollo Parties. Likewise,

the strength of the mark and degree of similarity between the parties' marks factors also weighs against a finding of likelihood of confusion.

### *Factor 1: Strength of SDJ's BRAZILIAN BUM BUM Marks Weighs Against Likelihood Of Confusion*

As explained above, the BRAZILIAN BUM BUM Marks are merely descriptive and have not acquired secondary meaning. Consequently, the Marks are not entitled to any trademark protection.[5]

### *Factor 2: Similarity of the Marks Factor Weighs Heavily Against Likelihood of Confusion*

The parties' marks differ significantly in sight, sound, and meaning; therefore, this factor weighs heavily against a finding of likelihood of confusion. While both parties' marks use the terms "Brazilian" and "Cream," the shared use of these terms is legally insufficient to prove confusing similarity as the term "Brazilian" is merely descriptive of where the parties' ingredients are sourced, and because the term "cream" is generic for the type of product the parties sell. *See, e.g.*, *LVL XIII Brands, Inc.*, 209 F. Supp. 3d at 650 n.41; *Gruner*, 991 F.2d at 1077-78. Moreover, the terms "body butter" and "bum bum" which make up the rest of the parties' marks (BRAZILIAN BUM BUM and BRAZILIAN BODY BUTTER CREAM™) are not similar in sight, sound, or meaning. The words BODY BUTTER suggest the buttery texture of Apollo's product and denote a cream product that is intended to be applied to the consumer's entire body (as opposed to a cream targeted to the consumer's butt). The term "body butter" indicates that the product is meant to be applied to the consumer's entire body. Conversely, BUM BUM is a Portuguese word for butt, and SDJ's product is a cream designed to be applied to the consumer's

---

[5] In addition, a mark in a crowded field where both parties marks use the word to signify the same ordinary meaning is especially "weak" in its ability to prevent use by others in a crowd. *RiseandShine II*, 41 F.4th at 123.

butt and indicates that SDJ's product is intended to be applied to the consumer's rear end (this intended use is amplified by SDJ's marketing).

The words BODY and BUTTER are different, have different syllables, and very different meanings than the words BUM BUM. (*Id*. at pp. 8-9.) BODY BUTTER is comprised of two, two-syllable words, whereas BUM BUM is comprised of two, one-syllable words. (ECF No. 152-1, Cline Rebuttal Rpt. at p. 8; Krummen Decl., Ex. 13, Supp. Cline Rpt. at p. 9.) Moreover, the words BODY BUTTER are comprised of ten letters, whereas the words BUM BUM are comprised of six letters. (*Id.* at p. 9.)

Finally, Apollo always displays the BRAZILIAN BODY BUTTER CREAM™ mark alongside its fanciful house mark NUTRIUS®. SDJ also always displays its BRAZILIAN BUM BUM Marks alongside its house mark SOL DE JANEIRO. Accordingly, the marks are not similar in sight, sound, and meaning, and these factors weigh heavily against a finding of likelihood of confusion.

The remaining likelihood of confusion factors weigh against SDJ and in favor of the Apollo Parties on the trademark infringement claims for the same reasons they weigh against SDJ and in favor of the Apollo Parties on the trade dress infringement claims.

**III.    BECAUSE SDJ'S TRADE DRESS AND TRADEMARK INFRINGEMENT CLAIMS FAIL, SO TOO MUST SDJ'S CONTRIBUTORY TRADE DRESS AND TRADEMARK INFRINGEMENT CLAIMS AND NEW YORK COMMON LAW UNFAIR COMPETITION CLAIMS.**

### A.    Contributory Infringement

If the Court finds that SDJ has not proven trade dress and trademark infringement, then SDJ's contributory trade dress and trademark infringement claims also fail. SDJ must first establish the underlying direct infringement in order to prove contributory trade dress and trademark infringement. *See Eliya, Inc. v. Steve Madden, Ltd.*, No. 15-CV-1272, 2018 WL

41

1796228, at *10 n.15 (E.D.N.Y. Jan. 11, 2018) (recommending dismissal of contributory infringement claim upon recommendation that underlying claim for trade dress infringement claim be dismissed) (citing *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 163 (4th Cir. 2012) (holding that to be liable for contributory infringement the plaintiff must also establish the underlying direct infringement)), *R&R adopted*, No. 15-1272, 2018 WL 1027157 (E.D.N.Y. Feb. 22, 2018), *aff'd*, 749 F. App'x 43 (2d Cir. 2018).

