# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

APOLLO HEALTHCARE CORP. d/b/a
APOLLO HEALTH AND BEAUTY CARE,

        Plaintiff,

   v.

SOL DE JANEIRO USA INC. and
SOL DE JANEIRO IP, INC.,

       Defendants.

Civil Action No.: 1:22-cv-07719-LLS

SOL DE JANEIRO USA INC. and
SOL DE JANEIRO IP, INC.,

        Counterclaim-Plaintiffs,

   v.

APOLLO HEALTHCARE CORP. d/b/a
APOLLO HEALTH AND BEAUTY CARE
and COSTCO WHOLESALE CORP.,

        Counterclaim-Defendants.

## SOL DE JANEIRO'S TRIAL BRIEF

## <u>TABLE OF CONTENTS</u>

TABLE OFAUTHORITIES ................................................................ iv

ISSUES TO BE TRIED ..................................................................1

FACTUAL BACKGROUND...............................................................3

KEY LEGAL ISSUES ....................................................................6

I.    Apollo and Costco Infringed Sol de Janeiro's Bum Bum Trade Dress Under the Lanham Act (Sol de Janeiro's Counterclaims I and II) ........................................6

    A.    Sol de Janeiro Owns the Bum Bum Trade Dress................................6

    B.    Sol de Janeiro's Bum Bum Trade Dress is Valid and Protectable.........................7

        1.    Sol de Janeiro's Bum Bum Trade Dress is Distinctive...............................7

            a.    Sol de Janeiro Will Define the Bum Bum Trade Dress with Specificity for the Jury....................................7

            b.    Sol de Janeiro Will Show at Trial that its Bum Bum Trade Dress is Inherently Distinctive and has Acquired Distinctiveness Through Secondary Meaning .........................................8

                i.    Sol de Janeiro's Bum Bum Trade Dress Constitutes Product Packaging..............................................9

                ii.    Sol de Janeiro's Bum Bum Trade Dress is Inherently Distinctive..........................................10

                iii.    Sol de Janeiro's Bum Bum Trade Dress Has Acquired Distinctiveness Through Secondary Meaning .................12

                iv.    Apollo and Costco's Proffered Evidence of Third-Party Use Does Not Impact Sol de Janeiro's Bum Bum Trade Dress's Distinctiveness .................................15

        2.    Sol de Janeiro's Bum Bum Trade Dress is Not Functional ...........................17

    C.    Apollo and Costco Have Infringed Sol de Janeiro's Bum Bum Trade Dress........20

        1.    Strength of the Bum Bum Trade Dress....................................22

        2.    Similarity of Sol de Janeiro's Bum Bum Trade Dress and the Brazilian Body Butter Cream Product Packaging...............................22

3.    Competitive Proximity.................................................................25

4.    Evidence of Actual Confusion.....................................................26

5.    Apollo's and Costco's Bad Faith ...............................................29

6.    Respective Quality of the Parties' Products...............................30

7.    Consumer Sophistication ...........................................................31

II.    Apollo Contributed to Costco's and Other Third Parties' Infringement of Sol de Janeiro's Bum Bum Trade Dress (Sol de Janeiro's Counterclaim III)...............................................32

III.    Apollo and Costco Violated New York Common Law by Infringing Sol de Janeiro's Bum Bum Trade Dress (Sol de Janeiro Counterclaim IV).........................................................33

IV.    Apollo and Costco Infringed Sol de Janeiro's BUM BUM Marks Under the Lanham Act (Sol de Janeiro's Counterclaims V and VI) ................................................................34

A.    Sol de Janeiro Owns the BRAZILIAN BUM BUM Trademark and it is Valid and Protectible ............................................................................................34

B.    Sol de Janeiro Owns the BRAZILIAN BUM BUM CREAM Trademark and it is Valid and Protectible...................................................................................34

C.    Apollo and Costco Infringed Sol de Janeiro's BUM BUM Marks.......................36

1.    Strength of the BUM BUM Marks ..........................................37

2.    Similarity of the Marks .........................................................37

V.    Apollo Contributed to Costco's and Other Third Parties' Infringement of Sol de Janeiro's BUM BUM Marks (Sol de Janeiro's Counterclaim VII)...................................................38

VI.    Apollo and Costco Violated New York Common Law by Infringing Sol de Janeiro's BUM BUM Marks (Sol de Janeiro Counterclaim VIII) ...........................................................39

VII.    Sol de Janeiro is Entitled to Damages and Other Remedies for Apollo's and Costco's Trademark Infringement, Trade Dress Infringement, and Violation of New York Common Law ....................................................................................................................39

A.    Actual Damages ..............................................................................................40

B.    Apollo's and Costco's Profits .........................................................................43

C.    Punitive Damages ...........................................................................................44

D.      Permanent Injunction ............................................................45

VIII.   Apollo's Declaratory Judgment Claims and Apollo and Costco's Affirmative Defenses Have No Merit ...............................................................47

A.      Apollo is Not Entitled to Attorney's Fees Because This is Not an Exceptional Case........................................................................................48

B.      Sol de Janeiro Does Not Have Unclean Hands.....................................49

POTENTIAL EVIDENTIARY ISSUES ........................................................53

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*24/7 Recs., Inc. v. Sony Music Ent., Inc.*,
    566 F. Supp. 2d 305 (S.D.N.Y. 2008)........................................................................42

*4 Pillar Dynasty LLC v. New York & Co.*,
    933 F.3d 202 (2d Cir. 2019)........................................................................................26

*AWGI, L.L.C. v. Atlas Trucking Co.*,
    17-CV-12131, 2020 WL 3546100 (E.D. Mich. June 30, 2020) ...............................28

*AWGI, L.L.C. v. Atlas Trucking Co.*,
    998 F.3d 258 (6th Cir. 2021) .....................................................................................28

*Abbott Laboratories v. Adelphia Supply USA*, 15-CV-5826 (CBA)(LB),
    17-CV-6002 (CBA)(LB), 2019 WL 5696148 (E.D.N.Y. Sept. 30, 2019).................44

*Abbott Laboratories v. H & H Wholesale Services, Inc.*,
    15-CV-5826 (CBA)(LB), 2022 WL 17977495 (E.D.N.Y. Dec. 28, 2022) .........40, 41

*Abbott Laboratories v. H&H Wholesale Services, Inc.*,
    23-CV-0446, 2024 WL 4297472 (2d Cir. Sept. 26, 2024) ........................................41

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
    537 F.2d 4 (2d Cir. 1976)......................................................................................8, 35

*American Automobile Association (Inc.) v. AAA Automobile Club of Queens, Inc.*,
    97-CV-1180 (SJ), 1999 WL 97918 (E.D.N.Y. Feb. 8, 1999)...................................41

*American Footwear Corp. v. General Footwear Co.*,
    609 F.2d 655 (2d Cir. 1979).........................................................................................6

*Banff, Ltd. v. Federated Department Stores, Inc.*,
    841 F.2d 486 (2d Cir. 1988).......................................................................................24

*Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co.*,
    15-CV-1092 (JMF), 2015 WL 845711 (S.D.N.Y. Feb. 26, 2015).............................9

*Bath & Body Works Brand Management, Inc., LLC v. Summit Entertainment, LLC*,
    7 F. Supp. 3d 385 (S.D.N.Y. 2014) ..........................................................................18

*Beastie Boys v. Monster Energy Co.*,
    112 F. Supp. 3d 31 (S.D.N.Y. 2015)....................................................................48, 49

*Best Cellars Inc. v. Grape Finds at Dupont, Inc.*,
    90 F. Supp. 2d 431 (S.D.N.Y. 2000)..........................................................................23

*Bongo Apparel, Inc. v. Iconix Brand Group, Inc.*,
    856 N.Y.S.2d 22, 2008 WL 41341 (N.Y. Sup. Ct. Jan. 2, 2008)..............................33

*Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*,
    145 F.3d 481 (2d Cir. 1998)........................................................................................41

*Borghese Trademarks Inc. v. Borghese*,
    10-CV-5552 (JPO)(AJP), 2013 WL 143807 (S.D.N.Y. Jan. 14, 2013)..................................28

*In re Bose Corp.*,
    580 F.3d 1240 (Fed. Cir. 2009)................................................................................................51

*Brandir International, Inc. v. Cascade Pacific Lumber Co.*,
    834 F.2d 1142 (2d Cir. 1987)..................................................................................................18

*Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*,
    360 F.3d 125 (2d Cir. 2004)....................................................................................................34

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
    973 F.2d 1033 (2d Cir. 1992)..................................................................................13, 15, 24

*Bulman v. 2BKCO, Inc.*,
    882 F. Supp. 2d 551 (S.D.N.Y. 2012)..............................................................................25, 31

*In re California Innovations, Inc.*,
    329 F.3d 1334 (Fed. Cir. 2003)...............................................................................................50

*Capri Sun GmbH v. American Beverage Corp.*,
    595 F. Supp. 3d 83 (S.D.N.Y. 2022).......................................................................................34

*Car-Freshener Corp. v. Big Lots Stores, Inc.*,
    314 F. Supp. 2d 145 (N.D.N.Y. 2004).....................................................................................45

*Cardinal Motors, Inc. v. H&H Sports Protection USA Inc.*,
    128 F.4th 112 (2d Cir. 2025) ....................................................................................................8

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*,
    348 F. Supp. 2d 217 (S.D.N.Y. 2004).......................................................................14, 15, 26

*Cartier, Inc. v. Sardell Jewelry, Inc.*,
    294 F. App'x 615 (2d Cir. 2008) ...............................................................................19, 20, 21

*Christian Louboutin S.A. v. Yves Saint Laurent America Holdings, Inc.*,
    696 F.3d 206 (2d Cir. 2012)....................................................................................12, 13, 17, 34

*Coach Leatherware Co. v. AnnTaylor, Inc.*,
    933 F.2d 162 (2d Cir. 1991)......................................................................................................7

*Coty Inc. v. Excell Brands, LLC*,
    277 F. Supp. 3d 425 (S.D.N.Y. 2017)................................................................................21, 28

*Diageo North America, Inc. v. W.J. Deutsch & Sons Ltd.*,
    626 F. Supp. 3d 635 (S.D.N.Y. 2022).......................................................................17, 18, 19

*Dual Groupe, LLC v. Gans-Mex LLC*,
    932 F. Supp. 2d 569 (S.D.N.Y. 2013).................................................................................6, 35

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)................................................................................................................45

*Easy Spirit, LLC v. Skechers U.S.A., Inc.*,
    515 F. Supp. 3d 47 (S.D.N.Y. 2021) ...............................................................30, 31

*Electra v. 59 Murray Enterprises, Inc.*,
    987 F.3d 233 (2d Cir. 2021)...............................................................................40

*Estate of P.D. Beckwith, Inc., v. Commissioner of Patents*,
    252 U.S. 538 (1920)..........................................................................................37

*Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*,
    628 F.2d 500 (5th Cir. 1980) .............................................................................28

*Fabrication Enterprises, Inc. v. Hygienic Corp.*,
    64 F.3d 53 (2d Cir. 1995).................................................................................17

*Fashion Exchange LLC v. Hybrid Promotions, LLC*,
    14-CV-1254 (SHS), 2022 WL 4554480 (S.D.N.Y. Sept. 29, 2022) .....................41

*Fiji Water Co. v. Fiji Mineral Water USA, LLC*,
    741 F. Supp. 2d 1165 (C.D. Cal. 2010) ............................................................10

*Focus Products Group International, LLC v. Kartri Sales Co.*,
    647 F. Supp. 3d 145 (S.D.N.Y. 2022)...............................26, 33, 45, 46, 47

*Forschner Group, Inc. v. Arrow Trading Co.*,
    30 F.3d 348 (2d Cir. 1994)..................................................................................6

*Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*,
    111 F.3d 993 (2d Cir. 1997)...................................................................7, 23, 27

*GeigTech East Bay LLC v. Lutron Electronics Co.*,
    352 F. Supp. 3d 265 (S.D.N.Y. 2018)..........................................................8, 20

*George Basch Co. v. Blue Coral, Inc.*,
    968 F.2d 1532 (2d Cir. 1992).............................................................................42

*Getty Petroleum Corp. v. Island Transportation Corp.*,
    878 F.2d 650 (2d Cir. 1989)..........................................................................44, 45

*Giggle, Inc. v. netFocal, Inc.*,
    856 F. Supp. 2d 625 (S.D.N.Y. 2012)...................................................22, 23, 51

*Gucci America, Inc. v. Guess, Inc.*,
    843 F. Supp. 2d 412 (S.D.N.Y. 2012)................................................................42

*Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*,
    281 F.2d 755 (2d Cir. 1960)..............................................................................31

*Hermes International v. Lederer de Paris Fifth Ave., Inc.*,
    219 F.3d 104 (2d Cir. 2000)................................................................................9

*ITC Ltd. v. Punchgini, Inc.*,
    482 F.3d 135 (2d Cir. 2007)................................................................................6

*International Star Class Yacht Racing Association v. Tommy Hilfiger, U.S.A., Inc.,*
   80 F.3d 749 (2d Cir. 1996)......................................................................................40

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,*
   456 U.S. 844 (1982).........................................................................................12, 32

*James Burrough Ltd. v. Sign of Beefeater, Inc.,*
   540 F.2d 266 (7th Cir. 1976) ............................................................................28, 29

*Jane St. Grp., LLC v. Millennium Mgmt. LLC,*
   24 CIV. 2783 (PAE), 2024 WL 3357005 (S.D.N.Y. July 10, 2024)......................49

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,*
   58 F.3d 27 (2d Cir. 1995).....................................................................................7, 40

*Jordache Enterprises, Inc. v. Levi Strauss & Co.,*
   841 F. Supp. 506 (S.D.N.Y. 1993) ........................................................................20

*Joules Ltd. v. Macy's Merchandising Group, Inc.,*
   695 F. App'x 633 (2d Cir. 2017) ...............................................................25, 26, 36

*Kensington Publishing Corp. v. Gutierrez,*
   05-CV-10529 (LTS)(AJP), 2009 WL 4277080 (S.D.N.Y. Nov. 10, 2009)............13

*Kompan A.S. v. Park Structures, Inc.,*
   890 F. Supp. 1167 (N.D.N.Y. 1995) ................................................................24, 25

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co.,*
   07-CV-2568 (JG), 2012 WL 1414872 (E.D.N.Y. Jan. 20, 2012)...........................9

*L'Oreal USA, Inc. v. Trend Beauty Corp.,*
   11-CV-4187 (RA), 2013 WL 4400532 (S.D.N.Y. Aug. 15, 2013) ........................18

*Landscape Forms, Inc. v. Columbia Cascade Co.,*
   113 F.3d 373 (2d Cir. 1997)....................................................................................8

*Lane Capital Management, Inc. v. Lane Capital Management, Inc.,*
   192 F.3d 337 (2d Cir. 1999)...................................................................................36

*Lever Bros. Co. v. American Bakeries Co.,*
   693 F.2d 251 (2d Cir. 1982)...................................................................................31

*Lexington Furniture Industries, Inc. v. Lexington Co.,*
   19-CV-6239 (PKC), 2022 WL 13848274 (S.D.N.Y. Oct. 24, 2022) ...............44, 45

*Lexington Furniture Industries, Inc. v. Lexington Co.,*
   19-CV-6239 (PKC), 2023 WL 8889514 (2d Cir. Dec. 26, 2023) ..........................44