If the Court finds that SDJ has proven trade dress and trademark infringement (and it should not find direct infringement), the Court should still find against SDJ's contributory infringement claims because SDJ has not met its burden to prove that Apollo intentionally induced Costco to infringe SDJ's claimed trade dress or trademark. *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854-55 (1982). Intentional inducement requires specific acts undertaken with knowledge of infringing behavior and with intent to case infringement. *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010).

## B. Unfair Competition Under New York Law

To prevail on its claim for unfair competition under New York common law, SDJ must prove by a preponderance of the evidence:

1. that Apollo and Costco are liable to SDJ for trademark infringement or trade dress infringement;

2. that there is actual confusion among purchasers or potential purchasers about the source, origin, sponsorship, or approval of Apollo's and Costco's product; and

3. that Apollo and Costco acted in bad faith in misappropriating the goodwill of SDJ.

*See Jeffrey Milstein, Inc.*, 58 F.3d at 34-35; *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 576-77 (2d Cir. 1993); *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 953-54 (2d Cir. 1980); *Tough Traveler, Ltd. v. Outbound Prods.*, 989 F. Supp. 203, 217 (N.D.N.Y. 1997), *aff'd*, 165 F.3d 15 (2d Cir. 1998); *Nirvana, Inc. v. Nestle Waters N. Am. Inc.*, 123 F. Supp. 3d

42

357, 380 (N.D.N.Y. 2015); *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 325-26 (S.D.N.Y. 2012); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 538 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013); *MiniFrame Ltd. v. Microsoft Corp.*, No. 11 Civ. 7419, 2013 WL 1385704, at *8 (S.D.N.Y. Mar. 28, 2013) (citing *Major League Baseball Prop., Inc. v. Opening Day Prod., Inc.*, 385 F. Supp. 2d 256, 268 (S.D.N.Y. 2005), and *Eagle Comtronics, Inc. v. Pico Prods., Inc.*, 256 A.D.2d 1202, 682 N.Y.S.2d 505, 506-07 (1998)), *aff'd*, 551 F. App'x 1 (2d Cir. 2013).

"An unfair competition claim under New York common law requires all the elements of a Lanham Act unfair competition claim plus a showing of bad faith." *Makina Ve Kimya Endustrisi A.S. v. A.S.A.P. Logistics Ltd*., No. 22-cv-3933, 2024 WL 3638054, at *8 (S.D.N.Y. Aug. 2, 2024) (quoting *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 244 (S.D.N.Y. 2013)); *B2B Rocket, LLC v. Kalendar Inc*., No. 24-cv-1063, 2024 WL 3833970, at *2 (S.D.N.Y. Aug. 15, 2024) (same).

For the reasons set forth above, SDJ's trade dress and trademark infringement claims fail. Consequently, SDJ's New York common law unfair competition claims also fail. *See Info. Superhighway, Inc. v. Talk Am., Inc.*, 395 F. Supp. 2d 44, 56 (S.D.N.Y. 2005) (dismissing unfair competition claims upon dismissal of Lanham Act claims); *see also Eliya, Inc.*, 2018 WL 1796228, at *10 n.15 (citing *Rosetta Stone Ltd.*, 676 F.3d at 163).

## IV.    APOLLO IS ENTITLED TO DECLARATORY JUDGMENT RELIEF

Because SDJ has not proven trade dress or trademark infringement under the Lanham Act or its state and common law claims, Apollo is entitled to declaratory judgment relief. More specifically, Apollo is entitled to a declaration stating that Apollo's NUTRIUS® Product design and its trademark do not infringe SDJ's claimed trade dress or trademark rights.