*Lobo Enterprises, Inc. v. Tunnel Inc.,*
   822 F.2d 331 (2d Cir. 1987)...................................................................................46

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,*
   799 F.2d 867 (2d Cir. 1986)...................................................................................26

*Lon Tai Shing Co. v. Koch & Lowy*,
    19 U.S.P.Q.2d 1081 (S.D.N.Y. 1991).....................................................................28

*Lopez v. Gap, Inc.*,
    883 F. Supp. 2d 400 (S.D.N.Y. 2012) .................................................................16

*LoPresti v. Massachusetts Mutual Life Insurance Co.*,
    820 N.Y.S.2d 275 (N.Y. App. Div. 2006). ..........................................................33

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*,
    426 F.3d 532 (2d Cir. 2005)................................................................................22

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    454 F.3d 108 (2d Cir. 2006)...............................................................21, 22, 37

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
    14-CV-3419 (JMF), 2018 WL 317850 (S.D.N.Y. Jan. 8, 2018) ..........................49

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
    764 F. App'x 39 (2d Cir. 2019) ..........................................................................49

*MPC Franchise, LLC v. Tarntino*,
    826 F.3d 653 (2d Cir. 2016)...........................................................................51, 52

*Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*,
    703 F. Supp. 2d 671 (W.D. Ky. 2010)..............................................................9, 10

*Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*,
    679 F.3d 410 (6th Cir. 2012) ...............................................................................10

*McWeeney v. Lambe*,
    30 N.Y.S.3d 189 (N.Y. App. Div. 2016) .............................................................45

*Medinol Ltd. v. Boston Scientific Corp.*,
    346 F. Supp. 2d 575 (S.D.N.Y. 2004).................................................................52

*Metrokane, Inc. v. Built NY, Inc.*, 06-CV-14447 (LAK)(MHD),
    07-CV-2084 (LAK)(MHD), 2008 WL 11397767 (S.D.N.Y. Sept. 3, 2008).........23

*MidCap Business Credit, LLC v. MidCap Financial Trust*,
    655 F. Supp. 3d 193 (S.D.N.Y. 2023)..................................................................30

*Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd.*,
    452 F. Supp. 429 (W.D.N.Y. 1978) .....................................................................23

*In re Miracle Tuesday, LLC*,
    695 F.3d 1339 (Fed. Cir. 2012)...........................................................................50

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
    818 F.2d 254 (2d Cir. 1987).................................................................................31

*Morningside Group Ltd. v. Morningside Capital Group, LLC*,
    182 F.3d 133 (2d Cir. 1999).................................................................................26

*Museum of Modern Art v. MOMACH IP LLC*,
339 F. Supp. 3d 361 (S.D.N.Y. 2018)..............................................................................12, 27

*New West Corp. v. NYM Co. of California, Inc.*,
595 F.2d 1194 (9th Cir. 1979) ........................................................................................6

*Nora Beverages, Inc. v. Perrier Group of America, Inc.*,
269 F.3d 114 (2d Cir. 2001)............................................................................................29

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014)........................................................................................................48

*Offerup Inc. v. Ramtin Software Solutions, LLC*,
23-CV-6014 (RPK)(CLP), 2024 WL 4362512 (E.D.N.Y. Sept. 30, 2024)......................6

*Orient Express Trading Co. v. Federated Department Stores, Inc.*,
842 F.2d 650 (2d Cir. 1988)............................................................................................51

*PAF S.r.l. v. Lisa Lighting Co.*,
712 F. Supp. 394 (S.D.N.Y. 1989) .................................................................................14

*PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*,
818 F.2d 266 (2d Cir. 1987)............................................................................................40

*Paddington Corp. v. Attiki Importers & Distributors, Inc.*,
996 F.2d 577 (2d Cir. 1993)................................................................................... *passim*

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
317 F.3d 209 (2d Cir. 2003)......................................................................................25, 26

*Patsy's Italian Restaurant, Inc. v. Banas*,
658 F.3d 254 (2d Cir. 2011)......................................................................................34, 52

*Polaroid Corp. v. Polarad Electronics Corp.*,
287 F.2d 492 (2d Cir. 1961)......................................................................................21, 36

*Polaroid Corp. v. Polarad Electronics Corp.*,
368 U.S. 820 (1961)........................................................................................................21

*Polymer Technology Corp. v. Mimran*,
975 F.2d 58 (2d Cir. 1992)..............................................................................................32

*Qualitex Co. v. Jacobson Products Co.*,
514 U.S. 159 (1995)........................................................................................................17

*RJR Foods, Inc. v. White Rock Corp.*,
201 U.S.P.Q. 578 (S.D.N.Y. 1978).................................................................................23

*RJR Foods, Inc. v. White Rock Corp.*,
603 F.2d 1058 (2d Cir. 1979)..........................................................................................28

*Romag Fasteners, Inc. v. Fossil, Inc.*,
590 U.S. 212 (2020)........................................................................................................40

ix

*Samara Bros., Inc. v. Wal-Mart Stores, Inc.*,
  165 F.3d 120 (2d Cir. 1998)............................................................................................29

*Savin Corp. v. Savin Group*,
  391 F.3d 439 (2d Cir. 2004)......................................................................................20, 22

*Scarves by Vera, Inc. v. Todo Imports Ltd.*,
  544 F.2d 1167 (2d Cir. 1976)........................................................................................16

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
  193 F. Supp. 3d 245 (S.D.N.Y. 2016)...........................................................................18

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
  909 F.3d 519 (2d Cir. 2018)...........................................................................................48

*Slep-Tone Entertainment Corp. v. Golf 600 Inc.*,
  193 F. Supp. 3d 292 (S.D.N.Y. 2016)...........................................................................32

*Star Indus., Inc. v. Bacardi & Co.*,
  412 F.3d 373 (2d Cir. 2005)......................................................................20, 22, 31, 35

*Steven Madden, Ltd. v. Yves Saint Laurent*,
  18-CV-7592 (VEC), 2019 WL 2023766 (S.D.N.Y. May 8, 2019)...............................9

*T. Anthony, Ltd. v. Malletier*,
  93-CV-6900 (KC), 1993 WL 659682 (S.D.N.Y. Nov. 24, 1993) ..........................16, 17

*Telebrands Corp. v. Del Laboratories, Inc.*,
  719 F. Supp. 2d 283 (S.D.N.Y. 2010)...........................................................................18

*Thompson Medical Co. v. Pfizer Inc.*,
  753 F.2d 208 (2d Cir. 1985)...........................................................................................21

*Tiffany & Co. v. Costco Wholesale Corp.*,
  971 F.3d 74 (2d Cir. 2020).............................................................................................31

*Tiffany (NJ) Inc. v. eBay, Inc.*,
  600 F.3d 93 (2d Cir. 2010).............................................................................................32

*Time, Inc. v. Petersen Publishing Co.*,
  173 F.3d 113 (2d Cir. 1999)....................................................................................35, 37

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
  532 U.S. 23 (2001)............................................................................................................9

*Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*,
  207 F. Supp. 2d 221 (S.D.N.Y. 2002)...........................................................................52

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
  505 U.S. 763 (1992)..................................................................................................6, 7, 8

*Virgin Enterprises, Ltd. v. Nawab*,
  335 F.3d 141 (2d Cir. 2003)....................................................................................25, 26, 27

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
    529 U.S. 205 (2000)......................................................................................9, 10, 29

*Wonderful Co. v. Nut Cravings Inc.*,
    21-CV-3960 (MKV), 2022 WL 4585344 (S.D.N.Y. Sept. 29, 2022) .......................................9

## STATUTES

15 U.S.C. § 1114.............................................................................................1, 34, 40

15 U.S.C. § 1115.................................................................................................34

15 U.S.C. § 1116.................................................................................................40

15 U.S.C. § 1117...................................................................................39, 40, 41, 43, 48

15 U.S.C. § 1125....................................................................................... *passim*

## RULES

Fed. R. Evid. 801 ...............................................................................................27

Rule 4(A)(5) of the Individual Practices of Judge Louis L. Stanton ..............................................1

## RESTATEMENT

Restatement (Third) of Unfair Competition § 36 (1995)................................................................41

## TREATISE

J. Thomas McCarthy,
    *McCarthy on Trademarks & Unfair Competition* (5th ed. 2025).................................... *passim*

Counterclaim-Plaintiffs Sol de Janeiro USA Inc. and Sol de Janeiro IP, Inc. ("Sol de Janeiro") hereby submit this trial brief pursuant to Rule 4(A)(5) of the Court's Individual Practices and the Court's December 13, 2024 Order Endorsing Sol de Janeiro's Proposed Deadlines (ECF No. 323).

## ISSUES TO BE TRIED

1.      Whether Counterclaim-Defendants Costco Wholesale Corp. ("Costco") and Apollo Healthcare Corp. ("Apollo") infringed the Bum Bum Trade Dress (defined herein) in violation of Section 43 of the Lanham Act. 15 U.S.C. § 1125(a).

2.      Whether Apollo contributorily infringed the Bum Bum Trade Dress by contributing to Costco and other third parties' infringement of the Bum Bum Trade Dress.

3.      Whether Apollo and Costco engaged in common law trade dress infringement and unfair competition.

4.      Whether Apollo and Costco infringed the registered BRAZILIAN BUM BUM trademark in violation of Section 32 of the Lanham Act. 15 U.S.C. § 1114.

5.      Whether Apollo and Costco infringed the BRAZILIAN BUM BUM CREAM trademark in violation of Section 43 of the Lanham Act. 15 U.S.C. § 1125(a).

6.      Whether Apollo contributorily infringed the BUM BUM Marks (defined herein) by contributing to Costco and other third parties' infringement of the BUM BUM Marks.

7.      Whether Apollo and Costco engaged in common law trademark infringement and unfair competition.

8.      Whether Apollo's and Costco's infringement of Sol de Janeiro's Bum Bum Trade Dress and/or BUM BUM Marks was willful.

9.    Whether Sol de Janeiro is entitled to an award of damages and/or profits in connection with Apollo's and Costco's infringement of the Bum Bum Trade Dress and/or BUM BUM Marks, and the amount of such award.

10.    Whether Sol de Janeiro is entitled to an injunction in connection with Apollo's and Costco's infringement of Sol de Janeiro's Bum Bum Trade Dress and/or BUM BUM Marks and the scope of such an injunction.

11.    Whether Sol de Janeiro is entitled to an award of attorneys' fees and costs in connection with Apollo's and Costco's infringement of Sol de Janeiro's Bum Bum Trade Dress and/or BUM BUM Marks, and the amount of such award.

12.    Whether Apollo is entitled to declaratory relief because Sol de Janeiro's Bum Bum Trade Dress is unenforceable because it fails to function as a source identifier.

13.    Whether Apollo is entitled to declaratory relief because Sol de Janeiro's Bum Bum Trade Dress is unenforceable because it is ornamental, decorative, or informational.

14.    Whether Apollo is entitled to declaratory relief because Sol de Janeiro's Bum Bum Trade Dress is unenforceable because it is functional.

15.    Whether Apollo is entitled to declaratory relief because Sol de Janeiro's Bum Bum Trade Dress is unenforceable because it is non-distinctive.

16.    Whether Apollo is entitled to declaratory relief because it did not infringe Sol de Janeiro's Bum Bum Trade Dress.

17.    Whether Apollo is entitled to declaratory relief that this is an exceptional case and that it is thus entitled to an award of costs and reasonable attorney's fees.

18.    Whether Apollo is entitled to declaratory relief because it did not infringe Sol de Janeiro's BRAZILIAN BUM BUM trademark.

19.     Whether Apollo is entitled to declaratory relief because there is no likelihood of confusion between Sol de Janeiro's BRAZILIAN BUM BUM trademark and the BRAZILIAN BODY BUTTER CREAM mark.

20.     Whether Sol de Janeiro's registration for the BRAZILIAN BUM BUM trademark is unenforceable because it is deceptive.

21.     Whether Sol de Janeiro's registration for the BRAZILIAN BUM BUM trademark is unenforceable on grounds of fraud.

## FACTUAL BACKGROUND[1]

Sol de Janeiro is the owner of all rights in the Bum Bum Trade Dress, shown here:



in connection with its body cream. *See* Sol de Janeiro's Proposed Findings of Fact ("SDJPFOF") ¶¶ 1, 11. It is also the owner of all rights in the BRAZILIAN BUM BUM and BRAZILIAN BUM BUM CREAM word marks (together, the "BUM BUM Marks") in connection with its body cream since 2015. *Id.* ¶¶ 1, 6, 15. Sol de Janeiro applied to register the mark BRAZILIAN BUM BUM with the United States Patent and Trademark Office ("USPTO") in 2016. *See* Agreed Findings of Fact ("AFOF") ¶ 12. On January 1, 2019, the USPTO issued Trademark Registration No. 5640212

---

[1] A more detailed recitation of the facts to be proved at trial is set forth in the parties' Consent Pre-Trial Order, which is filed contemporaneously. Citations in this brief to the Consent Pre-Trial Order will be to Section I. Agreed Findings of Fact ("AFOF") and Section II. Sol de Janeiro's Proposed Findings of Fact ("SDJPFOF") of that document.

for BRAZILIAN BUM BUM for use in connection with "Body cream" in International Class 3 (the "Registration"). SDJPFOF ¶ 16; SDJ 0002668-748 at 674.

Sol de Janeiro sells a line of beauty products, most notably, its Brazilian Bum Bum Cream, which Sol de Janeiro calls its "hero" product. AFOF ¶¶ 2, 14; SDJPFOF ¶ 31. Brazilian Bum Bum Cream is a moisturizing body cream intended for all-over body use. *Id.* ¶ 6. Sol de Janeiro has sold its Brazilian Bum Bum Cream using the Bum Bum Trade Dress and BUM BUM Marks since the product's initial launch in April 2015. *Id.* ¶¶ 11, 15. Through the sale of its Brazilian Bum Bum Cream and other beauty products, Sol de Janeiro has prominently featured the Bum Bum Trade Dress and BUM BUM Marks in its marketing and advertising. *Id.* ¶ 19. Aspects of the Bum Bum Trade Dress have become integral parts of Sol de Janeiro's overall brand aesthetic. *Id.* While Sol de Janeiro developed the sunshine-yellow color specifically for Brazilian Bum Bum Cream, the color now has its own Pantone code—7549C—and features prominently throughout Sol de Janeiro's website, marketing, and other products and is known at Sol de Janeiro as "Sol Yellow." *Id.* Features including the overhanging lid and rounded jar appear throughout Sol de Janeiro's branding, marketing, and public presence. *Id.* And Sol de Janeiro repeats most elements of the Brazilian Bum Bum Cream packaging design in the product packaging for its other body cream products. *Id.* Sol de Janeiro marketing commonly features the Brazilian Bum Bum Cream product packaging in ways that call consumers' attention to the Bum Bum Trade Dress (and BUM BUM Marks), such as by using the packaging as a central point of focus in its marketing and even as a character or icon in playful, meme-style promotional imagery or videos. *Id.* ¶ 37. Sol de Janeiro's Brazilian Bum Bum Cream is one of the most popular body creams currently on the market. *Id.* ¶ 26. It is frequently the top-selling skincare product at Sephora and has been ranked as high as #1 on Amazon.com's list of bestsellers in the "body cream" category. *Id.*

Apollo markets and sells a body cream product called Brazilian Body Butter Cream, which debuted for public sale around the beginning of June 2022 at Costco warehouses nationwide. *Id.* ¶ 50. Apollo developed the Brazilian Body Butter Cream product at the request of Costco following Costco's failed attempt to purchase the product directly from Sol de Janeiro. *Id.* ¶¶ 54-59. Since June 2022, Apollo has also sold Brazilian Body Butter Cream to retailers Sam's Club, BJ's Wholesale, and Walmart and direct to consumers through Amazon.com and through its websites nutriusbodybutter.com and nutriusbody.com. *Id.* ¶ 51. The primary packaging of Brazilian Body Butter Cream appears as depicted in the image below:



*Id.* ¶ 53. Apollo and Costco collaborated to develop the Brazilian Body Butter Cream product to compete with Sol de Janeiro's Brazilian Bum Bum Cream and developed the packaging to trade on the goodwill inherent in Sol de Janeiro's Bum Bum Trade Dress. *Id.* ¶ 55. Apollo and Costco selected the Brazilian Body Butter Cream name to trade on the goodwill inherent in Sol de Janeiro's BUM BUM Marks. *Id.* ¶¶ 56, 60. In developing the Brazilian Body Butter Cream Product, Costco specifically asked Apollo to "create a body cream that would be similar to this one" with an image of the Bum Bum Trade Dress. *Id.* ¶ 58. Apollo proposed the name "Brazilian Body Butter Cream" to Costco "given the specific name recognition associated with 'Brazilian Bum Bum Cream.'" *Id.* ¶ 60. This conduct shows that Apollo and Costco collaborated intentionally

and in bad faith, to capitalize on and trade off of Sol de Janeiro's reputation and goodwill associated with the Bum Bum Trade Dress and BUM BUM Marks.