43

## V.    <u>SDJ IS NOT ENTITLED TO INJUNCTIVE RELIEF</u>

To obtain a permanent injunction, SDJ must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). SDJ has not met its burden. SDJ did not prove that it has suffered any injury, let alone an irreparable injury. Thus, SDJ is not entitled to a permanent injunction.

## VI.    <u>SDJ IS NOT ENTITLED TO MONETARY DAMAGES</u>

There are no claims for monetary damages left in the case. Following summary judgment, the only damages claims remaining are equitable, namely disgorgement of profits and injunctive relief.  (ECF No. 306, MSJ Order.)

## VII.    <u>SDJ IS NOT ENTITLED TO DISGORGEMENT OF PROFITS; HOWEVER, IF THE COURT DECIDES IT IS, THE PROFITS MUST BE APPORTIONED</u>

Even if the Court finds that SDJ has succeeded on its trade dress or trademark infringement claims (and the Court should not find infringement), SDJ's disgorgement of Apollo's profits (the only remaining damages in this case) is limited to, at most, $9,721 to $85,917.00. (ECF No. 273-1, Gorowsky Rebuttal Rpt., pp. 38-45.) SDJ's disgorgement of Costco's profits is limited to, at most, $8,261 to $12,781. (ECF No. 273-1, Gorowsky Rebuttal Rpt. pp. 38-45.)

In determining whether SDJ should be awarded disgorgement of the Apollo Parties' profits, the Court should consider the following factors:

- The degree of certainty that the Apollo Parties benefited from the unlawful conduct;

- The availability and adequacy of other remedies;

- The role of a particular defendant in effectuating the infringement;

- Delay by SDJ; and

- SDJ's clean (or unclean) hands.

*See 4 Pillar Dynasty LLC v. New York & Co.*, 933 F.3d 202, 214 (2d Cir. 2019).

To calculate gross profits under 15 U.S.C. § 1117, a plaintiff must first prove defendant's sales, and then the defendant can prove all expenses and other deductions claimed. Such expenses include all overhead, production, and other costs incurred in producing the gross revenue, including production, distribution, marketing, or sale of the product at issue. These gross profits must then be apportioned to exclude profit attributable to factors other than the alleged infringement. *See generally Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990); *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 268 (W.D.N.Y. 2013); *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 104 (2d Cir. 1999); *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F. Supp. 2d 276, 286 (S.D.N.Y. 2009); *In Design v. Lauren Knitwear Corp.*, 782 F. Supp. 824, 832 (S.D.N.Y. 1991); *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 566 (2d Cir.), *overruled on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 655 n.291 (S.D.N.Y. 2007); *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 72 (2d Cir. 1998).

The Apollo Parties' damages expert, Mr. Gorowsky, determined that Apollo earned net profits of $486,046 off sales of the NUTRIUS® Product after accounting for all relevant costs and expenses. (ECF No. 273-1, Gorowsky Rebuttal Rpt. pp. 38-45.) This amount is before apportionment of Apollo's profits for factors unrelated to the alleged trade dress and trademark infringement. (*Id.* at p. 25.) Mr. Gorowsky further determined that after apportionment of profits for factors unrelated to the alleged infringement, the portion of Apollo's profits (after accounting

for all relevant costs and expenses) from sales of the NUTRIUS® Product attributable to the alleged infringement through July 2023 ranges from $9,721 to $85,917. (ECF No. 273-1, Gorowsky Rebuttal Rpt., pp. 38-45.)

Mr. Gorowsky also determined that Costco earned net profits of $413,028 off sales of the NUTRIUS® Product after accounting for all relevant costs and expenses. (*Id.* at pp. 32-37.) This amount is before apportionment of Costco's profits for factors unrelated to the alleged trade dress and trademark infringement. (ECF No. 273-1, Gorowsky Rebuttal Rpt. p. 32.) Mr. Gorowsky further determined that after apportionment of profits for factors unrelated to the alleged infringement, the portion of Costco's profits (after accounting for all relevant costs and expenses) from sales of the NUTRIUS® Product attributable to the alleged infringement through July 2023 ranges from $8,261 to $12,781. (ECF No. 273-1, Gorowsky Rebuttal Rpt. pp. 38-45.)