## KEY LEGAL ISSUES

I.    **Apollo and Costco Infringed Sol de Janeiro's Bum Bum Trade Dress Under the Lanham Act (Sol de Janeiro's Counterclaims I and II)**

To find for Sol de Janeiro on its claims that Apollo and Costco infringed[2] its Bum Bum Trade Dress under Section 43(a) of the Lanham Act, the jury must find that (1) Sol de Janeiro's Bum Bum Trade Dress is distinctive and (2) there is a likelihood of confusion between Sol de Janeiro's Brazilian Bum Bum Cream and Apollo and Costco's Brazilian Body Butter Cream. *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 582 (2d Cir. 1993) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769-70 (1992)).

### A.    Sol de Janeiro Owns the Bum Bum Trade Dress

Sol de Janeiro will show at trial that it owns the Bum Bum Trade Dress. "A plaintiff alleges ownership over an unregistered trademark through asserting that he made prior use of the trademark. This means that the plaintiff claims to have made the first use of the mark to identify his goods or service and continues to use the mark commercially." *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 573 (S.D.N.Y. 2013) (citing *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007)). Sol de Janeiro will demonstrate at trial that it made first use of the Bum

---

[2] Both Sol de Janeiro's trade dress "infringement" (Counterclaim I) and "unfair competition" (Counterclaim II) claims are pled under Section 43(a) and are treated here as the same claim consistent with Second Circuit precedent. *See Forschner Grp., Inc. v. Arrow Trading Co.*, 30 F.3d 348, 360 (2d Cir. 1994) (citing *New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a likelihood of confusion?"); *Am. Footwear Corp. v. Gen. Footwear Co.*, 609 F.2d 655, 664 (2d Cir. 1979) ("As has often been observed, the law of trademark infringement is but a part of the law of unfair competition, and the same test is applied in determining each claim"); *Offerup Inc. v. Ramtin Software Sols., LLC*, 23-CV-6014 (RPK)(CLP), 2024 WL 4362512, at *4 (E.D.N.Y. Sept. 30, 2024) ("Unfair competition claims are analyzed under the same test as is used for infringement claims under the Lanham Act").

Bum Trade Dress in commerce in 2015 following between six and twelve months of development driven primarily by Sol de Janeiro's founder Ms. Heela Yang. *See* SDJPFOF ¶¶ 7-9, 11. Sol de Janeiro will also show at trial that the combination of elements that make up the Bum Bum Trade Dress were unique and wholly designed by Ms. Yang, her co-founder Mr. Marc Capra, and their employees and consultants. *Id.* ¶ 10.

### B.     Sol de Janeiro's Bum Bum Trade Dress is Valid and Protectable

For Sol de Janeiro's Section 43(a) claim for trade dress infringement, Sol de Janeiro has the burden at trial to prove, by a preponderance of the evidence, that the Bum Bum Trade Dress is valid (*i.e.*, distinctive, either inherently or by acquiring distinctiveness), s*ee Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997), and non-functional, *see* 15 U.S.C. § 1125(a)(3).

### 1.     Sol de Janeiro's Bum Bum Trade Dress is Distinctive

Sol de Janeiro will demonstrate at trial that its Bum Bum Trade Dress is both inherently distinctive and has acquired distinctiveness, *i.e.*, it has gained secondary meaning in the marketplace.

### a.     Sol de Janeiro Will Define the Bum Bum Trade Dress with Specificity for the Jury

Sol de Janeiro will show at trial that it has defined the Bum Bum Trade Dress with sufficient specificity. A product's "trade dress is 'essentially [a product's] total image and overall appearance,' 'as defined by its overall composition and design, including size, shape, color, texture, and graphics.'" *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995) (quoting *Two Pesos*, 505 U.S. at 765 n.1 and *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir. 1991)). The critical question "is not whether a trade dress has in fact come to identify a specific producer, but whether it is '*capable* of identifying a particular source

of the product.'" *Paddington*, 996 F.2d at 582-83 (quoting *Two Pesos*, 505 U.S. at 771) (emphasis in original).

"A trade dress infringement claimant must enumerate which features of its purported dress are distinctive and indicate how they are distinctive." *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 276 (S.D.N.Y. 2018), *abrogated on other grounds by Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112 (2d Cir. 2025). However, "trade dress may protect the overall look of a product" and "[a]lthough each element of a trade dress individually might not be inherently distinctive, . . . the combination of elements may be indicative of source." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) (citation and internal quotation marks omitted). Sol de Janeiro will describe the unique combination of elements comprising the Bum Bum Trade Dress with specificity at trial through the testimony of its witnesses. *See* SDJPFOF ¶¶ 10-12; *see also* ECF No. 306 at 14.

> **b.    Sol de Janeiro Will Show at Trial that its Bum Bum Trade Dress is Inherently Distinctive and has Acquired Distinctiveness Through Secondary Meaning**

Courts in the Second Circuit evaluate trade dress distinctiveness using the *Abercrombie* spectrum of trademark distinctiveness. *See Paddington*, 996 F.2d at 583 (applying *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)). Under the *Abercrombie* spectrum, "marks are classified as either (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful." *Id.*; *see also Two Pesos*, 505 U.S. at 768-69 (analyzing same test as used in Fifth Circuit without disapproval). Trade dress that is "arbitrary and fanciful" or "suggestive" is inherently distinctive. *Paddington*, 996 F.2d at 583-84.

i.    **Sol de Janeiro's Bum Bum Trade Dress Constitutes Product Packaging**

The Bum Bum Trade Dress, which consists of the design and appearance of the jar and lid, not the body cream itself, is product *packaging*, not product design. Product packaging, unlike product design, may be protectable because it is inherently distinctive, even without a showing of secondary meaning. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000) ("The attribution of inherent distinctiveness to certain categories of . . . product packaging derives from the fact that the very purpose of . . . encasing [a product] in a distinctive packaging, is most often to identify the source of the product."). Trade dress in product design, on the other hand, concerns source-identifying elements of *the product itself. See, e.g., TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28-29 (2001) (design of highway warning sign structure); *Wal-Mart Stores*, 529 U.S. at 207, 212-13 (design of children's clothing); *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 110 (2d Cir. 2000) (handbag design); *Steven Madden, Ltd. v. Yves Saint Laurent*, 18-CV-7592 (VEC), 2019 WL 2023766, at *6 (S.D.N.Y. May 8, 2019) (sandals shoe design is product design, "as opposed to the shoe's packaging"). In contrast, trade dress in product packaging concerns source-identifying elements of *packaging for the product. See, e.g., Wal-Mart Stores*, 529 U.S. at 212 (describing "Tide's squat, brightly decorated plastic bottles for its liquid laundry detergent" as example of product packaging); *Wonderful Co. v. Nut Cravings Inc.*, 21-CV-3960 (MKV), 2022 WL 4585344, at *1 (S.D.N.Y. Sept. 29, 2022) (bag in which pistachios are sold); *Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co.*, 15-CV-1092 (JMF), 2015 WL 845711, at *4 (S.D.N.Y. Feb. 26, 2015) (food container); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co.*, 07-CV-2568 (JG), 2012 WL 1414872, at *3 (E.D.N.Y. Jan. 20, 2012) (label design on sauce bottles); *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 690 & n.21 (W.D. Ky. 2010) ("red dripping wax seal" over

liquor bottle cap is "packaging-related trade dress"), *aff'd*, 679 F.3d 410 (6th Cir. 2012); *Fiji Water Co. v. Fiji Min. Water USA, LLC*, 741 F. Supp. 2d 1165, 1176 (C.D. Cal. 2010) (water bottle shape and design label).

Sol de Janeiro will show at trial that the Bum Bum Trade Dress concerns product packaging, not product design. Sol de Janeiro's Brazilian Bum Bum Cream product is the cream to be massaged into the user's skin, not the jar it comes in. *See* SDJPFOF ¶¶ 6, 13. Although the product design may, theoretically, contain source-identifying elements, such as the cream's singular scent, *no such element is part of the asserted trade dress in this case*. Instead, the decorative elements of the jar, lid, and labeling that comprise the Bum Bum Trade Dress are all product packaging elements. *See id.* ¶ 13. Sol de Janeiro will show evidence at trial that even Apollo and Costco's beauty industry expert refers to the Bum Bum Trade Dress as "primary packaging." *See* Cline Tr. at 29:14-19. Because the Bum Bum Trade Dress concerns product packaging, it may be inherently distinctive. *Wal-Mart Stores*, 529 U.S. at 212.

### ii. Sol de Janeiro's Bum Bum Trade Dress is Inherently Distinctive

Product packaging such as Sol de Janeiro's Bum Bum Trade Dress is inherently distinctive. *Paddington*, 996 F.2d at 583-84. Trade dress that is "arbitrary and fanciful" or "suggestive" is inherently distinctive. *Id.* at 583 (holding that "[s]ince the choices that a product has for packaging its products are . . . almost unlimited, typically a trade dress will be arbitrary or fanciful and thus inherently distinctive"); *see also Wal-Mart Stores*, 529 U.S. at 212 ("The attribution of inherent distinctiveness to certain categories of . . . product packaging derives from the fact that the very purpose of . . . encasing [a product] in a distinctive packaging[] is most often to identify the source of the product.").

Notably, protectible trade dress may consist of a combination of elements that would not be inherently distinctive if analyzed individually. "Trade dresses often utilize commonly used lettering styles, geometric shapes, or colors, or incorporate descriptive elements, such as an illustration of the sun on a bottle of suntan lotion. While each of these elements individually would not be inherently distinctive, it is the combination of elements and the total impression that the dress gives to the observer that should be the focus of a court's analysis of distinctiveness. If the overall dress is arbitrary, fanciful, or suggestive, it is inherently distinctive despite its incorporation of generic or descriptive elements." *Paddington*, 996 F.2d at 584.

Sol de Janeiro will show at trial, through the testimony of its founder and its other witnesses, that the Bum Bum Trade Dress consists of a fanciful or, at the very least, suggestive combination of particular elements and stands out among many different, and more conventional, alternatives for body cream product packaging. *See* SDJPFOF ¶¶ 9, 22. Specifically, Sol de Janeiro's witnesses will testify that each element of the Bum Bum Trade Dress was selected by Sol de Janeiro's founders based on fanciful ideas about body confidence and natural beauty. *Id.* ¶ 9. The choice of color, jar shape, lid shape, font style, and font placement were all fanciful attempts to evoke a particular aesthetic, *id.*, and "were selected from an almost limitless supply of patterns, colors and designs" and were "arbitrary." *Paddington*, 996 F.2d at 584. Additionally, Sol de Janeiro's founder will testify that she was discouraged from adopting the Bum Bum Trade Dress when she developed it and that the Bum Bum Trade Dress diverged from then-current industry norms and was unique in the industry for many years prior to Apollo's and Costco's infringement. *Id.* ¶¶ 20, 22, 69.

Sol de Janeiro will also show at trial that prior to and during 2022, Brazilian Bum Bum Cream received numerous major industry awards, including, without limitation, *Allure* Readers'

Choice Awards, a *Glamour* Readers' Choice Award, an *ESSENCE* Best in Black Beauty award, an *Harper's* BAZAAR Icon Award, a *The Knot* Beauty Award, and an *Her Campus* College Beauty Award. *Id.* ¶ 41. Sol de Janeiro will show that the announcements and press coverage of such awards nearly always include images of the Bum Bum Trade Dress and indicate Sol de Janeiro as the source of the product. *Id.* In awarding Brazilian Bum Bum Cream a "College Beauty Award" in 2020, *Her Campus* wrote, "[t]here are so many good things to say about this cream: . . . the packaging – we mean, COME ON." *See* SDJ 0000627-628.

### iii. Sol de Janeiro's Bum Bum Trade Dress Has Acquired Distinctiveness Through Secondary Meaning

Sol de Janeiro does not need to prove secondary meaning to prevail on its claims at trial. It need only show that the Bum Bum Trade Dress is suggestive, arbitrary, or fanciful and not descriptive, which, as shown above, it is. *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216 (2d Cir. 2012).

However, Sol de Janeiro will also demonstrate at trial that the Bum Bum Trade Dress has acquired distinctiveness, *i.e.*, it has acquired secondary meaning amongst consumers. "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 851 n.11 (1982); *see also Museum of Modern Art v. MOMACH IP LLC*, 339 F. Supp. 3d 361, 374 (S.D.N.Y. 2018) ("A mark has secondary meaning if consumers associate it with a certain producer, and will be likely to make that same association when an identical mark (or a confusingly similar mark), is used on another producer's product.") (citation and internal quotation marks omitted).

To determine whether a mark has secondary meaning, courts weigh multiple factors, including: "(1) advertising expenditures, (2) consumer studies linking the mark to a source,

(3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use." *Christian Louboutin*, 696 F.3d at 226 (citations omitted). "[N]o single factor is dispositive," *Kensington Publ'g Corp. v. Gutierrez*, 05-CV-10529 (LTS)(AJP), 2009 WL 4277080, at *5 (S.D.N.Y. Nov. 10, 2009), and the inquiry is not limited to these factors. *See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992).

Sol de Janeiro will show at trial that, since its debut, the Brazilian Bum Bum Cream has enjoyed massive sales success, including $100 million in sales through 2022 and continues to grow each year. *See* SDJPFOF ¶ 27. Sol de Janeiro will show that its Brazilian Bum Bum Cream consistently ranks as the top-selling skincare product at Sephora and has been ranked as high as #1 on Amazon.com's list of bestsellers in the "body cream" category. *Id.* ¶ 26. Sol de Janeiro will also show that major retailers such as Net-A-Porter, Urban Outfitters, Anthropologie, Macy's, and Costco have all contacted Sol de Janeiro seeking to carry its products, including its Brazilian Bum Bum Cream, in their stores, along with dozens of smaller retailers and wholesalers. *Id.* ¶ 29. Trial evidence will also show that Sol de Janeiro's Brazilian Bum Bum Cream is its "hero" product that drives Sol de Janeiro's broader success and that consumers have long known Sol de Janeiro primarily as the seller of Brazilian Bum Bum Cream. *Id.* ¶ 31; AFOF ¶ 14.