SDJ's damages expert did not prepare and serve a sur-rebuttal expert report that rebuts Mr. Gorowsky's damages opinions. (Findings of Fact ¶ 214.) Consequently, Mr. Gorowsky's damages opinions are unrebutted and should be accepted by the Court.

## VIII.  SDJ CANNOT OBTAIN TREBLE DAMAGES OR ATTORNEY'S FEES

To obtain treble damages or attorneys' fees, SDJ must show that the Apollo Parties' actions in violating section 1125(c) were willful. *See* 15 U.S.C. § 1117(b)(1) ("intentionally us[ed] a mark or designation, knowing such mark")*.*

Further, this Court may only award reasonable attorney fees to the prevailing party in "exceptional cases." *Id.* (a). "Exceptional cases are those where 'deliberate and flagrant' infringement has occurred." *Birmingham v. Mizuno USA, Inc.*, No. 5:09-CV-0566, 2011 WL 1299356, at *20 (N.D.N.Y. Mar. 31, 2011) (denying request for attorney's fees where defendant did not act in bad faith).

ACTIVE 708751020v1

The Second Circuit has defined "exceptional cases" as ones involving fraud, bad faith or willfulness. *See Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 435, 469 (S.D.N.Y. 2017); *Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 82 F. Supp. 2d 136, 147 (S.D.N.Y. 2000) (finding case was not an "exceptional case" and denying request for attorney's fees award) (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194 (2d Cir. 1996) ("[T]his court has explicitly stated that '[the Lanham Act] allows recovery of a reasonable attorney's fee only . . . 'on evidence of fraud or bad faith.'")); *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 471 (E.D.N.Y. 2008) (despite finding bad faith and willful infringement upon plaintiff's rights the court denied motion for attorneys' fees), *aff'd* , 658 F.3d 254 (2d Cir. 2011).

There was no bad faith on the part of Apollo and Costco here. *See supra.* at pp. 34-36 (Apollo and Costco acted in good faith). Nor is there any evidence of fraud on the part of the Apollo and Costco. Accordingly, this is not an exceptional case and there is no basis to award attorney's fees.

## IX.    <u>**AFFIRMATIVE DEFENSES**</u>

### A.    <u>**Failure to State a Claim of Upon Which Relief Can Be Granted**</u>

SDJ has failed to plead the requisite elements to establish a protectable interest in the trade dress identified in its Amended Complaint and cannot establish a likelihood of confusion; it has failed to state a claim on which relief can be granted. The Trade Dress, as defined in the Amended Complaint, is not subject to protection, and SDJ cannot claim ownership rights therein *See supra* at pp. 7-44 (ECF No. 69, First Aff. Defense at p. 11 Apollo's Answer & Aff. Def. to Am. Countercl.; ECF No. 70, First Aff. Def. at p. 11, Costco Answer & Aff. Def. to Am. Countercl.).

### B.    <u>**Trade Dress Invalidity**</u>

The purported unregistered trade dress is invalid and unenforceable. (ECF No. 69, Second

Aff. Defense at p. 11; ECF No. 70, Second Aff. Def. at p. 11.)  *See supra* at pp. 7-23.

### C.  Trademark Invalidity

The purported trademark is invalid and unenforceable.  (ECF No. 69, Third Aff. Defense at p. 12; ECF No. 70, Third Aff. Def. at p. 12) *See supra* pp. 37-40.

### D.  Failure to Describe Trade Dress

SDJ failed, as a matter of law, to offer a precise expression of the character and scope of the claimed trade dress. (ECF No. 69, Fourth Aff. Defense at p. 12; ECF No. 70, Fourth Aff. Def. at p. 12.) The purported trade dress referenced in SDJ's Amended Counterclaim conflicts with the purported trade dress referenced in SDJ's August 20, 2022 demand letter, and both are pitched at an improper level of generality. *See supra* pp. 22-23.