Sol de Janeiro will also show at trial that it has received extensive unsolicited media coverage from the press. SDJPFOF ¶ 40. Such press coverage of Brazilian Bum Bum Cream nearly always includes the BUM BUM Marks and images of the Bum Bum Trade Dress and indicates Sol de Janeiro as the source of the product. *Id.* As noted in Section I.B.1.b.ii. *supra*, the Brazilian

13

Bum Bum Cream has received numerous major industry awards.[3] *Id.* ¶ 41. Indeed, Apollo and Costco's own marketing expert describes the *Allure* award as "fairly prestigious," "fairly competitive," and one that "consumers pay attention to." Cline Tr. at 61:12-62:14. Sol de Janeiro will show that, prior to and during 2022, its Brazilian Bum Bum Cream received numerous unsolicited celebrity endorsements, including from Selena Gomez, Hailey Bieber, Sabrina Carpenter, Shawn Mendes, and Hillary Duff. SDJPFOF ¶ 42. Further celebrity endorsements have followed in the years since. *Id.* These media mentions include images of the Bum Bum Trade Dress, BUM BUM Marks, and identify Sol de Janeiro as the source. *Id.* ¶ 41.

Additionally, Sol de Janeiro will show at trial that it expends substantial resources advertising and marketing the Brazilian Bum Bum Cream. *Id.* ¶ 33. Sol de Janeiro will adduce evidence that prior to June 2022 its annual expenditures for digital advertising for Brazilian Bum Bum Cream ran as high as $2 million and that it spent another $1.5 to $2 million annually across other advertising and marketing channels. *Id.* ¶¶ 34-35; s*ee Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 241 (S.D.N.Y. 2004) ("advertising expenditures of between $500,000 and $2,000,000 per year" have been "deem[ed] significant" and found to support a finding of secondary meaning").

Sol de Janeiro will also present evidence of internal studies it has conducted that found that the Brazilian Bum Bum Cream "packaging stood out" and that more consumers buy Brazilian Bum Bum Cream based on the packaging than the market average. *See* SDJ 0003018-3136 at 3067-68; SDJ 0001743-74 at 1756, 1772; SDJ 0001656-76 at 1656, 1661-62.

---

[3] Sol de Janeiro's numerous awards are relevant to the secondary meaning analysis. *See PAF S.r.l. v. Lisa Lighting Co.*, 712 F. Supp. 394, 405 (S.D.N.Y. 1989) (examining "numerous awards and international recognition" as part of secondary meaning analysis).

Evidence at trial will also show that third parties frequently attempt to plagiarize the Bum Bum Trade Dress and BUM BUM Marks. SDJPFOF ¶¶ 45-46; *see Four Star Jewelry Creations*, 348 F. Supp. 2d at 243. Most notably, Sol de Janeiro will present evidence at trial that *Apollo and Costco* intentionally imitated the Bum Bum Trade Dress (and BUM BUM Marks) with the purpose to benefit from Sol de Janeiro's goodwill. *See Bristol-Myers Squibb*, 973 F.2d at 1042 (defendants' "imitative intent can help support a finding of secondary meaning."). The evidence Sol de Janeiro will adduce regarding Apollo's and Costco's intentional imitation of the Bum Bum Trade Dress is discussed in Section I.C.5 *infra*.

Sol de Janeiro will also show that it was the only one to use the Bum Bum Trade Dress, until Apollo and Costco's launch of their Brazilian Body Butter Cream. Indeed, when the Brazilian Bum Bum Cream was launched, other prestige beauty brands offered products in refined packaging with muted colors and elegant labeling. In contrast, the design choices for the Brazilian Bum Bum Cream product packaging were driven by a different aesthetic and a goal to evoke the brand's philosophy through a novel design that was curvaceous, bold, and playful, not for any functional purpose. SDJPFOF ¶ 9. Sol de Janeiro chose the overall shape of the packaging, including the rounded jar and overhanging lid, to represent women's curves and the brand's bold personality. *Id.* Indeed, the Brazilian Bum Bum Cream packaging so defied industry norms that Sol de Janeiro's founders were warned against adopting it, *id.* ¶ 20; Yang Tr. at 104:3-7, 141:3-11.

### iv.    Apollo and Costco's Proffered Evidence of Third-Party Use Does Not Impact Sol de Janeiro's Bum Bum Trade Dress's Distinctiveness

Sol de Janeiro will show at trial that Apollo and Costco's proposed evidence of third-party use does not mitigate the distinctiveness of the Bum Bum Trade Dress. The impact of third-party

use of a mark "depends wholly upon" how the third party uses the mark. *Scarves by Vera, Inc. v. Todo Imps. Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976). If the third-party use was not "well promoted" or "recognized by consumers," it does not "weaken[]" the mark. *Id.* Apollo and Costco have no evidence that the third-party products they point to that purportedly use the Bum Bum Trade Dress were "well promoted," widely sold, or otherwise "recognized by consumers."

Additionally, some of the third-party use Apollo and Costco intend to point to at trial do not utilize the Bum Bum Trade Dress, rather, they incorporate singular elements of the Bum Bum Trade Dress. Use of one or two of the several design elements that make up the asserted trade dress are irrelevant to the inquiry of whether the Bum Bum Trade Dress as a whole is entitled to protection. Sol de Janeiro will show at trial that many of the third-party uses that Apollo and Costco point to do not use the distinctive combination of elements that make up the Bum Bum Trade Dress.

Moreover, several of the instances of third-party use that Apollo and Costco intend to rely on are infringing and counterfeit products. Such evidence hardly mitigates the distinctiveness of the Bum Bum Trade Dress. Rather it proves it. The courts have long held that evidence of counterfeit products demonstrate the distinctiveness of a mark because there would be no legitimate commercial reason to counterfeit the trademark or design of an unknown brand. *See Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 428 (S.D.N.Y. 2012) ("Evidence that a mark has been widely copied is persuasive evidence of secondary meaning because it demonstrates that the mark has become a 'strong source identifier in the eyes of the purchasing public.'" (citation omitted)); *see also T. Anthony, Ltd. v. Malletier*, 93-CV-6900 (KC), 1993 WL 659682, at *3 (S.D.N.Y. Nov. 24, 1993) ("The evidence in this case indicates that Vuitton's LV mark is a strong, indeed powerful, mark with worldwide recognition. . . . T. Anthony's contention that the LV mark has been

16

significantly weakened because of the presence of many counterfeit Vuitton products cannot disturb the foregoing conclusion. . . . [E]vidence that a mark has been widely copied actually acts as persuasive evidence that the mark has become distinctive as a source identifier.").

## 2. Sol de Janeiro's Bum Bum Trade Dress is Not Functional

Sol de Janeiro will show at trial that the Bum Bum Trade Dress is not functional. Because the Bum Bum Trade Dress is unregistered, it is Sol de Janeiro's burden to establish non-functionality. 15 U.S.C. § 1125(a)(3). Trade dress is only functional if it is "(1) essential to the use or purpose of the article, or if it (2) affects the cost or quality of the article." *Christian Louboutin*, 696 F.3d at 219 (citation and internal quotation marks omitted); *see also Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995). "A feature is essential if it is dictated by the functions to be performed by the article." *Christian Louboutin*, 696 F.3d at 219 (citations and internal quotation marks omitted). A feature "affects the cost or quality of the article where it permits the article to be manufactured at a lower cost or constitutes an improvement in the operation of the goods." *Id.* (citations and internal quotation marks omitted). "[D]istinctive and arbitrary arrangements of predominantly ornamental features that do not hinder potential competitors from entering the same market with differently dressed versions of the product are non-functional and hence eligible for trade dress protection." *Fabrication Enters., Inc. v. Hygienic Corp.*, 64 F.3d 53, 59 (2d Cir. 1995).

To determine whether trade dress is essential to the article's use or purpose, courts look to factors, including (1) whether alternative designs exist that perform the utility function equally well, (2) whether the trade dress's proponent has advertised or promoted the functional and utilitarian advantages of the purported trade dress, and (3) whether the trade dress was intended to be functional or designed for an aesthetic purpose. *See Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*, 626 F. Supp. 3d 635, 648 (S.D.N.Y. 2022) (Stanton, J.) (affirming jury's finding of non-

functionality for whiskey bottle, citing testimony that the product design "increases the cost of production, is not advertised as being functional, was not intended to be functional, and has many alternatives, such that competitors' ability to compete is not impaired"); *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 272 (S.D.N.Y. 2016) (finding that plaintiff's advertisement of bag closure design as function was "strong evidence of functionality"), *aff'd*, 699 F. App'x 93 (2d Cir. 2017); *Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 300 (S.D.N.Y. 2010) (looked at whether there were advertisements "tout[ing] the product's utilitarian features" as part of functionality analysis); *Bath & Body Works Brand Mgmt., Inc., LLC v. Summit Ent., LLC*, 7 F. Supp. 3d 385, 401 n.12 (S.D.N.Y. 2014) (holding that the "packaging is not essential to the use of the product itself" given "[t]here are numerous variations and alternatives to the packaging and there is no evidence that [defendant's] exclusive use of its packaging would put any competitors at a significant disadvantage in the market"); *L'Oreal USA, Inc. v. Trend Beauty Corp.*, 11-CV-4187 (RA), 2013 WL 4400532, at *21 (S.D.N.Y. Aug. 15, 2013) (considering whether alternative designs could perform the same function). The "fact that a design feature performs a function does not make it essential to the performance of that function," rather, the relevant question is "whether the feature is dictated by the functions to be performed." *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1148 (2d Cir. 1987) (internal citation omitted).

Sol de Janeiro will demonstrate at trial that the Bum Bum Trade Dress is not functional because there are numerous alternative designs for body cream packaging. *See* SDJPFOF ¶¶ 22, 48-49. Indeed, Sol de Janeiro will show that body cream was housed exclusively in many packaging designs – all of which were dissimilar to Sol de Janeiro's asserted Bum Bum Trade Dress – until Sol de Janeiro released its Brazilian Bum Bum Cream, *id.* ¶ 22, and that today there

are countless alternative packaging designs for body creams that do not consist of or include elements of the Bum Bum Trade Dress, *id.* ¶ 49. Thus, the Bum Bum Trade Dress cannot be "essential" to the "use or purpose" of a body cream container. Additionally, Sol de Janeiro will show at trial that it has never advertised a functional benefit of any part of the Bum Bum Trade Dress, *id.* ¶ 38, and, through the testimony of the Bum Bum Trade Dress's primary designer, that the Bum Bum Trade Dress was not designed to be functional, *id.* ¶ 9. Specifically, the primary designer of the Bum Bum Trade Dress will testify that her design choices for the Brazilian Bum Bum Cream product packaging were driven by aesthetics and a goal to evoke Sol de Janeiro's philosophy through a design that was curvaceous, bold, and playful, not for any functional purpose, and that the overall shape, including the rounded jar and overhanging lid were chosen to represent women's curves and the brand's bold personality. *Id.* Sol de Janeiro will also demonstrate that the Bum Bum Trade Dress is *more* expensive than alternative designs for body cream packaging rather than saving costs, *id.* ¶ 21, because the larger lid requires an unusual amount of plastic material, and because printing on the top and sides of the lid, rather than the side of the jar, requires two printing passes instead of one.

Apollo and Costco's argument that individual features of the Bum Bum Trade Dress – such as the curved jar, large lid, and color – are functional is improper. Apollo and Costco attempt "to break the trade dress down into specific elements and call [each] functional." *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 621 (2d Cir. 2008). However, such arguments "overlook[] that the functionality of the trade dress must be assessed with respect to the trade dress as a whole." *Diageo*, 626 F. Supp. 3d at 648; *see also Sardell Jewelry*, 294 F. App'x at 620-21 (holding district court's conclusion that "it was improper for defendants to break the trade dress down into specific elements and call them functional, because plaintiffs' claim is that the combination and

arrangement of those design elements comprise the trade dress at issue" was "sound"); *GeigTech E. Bay*, 352 F. Supp. 3d at 280-81 ("Where the asserted trade dress extends to the overall look of the combination of features comprising a product or product line, the Court must evaluate the distinctiveness and functionality of those features taken together, not in isolation.") (citation and internal quotation marks omitted).

### C.    Apollo and Costco Have Infringed Sol de Janeiro's Bum Bum Trade Dress

Once the jury determines that the Bum Bum Trade Dress is valid and owned by Sol de Janeiro, they must then determine whether there is a likelihood of confusion between Apollo and Costco's Brazilian Body Butter Cream packaging and the Bum Bum Trade Dress. "The crucial issue" for the jury to decide is "whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004) (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978)). "In order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market. The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 383-84 (2d Cir. 2005). "Types of confusion that constitute trademark infringement include where: (1) prospective purchasers believe that the senior user sponsored or otherwise approved of the junior user's trademark, (2) potential consumers initially are attracted to the junior user's mark by virtue of its similarity to the senior user's mark, even though these consumers are not actually confused at the time of purchase, and (3) customers are confused as to the source of the junior user's product when this product is observed in the post-sale context." *Jordache Enters., Inc. v. Levi Strauss & Co.*, 841 F. Supp. 506, 514-15 (S.D.N.Y. 1993) (citations omitted); *see also*

*Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 441-42 (S.D.N.Y. 2017) (discussing initial-interest and post-sale confusion).

In the Second Circuit, the likelihood of confusion analysis considers the eight *Polaroid* factors. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) (listing factors), *cert. denied*, 368 U.S. 820 (1961). The factors are: "(1) the strength of the plaintiff's mark or dress; (2) the similarity between the two marks or dresses; (3) the proximity of the products in the marketplace; (4) the likelihood that the prior owner will bridge the gap between the products[4]; (5) evidence of actual confusion; (6) the defendant's bad faith; (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group." *Paddington*, 996 F.2d at 584 (citing *Polaroid*, 287 F.2d at 495). The inquiry is complex and fact-specific, not "a mechanical process." *Sardell Jewelry*, 294 F. App'x at 619. "No single factor is dispositive, nor is a court limited to consideration of only these factors." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 118 (2d Cir. 2006) (citation omitted). A factfinder may consider any aspect of the marks, products, trade channels, consumers, or marketing that might affect the likelihood of consumer confusion. *See Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 214 (2d Cir. 1985) ("[T]he complexities attendant to an accurate assessment of likelihood of confusion require that the entire panoply of elements constituting the relevant factual landscape be comprehensively examined.").

Sol de Janeiro will prove at trial that the *Polaroid* factors and the overall analysis weigh in favor of finding that Apollo and Costco infringed the Bum Bum Trade Dress.

---

[4] The "bridge the gap" factor is moot here because the parties offer the same product, *i.e.*, body cream.