### E.  No Identifier of Origin

SDJ is not entitled to relief because the Apollo Parties used no source identifying words or designs and made no statements that either deceived or had the capacity to deceive a substantial segment of potential consumers. (ECF No. 69, Fifth Aff. Defense at p. 12; ECF No. 70, Fifth Aff. Def. at p. 12)

### F.  Ornamental/Decorative/Informational

The Apollo Parties asserted the affirmative defense that SDJ has no valid, protectable trade dress in the packaging features SDJ identified because they are informational, decorative, and or ornamental. (ECF No. 69, Sixth Aff. Defense at p 12; ECF No. 70, Sixth Aff. Def. at p. 15-18.) Although Apollo asserts that SDJ's infringement claim is based on product design, if the Court determines there is any claim of packaging infringement, then Apollo contends that SDJ has no valid, protectable trade dress in the packaging features SDJ identified because they are informational, decorative, and or ornamental.

The word "Brazilian" in both marks is descriptive and informational as to where the ingredients in the products come from. (Krummen Decl. Ex. 30, SDJ0002668-748 at 2727) Further, the word "Cream" in both marks is descriptive of the products themselves.

The trade dress is decorative and ornamental and does not create a distinct commercial impression. *See Fort James Corp. v. Kimberly-Clark Tissue Co.*, No. 98 C 7834, 1999 WL 966144, *2-3 (N.D. Ill. Oct. 8, 1999) (denying motion to strike affirmative defense).

### G.    Functional

The Apollo Parties asserted the affirmative defense that the claims in the Amended Counterclaim and the relief sought therein, are barred, in whole or in part, on the basis that the alleged trade dress at issue, and the use of the purported trade dress, is functional. (ECF No. 69, Seventh Aff. Defense at p. 13; ECF No. 70, Seventh Aff. Def. at p. 12.)  Functionality is discussed *supra* pp. 8-12.

### H.    Non-Distinctive

The claims made in the Amended Counterclaim, and the relief sought therein, are barred, in whole or in part, on the basis that the purported trade dress lacks distinctiveness, including, without limitation, inherent distinctiveness or secondary meaning. (ECF No. 69, Eighth Aff. Defense at p. 13; ECF No. 70, Eighth Aff. Def. at p. 12.) *See supra* pp. 7-8, 12-21.

### I.    Generic

The Apollo Parties asserted the affirmative defense that SDJ's trade dress and trademark claims are barred, in whole or in part, on the basis that the alleged trade dress and trademarks at issue are generic. (ECF No. 69, Ninth Aff. Defense at p. 13; ECF No. 70, Ninth Aff. Def. at p. 13.) The term "CREAM" is generic because both the parties' products are creams.  (ECF No. 152-1, Cline Rebuttal Rpt. at p. 8.)  It "is well-established that shared use of a generic term … to describe

a product is insufficient to establish confusing similarity." *Malaco Leaf, AB*, 287 F. Supp. 2d at 371. *See supra* at pp. 7-8, 38-39.

**J.**     **No Infringement**

SDJ's claims are barred because Apollo did not, and does not, infringe SDJ's purported trade dress rights and/or purported trademark rights as claimed by SDJ. (ECF No. 69, Tenth Aff. Defense at p. 13; ECF No. 70, Tenth Aff. Def. at p. 13.)  *See supra* pp. 6-42.

**K.**     **No Likelihood of Confusion**

SDJ's claims are barred because SDJ is unable to carry their burden in establishing likelihood of confusion, particularly in light of the prominent display of the NUTRIUS® brand name on Apollo's accused packaging. (ECF No. 69, Eleventh Aff. Defense at p. 13; ECF No. 70, Eleventh Aff. Def. at p. 13.)  *See supra*  pp. 23-37, 40-42.