### 1. Strength of the Bum Bum Trade Dress.

"The strength of a mark is determined by its tendency to uniquely identify the source of the product; [t]his tendency is strong to the extent that the mark is distinctive, either inherently or by virtue of having acquired secondary meaning." *Star Indus.*, 412 F.3d at 384 (citing *Savin Corp.*, 391 F.3d at 457). "Such strength may result solely from the mark's inherent distinctiveness . . . whether or not the consumer is familiar with the mark or knows the source." *Paddington*, 996 F.2d at 585. "Determination of strength therefore begins with inquiry as to whether the mark has the inherent distinctiveness that would entitle it to protection in the absence of secondary meaning. . . . Once a mark has been classified, the second step in determining strength is to consider its degree of distinctiveness, an inquiry that concerns both the inherent inventiveness of the mark itself and the amount of third-party usage of the term as a mark, especially in the market in question." *Star Indus.*, 412 F.3d at 384-85 (citation and internal quotation marks omitted).

As discussed in Section I.B *supra*, Sol de Janeiro will show at trial that the Bum Bum Trade Dress is both inherently distinctive, because it is an unusual design that flouts certain industry conventions, and has acquired distinctiveness, because it has achieved enormous commercial success. Therefore, this factor will weigh in Sol de Janeiro's favor.

### 2. Similarity of Sol de Janeiro's Bum Bum Trade Dress and the Brazilian Body Butter Cream Product Packaging

In evaluating the similarity of the parties' marks – *i.e.*, the similarity of the Bum Bum Trade Dress and the Brazilian Body Butter Cream product packaging – the jury must assess "'the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers.'" *Dooney & Bourke*, 454 F.3d at 117 (quoting *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005)). The "similarity analysis must assess the marks in their

entirety without dissecting out any one component." *Giggle, Inc. v. netFocal, Inc.*, 856 F. Supp. 2d 625, 635 (S.D.N.Y. 2012). The more similar the goods and the channels of trade through which the goods are sold, the less similarity is required to cause potential confusion. *See RJR Foods, Inc. v. White Rock Corp.*, 201 U.S.P.Q. 578, 581 (S.D.N.Y. 1978) ("[w]here goods are identical and sold through the same channels of trade and to the same class of purchasers, less similarity than might otherwise be required may lead to confusion") (citations omitted); *see also Miller Brewing Co. v. Carling O'Keefe Breweries of Can., Ltd.,* 452 F. Supp. 429, 446 (W.D.N.Y. 1978) (finding that, when products are similar, "the degree of similarity in the marks necessary to support a finding of infringement is less than in the case of dissimilar products") (citation omitted).

The fact that a defendant in a trade dress infringement action "label[s its] product with the name of the source, whether or not that name is prominently displayed, is not dispositive of likely consumer confusion" and the defendant does not, by so doing, avoid having to withstand "a complete *Polaroid* analysis.'" *Metrokane, Inc. v. Built NY, Inc.*, 06-CV-14447 (LAK)(MHD), 07-CV-2084 (LAK)(MHD), 2008 WL 11397767, at *14 (S.D.N.Y. Sept. 3, 2008) (internal citations omitted). The fact finder may still conclude that consumers encountering the product, notwithstanding that it displays the trademark for its actual source, are still "more likely to remember the [product's] packaging than its name." *Fun-Damental Too*, 111 F.3d at 1003; *see also Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431, 456 (S.D.N.Y. 2000) ("While the Grape Finds trade name is displayed both outside and inside the store, the name is not recognizable and thus carries less weight. In sum, the evidence demonstrates a significant probability that numerous ordinarily prudent customers in the Grape Finds store will be confused as to whether they are, in fact, in a Best Cellars store.").

Sol de Janeiro will show at trial that the Brazilian Body Butter Cream primary packaging is highly similar to the Bum Bum Trade Dress. SDJPFOF ¶ 70. Specifically, both the Brazilian Body Butter Cream primary packaging and the Bum Bum Trade Dress feature the same round-bottom jar that curves at the same angle; both feature the same large lid that overhangs the jar in identical proportions; both display product names writ in dark, capitalized letters across the center of the lid; both display product names that begin with BRAZILIAN, end with CREAM, and carry a rhythmic, alliterative B__ B__ between; both display the same framing of the product name by smaller text above and below; both print all copy on the oversize lid and none on the rounded jar; and both use a two-color palette that features a yellow-and-white combination. *Id.* ¶ 71. Sol de Janeiro's witnesses will testify that the Brazilian Body Butter Cream packaging sufficiently invokes Bum Bum Trade Dress such that Brazilian Body Butter Cream looks like a down-market, or members-warehouse, version of Brazilian Bum Bum Cream. Additionally, Sol de Janeiro will show evidence that Apollo and Costco's Brazilian Body Butter Cream has been recognized in the press for its similar product packaging to the Bum Bum Trade Dress. *See* SDJ 0002792-813. Sol de Janeiro will also show that Apollo and Costco considered the Brazilian Bum Bum Cream and Brazilian Body Butter Cream packaging to be the "same jar" and that they gave an "identical packaging impression." Costco000902-906; Costco000884-86. Sol de Janeiro will also present evidence that the NUTRIUS brand is not prominent or well known amongst the consuming public such that the presence of the NUTRIUS name on the jars does not impact the confusing similarity of the parties' marks. SDJPFOF ¶¶ 87-89; *Bristol-Myers Squibb*, 973 F.2d at 1046 (citing *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 492 (2d Cir. 1988); *see Banff*, 841 F.2d at 492 (finding display of house mark "in very small letters . . . may actually increase the misappropriation"); *Kompan A.S. v. Park Structures, Inc.*, 890 F. Supp. 1167, 1177 (N.D.N.Y.

1995) (finding a small brand label did little to dispel confusion). Thus, this factor will weigh in Sol de Janeiro's favor.

### 3.    Competitive Proximity

Since both Sol de Janeiro and Apollo and Costco sell body creams, there can be no dispute that the products are related. *See Bulman v. 2BKCO, Inc.*, 882 F. Supp. 2d 551, 560-61 (S.D.N.Y. 2012) ("The closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source." (quoting *Virgin Enters., Ltd. v. Nawab*, 335 F.3d 141, 150 (2d Cir. 2003)). Both products are available through the parties' respective websites and sold via large retailers nationwide. Additionally, both Apollo and Costco and Sol de Janeiro sell their products on *Amazon.com. See Joules Ltd. v. Macy's Merch. Grp., Inc.*, 695 F. App'x 633, 637 (2d Cir. 2017) (finding competitive proximity where "[b]oth sets of products are sold in brick-and-mortar department stores (albeit not the same ones); sold online through the parties' respective websites; and, for a small subset of both products, sold online through the same or similar third-party websites;" "These considerations show competitive proximity between the products, even if the vast majority of products are not sold side-by-side in the same stores or on the same websites.").

Sol de Janeiro will present evidence at trial showing that Brazilian Bum Bum Cream and Brazilian Body Butter Cream are both body creams, directly competing products, and sold to overlapping consumers groups. SDJPFOF ¶¶ 90-96. The Second Circuit has repeatedly held that such facts support a finding of likely confusion: where products are not sold side by side at the same location, but the products "appeal to the same consumers, and sale locations are geographically close," such that consumers are "reasonably likely to visit" both stores, these facts "creat[e] the opportunity for confusion." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209,

218 (2d Cir. 2003), *abrogated other grounds by 4 Pillar Dynasty LLC v. New York & Co.*, 933 F.3d 202 (2d Cir. 2019); *see also Joules Ltd.*, 695 F. App'x at 637. Accordingly, this factor will weigh in Sol de Janeiro's favor.

### 4.    Evidence of Actual Confusion

"[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act." *Four Star Jewelry Creations*, 348 F. Supp. 2d at 247 (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)). Nevertheless, evidence of "actual confusion is often the most telling indication that confusion is likely." *Morningside Grp. Ltd. v. Morningside Cap. Grp., LLC*, 182 F.3d 133, 141-42 (2d Cir. 1999) (holding that evidence of actual confusion is "of course convincing evidence that confusion is likely to occur"); *see also Virgin Enters.*, 335 F.3d at 151 ("It is self-evident that the existence of actual consumer confusion indicates a likelihood of consumer confusion."). "Evidence of actual confusion may consist of anecdotal or survey evidence." *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 647 F. Supp. 3d 145, 222 (S.D.N.Y. 2022) (citation omitted).

At trial, Sol de Janeiro will present both direct and circumstantial evidence of actual confusion. Sol de Janeiro will show that consumers have contacted Sol de Janeiro to inquire whether Brazilian Body Butter Cream is sold by Sol de Janeiro or is the same product as Brazilian Bum Bum Cream. SDJPFOF ¶ 83; SDJ0001986; SDJ0001995; SDJ0001990. It will also present evidence that consumers have contacted Sol de Janeiro through its social media accounts, asking questions about Sol de Janeiro's involvement with or presuming that Sol de Janeiro is responsible for the Brazilian Body Butter Cream product. SDJPFOF ¶ 84. Sol de Janeiro will also show that, in response to Sol de Janeiro posts on social media promoting its iconic Brazilian Bum Bum Cream, numerous consumers have left comments such as "Costco is selling it right now," "I love

this!! Just found it @costco !!," and "We bought this lotion at Costco. It's good stuff." *See* SDJ0001986; SDJ0001991; SDJ0001994-95. Such anecdotal evidence is enough to show this factor weighs in Sol de Janeiro's favor.[5] *See, e.g.*, *Museum of Modern Art*, 339 F. Supp. 3d at 378-79 (finding that actual confusion factor weighed in plaintiff's favor based on a few anecdotal instances of consumers believing the parties were affiliated).

Sol de Janeiro will also present confusion evidence from Costco's own business records. Sol de Janeiro will show evidence that Costco members have purchased the Brazilian Body Butter Cream, then returned it to Costco and reported doing so because it was not the real Brazilian Bum Bum Cream. SDJPFOF ¶ 85; Costco0003942; *see also Virgin Enters.*, 335 F.3d at 151 (testimony by defendant's former employee that he was asked if defendant and plaintiff were affiliated weighed in plaintiff's favor for actual confusion factor). Sol de Janeiro will present evidence that potential consumers online have further evidenced confusion regarding the affiliation of Sol de Janeiro to the Brazilian Body Butter Cream, *see* SDJPFOF ¶ 86, including posts that one such individual purchased the Brazilian Body Butter Cream "thinking that it was the Bum Bum cream," SDJ 0000860, and another who asserted that "Costco contacts [sic] with the brands and tweaks the formula. It's not a counterfeit or dupe, it's likely produced by sol," SDJ 0002817, and yet another who was "willing to bet [the Brazilian Body Butter Cream]'s the private label version of the regular [Sol] de Janeiro stuff, just made with slightly cheaper ingredients to cut costs! It's manufactured

---

[5] Apollo and Costco argue that such statements are inadmissible hearsay, but the Second Circuit has already rejected such an argument: such statements are not "admitted for the truth of the matter asserted" but as "probative of the declarant's confusion." *Fun-Damental Too*, 111 F.3d at 1003-04; *see also* Fed. R. Evid. 801(c)(2) (defining hearsay as an out-of-court statement offered "to prove the truth of the matter asserted in the statement"). Indeed, "[t]he majority of courts have held either that testimony of plaintiff's employees as to confused customers is not hearsay because it is not offered to prove the truth of any customer's assertion or is admissible under an exception to the hearsay rule." 3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 23:15 (5th ed. 2025) (hereinafter "*McCarthy*").

and distributed by a big private label company that contracts with national brands (like Sol de Janeiro)," SDJ 0001954.

Sol de Janeiro's expert Dr. David Neal will testify that his likelihood-of-confusion survey found a 15.1% rate of confusion, SDJPFOF ¶ 97, which supports a finding of likely confusion. *See, e.g.*, *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir. 1979) (affirming likelihood of confusion based, in part, on "a consumer study showing a fifteen to twenty percent rate of product confusion"); *Coty*, 277 F. Supp. 3d at 450 (finding a 15.1% rate of confusion based on survey evidence "supports a finding of likely customer confusion in this case"); *Borghese Trademarks Inc. v. Borghese*, 10-CV-5552 (JPO)(AJP), 2013 WL 143807, at *11 (S.D.N.Y. Jan. 14, 2013) (survey showing net confusion rate of 15%, in combination with "anecdotal instances of confusion," provides "a jury with enough evidence to reasonably conclude that actual confusion existed"); *Lon Tai Shing Co. v. Koch & Lowy*, 19 U.S.P.Q.2d 1081, 1097 (S.D.N.Y. 1991) (18% "is within the range of cognizable confusion recognized in this circuit" and supports a finding of likely confusion). Other circuits agree. *See, e.g.*, *AWGI, L.L.C. v. Atlas Trucking Co.*, 17-CV-12131, 2020 WL 3546100, at *35 (E.D. Mich. June 30, 2020), *aff'd*, 998 F.3d 258 (6th Cir. 2021) (finding of infringement was supported by a *Squirt*-type survey showing a 19% rate of confusion); *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 507 (5th Cir. 1980) (finding that survey wherein 15% of respondents associated defendants TEXON auto repair service mark with plaintiff's EXXON gasoline mark "constitutes strong evidence indicating a likelihood of confusion"); *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 279 (7th Cir. 1976) ("We cannot agree that 15% is 'small.' Though the percentage of likely confusion required may vary from case to case, we cannot consider 15 percent, in the context of this case, involving the

entire restaurant-going community, to be de minimis."). This factor also weighs in Sol de Janeiro's favor.

5.    **Apollo's and Costco's Bad Faith**

Sol de Janeiro will demonstrate at trial that Apollo and Costco acted in bad faith by intentionally copying the Bum Bum Trade Dress and BUM BUM Marks for their Brazilian Body Butter Cream. This factor "looks to whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001) (citations omitted). "Where a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion." *Paddington*, 996 F.2d at 586 (citations omitted). "[I]dentical copying" is "not require[d]" for this factor "to weigh in the mark owner's favor" "where the copier references the prior dress in establishing her design with the apparent aim of securing the customers of the other based on confusion, intentional copying may be found." *Id.* at 587. "Intentionally deceptive conduct thus serves as a proxy for actual consumer confusion, raising a rebuttable legal presumption that the actor's intent to confuse will be successful. The burden then shifts to the defendant to demonstrate the absence of consumer confusion." *Samara Bros., Inc. v. Wal-Mart Stores, Inc.*, 165 F.3d 120, 127 (2d Cir. 1998) (citation and internal quotation marks omitted), *rev'd on other grounds*, 529 U.S. 205 (2000).

Sol de Janeiro will present evidence that Ms. Bubitz, Costco's head buyer for beauty products and a "huge fan of the Bum Bum Cream," sought to carry genuine Sol de Janeiro products to sell in Costco stores by contacting Sol de Janeiro. SDJPFOF ¶¶ 59; SDJ 0001820-21; Costco0004473. When this approach failed, Ms. Bubitz sent a picture of the Bum Bum Trade Dress

to Apollo's Co-CEO and requested that Apollo create a similar product. SDJPFOF ¶ 58; Costco000819-23. Sol de Janeiro will also show that throughout the creation of the Brazilian Body Butter Cream, Apollo and Costco sought to capitalize on Sol de Janeiro's goodwill. Specifically, Sol de Janeiro will show that Apollo's Co-CEO recommended product names, including Brazilian Body Butter Cream, that would "focus on the particular equity" of the "name recognition associated with 'Brazilian Bum Bum Cream,'" SDJPFOF ¶ 60; Costco0000835-41, and that Apollo and Costco sought to capture an "identical packaging impression," including the "exact same jar." SDJPFOF ¶ 62; Costco000884-86; Costco000902-06. Sol de Janeiro will also demonstrate that, in soliciting other retail partners, Apollo's Co-CEO pitched the Brazilian Body Butter Cream as "directly targeting the Brazilian Bum Bum Cream which is wildly popular" with a "jar [that] is identical in appearance." SDJPFOF ¶ 65; Apollo0001191-94.