In addition, its interrogatory response, SDJ never disclosed the names of the allegedly confused consumers, their contact information, or any information about the nature and extent of the alleged confusion. (ECF No. 146-9, SDJ, IP's Am. Objs. & Resps. Apollo's Fourth Set of Interrogs. at Nos. 13-14, ECF No. 146-9 SDJ IP, Inc.'s Am. Objs. & Resps. to Costco's First Set of Interrogs. at Nos. 1-2 & ECF No. 80-10, SDJ, USA's Am. Obj. & Resps. Apollo's Fourth Set of Interrogs. at Nos. 13-14 and Krummen Decl. Ex. 25, SDJ USA's, Inc.'s Am. Objs. & Resps. to Costco's First Set of Interrogs. at Nos. 1-2; ECF No. 295, Littman-Johnson Reply Decl. ¶ 18.) SDJ did not talk to any of the allegedly confused consumers, does not have their contact information, and knows nothing about the nature or extent of the alleged confusion.  (ECF No. 274-4, Menkis Dep. Tr. at 251:7-259:2.)  Accordingly, none of this purported confusion evidence would be admissible. *See supra* pp. 23-37 and 40-42; *see also*, Mem. Mot. Limine Exclude SDJ's Purported Evid. Actual Confusion.

**L.**     <u>Adequate Remedy at Law</u>

SDJ's claims are barred because SDJ is unable to carry their burden in establishing that there is not an adequate remedy at law. (ECF No. 69, Twelfth Aff. Defense at p. 13; ECF No. 70, Twelfth Aff. Def. at p. 13.)

**M.**     <u>No Irreparable Harm</u>

SDJ's claims for injunctive relief are barred because SDJ cannot show that they will suffer any irreparable harm from the Apollo Parties' actions. (ECF No. 69, Thirteenth Aff. Defense at p. 13; ECF No. 70, Thirteenth Aff. Def. at p. 13.) *See supra* p. 45.

**N.**     <u>No Equitable Relief</u>

As a result of SDJ's actions, SDJ is not entitled to equitable relief, including but not limited to, SDJ's request for injunctive relief and disgorgement of the Apollo Parties' profits. (ECF No. 69, Fourteenth Aff. Defense at p. 13; ECF No. 70, Fourteenth Aff. Def. at p. 13.) *See supra* pp. 45-47.

**O.**     <u>No Willful Infringement</u>

SDJ's claims for enhanced damages and an award of fees and costs against Apollo and Costco has no basis in fact or law and should be denied. (ECF No. 69, Fifteenth Aff. Defense at p. 14; ECF No. 70, Fifteenth Aff. Def. at p. 14.) *See supra* pp. 43, 47-48.

**P.**     <u>No Damages</u>

Without admitting that the Amended Counterclaim states a claim, there has been no damage in any amount or manner to SDJ by reason of any act alleged against Apollo and Costco in the Amended Counterclaim, and the relief prayed for in the Amended Counterclaim therefore cannot be granted. (ECF No. 69, Sixteenth Aff. Defense at p. 14; ECF No. 70, Sixteenth Aff. Def. at p. 14.) *See supra* pp. 45-47.

### Q.    **Failure to Mitigate**

SDJ is obligated under the law to mitigate their damages and have failed to do so. (ECF No. 69, Seventeenth Aff. Defense at p. 14; ECF No. 70, Seventeenth Aff. Def. at p. 12.)

### R.    **Unclean Hands: Deceptive Trademark**

Apollo asserted the affirmative defense that SDJ has unclean hands as its BRAZILIAN BUM BUM mark is deceptive. (ECF No. 69, Eighteenth Aff. Defense at p 14-15; ECF No. 70, Eighteenth Aff. Def. at p. 14-15.) The primary significance of the term "BRAZILIAN" in SDJ's BRAZILIAN BUM BUM mark is a generally known geographic location (i.e., Brazil). On information and belief, SDJ's goods sold under the BRAZILIAN BUM BUM mark do not originate in Brazil. For example, on information and belief, SDJ's goods sold under the BRAZILIAN BUM BUM mark that are not manufactured in Brazil and do not contain ingredients sourced from Brazil. Nevertheless, purchasers of SDJ's goods sold under the BRAZILIAN BUM BUM mark believe that SDJ's goods are manufactured in Brazil and/or contain ingredients sourced from Brazil. As one non-limiting example, SDJ's own website contains a frequently asked questions ("FAQ") section that includes questions such as "are your products made in Brazil" and "are all your ingredients Brazilian." Consumers are more likely to seek out and purchase beauty products that they believe are either manufactured in Brazil or contain ingredients sourced from Brazil. SDJ's use of the deceptive BRAZILIAN BUM BUM mark renders SDJ's BRAZILIAN BUM BUM registration and mark invalid and unenforceable.