Sol de Janeiro will also show that Apollo and Costco continued to sell the Brazilian Body Butter Cream after receiving a cease-and-desist letter from Sol de Janeiro, SDJPFOF ¶ 75, and that Apollo and Costco intentionally imitated additional Sol de Janeiro products following the successful launch of the Brazilian Body Butter Cream, *id.* ¶¶ 79-80. This factor weighs heavily in Sol de Janeiro's favor.

### 6. Respective Quality of the Parties' Products.

"Where . . . Plaintiff does not allege that Defendants' products are inferior, nor is there any evidence in the record substantiating the high or low quality of defendant's products relative to those of plaintiff . . . this factor is neutral as a matter of law." *MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, 655 F. Supp. 3d 193, 211 (S.D.N.Y. 2023) (citation and internal quotation marks omitted); *see also Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 515 F. Supp. 3d 47, 75 (S.D.N.Y. 2021) ("[w]hen there is no difference in the quality of the products, the factor should . . . be treated as neutral rather

than as weighing in favor of the defendants.") (citation omitted). Additionally, "this factor is largely irrelevant" because "the quality of Defendant's product does not matter, because a senior user 'is not required to put its reputation in [a junior user's] hands, no matter how capable those hands may be.'" *Bulman*, 882 F. Supp. 2d at 563 (quoting *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259-60 (2d Cir. 1987)). Thus, here, this factor is at worst neutral and, thus, could not weigh against Sol de Janeiro.

### 7.    Consumer Sophistication

Courts' "analysis of consumer sophistication considers the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and given the attention such purchasers usually give in buying that class of goods." *Star Indus.*, 412 F.3d at 390. Generally, the less expensive an item, the less careful the typical consumer is expected to be. *See Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 90 (2d Cir. 2020) ("The greater the value of an article, the more careful the typical consumer can be expected to be.") (citation omitted); *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*, 281 F.2d 755, 762 n.19 (2d Cir. 1960) (consumer sophistication is generally low "where inexpensive products are involved"); *see also Lever Bros. Co. v. Am. Bakeries Co.*, 693 F.2d 251, 259 (2d Cir. 1982) ("the bustling, self-service atmosphere of a typical supermarket makes careful examination of products unlikely"). Sol de Janeiro will show at trial that the NUTRIUS product costs approximately $20 and is purchased in retail channels such as Costco warehouses and the Amazon marketplace.

—

Thus, Sol de Janeiro will show at trial that Apollo and Costco have infringed the Bum Bum Trade Dress.

II.    **Apollo Contributed to Costco's and Other Third Parties' Infringement of Sol de Janeiro's Bum Bum Trade Dress (Sol de Janeiro's Counterclaim III)**

The Supreme Court has held, "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." *Inwood Laby's*, 456 U.S. at 854; *see also Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 64 (2d Cir. 1992). "*Inwood*'s test for contributory infringement applies on its face to manufacturers and distributors of goods." *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 104 (2d Cir. 2010).

As discussed in Section I.C.5 *supra*, Sol de Janeiro will demonstrate at trial that Apollo intentionally induced Costco and other third parties to infringe the Bum Bum Trade Dress. Sol de Janeiro will present evidence that Apollo aided Costco in creating the Brazilian Body Butter Cream with the goal of capturing the "entire sensorial and skin/feel performance of the target Bum Bum brand" with an "identical packaging impression." *See*  SDJPFOF ¶ 62; Costco000867, 884-86. Apollo also assisted Costco in creating duplicates of other Sol de Janeiro product variations following the success of the Brazilian Body Butter Cream. *See* SDJPFOF ¶¶ 79-80; Costco0003893-97. Sol de Janeiro will also show that Apollo failed to cease supplying Costco with the Brazilian Body Butter despite receiving Sol de Janeiro's demand letter informing Apollo of its infringing conduct. *See Slep-Tone Ent. Corp. v. Golf 600 Inc.*, 193 F. Supp. 3d 292, 298 (S.D.N.Y. 2016) (once defendant "received warning letters" it "knew or had reason to know" that its partner was infringing on plaintiff's trademarks. "This knowledge was more than general knowledge or reason to know of the infringement, . . . [defendant] knew of specific instances of actual infringement. And despite this knowledge, [defendant] continued to contract with [its partner], benefiting from the ongoing infringement.").

III.    **Apollo and Costco Violated New York Common Law by Infringing Sol de Janeiro's Bum Bum Trade Dress (Sol de Janeiro Counterclaim IV)**

At trial, Sol de Janeiro will show that Apollo and Costco also violated New York common law by infringing Sol de Janeiro's Bum Bum Trade Dress. In addition to the elements of the Lanham Act claim, an unfair competition claim under New York common law requires additional evidence, namely that demonstrating the defendant's bad faith. *Focus Prods. Grp.*, 647 F. Supp. 3d at 228-29 (citations omitted). "A plaintiff must prove: (1) actual confusion or a likelihood of confusion; and (2) the defendant's bad faith." *Id.* (citations and internal quotation marks omitted). "While there is no complete list of activities which constitute unfair competition under New York law, the essence of an unfair competition claim is that one may not act in bad faith to misappropriate the skill, expenditures, and labor of another." *Bongo Apparel, Inc. v. Iconix Brand Grp., Inc.*, 856 N.Y.S.2d 22, 2008 WL 41341, at *13 (N.Y. Sup. Ct. Jan. 2, 2008). To act in "bad faith," one must exploit some "commercial advantage which belonged exclusively to [another]." *LoPresti v. Mass. Mut. Life Ins. Co.*, 820 N.Y.S.2d 275, 277 (N.Y. App. Div. 2006).

As discussed in Section I.C *supra*, Sol de Janeiro will show at trial that Apollo's and Costco's misappropriation of the Bum Bum Trade Dress is likely to cause confusion as to the source of the Brazilian Body Butter Cream. Sol de Janeiro will also show that Apollo and Costco did so in bad faith, namely with the intention to benefit from consumers associating Apollo and Costco's Brazilian Body Butter Cream with Sol de Janeiro and its product. *See* Section I.C.5 *supra*. Sol de Janeiro will demonstrate that Apollo and Costco misappropriated Sol de Janeiro's "skill, expenditures, and labor" to their own commercial advantage because Apollo and Costco infringed the Bum Bum Trade Dress that Sol de Janeiro invested extensive time, money, thought, and effort in developing and making commercially successful, SDJFOF ¶¶ 7, 9, 21, 32-35, in a manner that is likely to cause confusion.

33

IV.    **Apollo and Costco Infringed Sol de Janeiro's BUM BUM Marks Under the Lanham Act (Sol de Janeiro's Counterclaims V and VI)**

To find for Sol de Janeiro on its claims for infringement of the BRAZILIAN BUM BUM and BRAZILIAN BUM BUM CREAM marks under Section 43(a) of the Lanham Act or its claims for infringement of the BRAZILIAN BUM BUM mark under Section 32 of the Lanham Act, the jury must find, first, "that [Sol de Janeiro's] mark[s] merit[] protection, and second, that the defendant's use of a similar mark is likely to cause consumer confusion." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004).

A.    **Sol de Janeiro Owns the BRAZILIAN BUM BUM Trademark and it is Valid and Protectible**

"[R]egistration of a federal mark confers upon the owner of the mark a presumption that the owner has the exclusive right to use the mark nationwide . . . ." *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 266 (2d Cir. 2011) (citing 15 U.S.C. § 1115(a)). "A certificate of registration with the [US]PTO is *prima facie* evidence that the mark is registered and valid (*i.e.*, protect[a]ble), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 145 (S.D.N.Y. 2022) (quoting *Christian Louboutin*, 696 F.3d at 217 n.10). At trial, Sol de Janeiro will demonstrate that it owns Trademark Registration No. 5640212 for BRAZILIAN BUM BUM for use in connection with "body cream," which evidences both that Sol de Janeiro owns the mark and that the mark is valid and protectible. *See* SDJ 0002668-748 at 674; SDJPFOF ¶ 16.

B.    **Sol de Janeiro Owns the BRAZILIAN BUM BUM CREAM Trademark and it is Valid and Protectible**

Sol de Janeiro will show at trial that it is the owner of the BRAZILIAN BUM BUM CREAM trademark based on its first use of the BRAZILIAN BUM BUM CREAM mark in commerce in 2015, *see* AFOF ¶ 11; SDJPFOF ¶¶ 5, 15, seven years prior to Apollo and Costco's

adoption of the BRAZILIAN BODY BUTTER CREAM mark. *Dual Groupe*, 932 F. Supp. 2d at 573.

Sol de Janeiro will also show at trial that the BRAZILIAN BUM BUM CREAM mark is valid, as it is inherently distinctive and has acquired secondary meaning. Marks are classified as either (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. *Abercrombie*, 537 F.2d at 9. Marks that are suggestive, arbitrary, or fanciful are inherently distinctive. *Id.* Sol de Janeiro will show at trial that the BRAZILIAN BUM BUM CREAM mark is suggestive and, therefore, inherently distinctive. *See Paddington*, 996 F.2d at 583 (suggestive marks are inherently distinctive).

"[S]uggestive marks . . . require imagination, thought and perception to reach a conclusion as to the nature of goods." *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 118 (2d Cir. 1999) (citations omitted); *see also Star Indus.*, 412 F.3d at 385 ("Suggestive marks are those that are not directly descriptive, but do suggest a quality or qualities of the product, through the use of imagination, thought and perception.") (citation omitted). "Descriptive marks are those consisting of words identifying qualities of the product." *Id.* Sol de Janeiro will show at trial that BRAZILIAN BUM BUM CREAM is suggestive, not descriptive, because "bum bum" is a local Portuguese jargon used to refer to a person's rear end, the Brazilian culture attaches a specific significance to the rear end, and that the phrase "Brazilian bum bum" evokes a particular beauty aspiration—one connoting confident, bikini-clad Brazilian women of all shapes. Consumers must make a mental leap, one that requires at least some imagination, to understand what this phrase might indicate about a body cream. Sol de Janeiro's witnesses will testify that the trademark does not describe the Brazilian Bum Bum Cream product, it evokes the bold beauty standard associated with Brazilian women that Sol de Janeiro sought to capture as an aspirational part of its overall brand.

*See* SDJPFOF ¶ 9. Additionally, Sol de Janeiro will show, through witness testimony, that the product is not manufactured in Brazil, that Sol de Janeiro is not a Brazilian company, and that Brazilian Bum Bum Cream is meant to be used all over the body and not merely on the rear end. *See id.* ¶ 6.

Sol de Janeiro will adduce evidence that when Sol de Janeiro applied to register BRAZILIAN BUM BUM, Sol de Janeiro's counsel explained to the USPTO that the mark was suggestive, not descriptive, because "BRAZILIAN BUM BUM suggests an image of the much envied and highly sought after 'Brazilian beach body look.'" SDJ 0002696. The USPTO examiner accepted this and allowed registration of the mark without proof of secondary meaning. SDJ 0002683. "[B]ecause the USPTO registered it without proof of secondary meaning," that creates a presumption "'that the mark is more than merely descriptive' and 'is inherently distinctive.'" *Joules*, 695 F. App'x at 638 (quoting *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999)).

Additionally, Sol de Janeiro will demonstrate that its BUM BUM Marks have acquired distinctiveness through secondary meaning for the same reasons articulated in Section I.B.1.b.iii for the Bum Bum Trade Dress. The success and popularity of the Brazilian Bum Bum Cream gives rise to both the secondary meaning of its Bum Bum Trade Dress and its BUM BUM Marks.

## C.    Apollo and Costco Infringed Sol de Janeiro's BUM BUM Marks

The same likelihood of confusion analysis discussed herein for the Bum Bum Trade Dress is applicable for determining the likelihood of confusion between the BRAZILIAN BODY BUTTER CREAM mark and Sol de Janeiro's BUM BUM Marks. *See Polaroid*, 287 F.2d at 495. Consideration of the proximity of the parties' products, actual confusion, bad faith, quality of the

products, and consumer sophistication factors is the same for Sol de Janeiro's trademark claims as it was for its trade dress claims. *See* Sec. I.C *supra*.

### 1.  Strength of the BUM BUM Marks

To assess the strength of the mark factor, the factfinder considers both a mark's conceptual and commercial strength. *See Time, Inc.*, 173 F.3d at 118 (analysis considers both "inherent distinctiveness" and "distinctiveness in the marketplace"). As to commercial strength, the same facts recited above regarding the commercial success of the Brazilian Bum Bum Cream support a finding that the BUM BUM Marks are commercially strong and have secondary meaning. *See* Section I.B *supra.*

Sol de Janeiro will show at trial that the BUM BUM Marks are both inherently distinctive, as discussed in Section IV.A-B *supra*, and have acquired distinctiveness, as discussed in Section I.B.1.b.iii (and then in Section IV.B) *supra*. Therefore, this factor will weigh in Sol de Janeiro's favor.

### 2.  Similarity of the Marks

The similarity of the marks factor requires the factfinder to "analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." *Dooney & Bourke*, 454 F.3d at 117 (citation and internal quotation marks omitted). "The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail. For this reason, it should be considered in its entirety." *Est. of P.D. Beckwith, Inc., v. Comm'r of Pats.*, 252 U.S. 538, 545-46 (1920); *see also* 3 *McCarthy* § 23:41 ("[I]t is improper to find that one portion of a composite mark has no trademark significance, leading to a direct comparison between only that which remains."). "It is the impression that the mark as a whole creates on the average

reasonably prudent buyer and not the parts thereof, that is important." 3 *McCarthy* § 23:41. Moreover, "[t]o the average buyer, the points of similarity are more important than minor points of difference." *Id.*

Sol de Janeiro will show at trial that the Brazilian Body Butter Cream name is similar to the BUM BUM Marks. SDJPFOF ¶ 72. Both the Brazilian Body Butter Cream name and the BUM BUM Marks begin with the word BRAZILIAN, end with the word CREAM, and carry a rhythmic, two-step, alliterative B__ B__ between. *Id.* ¶ 73. Additionally, Sol de Janeiro will show that Apollo and Costco chose the mark to capitalize on the "particular equity" of the BRAZILIAN BUM BUM CREAM mark and to capitalize on the "name recognition associated with 'Brazilian Bum Bum Cream.'" SDJPFOF ¶ 60; Costco0000835-41.

Sol de Janeiro will also show that the similarities of the marks are further exacerbated by the contexts in which consumers encounter them. Sol de Janeiro will demonstrate that consumers encounter the infringing trademark almost exclusively in conjunction with the infringing packaging and that Apollo and Costco have conducted almost no advertising of the Brazilian Body Butter Cream. SDJPFOF ¶ 78. Thus, Sol de Janeiro will show that this factor weighs strongly in Sol de Janeiro's favor.