### S.    **Unclean Hands: Fraud.**

Apollo asserted the affirmative defense of Unclean Hands: Fraud. (ECF No. 69, Nineteenth Aff. Defense at pp. 15-18; ECF No. 70, Nineteenth Aff. Def. at p. 15-18.)

It is well settled that fraud on the USPTO in acquiring a trademark registration can give rise to an unclean hands defense. *See Amusement Art, LLC v. Life is Beautiful, LLC*, No. 2-14-cv-

08290, 2016 WL 6998566, *4, 7 (C.D. Cal. Nov. 29, 2016) (granting summary judgment on unclean hands defense based on material false statements of "use" in connection with trademark registrations) (citing *Elec. Info. Publ'ns, Inc. v. C-M Periodicals, Inc.,* No. 68 C 136, 1969 WL 9623, at *11 (N.D. Ill. Nov. 12, 1969) (denying plaintiff all relief because of its unclean hands by procuring trademark registrations based on false or fraudulent representations)), *aff'd*, 768 F. App'x 683 (9th Cir. 2019); *Bauer Bros., LLC v. Nike, Inc.*, 159 F. Supp. 3d 1202, 1215-16 (S.D. Cal. 2016) (allowing unclean hands defense based on fraud on the USPTO to proceed); *Gaffrig Performance Indus. v. Livorsi Marine, Inc.*, No. 99 C 7778, 2003 WL 23144859 (N.D. Ill. Dec. 22, 2003). "The 'unclean hands' doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *Radiancy, Inc. v. Viatek Consumer Prods. Grp.*, 138 F. Supp. 303, 319 (S.D.N.Y. 2014) (quoting *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 329-30 (1994)); *Duffy-Mott Co. v. Cumberland Packing Co.*, 424 F.2d 1095, 1099-100 (C.C.P.A. 1970); *see also* McCarthy, *supra* § 31:48 (5th ed. 2024) ("When a defendant charged with infringement proves that the trademark registration on which plaintiff relies was obtained by fraud, it is clear that the unclean hands defense directly relates to the subject matter of plaintiff's claim."); *id.* § 31:58 ("Conduct held to sustain unclean hands defense.").

"To establish that [registrant] committed fraud in the procurement of the federal registration, [defendant] must prove by clear and convincing evidence: (1) the false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from the reliance." *Gaffrig Performance Indus.*, 2003 WL 23144859, at *13. "Since direct evidence of

deceptive intent is rarely available, subjective intent to deceive can be inferred from indirect and circumstantial evidence." *MPC Franchise, LLC v. Tarntino*, 19 F. Supp. 3d 456, 478 (W.D.N.Y. 2014) (quotation omitted), *aff'd*, 826 F.3d 653 (2d Cir. 2016).

Courts have concluded that false statements about terms having significance to the product, such as those that lead to disclaimers, can constitute fraud on the USPTO. *See Gaffrig Performance Indus.*, 2003 WL 23144859, at *14 (finding trademark registration was procured fraudulently because the word had significance in "marine trade" and that it was "material because without this misrepresentation, the federal registration should not, or would not, have been issued"); *Top Producer Sys. Inc. v. Software Scis. Ltd.*, No. 97-0415, 1997 WL 723049, at *3 (D. Or. July 21, 1997) (allowing fraud claim to proceed where plaintiff failed to disclose to the USPTO that the TOP PRODUCER term was generic in the real estate industry); *Elec. Info. Publ'ns, Inc.*, 1969 WL 9623, at *10-11 (finding that plaintiff's use of the generic terms "food service" and "food service news" had misused its trademark and therefore plaintiff made false statements to the USPTO); *Bart Schwartz Int'l Textiles, Ltd. v. Fed. Trade Comm'n*, 289 F.2d 665, 669 (C.C.P.A. 1961) (applicant knew that others had the right to use the word "fiocco" so his statement in the declaration was a misrepresentation of fact).