## V.    Apollo Contributed to Costco's and Other Third Parties' Infringement of Sol de Janeiro's BUM BUM Marks (Sol de Janeiro's Counterclaim VII)

As already discussed regarding the Bum Bum Trade Dress, *see* Sec. II *supra*, Sol de Janeiro will demonstrate at trial that Apollo intentionally induced Costco and other third parties to infringe the BUM BUM Marks. Sol de Janeiro will present evidence that Apollo aided Costco in creating the Brazilian Body Butter Cream and suggested choosing the BRAZILIAN BODY BUTTER CREAM mark to imitate and trade off the BUM BUM Marks. Specifically, Apollo suggested BRAZILIAN BODY BUTTER CREAM "given the specific name recognition associated with

'Brazilian Bum Bum Cream,'" and noted that Costco might "wish to focus on this particular equity in commercializing the opportunity." SDJPFOF ¶ 60; Costco0000835-41. Apollo also assisted Costco in creating duplicates of other Sol de Janeiro products using the same BRAZILIAN BODY BUTTER CREAM name. *See* SDJPFOF ¶¶ 79-80; Costco0003893-97; Apollo0005162; Apollo0005181-82, 5291, 5293, 5299, 5300.

## VI.  Apollo and Costco Violated New York Common Law by Infringing Sol de Janeiro's BUM BUM Marks (Sol de Janeiro Counterclaim VIII)

As already discussed herein regarding the Bum Bum Trade Dress, *see* Section III *supra*, Sol de Janeiro will show at trial that Apollo's and Costco's misappropriation of the BUM BUM Marks is likely to cause confusion as to the source of the Brazilian Body Butter Cream. *See* Sections I.C and IV.C *supra*. Sol de Janeiro will also show that Apollo and Costco did so in bad faith with the intention to benefit from consumers associating the Brazilian Body Butter Cream product with Sol de Janeiro. *See* Section I.C.5 *supra*. Sol de Janeiro will demonstrate that Apollo and Costco misappropriated Sol de Janeiro's "skill, expenditures, and labor" to their own commercial advantage because Apollo and Costco infringed the BUM BUM Marks, which Sol de Janeiro invested extensive time, money, thought, and effort in developing and making commercially successful, SDJFOF ¶¶ 7, 9, 32-35, in a manner that is likely to cause confusion.

## VII.  Sol de Janeiro is Entitled to Damages and Other Remedies for Apollo's and Costco's Trademark Infringement, Trade Dress Infringement, and Violation of New York Common Law

Sol de Janeiro is seeking actual damages, nominative damages, punitive damages, attorneys' fees and costs, Apollo's and Costco's profits, and a permanent injunction. *See* 15 U.S.C. § 1117(a) (entitling recovery of damages, the infringers' profits, attorneys' fees, and costs for

infringement under Sections 32 and 43 of the Lanham Act);[6] 15 U.S.C. § 1116(a) (permitting grant of injunctive relief for trademark infringement claims under the Lanham Act); *Jeffrey Milstein*, 58 F.3d at 35 ("In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief.").

### A.    Actual Damages

Sol de Janeiro will show at trial that is has suffered actual damages as a consequence of Apollo and Costco's conduct. "Actual damages" in the context of the Lanham Act "may include compensation for (1) lost sales or revenue; (2) sales at lower prices; (3) harm to market reputation; or (4) expenditures to prevent, correct, or mitigate consumer confusion." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir. 1996) (citation omitted). "Although the quantum of damages . . . must be demonstrated with specificity, courts may engage in 'some degree of speculation in computing the amount of damages, particularly when the inability to compute them is attributable to the defendant's wrongdoing.'" *PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 271 (2d Cir. 1987) (citations omitted), *abrogation on other grounds recognized by Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233 (2d Cir. 2021); *see also Abbott Lab'ys v. H & H Wholesale Servs., Inc.*, 15-CV-5826 (CBA)(LB), 2022 WL 17977495, at *3 (E.D.N.Y. Dec. 28, 2022) ("[A] plaintiff must prove with reasonable probability, not absolute certainty, that it suffered damages due to the trademark infringement. Moreover, courts distinguish between proof of the fact of damages and the amount of damages because a mark holder is held to a lower standard in proving the exact amount of actual damages.") (citations and internal quotation

---

[6] A showing of willful infringement is not required for an award of disgorgement of profits for claims under the Lanham Act. *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 218-20 (2020).

marks omitted), *aff'd sub nom. Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, 23-CV-0446, 2024 WL 4297472 (2d Cir. Sept. 26, 2024)).

Case law in the Second Circuit "is well settled that in order for a Lanham Act plaintiff to receive an award of *damages* the plaintiff must prove either actual consumer confusion or deception resulting from the violation, . . . or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 493 (2d Cir. 1998) (citation omitted) (emphasis in original); *see also Fashion Exch. LLC v. Hybrid Promotions, LLC*, 14-CV-1254 (SHS), 2022 WL 4554480, at *3 (S.D.N.Y. Sept. 29, 2022) (same). "When the defendant intentionally seeks to confuse or deceive, the court may accept less certain proof of loss in order to discourage similar behavior in the future. The court also may infer that a defendant who intends to divert sales from the plaintiff through an infringement or misrepresentation is likely to have succeeded." Restatement (Third) of Unfair Competition § 36, cmt. j (1995); *see also Am. Auto. Ass'n (Inc.) v. AAA Auto. Club of Queens, Inc.*, 97-CV-1180 (SJ), 1999 WL 97918, at *10 (E.D.N.Y. Feb. 8, 1999) ("Because Defendant's willful conduct in this case gives rise to a presumption of actual confusion that has not been rebutted, Plaintiff has established its entitlement to recovery of damages.").

As already discussed herein, Sol de Janeiro will present evidence at trial establishing that Apollo's and Costco's conduct has created a likelihood of confusion in the marketplace, has resulted in *actual* consumer confusion, and that Apollo's and Costco's conduct was willful and in bad faith and thus Sol de Janeiro is entitled to an award of actual damages.[7] *See* Sections I.C and

---

[7] "When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) . . . of this title . . . shall have been established . . ., the plaintiff shall be entitled, subject to . . . the principles of equity, to recover . . . (2) any damages sustained by the plaintiff." 15 U.S.C. § 1117(a).

IV.C *supra*. Sol de Janeiro will present evidence at trial that Apollo's and Costco's conduct harms Sol de Janeiro and the goodwill in the Bum Bum Trade Dress and BUM BUM Marks. Sol de Janeiro's market position as a premium beauty brand has been and will continue to be damaged by the misperception that it has authorized a lower-cost and potentially lower-quality product. SDJPFOF ¶ 109. Sol de Janeiro's expert, Dr. Thomaï Serdari will testify as to how premium products, such as Sol de Janeiro's Brazilian Bum Bum Cream, are harmed when consumers believe such products, or a down-market version of such products, are sold in discount stores such as Costco. She will also testify how such consumer perception diminishes the premium brand's revenue potential over its lifetime and how such damage is extremely difficult to correct Additionally, Sol de Janeiro will present evidence that Apollo's and Costco's conduct undermines Sol de Janeiro's ability to control the quality of the products bearing its Bum Bum Trade Dress and BUM BUM Marks. *Id.* ¶ 110. Sol de Janeiro will also present evidence that Apollo's and Costco's conduct eroded consumers' trust in the Brazilian Bum Bum Cream product and the BRAZILIAN BUM BUM brand and damaged employees' morale. *Id.* ¶¶ 111-112. Thus, Sol de Janeiro will show at trial that is has suffered damages as a consequence of Apollo's and Costco's conduct in an amount to be determined by the jury, which may include, without limitation, an award of Apollo's and Costco's profits as a proxy for Sol de Janeiro's damages. *See, e.g., George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539 (2d Cir. 1992); *see also Gucci Am., Inc. v. Guess, Inc.*, 843 F. Supp. 2d 412, 424 (S.D.N.Y. 2012) (using "profits as a 'rough proxy" for [] damages may be appropriate"). Alternatively, even if the jury declines to award actual damages, Sol de Janeiro will show that it should be awarded nominal damages. *See 24/7 Recs., Inc. v. Sony Music Ent., Inc.,* 566 F. Supp. 2d 305, 321 (S.D.N.Y. 2008) ("New York courts have granted nominal damages for unfair competition claims.") (collecting cases).

## B.      Apollo's and Costco's Profits

Even if the jury does not award Sol de Janeiro profits as a proxy for actual damages, Sol de Janeiro is entitled to recover Apollo's and Costco's profits.[8] Sol de Janeiro will present evidence at trial from its expert witness John Plumpe establishing Apollo's and Costco's sales of the Brazilian Body Butter Cream. Mr. Plumpe assisted Sol de Janeiro in calculating Apollo's and Costco's profits, namely that between June 2022 and August 6, 2023, Apollo realized U.S. net sales of $14.43 million selling Brazilian Body Butter Cream. SDJPFOF ¶ 102. Apollo's cost of goods sold ("COGS") for the Brazilian Body Butter Cream product totaled $7.69 million over the same time period, and its advertising expenses and price discounts totaled $0.67 million. *Id.* ¶ 102; Apollo0001346; Apollo0003215. Mr. Plumpe will further testify that deducting these expenses from Apollo's $14.43 million in revenue shows that Apollo realized profits of $6.06 million from U.S. sales of the Brazilian Body Butter Cream product between June 2022 and July 2023. SDJPFOF ¶ 103; Apollo0001346; Apollo0003215. Additionally, Mr. Plumpe will testify that from January 2022 through August 6, 2023, Costco realized U.S. net sales of $13.05 million selling the Brazilian Body Butter Cream product. SDJPFOF ¶ 104; Costco0003943. Lastly, he will testify that Costco's cost of goods sold ("COGS") amounted to $11.48 million, which, when deducted from Costco's revenue, show that Costco realized profits of $1.57 million from U.S. sales of the Brazilian Body Butter Cream product from January 2022 through August 6, 2023. SDJPFOF ¶ 105; Costco0003943. Thus, Sol de Janeiro will show that it is entitled to recover $6.06 million in

---

[8] "When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) . . . of this title . . . shall have been established . . . , the plaintiff shall be entitled, subject to . . . principles of equity, to recover (1) defendant's profits . . . . In assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. . . . If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum . . . shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a).

profits from Apollo and $1.57 million in profits from Costco as such profits are attributable to their infringement of the Bum Bum Trade Dress and BUM BUM Marks.[9] *See* SDJPFOF ¶¶ 103, 105-106.[10]

### C.    Punitive Damages

Sol de Janeiro will also show at trial that the jury should award punitive damages. *See Abbott Lab'ys v. Adelphia Supply USA*, 15-CV-5826 (CBA)(LB), 17-CV-6002 (CBA)(LB), 2019 WL 5696148, at *51 (E.D.N.Y. Sept. 30, 2019) ("Under New York law, the decision to award punitive damages and their amount are questions which primarily reside in the jury's discretion.") (citations omitted); *see also Lexington Furniture Indus., Inc. v. Lexington Co.*, 19-CV-6239 (PKC), 2022 WL 13848274, at *8 (S.D.N.Y. Oct. 24, 2022), *aff'd*, 2023 WL 8889514 (2d Cir. Dec. 26, 2023) ("[T]here is no dispute that punitive damages may be awarded on . . . state law unfair competition claim[s].").

As discussed herein, *see* Section I.C.5 *supra*, Apollo's and Costco's infringement of the Bum Bum Trade Dress and the BUM BUM Marks was exacerbated by Apollo's and Costco's reckless and willful conduct—*i.e.*, Apollo and Costco intentionally set out to copy the Bum Bum Trade Dress and BUM BUM Marks so that they could capitalize on Sol de Janeiro's equity in their trademarks, commercial success and acclaim in the marketplace. *See Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F.2d 650, 657 (2d Cir. 1989) ("In the context of a claim for unfair competition, we have noted that New York law clearly permits punitive damages where a wrong is aggravated by recklessness or willfulness, . . . whether or not directed against the public

---

[9] Such an award is supported by Second Circuit and South District of New York precedent. *See, e.g.*, *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 262 (2d Cir. 2014); *Fendi Adele S.R.L. v. Ashley Reed Trading, Inc.*, 2013 WL 12311011, at *4 (S.D.N.Y. Apr. 22, 2013).

[10] Financial facts cited throughout are based on data produced by Apollo and Costco as of the close of fact discovery on September 15, 2023, and will be updated prior to trial with more current financial data.

generally.") (citation and internal quotation marks omitted). Sol de Janeiro will also show at trial that it suffered actual injury to its reputation and goodwill as a result of Apollo's and Costco's conduct. *See* Sec. VII.B *supra*. Such injury permits the jury to award punitive damages. *See Lexington Furniture Indus.*, 2022 WL 13848274, at \*9 ("to justify an award of punitive damages there must be a showing of actual injury which would justify an award of actual or compensatory damages") (citations omitted). Indeed, punitive damages are available even if the jury only awards nominative damages. *Car-Freshener Corp. v. Big Lots Stores, Inc.*, 314 F. Supp. 2d 145, 154 (N.D.N.Y. 2004) ("Punitive damages may be awarded on the basis of nominal damages."); *see also McWeeney v. Lambe*, 30 N.Y.S.3d 189, 190 (N.Y. App. Div. 2016) (awarding $1 nominal damages and $25,000 punitive damages); *see also* 4 *McCarthy* § 30:96 ("In New York, punitive damages can be awarded even if actual damages cannot be ascertained and only a nominal award of actual damages is made."). Thus, Apollo's and Costco's willful intent to trade on the goodwill inherent in the Bum Bum Trade Dress and BUM BUM Marks evidence bad-faith conduct that supports punitive damages. SDJPFOF ¶ 118.

### D. Permanent Injunction

Sol de Janeiro will also demonstrate at trial that it is entitled to a permanent injunction. "To obtain a permanent injunction, a plaintiff that has established liability under the Lanham Act 'must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Focus Prods. Grp.*, 647 F. Supp. 3d at 269-70 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

The irreparable injury factor is satisfied by a showing that there is a likelihood of confusion. *Id.* at 270 (irreparable injury "is established where 'there is any likelihood that an appreciable number of ordinary prudent purchasers are likely to be misled, or indeed simply confused'") (quoting *Lobo Enters., Inc. v. Tunnel Inc.*, 822 F.2d 331, 333 (2d Cir. 1987)). As discussed herein, Sol de Janeiro will show at trial that Apollo and Costco's conduct causes a likelihood of confusion and has resulted in actual confusion, s*ee* Sections I.C and IV.C *supra*, thus, Sol de Janeiro has suffered an irreparable injury and satisfied this factor. *See also* SDJPFOF ¶ 114.

Sol de Janeiro will also show at trial that there is no adequate remedy at law to compensate it for the injuries caused by Apollo and Costco's conduct. *See* SDJPFOF ¶ 115. This factor "is satisfied where the record contains no assurance against [defendants'] continued violation of Plaintiff's trademark." *Focus Prods. Grp.*, 647 F. Supp. 3d at 270 (citations omitted) (holding that, despite defendants' ceasing infringement during pendency of lawsuit, defendants' continuous infringement three years into the litigation justified a permanent injunction). Sol de Janeiro will present evidence that Apollo and Costco continue to sell the infringing Brazilian Body Butter Cream to this day, and indeed, have *expanded* to sell additional products under the infringing BRAZILIAN BODY BUTTER CREAM mark. SDJPFOF ¶¶ 80, 114.

Sol de Janeiro will demonstrate that the balance of hardships favors an injunction. As one court explains,

> This factor overwhelmingly favors plaintiffs, who may continue to suffer irreparable harm to their business, profits, goodwill, and reputation as a result of defendants' willful infringement of the trademarks and Trade Dress. Defendants, in contrast, have not identified any cognizable hardship they could experience from an injunction. Lost business attributable to unlawful infringement does not qualify as a hardship.