The false representations regarding the nature of the ingredients in the goods sold under the BRAZILIAN BUM BUM mark that were made on behalf of SDJ were material because SDJ's BRAZILIAN BUM BUM registration would not have been granted in the form it was if the true facts had been known to the Examining Attorney. More specifically, the Examining Attorney would have required the term "BRAZILIAN" to be disclaimed and would not have allowed the BRAZILIAN BUM BUM mark to register without a disclaimer. SDJ knew that the ingredients in

the goods sold under the BRAZILIAN BUM BUM mark are Brazilian and that the term "BRAZILIAN" in the BRAZILIAN BUM BUM mark is geographically descriptive.

Additionally, SDJ intended to deceive the USPTO. For example, SDJ intentionally wanted to avoid disclaiming the term "BRAZILIAN" so that SDJ could attempt to claim the exclusive right to use the term "BRAZILIAN" separate and apart from the term "BUM BUM."

The USPTO reasonably relied on SDJ's false representations to the USPTO and allowed SDJ's application for the mark BRAZILIAN BUM BUM without a disclaimer of the term "BRAZILIAN." Accordingly, SDJ's trademark infringement claims should be dismissed based on its fraud on the USPTO.

## X.    **ANTICIPATED EVIDENTIARY ISSUES**

Apollo and Costco filed the following motions in limine:

1. Motion to Preclude SDJ's Fact Witness Testimony Regarding Damages;
2. Motion to Preclude Expert Testimony that Goes Beyond Expert Report Under Rule 26(a)(2)(B);
3. Motion to Preclude Dr. Serdari's testimony pursuant to the Court's summary judgment rulings;
4. Motion to preclude SDJ from introducing punitive damages evidence
5. Motion to Preclude SDJ from offering any trade dress definition other than the product design trade dress definition in their Counterclaim and Interrogatory Responses
6. Motion to preclude non-point of sale evidence of Apollo's Accused Product;
7. Motion to Preclude Dr. Neal From Testifying About A Purported 15.1% Net Confusion Rate That Cannot Be Generalized To Real World Conditions.
8. Motion to Preclude SDJ's purported evidence of actual confusion;
9. Motion to Preclude Heela Yang from Offering Anecdotal and Unsupported Evidence Concerning Purported Evidence of Actual Confusion;
10. Motion to Preclude Heela Yang Deposition Exhibit 9 from Being Introduced as an Incomplete Exhibit at Trial Pursuant To Fed. R. Evid. 106;
11. Motion to Depose SDJ's Untimely Disclosed Witness Charles Louvrier; Conduct Depositions Regarding SDJ's Untimely Disclosed Reports; Produce the Withheld Reports and to Preclude SDJ from Relying On the Belatedly Produced Reports and Belatedly Disclosed Witness; and
12. Motion to Preclude SDJ from Offering Evidence Concerning the NUTRIUS® Product That Does Not Replicate Market Conditions

ACTIVE 708751020v1

Dated: March 21, 2025

By:     /s/ Craig S. Krummen

Craig S. Krummen (*Admitted Pro Hac Vice*)
Tiffany A. Blofield (*Admitted Pro Hac Vice*)
Benjamin P. Gilford (*Admitted Pro Hac Vice*)
Molly R. Littman-Johnson (*Admitted Pro Hac Vice*)
GREENBERG TRAURIG, LLP
90 South 7th Street, Suite 3500
Minneapolis, Minnesota 55402
Phone: (612) 259-9719
Fax: (612) 677-3101
krummenc@gtlaw.com
gilfordb@gtlaw.com
molly.littman@gtlaw.com

Jonathan Peter Presvelis (5693197)
GREENBERG TRAURIG, LLP
1 Vanderbilt Ave
New York, New York  10017
Phone: (212) 801-9368
Fax: (212) 801-6400
presvelisj@gtlaw.com

*Counsel for Apollo Healthcare Corp. d/b/a Apollo Health and Beauty Care and Costco Wholesale Corp.*

ACTIVE 708751020v1