*Focus Prods. Grp.*, 647 F. Supp. 3d at 270 (citations omitted). As discussed, Apollo and Costco's conduct has harmed, and will continue to harm, Sol de Janeiro's reputation and goodwill in the

marketplace and will continue to confuse consumers as to the source of Apollo's and Costco's products. In contrast, Sol de Janeiro will show that Apollo and Costco will experience no harm beyond the lost business of their unlawful infringement, which is irrelevant to the calculus under this factor. *See* SDJPFOF ¶ 116.

Lastly, Sol de Janeiro will show that issuance of an injunction serves the public interest. "The public has an interest in not being deceived and in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *Focus Prods. Grp.*, 647 F. Supp. 3d at 270 (citations omitted). As discussed, Sol de Janeiro will show at trial that consumers are likely to be confused as to the source of Apollo and Costco's Brazilian Body Butter Cream and, indeed, have been confused. Such deception is against the public interest and consumers should be able to be confident that the Bum Bum Trade Dress and BUM BUM Marks denote Sol de Janeiro's products exclusively. *See* SDJPFOF ¶ 117.

## VIII. Apollo's Declaratory Judgment Claims and Apollo and Costco's Affirmative Defenses Have No Merit

Sol de Janeiro will also show at trial that Apollo's declaratory judgment claims[11] and Apollo and Costco's affirmative defenses[12] are meritless. Apollo and Costco bear the burden of persuasion on these claims.

---

[11] As Sol de Janeiro has already addressed above that the Bum Bum Trade Dress is an enforceable trademark, is not functional, and is distinctive, *see* Section I.B *supra*, it does not retread those points (and related ones) here. Similarly, Sol de Janeiro will not address Apollo's claim for a declaratory judgment of non-infringement of the Bum Bum Trade Dress and BUM BUM Marks as it has already addressed how it will show at trial that Apollo and Costco are infringing, s*ee* Sections I.C & IV.C *supra*, and will also not address Apollo's claim for declaration of no likelihood of confusion of the BRAZILIAN BUM BUM trademark for the same reason, *see* Sections I.C & IV.C *supra*.

[12] The substance of Apollo's and Costco's affirmative defenses for failure to state a claim (First Affirmative Defense ("AD No. 1")) trade dress invalidity (AD No. 2), trademark invalidity (AD No. 3), failure to describe trade dress (AD No. 4), no identifier of origin (AD No. 5), ornamental/decorative/informational trade dress (AD No. 6), functional trade dress (AD No. 7), non-distinctiveness (AD No. 8), genericness (AD No. 9), non-infringement (AD No. 10), no likelihood of confusion (AD No. 11), adequate remedy at law (AD No. 12), no irreparable harm (AD No. 13), no equitable relief (AD No. 14), no willful infringement

A.    **Apollo is Not Entitled to Attorney's Fees Because This is Not an Exceptional Case**

Only prevailing parties are eligible for an award of attorney's fees in "exceptional" cases. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the *prevailing party*.") (emphasis added). For a case to be considered "exceptional" such that a prevailing alleged infringer may be awarded attorney's fees under the Lanham Act, *see* 15 U.S.C. § 1117(a), courts utilize the standard set in the Supreme Court's *Octane* decision. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 546 (2014); *see also Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 531 (2d Cir. 2018) (applying *Octane* in Lanham Act case); 4 *McCarthy* § 30:101. *Octane* held that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane*, 572 U.S. at 554 (citation omitted).

Here, even if Apollo prevails, Sol de Janeiro's claims are reasonable, meritorious, and strong such that this cannot be an exceptional case allowing an award of attorney's fees to Apollo. For example, the correspondence between Apollo and Costco reflects a concerted effort to "target" Sol de Janeiro's product, develop an "identical packaging impression" of a "wildly popular" body cream, and adopt a product name that trades on Sol de Janeiro's "equity" in its brand – meanwhile, the project resulted in an unusual success commercially. Thus, this case would not be deemed an exceptional case under the statute for the purpose of Apollo seeking attorney's fees. *See Beastie*

---

(AD No. 15), and no damages (AD No. 16) are already addressed herein. Sol de Janeiro will not readdress them here but reserves its right to elaborate further if the Court deems it necessary. As for Apollo's and Costco's affirmative defense of failure to mitigate damages (AD No. 17), Apollo and Costco have submitted no factual basis, legal argument, or precedent to show that such a defense is appropriate under the circumstances of this case. Accordingly, Sol de Janeiro will not address this claim herein and reserve its rights to do so if and when Apollo and Costco can substantiate the bare pleading.

*Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 47 (S.D.N.Y. 2015) (denying request for attorney's fees by prevailing alleged infringer because "the egregiousness required to justify a fee award under the statute was lacking" as plaintiff's claims were not "so devoid of legal merit that one could only conclude that they were advanced with an improper motive" or "constituted outrageous conduct evincing a complete lack of respect for the judicial process") (internal citations omitted) (cleaned up); *see also Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 14-CV-3419 (JMF), 2018 WL 317850, at *2 (S.D.N.Y. Jan. 8, 2018), *order aff'd*, 764 F. App'x 39 (2d Cir. 2019) (noting that "[the court] cannot say that Louis Vuitton's arguments were so objectively unreasonable (as either a legal or factual matter) that no party could see an opening . . . through which the argument[s] could be squeezed") (citations and internal quotation marks omitted).

### B.     Sol de Janeiro Does Not Have Unclean Hands

Apollo and Costco are unable to establish that Sol de Janeiro has unclean hands. To prove either of their unclean hands defenses, Apollo and Costco must show that (1) Sol de Janeiro's conduct has been inequitable, (2) that Sol de Janeiro's conduct relates to the subject matter of its trademark claims it asserted against them, (3) that they have been injured by Sol de Janeiro's conduct, and (4) that these wrongs cannot be corrected without applying the doctrine of unclean hands. *See Jane St. Grp., LLC v. Millennium Mgmt. LLC*, 24 CIV. 2783 (PAE), 2024 WL 3357005, at *2 (S.D.N.Y. July 10, 2024) ("To prevail on [an unclean hands] defense, defendants must establish that Jane Street is (1) 'guilty of immoral, unconscionable conduct that (2) 'is directly related to the subject matter in litigation' and (3) injured the defendants.") (citation omitted). Apollo and Costco cannot prove that Sol de Janeiro engaged in inequitable conduct or that the conduct relates to the trademark claims Sol de Janeiro has asserted against them.[13]

---

[13] Apollo's and Costco's unclean hands defenses do not apply to any of Sol de Janeiro's claims except Counterclaim Four for infringement of the registered BRAZILIAN BUM BUM trademark and

Under their first unclean hands theory, Apollo and Costco assert that Sol de Janeiro's BRAZILIAN BUM BUM trademark is deceptive because, notwithstanding the inclusion of the word "Brazilian" within the mark, the cream is not manufactured in Brazil and, Apollo and Costco claim, no ingredients in the product are sourced from Brazil such that its registration cannot be enforced against Apollo and Costco. *See* ECF 67 at 14-15 (Apollo's 18th Affirmative Defense); ECF 70 at 14-15 (Costco's 18th Affirmative Defense). This argument, namely that Sol de Janeiro's BRAZILIAN BUM BUM trademark is primarily geographically deceptively misdescriptive, has no basis. *See In re Miracle Tuesday, LLC*, 695 F.3d 1339, 1343 (Fed. Cir. 2012).

"A mark is primarily geographically deceptively misdescriptive, and thus barred from registration, if: (1) 'the primary significance of the mark is a generally known geographic location'; (2) 'the consuming public is likely to believe the place identified by the mark indicates the origin of the goods bearing the mark, when in fact the goods do not come from that place'; and (3) 'the misrepresentation was a material factor in the consumer's decision' to purchase the goods." *Id.* (citing *In re Cal. Innovations, Inc.*, 329 F.3d 1334, 1341 (Fed. Cir. 2003)).

As explained herein, *see* Section IV.B *supra*, Sol de Janeiro will show at trial through witness testimony that BRAZILIAN BUM BUM refers not to the geographic location of Brazil but to the notion of the Brazilian rear end, an aspirational image of beauty and of confident, bikini-clad Brazilian women. Sol de Janeiro's founder will testify that Sol de Janeiro selected the name "Brazilian Bum Bum Cream," not to describe the origin of the product or its ingredients, but to evoke a particular bold beauty standard that Sol de Janeiro sought to capture as an aspirational part of its overall brand. *See* SDJPFOF ¶ 9. Apollo and Costco have produced no evidence to suggest

---

Counterclaim Seven, but only as that claim relates to contributory infringement of Sol de Janeiro's registered BRAZILIAN BUM BUM trademark.

that the primary significance of the mark is the country of Brazil and attempt to analyze the mark improperly, namely by dissecting it and focusing on one term in the phrase in isolation. *See Giggle*, 856 F. Supp. 2d at 635. Apollo and Costco produce no survey or other evidence that consumers believe Sol de Janeiro's Brazilian Bum Bum Cream originates from Brazil or that the geographical term "Brazilian" is material to consumers in their decision to purchase Brazilian Bum Bum Cream and, thus cannot meet their burden of proof.

Under their second unclean hands theory, Apollo and Costco allege that, in connection with obtaining the Registration, Sol de Janeiro committed fraud on the USPTO via statements made by its counsel in the Response to the Examining Attorney's Office Action filed on July 27, 2017, regarding the geographic descriptiveness of its BRAZILIAN BUM BUM mark. The burden for such an allegation is clear and convincing evidence. *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016) (citation omitted). "[A] trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the [USPTO]." *Id.* at 659 (quoting *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009)) (emphasis removed); *see also Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988) (holding that fraud must be proved by clear and convincing evidence and that "[t]he allegedly fraudulent statements may not be the product of mere error or inadvertence, but must indicate a deliberate attempt to mislead the [US]PTO") (citation omitted) (alterations and internal quotation marks omitted).

Sol de Janeiro will demonstrate at trial that it is not possible for Apollo and Costo to show that Sol de Janeiro's counsel intended to deceive the USPTO. *See In re Bose Corp.*, 580 F.3d at 1245 ("Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis."); *see also MPC Franchise*, 826 F.3d at 659-60 (adopting Federal Circuit's

subjective intent requirement). The requisite subjective intent is that of the individual signing the allegedly false assertion. *See* 4 *McCarthy* § 31:61 ("[i]n determining whether there is fraud, it is the state of mind of the person signing the oath or declaration that is at issue"); *Patsy's Italian Rest.*, 658 F.3d at 270 (party alleging fraud must prove "[t]he person making the representation knew or should have known that the representation was false ('scienter')") (citations omitted); *see also MPC Franchise*, 826 F.3d at 659 n.4 (analyzing the intent of the "person making the representation") (citation omitted).

Sol de Janeiro will show at trial that there is no evidence that it committed fraud in its Office Action Response. Sol de Janeiro will show that statements made by Sol de Janeiro's counsel to the USPTO in the prosecution of the application for the Registration consist of attorney argument and were truthful and made without intent to deceive the USPTO. *See* SDJ 0002668-748; SDJPFOF ¶ 17. The attorney took the position that the trademark must be analyzed as a whole and that, within the phrase BRAZILIAN BUM BUM, "Brazilian" refers to the body look, not the cream. *See* SDJ 0002695-96. There is no evidence of an intent to deceive. The Examiner accepted the argument and issued the registration without requiring a disclaimer. The legal arguments of Sol de Janeiro's outside counsel to the USPTO cannot be the basis of a fraud claim. *See, e.g.*, *Medinol Ltd. v. Bos. Sci. Corp.*, 346 F. Supp. 2d 575, 602 (S.D.N.Y. 2004) (holding that "[a] strategy of attempting to convince the [agency] of a particular position is appropriate advocacy, and not a fraud"); *Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*, 207 F. Supp. 2d 221, 224 n.3 (S.D.N.Y. 2002) ("[A] legal argument promoting a particular interpretation of a statute cannot be the basis of a fraud claim."). Sol de Janeiro will also show that statements made by Sol de Janeiro's counsel to the USPTO in the prosecution of the application of the BRAZILIAN BUM BUM registration have caused no harm or damage to Apollo or Costco. SDJ 0002668-748;

SDJPFOF ¶ 17. The statements related only to whether or not the Registration would issue with a disclaimer of the term "Brazilian," not whether the Registration would issue.

Moreover, even if Apollo and Costco *could* meet their burden of proving that Sol de Janeiro engaged in inequitable conduct and that such conduct related to the subject matter, they cannot prove either of the second two elements, namely that they were injured by Sol de Janeiro's conduct or that the wrongs cannot be corrected.

## POTENTIAL EVIDENTIARY ISSUES

In addition to Sol de Janeiro's specific objections to certain exhibits on Apollo and Costco's exhibit list, Sol de Janeiro has identified the following potential evidentiary issues that may arise during the trial:

1.      Sol de Janeiro previously moved in limine to exclude the testimony of Apollo and Costco's proposed expert witness Brian Buss, (ECF No. 178), which the Court denied without prejudice with leave to renew at trial (ECF No. 309 at 2). Sol de Janeiro has renewed each of the relevant issues in a motion in limine to enforce the Court's *Daubert* order and exclude certain testimony of Brian Buss outside his specified areas of expertise.

2.      Sol de Janeiro has moved in limine to enforce the Court's *Daubert* order and exclude certain testimony of Nikola Cline that constitutes lay testimony outside her area of expertise.

3.      Sol de Janeiro has moved in limine to exclude certain irrelevant evidence consisting of filings before the USPTO concerning two unrelated trademark applications.

4.      Sol de Janeiro has moved in limine to exclude certain highly prejudicial testimony by Heela Yang referencing privileged legal advice.

5.      Sol de Janeiro has moved in limine to admit certain emails between Mr. Charles Wachsberg, Co-CEO of Apollo and Ms. Lindsay Bubitz, a Costco buyer for personal care products regarding Apollo's and Costco's collaboration on the Brazilian Body Butter Cream product.

6.      Sol de Janeiro has moved in limine to exclude the late-produced Supplemental Rebuttal Expert Report of Nikola Cline, her late-produced documents, and any testimony regarding either.

7.      Sol de Janeiro has moved in limine to exclude certain late-produced images of stock jars and testimony regarding the same.

8.      Sol de Janeiro's Daubert motions raised myriad concerns with the reliability, relevance, and probative value of testimony from five of Apollo and Costco's proffered experts, Nikola Cline, Thomas J. Gorowsky, Brian Buss, Dr. E. Deborah Jay, and Dr. Itamar Simonson. Sol de Janeiro anticipates that it will raise similar objections at trial to the extent that Apollo and Costco's experts offer improper expert testimony at trial.

Dated: March 21, 2025                    FROSS ZELNICK LEHRMAN & ZISSU, P.C.
        New York, New York

                                         By: _____
                                             John P. Margiotta
                                             David Donahue
                                             Leo Kittay
                                             Brian Leary

                                         Fross Zelnick Lehrman & Zissu, P.C.
                                         151 West 42nd Street, 17th Floor
                                         New York, New York 10036
                                         Tel: (212) 813-5900
                                         Email: jmargiotta@fzlz.com
                                                ddonahue@fzlz.com
                                                lkittay@fzlz.com
                                                bleary@fzlz.com

                                         *Attorneys for Sol de Janeiro USA Inc.
                                         and Sol de Janeiro IP, Inc.*