**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| APOLLO HEALTHCARE CORP. d/b/a APOLLO HEALTH AND BEAUTY CARE, <br><br> Plaintiff, <br><br> v. <br><br> SOL DE JANEIRO USA INC. and SOL DE JANEIRO IP, INC., <br><br> Defendants. | Civil Action No. 1:22-cv-07719-LLS |
| SOL DE JANEIRO USA INC. and SOL DE JANEIRO IP, INC., <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> APOLLO HEALTHCARE CORP. d/b/a APOLLO HEALTH AND BEAUTY CARE and COSTCO WHOLESALE CORP., <br><br> Counterclaim-Defendants. | **APOLLO HEALTHCARE CORP. AND COSTCO WHOLESALE CORP.'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR DECLARATORY JUDGMENT ON FUNCTIONALITY** <br><br> **[oral argument requested]** |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND .............................................................................. 3

I.     THE PARTIES, THEIR PRODUCTS, AND THIRD-PARTY PRODUCTS................... 3

     A.     Apollo ................................................................................. 3

     B.     Costco ................................................................................. 3

     C.     SDJ ..................................................................................... 4

     D.     SDJ's Selection Of A Preexisting Stock Jar With A Rounded Bottom And An Oversized Lid From A Third-Party Vendor Known As TOLY ...... 4

     E.     SDJ's Unregistered Purported Trade Dress ............................ 6

     F.     Jars With Rounded Bottoms And Oversized Lids Are Commonly Used By Companies That Employ Best Practices In The Beauty Cream Industry. .............. 8

     G.     Apollo's NUTRIUS® Product.......................................... 14

     H.     SDJ's BUM BUM Product .............................................. 16

     I.     SDJ's Unsuccessful Attempt At Enforcing Its Unregistered Purported Trade Dress Against Beauty Cream Products Sold In "Lookalike" Jars With Rounded Bottoms And Oversized Lids. ...................................... 16

     J.     The USPTO Refused SDJ's First Application For A Trade Dress Registration Concerning Containers With Rounded Bottoms And Oversized Lids. ....................................... 17

     K.     The USPTO Refused SDJ's Second Application For A Trade Dress Registration Concerning Containers With Rounded Bottoms And Oversized Lids. ....................................... 22

     L.     SDJ's Demand Letters Define Its Brazilian Bum Bum Trade Dress To Include Caramel, Pink, and Coral/Red Jars With Rounded Bottoms And Oversized Lids. ....................................... 23

LEGAL ARGUMENT .......................................................................... 24

I.     THIS COURT SHOULD GRANT DECLARATORY JUDGMENT IN FAVOR OF APOLLO BECAUSE SDJ CANNOT MEET ITS BURDEN AND PROVE ITS PURPORTED TRADE DRESS IS NOT FUNCTIONAL. ........................... 25

     A.     SDJ's Purported Trade Dress Is Functional and Invalid Because It Seeks Protection for Basic Elements That SDJ Took From the Public Domain............ 25

     B.     SDJ's Purported Trade Dress Is Invalid Because It Fails the Second Circuit's Functionality Test Set Forth in *Stormy Clime*........................ 29

          1.     SDJ's purported trade dress fails the first two prongs of the Second Circuit's functionality test because all of the features are functional. ................................. 30

               a.     The color of the lid and the color of the jar are functional because they serve significant non-trademark functions. ............. 30

b.  The product name and text presented on the lid are functional words that cannot be efficiently printed on the sloped surface of the jar. ............................................................. 33

2.  SDJ's purported trade dress fails the third prong of the Second Circuit's functionality test because it is not feasible for Apollo to make alternative arrangements to a stock container from the public domain that is widely used by other beauty cream companies. ............... 34

C.  SDJ's Purported Trade Dress Is Nothing More Than the Assemblage of Functional Parts and the Combination of the Elements Is a Functional Whole. ................................................................................................................. 35

D.  This Court Should Find SDJ's Purported Trade Dress Is Functional Because The USPTO Refused SDJ's Prior Trade Dress Applications on Functionality Grounds. ........................................................................................ 37

1.  Under Second Circuit Law, This Court Should Take Judicial Notice of the USPTO's Refusals and Give Them "Great Weight" in This Court's Functionality Ruling. ......................................................... 39

E.  SDJ's Purported Trade Dress Definition Is An Unlawful Attempt To Usurp Patent Law And Should Be Rejected. ......................................................... 42

CONCLUSION ................................................................................................................. 45

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Adams Mfg. Corp. v. Rea*,
   Civ. No. 12–1430, 2014 WL 978116 (W.D. Pa. March 12, 2014).........................................40

*Aluminum Trailer Co. v. Westchester Fire Ins. Co.*,
   522 F. Supp. 3d 464 (N.D. Ind. 2021) .........................................................................27

*Am. Lecithin Co. v. Rebmann*,
   No. 12-CV-929, 2020 WL 4260989 (S.D.N.Y. July 24, 2020)...........................................41

*Arlington Specialties, Inc. v. Urban Aid, Inc.*,
   847 F.3d 415 (7th Cir. 2017), *aff'd*, 24 F.4th 1134 (7th Cir. 2022)...................................27

*Atlantis Silverworks, Inc. v. 7th Sense, Inc.*,
   No. 96 Civ. 4058, 1997 WL 128403 (S.D.N.Y. Mar. 20, 1997) ....................................25, 45

*Beech–Nut, Inc. v. Warner–Lambert Co.*,
   346 F. Supp. 547 (S.D.N.Y. 1972), *aff'd*, 480 F.2d 801 (2d Cir. 1973) ...............................33

*Buti v. Impressa Perosa, S.R.L.*,
   139 F.3d 98 (2d Cir. 1998).........................................................................................39

*Car-Freshner Corp. v. D & J Distrib & Mfg., Inc.*,
   No. 14–cv–391, 2015 WL 3385683 (S.D.N.Y. May 26, 2015)..................32, 34, 35, 37, 38

*City of N.Y. v. Henriquez*,
   98 F.4th 402 (2d Cir. 2024) ..................................................................................39, 42

*Cross Com. Media, Inc. v. Collective Inc.*,
   841 F.3d 155 (2d Cir. 2016).....................................................................................39

*Deere & Co. v. Farmhand, Inc.*,
   560 F. Supp. 85 (S.D. Iowa 1982), *aff'd*, 721 F.2d 253 (8th Cir. 1983)...............................31

*In re Deister Concentrator Co.*
   289 F.2d 496 (Cust. & Pat. App. 1961) .......................................................................44

*Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.* (*Diageo I*),
   283 F. Supp. 3d 182 (S.D.N.Y. 2018).........................................................................36

*Diageo North America, Inc. v. W.J. Deutsch & Sons Ltd.* (*Diageo II*),
   626 F. Supp. 3d 635 (S.D.N.Y. 2022).........................................................................36

*Dippin' Dots, Inc. v. Forsty Bites Distrib., LLC*,
   369 F.3d 1197 (11th Cir. 2004) ................................................................................32

*Eliya, Inc. v. Kohl's Corp.*,
   No. CV 15-2123, 2016 WL 929266 (E.D.N.Y. Feb. 22, 2016),
   *R&R adopted*, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016)...............................................40

*Fabrication Enterprises, Inc. v. Hygienic Corp.*,
  64 F.3d 53 (2d Cir. 1995) ...................................................................................30

*Fashion Exchange LLC v. Hybrid Promotions, LLC*,
  697 F. Supp. 3d 86 (S.D.N.Y. 2023) ...................................................................40

*Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*,
  955 F.3d 632 (7th Cir. 2020) .........................................................................27, 40

*Gemmy Indus. v. Chrisha Creations Ltd.*,
  No. 04 Civ. 1074, 2004 WL 1406075 (S.D.N.Y. June 23, 2004), *vacated &*
  *remanded on other grounds*, 452 F.2d 1353 (Fed. Cir. 2006) .................................27

*Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assurance Co.*,
  943 F. Supp. 509 (E.D. Pa. 1996) ......................................................................40

*Gucci v. Gucci Shops, Inc.*,
  688 F. Supp. 916 (S.D.N.Y. 1988) ......................................................................39

*Henri Bendel, Inc. v. Sears, Roebuck & Co.*,
  25 F. Supp. 2d 198 (S.D.N.Y. 1998) .........................................................43, 44, 45

*Hutchinson v. Essence Commc'ns, Inc.*,
  769 F. Supp. 541 (S.D.N.Y. 1991) ......................................................................25

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
  58 F.3d 27 (2d Cir. 1995) .........................................................................26, 36, 43

*Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*,
  478 F. Supp. 2d 340 (E.D.N.Y. 2007) ...................................................................40

*Kaplan, Inc. v. Yun*,
  16 F. Supp. 3d 341 (S.D.N.Y. 2014) ....................................................................41

*Knowles-Carter v. Feyonce, Inc.*,
  347 F. Supp. 3d 217 (S.D.N.Y. 2018) ..................................................................41

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
  113 F.3d 373 (2d Cir. 1997) .........................................................................25, 26

*Malaco Leaf, AB v. Promotion, Inc.*,
  287 F. Supp. 2d 355 (S.D.N.Y. 2023) ..............................................................27, 44

*Mechanical Plastics Corp. v. Titan Technologies, Inc.*,
  823 F. Supp. 1137 (S.D.N.Y. 1993) .....................................................................44

*Merriam–Webster, Inc. v. Random House, Inc.*,
  35 F.3d 65 (2d Cir. 1994) .................................................................................34

*In re Morton-Norwich Prods., Inc.*,
  671 F.2d 1332, 213 U.S.P.Q. 9 (C.C.P.A. 1982) ....................................................21

*MPC Franchise, LLC v. Tarntino*,
  19 F. Supp. 3d 456 (W.D.N.Y. 2014) ...................................................................41

*Murphy Door Bed Co. v. Interior Sleep Sys.*,
  874 F.2d 95 (2d Cir. 1989) ...............................................................................39

*In re Orange Comm'cs, Inc.*,
    40 U.S.P.Q.2d 1036, 1996 WL 754044 (T.T.A.B. Oct. 30, 1996) .........................................32

*Premier Nutrition, Inc. v. Organic Food Bar, Inc.*,
    No. SACV 06–0827, 2008 WL 1913163 (C.D. Cal. Mar. 27, 2008), *aff'd*, 327
    F. App'x 723 (9th Cir. 2009) .................................................................................................40

*Qualitex Co. v. Jacobson Prods. Co.*,
    514 U.S. 159 (1995)...........................................................................................2, 26, 30, 31, 43

*Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers*,
    894 F. Supp. 2d 288 (S.D.N.Y. 2012)....................................................................................41

*Rodan & Fields, LLC v. Estee Lauder Cos.*,
    No. 10–CV–02451, 2010 WL 3910178 (N.D. Calif. Oct. 5, 2010).........................................41

*Saint Laurie Ltd. v. Yves Saint Laurent Am., Inc.*,
    No. 13 Civ. 6857, 2014 WL 12772088 (S.D.N.Y. Sept. 30, 2014)........................................41

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
    193 F. Supp. 3d 245 (S.D.N.Y. 2016), *aff'd*, 699 F. App'x 93 (2d Cir. 2017)........................36

*Solid 21, Inc. v. Breitling U.S.A., Inc.*,
    No. 3:19-cv-00514, 2021 WL 4430755 (D. Conn. Sept. 27, 2021), *vacated in
    part on other grounds*, 2021 WL 5868173 (D. Conn. Dec. 10, 2021), *aff'd*, 96
    F.4th 265 (2d Cir. 2024) ........................................................................................................41

*Stormy Clime Ltd. v. Progroup, Inc.*,
    809 F.2d 971 (2d Cir. 1987)...............................................................29, 30, 32, 34, 35, 43, 44

*Sulzer Mixpac AG v A&N Trading Co.*,
    988 F.3d 174 (2d Cir. 2021)..................................................................24, 25, 26, 29, 32

*Syntex Lab'ys, Inc. v. Norwich Pharmacal Co.*,
    315 F. Supp. 45 (S.D.N.Y. 1970), *aff'd*, 437 F.2d 566 (2d Cir. 1971) ...................................40

*Telebrands Corp. v. Del Lab'ys, Inc*.,
    719 F. Supp. 2d 283 (S.D.N.Y. 2010)....................................................................................41

*Tough Traveler, Ltd. v. Outbound Prods.*,
    60 F.3d 964 (2d Cir. 1995) (Jacobs, J., concurring), *abrogated on other
    grounds, Salinger v. Colting,* 607 F.3d 68 (2d Cir. 2010) .......................................................36

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001).......................................................................................2, 25, 26, 43

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)................................................................................................................28

*W.E. Bassett Co. v. Revlon, Inc.*,
    305 F. Supp. 581 (S.D.N.Y. 1969), *aff'd in part, rev'd in part on other
    grounds*, 435 F.2d 656 (2d Cir. 1970) ...................................................................................40

*Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co., Inc.*,
    916 F.2d 76 (2d Cir. 1990), *Abrogated on other grounds, Knitwaves, Inc. v.
    Lollytogs Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995).............................................................28, 30

*In re Water Gremlin Co.*,
    635 F.2d 841 (C.C.P.A. 1980) .................................................................................................40

*Yador v. Mowatt*,
    No. 19-CV-4128, 2024 WL 4145722 (E.D.N.Y. Sept. 11, 2024) ...........................................41

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001)...............................................................................25, 26, 27, 29

**Statutes**

15 U.S.C. § 1125(a)(3).........................................................................................................25, 26

28 U.S.C. § 2201 ........................................................................................................................24

**Other Authorities**

Fed. R. Civ. P. 1 .............................................................................................................................2

Fed. R. Civ. P. 57 ...........................................................................2, 3, 4, 8, 14, 15, 16, 20, 21, 24, 25

## <u>INTRODUCTION</u>

Sol de Janeiro USA Inc. and Sol de Janeiro IP, Inc. (together, "SDJ") purport to own an *unregistered* trade dress.  SDJ asserted four, separate, complex counterclaims concerning alleged infringement of this purported, unregistered trade dress.  (ECF No. 67 ¶¶ 178-199.)

If allowed to move forward, SDJ's trade dress infringement claims will exponentially complicate the trial of this case with additional motion practice, additional fact and expert witness testimony, additional documents, electronic files and other trial evidence, and additional trial issues.  For example, the trial issues will expand to include not only whether SDJ's trade dress is functional, but also whether SDJ precisely defined its purported trade dress, whether SDJ's purported trade dress acquired secondary meaning (and related sub-issues concerning advertising expenditures, consumer studies, unsolicited media coverage, sales success, attempts to plagiarize the dress, and length and exclusivity of dress's use), whether there is a likelihood of confusion concerning the purported trade dress (and related sub-issues including strength of dress, similarity of dresses, actual confusion, bad faith, *etc.*), whether there is infringement of the purported trade dress, whether there are damages attributable to the alleged infringement, whether Apollo Healthcare Corp. d/b/a Apollo Health and Beauty Care ("Apollo") was unjustly enriched, whether Apollo's profits need to be disgorged (and related sub-issues regarding apportionment of any such profits, disaggregation of any trade dress profits from any trademark profits, quantification of any such profits), and many other issues.  In short, SDJ's trade dress infringement claims will consume an enormous amount of time and resources if allowed to move forward.

Meanwhile, SDJ's entire trade dress infringement case hangs by the slimmest of reeds. Because SDJ's trade dress is not registered, the burden is on SDJ to establish that its trade dress is not functional.  If SDJ fails to carry its burden on this narrow issue of functionality, all of SDJ's trade dress infringement claims must be dismissed before trial and an enormous amount of time

and resources will be preserved.  Simply put, this narrow functionality issue cries out for early resolution under Rule 1 and Rule 57 of the Federal Rules of Civil Procedure.

Rule 1 expressly provides that the rules should be administered "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Rule 57 allows the court to "order a speedy hearing of a declaratory-judgment action."  According to the Advisory Committee Notes, a declaratory judgment action under Rule 57 "operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion. . . ."  Taken together, Rule 1 and Rule 57 were tailor-made to allow this Court to resolve the single, narrow, functionality issue and dismiss SDJ's trade dress infringement claims before trial.

The functionality issue is straightforward.  The functionality doctrine prohibits trademark law from protecting functional product features.  The United States Supreme Court has clearly stated that protection for functional features must be sought through a limited-duration patent, and not through the unlimited protection of a trademark registration (which may be renewed in perpetuity). *Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 164-165 (1995); *TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 29 (2001).

In this case, SDJ seeks to turn the functionality doctrine upside-down.  SDJ took a container from the public domain that is comprised of functional features.  SDJ then claimed it has an unregistered trade dress comprised of those functional features.  SDJ now claims Apollo and Costco Wholesale Corp. ("Costco") cannot use the functional features that SDJ took from the public domain because of SDJ's unregistered, purported trade dress.

On two prior occasions, SDJ applied for trade dress registrations that were defined to include substantially these same functional features.  The United States Patent and Trademark Office ("USPTO") refused both attempts and ruled both purported trade dresses were invalid on

functionality grounds.  This Court should reach a similar result and rule that SDJ's unregistered, purported trade dress is functional and therefore invalid and unprotectable.  In addition, this Court should grant Apollo's Rule 57 motion for declaratory judgment and dismiss SDJ's trade dress infringement claims in their entirety.[1]

## FACTUAL BACKGROUND

### I.    THE PARTIES, THEIR PRODUCTS, AND THIRD-PARTY PRODUCTS.

#### A.    Apollo

Apollo is a leading provider of personal care products.  (SUF ¶ 1.)  Apollo produces and sells private label and white label beauty products, including skin and body care products.  (SUF ¶ 2.)  Among other products, Apollo markets and sells NUTRIUS® BRAZILIAN BODY BUTTER CREAM™ ("NUTRIUS® Product"), a body cream product designed to moisturize and hydrate skin.  (SUF ¶ 3.)

#### B.    Costco

Costco sells a wide variety of goods, including beauty products, nationwide through its website and through members-only retail warehouses.  (SUF ¶ 6.)  Costco operates a chain of membership warehouses that carry merchandise at substantially lower prices than are typically found at conventional retail sources.  (SUF ¶ 7.)  Costco is able to offer products with low prices and great values because Costco eliminated virtually all the frills and costs historically associated with conventional retailers, including salespeople, fancy buildings, delivery, billing and accounts receivable.  (SUF ¶ 8.)  This enables Costco to pass dramatic savings to its members.  (*Id.*)

Apollo and Costco have had a business relationship for at least 20 years.  (SUF ¶ 9.)

---

[1] Costco joins in this motion because SDJ also asserted trade dress infringement and related claims against Costo.

### C.    SDJ

SDJ USA and SDJ IP are Delaware corporations with offices in New York, New York. (SUF ¶¶ 10-11.)  SDJ claims to own an unregistered trade dress that is defined to include a container with a rounded bottom and an oversized lid.  (SUF ¶ 12.)  SDJ further claims Apollo and Costco have infringed SDJ's unregistered, purported trade dress.  (*Id.*)

### D.    SDJ's Selection Of A Preexisting Stock Jar With A Rounded Bottom And An Oversized Lid From A Third-Party Vendor Known As TOLY

In or about May 2014, Heela Yang ("Ms. Yang") co-founded SDJ and began developing a cream product known as Brazilian Bum Bum ("BUM BUM Product").  (SUF ¶ 13.)  SDJ did not create the design and shape of the container used in connection with the BUM BUM Product. Instead, Ms. Yang purchased a pre-existing, round-bottomed jar with an oversized lid she saw at a cosmetics trade show in Las Vegas.  (SUF ¶ 14.)

More specifically, on or about July 13, 2014, Ms. Yang and two other individuals attended a trade show in Las Vegas, Nevada.  (SUF ¶ 15.)  While attending the Las Vegas trade show, Ms. Yang noticed a third-party vendor's jar on display and selected it for use in connection with the SDJ's BUM BUM Product.  (SUF ¶ 16.)  During an interview with Founded Beauty's Akash Mehta, Ms. Yang described her selection of the third-party vendor's jar as follows:

> . . . I'll tell you a quick story about packaging. . . , so the three of us before we launched the brand. . . We had this idea, this concept of Brazilian Bum Bum cream, this body cream, and we were being good students.
>
> So we took a trip to a cosmetics trade show in Las Vegas, and . . . we wanted to see what was out there and study.  And I remember there was a packaging vendor that had lots of white jars, white tubes, and white pumps, and they're on the shelves.
>
> And I remember seeing this jar shape all in white from far.  And I looked at it and I thought, oh my God, that's our, that's our Bum Bum cream jar. And I walked over, I grabbed it, and then I held it up for my partners to see. They were a few steps behind me, and I pointed to it and I like said, this is it, this is our Bum Bum cream jar. And they were both like, you know, thumbs up and big smiles, like yup that's it. . . .

4

(SUF ¶ 17.)

The trade show Ms. Yang attended was the July 13 – 15, 2014 Cosmoprof North America Las Vegas Trade Show.  (SUF ¶ 18.)  The third-party vendor that Ms. Yang noticed at the trade show was an exhibitor known as TOLY Products.  (SUF ¶ 19.)  The jar Ms. Yang noticed was a standard, pre-existing, stock jar that TOLY was displaying at the trade show and had been offering for sale on its web site since at least May 2013 (the "stock TOLY Jar").  (SUF ¶ 20.)

Ms. Yang subsequently made a presentation at Clemson University and included a picture of the pre-existing stock TOLY Jar in one of her presentation documents as set forth below:



(SUF ¶ 21.)

On August 8, 2014, no more than 26 days after Ms. Yang noticed the pre-existing stock TOLY Jar at the July 13-15, 2014 Las Vegas trade show, TOLY prepared a drawing of the stock TOLY Jar with the product name BRAZILIAN BUM BUM CREAM and other words depicted on the lid.  (SUF ¶ 22.)  In 2015, SDJ used the pre-existing, stock TOLY Jar, with the BUM BUM

Product name and other words depicted on the lid and with a caramel-colored jar, to launch SDJ's BUM BUM Product.  (SUF ¶ 23.)

Based on legal advice SDJ received from an intellectual property law firm, SDJ did not apply for a trade dress registration concerning the jar it used to launch the BUM BUM Product. (SUF ¶ 24.)

### E.    SDJ's Unregistered Purported Trade Dress

In its Amended Counterclaims, SDJ purports to own an unregistered trade dress in a "product design" shown below that "includes a colored jar that has no writing on it which is gently rounded at its bottom; a large, overhanging lid that extends nearly half the height of the product and protrudes outward over the jar body (rather than screwing flush); a color-block combination of yellow and white components; the product name presented in capitalized dark-gray lettering framed by smaller text above and below."



(SUF ¶ 25.)

Likewise, the pre-existing, stock TOLY Jar shown below also includes a colored jar that has no writing on it which is gently rounded at its bottom; a large, overhanging lid that extends nearly half the height of the product and protrudes outward over the jar body (rather than screwing flush); and a color-block combination of white and white components.



(SUF ¶ 26.)

A comparison of the TOLY Product trade dress and SDJ's purported trade dress is set forth below:

| TOLY | SDJ |
|---|---|
| | |
| ***includes a colored jar that has no writing on it which is gently rounded at its bottom; a large, overhanging lid that extends nearly half the height of the product and protrudes outward over the jar body (rather than screwing flush); a color-block combination of white and white components*** | ***includes a colored jar that has no writing on it which is gently rounded at its bottom; a large, overhanging lid that extends nearly half the height of the product and protrudes outward over the jar body (rather than screwing flush); a color-block combination of*** yellow ***and white components***; the product name presented in capitalized dark-gray lettering framed by smaller text above and below |

(SUF ¶ 27.)

###### F.    Jars With Rounded Bottoms And Oversized Lids Are Commonly Used By Companies That Employ Best Practices In The Beauty Cream Industry.

Body cream products are commonly sold in rounded-bottom jars with large, overhanging lids and are pervasive in the marketplace. (SUF ¶ 28.) Purchasing pre-existing, stock containers from third-party vendors allows beauty cream companies to enjoy a cost savings. (SUF ¶ 29.) The molds used for manufacturing those containers have already been developed and beauty cream companies do not have to invest and develop private molds to manufacture those containers. (*Id.*)

The chart below offers several illustrative, but certainly not exhaustive, examples of beauty cream products sold in the United States market in containers that have rounded bottoms and oversized lids.











(SUF ¶ 30.)

The rounded bottom of the jar and the large, overhanging lid serve several utilitarian purposes, such as:

    (i)    allowing consumers to more easily remove, or scoop out, the cream;

    (ii)    providing strength to the container so that it does not break during packaging, transport, merchandising, or shipping to end consumers, which is particularly important for products containing heavy, thick creams where the weight of the product makes the container especially vulnerable to breakage during transport; and

    (iii)    allowing consumers to more easily grasp the lid and tighten it to create a seal that preserves the remaining cream.

(SUF ¶ 31.)

Printing words on the lid of the container is also very common and used by those in the industry that employ best practices. (SUF ¶ 33.) The writing is located on the lid because there is insufficient space on the container itself to decorate the brand name, product, product descriptor, and key ingredient call outs and because it is not possible to meaningfully decorate the sloped surface of the jar. (SUF ¶ 34.)

The color of the jar serves to identify which fragrance the consumer is purchasing. (SUF ¶ 32.) SDJ, for example, uses different colored jars to denote different fragrances for its beauty cream products and markets the different colors to denote these different fragrances as follows:



(SUF ¶ 40.)

### G.    Apollo's NUTRIUS® Product

Apollo procured its jar for the NUTRIUS® Product from one of several vendors that had already developed pre-existing, readily available, stock jars with rounded bottoms and oversized lids.  (SUF ¶ 35.)

Apollo's customer, Costco wanted a bright yellow lid for the NUTRIUS® Product because it contained shea/butter as an ingredient.  (SUF ¶ 36.)  The other products that Costco sells that contain shea/butter as an ingredient are bright yellow.  (*Id.*)  Costco wanted the color of all of the various products it sells that contain shea/butter to consistently match so they send the same ingredient signal to Costco's members.  (*Id.*)  Costco also wanted a bright yellow lid because Costco's warehouses are dimly lit and bright yellow is more visible to Costco's members under

these lighting conditions.  (SUF ¶ 37.)  In addition, the bright yellow color was selected because it denotes an almond/butter/coconut fragrance.  (*Id.*)

Apollo sells over 91% of the NUTRIUS® Product through Costco's warehouses.  (SUF ¶ 38.)  Images of the NUTRIUS® Product's design, packaging, and in-store display at Costco are reproduced below:



(SUF ¶ 39.)  Apollo's NUTRIUS® mark is prominently displayed on the side of the accused product's lid, on the top of the accused product's blister pack, and on the front and on the side of the accused product's box trays.  (*Id.*)  The NUTRIUS® mark is also prominently displayed on the top of the accused product's lid in all but the earliest product shipments.  (*Id.*)

H.    **SDJ's BUM BUM Product**

Images of SDJ's BUM BUM Product's design, packaging, and in-store display are reproduced below:



(SUF ¶ 41.)  SDJ's SOL DE JANEIRO mark is prominently displayed on the top of the product's lid and the front of the product's box.  (*Id.*)

I.    **SDJ's Unsuccessful Attempt At Enforcing Its Unregistered Purported Trade Dress Against Beauty Cream Products Sold In "Lookalike" Jars With Rounded Bottoms And Oversized Lids.**

In or about November 2023, SDJ hired an online brand protection company known as Authentix to monitor and enforce SDJ's trademark, trade dress, and other intellectual property rights.  (SUF ¶ 42.)  SDJ did not have a registered trade dress in the United States that covered containers with rounded bottoms and oversized lids.  Consequently, Authentix could not enforce SDJ's purported trade dress rights against companies that sold beauty cream products in containers with rounded bottoms and oversized lids in the United States through online retailers such as Amazon.  (SUF ¶ 43.)

In its April 2024 Report, Authentix provided SDJ with an "Update on 3D [3-Dimensional] shape design (Brazilian Bum Bum)".  (SUF ¶ 44.)  Authentix noted that it "identified 155 lookalike

listings.  To report these, we require shape registration of the product (requirement details shared in slide 40)."  (SUF ¶ 45.)  On slide 40, Authentix stated: "Lookalike: shape registration required (Brazilian Bum Bum). . . [for the] USA."  (SUF ¶ 46.)

In its May 2024 Report, Authentix provided another "Update on 3D [3-Dimensional] shape design (Brazilian Bum Bum)".  (SUF ¶ 47.)  Authentix again stated that a "shape registration of the [Bum Bum] product" was needed for Authentix to enforce SDJ's purported trade dress rights against companies that sold beauty cream products in containers with rounded bottoms and oversized lids through online retailers such as Amazon.  (SUF ¶ 48.)  The May 2024 Report also included a chart with a column for "Clients' comments" that stated: "For the US: please note that we filed a 3d [3-dimensional] mark for the BRAZILIAN BUM BUM shape in the US."  (SUF ¶ 49)

In other words, Authentix's client, SDJ, filed an application with the USPTO and sought to register the 3-dimensional trade dress for the shape of the container SDJ used in connection with its BUM BUM Product.  (SUF ¶ 50.)  SDJ filed this application because without a registration, SDJ cannot enforce SDJ's purported trade dress rights through online retailers such as Amazon and stop allegedly infringing online sales of beauty cream products in containers with rounded bottoms and oversized lids.  (SUF ¶ 51.)

## J.    The USPTO Refused SDJ's First Application For A Trade Dress Registration Concerning Containers With Rounded Bottoms And Oversized Lids.

On June 18, 2024, SDJ filed U.S. Application No. 98607110 with the USPTO (the "First Application").  (SUF ¶ 52.)  In SDJ's First Application, SDJ defined its purported three-dimensional trade dress to include a coral/red rounded jar with an elongated white cap over the rounded jar with wording on the cap as pictured below:



(SUF ¶ 53.)[2]

On August 2, 2024, the USPTO issued an Office Action regarding SDJ's First Application. The Examining Attorney refused the First Application because "functional matter cannot be protected as a trademark" and SDJ's purported trade dress included "the following elements [that] are functional: the shape of the screw-on cap and the shape of the rounded jar. The attached evidence from applicant's website [and others] . . . shows that these elements are functional because jars are commonly used to hold cosmetic and body products, and screw-on caps are used to close jars/enclose product within a jar." (SUF ¶ 55.)

---

[2]    The amended definition in SDJ's application reads as follows: "*The mark consists of a three-dimensional configuration for product packaging. The mark depicts a coral rounded jar with an elongated opaque white cap over the rounded jar. On the white cap is the stylized gray wording "BOM DIA BRIGHT" below an incomplete gray dotted line with a gap above the wording "DIA". The broken lines depicting the shape of the top of the lid and the bottom of the jar indicate placement of the mark on the goods and are not part of the mark.*" (SUF ¶ 54) (emphasis added).)

On November 4, 2024, SDJ submitted its Response to Office Action and stated:

In Applicant's applied-for mark, the screw-on cap is elongated and overhangs the top of the rounded jar, with a distinctive space between the bottom of the cap and the jar, providing Applicant's packaging a distinctive look that identifies the goods as those of Applicant Sol de Janeiro. Applicant's website further shows that this feature of its packaging is a source identifier for many of its products.






See *https://soldejaneiro.com/collections/all*                Accessed November 2, 2024

(SUF ¶ 56.)

19

On February 26, 2025, the Examining Attorney issued a Final Refusal concerning SDJ's First Application because "*functional matter cannot be protected as a trademark*."  (SUF ¶ 57.)  The Examining Attorney found that "*the following elements are functional: the shape of the screw-on cap and the shape of the rounded jar.  The attached evidence from applicant's website [and others]. . . shows that these elements are functional because jars are commonly used to hold cosmetic and body products, and screw-on caps are used to close jars/enclose product within a jar.*"  (*Id.*) (emphasis added.)

The Examining Attorney also found that "[t]he evidence of record . . . from . . . Nutrius Body [and others] . . . shows that round, wide-mouth jars with screw on caps are a common feature of product packaging for cosmetic and body products."  (SUF ¶ 58.)  To support this finding, the Examining Attorney attached several third-party beauty cream containers with rounded bottoms and oversized lids as evidence of functional containers in the market.  (SUF ¶ 59.)  The very first example the Examining Attorney attached of a functional container with a rounded bottom and oversized lid was Apollo's NUTRIUS® Product container as shown below:



(*Id.*)

The Examining Attorney also found that "[t]he attachments from A Packaging Group and Containers and Packaging shows that product packaging for cosmetic/body products in the form *of jars with screw on caps are, by their very nature, functional because (1) round wide-mouth jars are used to facilitate easy user access to the product, especially for thicker creams and butters, and (2) screw on caps are used to seal product within a container for sanitation and preservation purposes.*"  (SUF ¶ 60) (emphasis added) (citing *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41, 213 U.S.P.Q. 9, 15-16 (C.C.P.A. 1982); TMEP §1202.02(a)(v)).

Many of the same containers the Examining Attorney found to be functional were previously identified by Apollo's liability expert, Nikola Cline, to support her opinion regarding competitors' products that have oversized lids and rounded bottoms being very common and used by those in the industry that employ best practices.  (SUF ¶ 61.)  Ms. Cline opined that these qualities of the container were essential for consumers to easily scoop cream out of the bottom of

the container with their fingers and the large lid affects the quality and is essential for obtaining the grip necessary to tighten and seal the container after using the cream product.  (SUF ¶ 62.)

K.    **The USPTO Refused SDJ's Second Application For A Trade Dress Registration Concerning Containers With Rounded Bottoms And Oversized Lids.**

On June 18, 2024, SDJ filed another application – U.S. Application Ser. No. 98607370 (the "Second Application") – and defined its purported trade dress to include a pink rounded jar with an elongated white cap over a rounded jar with wording on the cap as pictured below:



(SUF ¶ 63.)

The USPTO issued an Office Action regarding SDJ's Second Application.  The Examining Attorney refused the Second Application because "[f]unctional matter cannot be protected as a trademark."  (SUF ¶ 64.)  The Examining Attorney found "*the following elements are functional: the shape of the screw-on cap and the shape of the rounded jar.  The attached evidence from applicant's website [and others] . . . shows that these elements are functional because jars are commonly used to hold cosmetic and body products, and screw-on caps are used to close jars/enclose product within a jar.*"  (*Id.*)  (emphasis added.)

SDJ did not respond to the Office Action.  (SUF ¶ 65.)  SDJ's Second Application was deemed abandoned on November 12, 2024 with notification of the abandonment provided on December 12, 2024.  (*Id.*)

**L.    SDJ's Demand Letters Define Its Brazilian Bum Bum Trade Dress To Include Caramel, Pink, and Coral/Red Jars With Rounded Bottoms And Oversized Lids.**

In SDJ's demand letters to third-party beauty cream manufacturers, SDJ claims it owns a trade dress that encompasses the purported trade dress at issue in this case (caramel colored jar) and also encompasses the two purported trade dresses the USPTO refused to register (coral/red colored jar and pink colored jar).  (SUF ¶ 66.)  For example, on January 10, 2025, SDJ's counsel sent a demand letter to Scent Theory Products and alleged trade dress infringement.  (SUF ¶ 67.) In its demand letter, SDJ claims it owns a trade dress in a "product design" that includes "a colored jar that has no writing on it which is gently rounded at the bottom; a large overhanging lid that extends nearly half the height of the product and protrudes over the jar body (rather than screwing flush); *and a color-block combination of brightly colored and white components.*"  (*Id*.) (italics added).  As examples of this trade dress, SDJ's demand letter included pictures of the trade dresses the USPTO refused to register (coral/red colored jar and pink colored jar) along with a picture of its purported trade dress at issue in this case (caramel colored jar).  (*Id*.)

Likewise, on January 28, 2025, SDJ's counsel sent a demand letter to Brazilian Belle and alleged trade dress infringement.  (SUF ¶ 68.)  In its demand letter, SDJ claims it owns a trade dress in a "product design" that includes "a colored jar that has no writing on it which is gently rounded at the bottom; a large overhanging lid that extends nearly half the height of the product and protrudes over the jar body (rather than screwing flush); *and a color-block combination of brightly colored and white components.*"  (*Id*.) (italics added).  As examples of this trade dress, SDJ's demand letter included pictures of the trade dresses the USPTO refused to register (coral/red

colored jar and pink colored jar) along with a picture of its purported trade dress at issue in this case (caramel colored jar).  (*Id.*)

## **LEGAL ARGUMENT**

Apollo's Second Amended Complaint seeks a declaratory judgment that SDJ's purported trade dress is functional, unprotectable, and unenforceable.  (ECF No. 55, pp. 17-18 (Third Claim For Relief).)  Apollo now brings this motion for declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

Section 2201 provides, in pertinent part, as follows:

. . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

Rule 57 of the Federal Rules of Civil Procedure reads, in relevant part, as follows:

These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201.  Rules 38 and 39 govern a demand for a jury trial.  The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.  The court may order a speedy hearing of a declaratory-judgment action.

Fed. R. Civ. P. 57. *See also* Rule 57 Advisory Committee Notes ("A declaratory judgment is appropriate when it will 'terminate the controversy' giving rise on undisputed or relatively undisputed facts, it operates frequently as a summary proceeding, docketing the case *for early hearing as on a motion*. . . .") (emphasis added).

For the reasons set forth below, this Court should grant Apollo's motion for declaratory judgment, rule that SDJ's purported trade dress is functional and unprotectable, and dismiss the trade dress infringement claims set forth in SDJ's Amended Counterclaim, First through Fourth Claims.  (ECF No. 67 ¶¶ 178-199.)  *Sulzer Mixpac AG v A&N Trading Co.*, 988 F.3d 174, 177 (2d

Cir. 2021) (Rule 57 dispositive relief granted by Second Circuit); *Hutchinson v. Essence Commc'ns, Inc*., 769 F. Supp. 541, 544, 569 (S.D.N.Y. 1991) (Rule 57 dispositive relief granted by district court).

I.    **THIS COURT SHOULD GRANT DECLARATORY JUDGMENT IN FAVOR OF APOLLO BECAUSE SDJ CANNOT MEET ITS BURDEN AND PROVE ITS PURPORTED TRADE DRESS IS NOT FUNCTIONAL.**

SDJ's unregistered, purported trade dress is invalid unless SDJ can carry its burden and prove the dress is not functional.  15 U.S.C. § 1125(a)(3); *Sulzer Mixpac AG*, 988 F.3d at 183; *TrafFix Devices, Inc.,* 532 U.S. at 33; *Atlantis Silverworks, Inc. v. 7th Sense, Inc.,* No. 96 Civ. 4058, 1997 WL 128403, at *6-8 (S.D.N.Y. Mar. 20, 1997).

SDJ cannot carry its burden.  Indeed, SDJ took the jar and lid it uses from the public domain.  (SUF ¶¶ 14-23.)  SDJ then submitted two applications to the USPTO concerning purported trade dresses defined to include rounded jars, with elongated white lids over the rounded jars, and with wording on the lids.  (*Id.* at ¶¶ 52-53, 63.)  The USPTO refused both applications because the shape of the screw-on cap and the shape of the rounded jar were functional.  (*Id.* at ¶¶ 57-58, 64.)  Moreover, the Examining Attorney cited Apollo's NUTRIUS® container as an example of a functional container.  (*Id.* at ¶ 59.)

The USPTO's decisions are entitled to great weight.  This Court should rule that SDJ's virtually identical purported trade dress in this case is functional and invalid.  This Court should grant declaratory judgment in favor of Apollo and dismiss SDJ's trade dress infringement claims.

A.    **SDJ's Purported Trade Dress Is Functional and Invalid Because It Seeks Protection for Basic Elements That SDJ Took From the Public Domain.**

"The Lanham Act must be construed in the light of a strong federal policy in favor of vigorously competitive markets." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 379 (2d Cir.

1997)); *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 33 (2d Cir. 1995). "[T]rade dress claims raise a potent risk that relief will impermissibly afford a level of 'protection that would hamper efforts to market competitive goods." *Yurman Design,* 262 F.3d at 115 (quoting *Landscape Forms,* 113 F.3d at 380). "While most trademarks only create a monopoly in a word, a phrase, or a symbol, 'granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves.'" *Yurman Design,* 262 F.3d at 115 (quoting *Landscape Forms,* 113 F.3d at 380).

SDJ has the burden of proving that its alleged trade dress is not functional. 15 U.S.C. § 1125(a)(3) (in cases involving unregistered trade dress, "the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional"); *Yurman Design,* 262 F.3d at 116. A product design or feature is functional if it is "essential to the use or purpose of the article, or if it affects the cost or quality of the article." *TrafFix Devices, Inc.,* 532 U.S. at 32 (2001) (quoting *Qualitex Co.*, 514 U.S. at 165); *Sulzer Mixpac AG*, 988 F.3d at 182 (same).

"Product features are essential when they are dictated by the functions to be performed by the article." *Sulzer Mixpac AG*, 988 F.3d at 182 (quotation omitted). A product design or feature "affects cost or quality when it permits the article to be manufactured at a lower cost or constitutes an improvement in the operation of the goods." *Id.* (quotation omitted).

A product design or feature may also be functional if giving a person or entity "the right to use [the design] exclusively would put competitors at a significant non-reputation-related [competitive] disadvantage." *Sulzer Mixpac AG*, 988 F.3d at 182; *Yurman Design, Inc.*, 262 F.3d at 116 (same). Thus, the nonfunctionality requirement "protects competition even at the cost of potential consumer confusion." *Yurman Design,* 262 F.3d at 116 (quoting *Landscape Forms,* 113

F.3d at 380)).  "The nonfunctionality requirement substantially overlaps with the prohibition on overbroad marks. . . .  Both principles ensure that a trademark right does not unduly stifle competition." *Yurman Design*, 262 F.3d at 116 n.5.

"[T]he bar for functionality is so low that it can often be decided as a matter of law." *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643 (7th Cir. 2020); *Aluminum Trailer Co. v. Westchester Fire Ins. Co.,* 522 F. Supp. 3d 464, 471 (N.D. Ind. 2021), (quoting *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 420 (7th Cir. 2017), *aff'd*, 24 F.4th 1134 (7th Cir. 2022)*. See also Malaco Leaf, AB v. Promotion, Inc.*, 287 F. Supp. 2d 355, 366 (S.D.N.Y. 2023) (granting summary judgment and stating "rigorous application of the requirement of nonfunctionality is necessary" in trade dress claims based on product design); *Gemmy Indus. v. Chrisha Creations Ltd.,* No. 04 Civ. 1074, 2004 WL 1406075, at *10 (S.D.N.Y. June 23, 2004) ("Any trade dress Gemmy might seek in the cardboard packaging box is generic and functional and not entitled to protection, as a matter of law."), *vacated & remanded on other grounds*, 452 F.2d 1353 (Fed. Cir. 2006).

Here, the Court should rule that SDJ's purported trade dress is functional because SDJ simply took a pre-existing, stock container being sold in the public domain by a vendor known as TOLY and used it in connection with SDJ's BUM BUM Product.  (SUF ¶¶ 13-23.)  A comparison of TOLY's pre-existing, stock container and SDJ's purported trade dress is set forth below:

| TOLY's Preexisting, Stock Container | SDJ's Purported Trade Dress |
|---|---|
|  |  |
| ***includes a colored jar that has no writing on it which is gently rounded at its bottom; a large, overhanging lid that extends nearly half the height of the product and protrudes outward over the jar body (rather than screwing flush); a color-block combination of white and white components*** | ***includes a colored jar that has no writing on it which is gently rounded at its bottom; a large, overhanging lid that extends nearly half the height of the product and protrudes outward over the jar body (rather than screwing flush); a color-block combination of*** yellow ***and white components***; the product name presented in capitalized dark-gray lettering framed by smaller text above and below |

(SUF ¶ 27.)

As shown above, SDJ seeks trade dress protection for basic elements of a style that SDJ took from the public domain. This type of purported trade dress is functional and invalid. *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co., Inc.,* 916 F.2d 76, 81 (2d Cir. 1990) (purported trade dress is functional where it seeks protection "for basic elements of a style that is part of the public domain").[3] Accordingly, this Court should grant Apollo's motion for declaratory judgment and dismiss SDJ's trade dress infringement claims.

___

[3] *Abrogated on other grounds, Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1007 (2d Cir. 1995) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) and stating that *Two Pesos* rejected the Second Circuit's approach that trade dress, unlike trademarks, could never be inherently distinctive).

Beauty cream products with rounded bottom jars and large overhanging lids that reflect the product name are pervasive in the marketplace. (SUF ¶¶ 28, 30.) The chart in Section F, *supra,* provides many illustrative, but by no means exhaustive, examples of third-party products that reflect these functional features. (SUF ¶ 30.) The functionality doctrine prohibits giving SDJ the right to exclusively use these features because it "would put competitors at a significant non-reputation-related disadvantage." *Sulzer Mixpac AG*, 988 F.3d at 182; *Yurman Design, Inc.*, 262 F.3d at 116 (same). *See also Stormy Clime Ltd. v. Progroup, Inc.,* 809 F.2d 971, 977 (2d Cir. 1987) (functionality inquiry should focus on whether bestowing trade dress protection in arrangement of features "will hinder competition or impinge upon the rights of others to compete effectively in the sale of goods").

Moreover, SDJ's purported trade dress is functional because purchasing pre-existing stock containers from third-party vendors such as TOLY allows beauty cream companies to enjoy a cost savings. (SUF ¶¶ 28-29.) The molds used for manufacturing those containers have already been developed and paid for by the vendor. (*Id.* at ¶ 29.) This cost savings renders SDJ's purported trade dress functional. *Yurman Design,* 262 F.3d at 116 (product design or feature is functional if it affects the cost of the article); *Sulzer Mixpac AG,* 988 F.3d at 182 (same). Consequently, this Court should rule that SDJ's purported trade dress is functional and grant the pending declaratory judgment motion.

**B.    SDJ's Purported Trade Dress Is Invalid Because It Fails the Second Circuit's Functionality Test Set Forth in *Stormy Clime*.**

The Second Circuit has directed district courts to assess the following factors when making a functionality determination: (1) the degree of functionality of the similar features of the products; (2) the degree of similarity between the non-functional features of the products; and (3) the feasibility of alternative arrangements of functional features that would not impair the utility of

the product. *Stormy Clime Ltd.,* 809 F.2d 971, 977 (citations omitted); *Fabrication Enterprises, Inc. v. Hygienic Corp.,* 64 F.3d 53, 59 (2d Cir. 1995) (district court erred by failing to consider *Stormy Clime* factors in making functionality determination); *Wallace Int'l Silversmiths,* 916 F.2d 76, 79-80 (highlighting *Stormy Clime* factors in making functionality determination).

Here, SDJ's purported trade dress fails the Second Circuit's functionality test because (1) all of the products' features are functional, (2) there are no non-functional features in the products, and (3) SDJ cannot show it is feasible for Apollo to make alternative arrangements to the pre-existing, stock container's functional features that SDJ itself took from the public domain.

### 1.    SDJ's purported trade dress fails the first two prongs of the Second Circuit's functionality test because all of the features are functional.

As explained above, SDJ simply took TOLY's functional container from the public domain. (SUF ¶¶ 14-23.) SDJ then asked TOLY to change the color of the base of the container from white to caramel and to print the product name and text on the lid. SDJ's caramel color feature is functional because the caramel color of SDJ's jar denotes the fragrance of the cream. (SUF ¶¶ 32, 40.) Likewise, printing the product name and text on the lid are functional features because words cannot be efficiently printed on the sloped side of the container. (SUF ¶¶ 33-34.)

### a.    The color of the lid and the color of the jar are functional because they serve significant non-trademark functions.

The functionality doctrine prevents anticompetitive consequences of a "color depletion" or "color scarcity" problem from use of a color as a trademark or trade dress. *See Qualitex Co.,* 514 U.S. at 168-169. "The upshot is that, where a color serves a significant non-trademark function—whether to distinguish a heart pill from a digestive medicine or to satisfy the 'noble instinct for giving the right touch of beauty to common and necessary things,' . . . courts will examine whether its use as a mark would permit one competitor (or a group) to interfere with

legitimate (nontrademark-related) competition through actual or potential exclusive use of an important product ingredient." *Id.* at 170.

In *Qualitex Co.,* the United States Supreme Court explained the functionality doctrine's applicability to color as follows:

> . . . we note that lower courts have permitted competitors to copy the green color of farm machinery (because customers wanted their farm equipment to match) and have barred the use of black as a trademark on outboard boat motors (because black has the special functional attributes of decreasing the apparent size of the motor and ensuring compatibility with many different boat colors). *See Deere & Co. v. Farmhand, Inc.,* 560 F. Supp. 85, 98 (S.D. Iowa 1982), *aff'd,* 721 F.2d 253 (8th Cir. 1983); *Brunswick Corp. v. British Seagull Ltd.,* 35 F.3d 1527, 1532 (Fed. Cir. 1994), . . .; *see also Nor-Am Chem. v. O.M. Scott & Sons Co.,* 4 U.S.P.Q.2d 1316, 1320, 1987 WL 13742 (E.D. Pa. 1987) (blue color of fertilizer held functional because it indicated the presence of nitrogen). . . .

514 U.S. at 169-70.

*Deere & Co.,* which was noted by the Supreme Court in *Qualitix*, applied the functionality doctrine to defendant Farmhand's accused green loaders because farmers preferred to match the green tractors they purchased from John Deere with green loaders they purchased from Farmhand. *Deere & Co.*, 560 F. Supp. at 98. Like the loader's functional green color in *Deere & Co.,* the NUTRIUS® Product's lid's bright yellow color is functional. The NUTRIUS® Product contains shea/butter as an ingredient. (SUF ¶ 36.) Apollo's customer, Costco, wanted a bright yellow lid for the NUTRIUS® Product because all of the other products Costco sells that include shea/butter are bright yellow. (*Id.*) Costco wanted the color of all of its shea/butter products to consistently match so they send the same ingredient signal to Costco's members. (*Id.*) As in *Deere & Co.,* the functionality doctrine thus applies to the NUTRIUS® Product's bright yellow lids.[4]

---

[4] The case for functionality is actually stronger here than it was in *Deere & Co.* Here, unlike the plaintiff in *Deere & Co.,* SDJ cannot seriously argue that Apollo copied the color of SDJ's lid and the color of SDJ's jar. The BUM BUM Product's lid is white. (SUF ¶ 41.) The NUTRIUS® Product's lid is bright yellow. (SUF ¶ 39.) Moreover, the BUM BUM Product's jar is caramel-

Costco also wanted a bright yellow lid on the NUTRIUS® Product because Costco's warehouses are dimly lit and bright yellow is more visible to Costco's members under these lighting conditions. (SUF ¶ 37.) As a matter of law, the use of a yellow color to improve visibility in marginal lighting conditions also falls within the ambit of the functionality doctrine. *See In re Orange Comm'cs, Inc.,* 40 U.S.P.Q.2d 1036, 1996 WL 754044, at *1 n. 1, *6 (T.T.A.B. Oct. 30, 1996) (refusing application for mark consisting of a "yellow pay telephone booth with upright flat side walls and a horizontal bottom wall and a white front wall" on functionality grounds because phones presented in yellow color or orange color would be more visible than phones presented in any other color under all lighting conditions).

Furthermore, SDJ markets its caramel-colored jar to denote the fragrance of the BUM BUM Product: *e.g.,* to denote a "*warm gourmand*, pistachio, salted caramel" fragrance. (SUF ¶ 40) (emphasis added.)[5] Accordingly, the caramel color of SDJ's jar serves a functional purpose and is unprotectable. *Car-Freshner Corp. v. D & J Distrib & Mfg., Inc.,* No. 14–cv–391, 2015 WL 3385683, at *5 (S.D.N.Y. May 26, 2015) ("[T]he use of different colors to indicate different flavors serves a functional purpose and is thus unprotectable.") (citing *Dippin' Dots, Inc. v. Forsty Bites Distrib., LLC*, 369 F.3d 1197, 1203–04 (11th Cir. 2004) (holding that the color of ice cream is functional because it indicates the flavor of the ice cream)); *Sulzer Mixpac AG*, 988 F.3d at 183 (holding "colors on the mixing tips serve[d] roughly the same purpose as colors that the Eleventh

---

colored. (SUF ¶ 41.) The NUTRIUS® Product's jar is white. (SUF ¶ 39.) This absence of copying the lid's color and the jar's color makes it even more difficult for SDJ to meet its burden of proof and establish that Apollo copied non-functional features. *Stormy Clime Ltd.,* 809 F.2d at 977 (in conducting functionality inquiry, the District Court should assess the degree of similarity between the non-functional features of the products). The Court should therefore grant Apollo's motion and dismiss SDJ's trade dress infringement claims.

[5] SDJ markets its coral/red-colored jar to denote a "*warm floral*, black amber plum, vanilla woods" fragrance. (SUF ¶ 40) (emphasis added.) SDJ markets its turquoise-colored jar to denote "*tropical gourmand*, coconut cream, toasted praline" fragrance. (*Id.*) (emphasis added.)

Circuit considered in *Dippin' Dots,* where the ice cream's colors signified flavor, *i.e.,* pink signified strawberry, white signified vanilla, and brown signified chocolate, and were therefore *found to be functional*.") (emphasis added).

In sum, the NUTRIUS® Product's bright yellow lid and the BUM BUM Product's caramel jar are functional because the color serves a significant non-trademark function.  SDJ cannot carry its burden and establish the color of its purported trade dress is non-functional.

> **b.    The product name and text presented on the lid are functional words that cannot be efficiently printed on the sloped surface of the jar.**

The remainder of SDJ's purported trade dress definition concerns the product name and text presented on the lid of the container.  (ECF No. 67 at ¶ 137.)  These elements are functional as well.  *Beech–Nut, Inc. v. Warner–Lambert Co*., 346 F. Supp. 547, 550 (S.D.N.Y. 1972) (noting that breath mint colors symbolizing different flavors are "almost as functional as words"), *aff'd*, 480 F.2d 801 (2d Cir. 1973).

Printing words on the lid of the container is very common in the beauty cream industry.  (SUF ¶ 33.)  The writing is located on the lid because there is insufficient space on the jar itself to decorate the brand name, product, product descriptor, and key ingredient call outs and because it is not possible to meaningfully decorate the sloped surface of the jar.  (SUF ¶ 34.)

The chart set forth in Section F, above, includes over 70 examples of beauty cream containers with lids that reflect this functional reality in the marketplace.  (SUF ¶ 30.)  Each example in this chart has the product name and text printed on the lid, and not on the side of the sloped jar.  (SUF ¶ 30.)  Accordingly, the elements of SDJ's purported trade dress concerning the product name and text presented on the lid are functional elements and are unprotectable.[6]

---

[6] Even if the product name and text being presented on the lid was not a functional element of SDJ's trade dress (and it is a functional element), it is undisputed that the NUTRIUS® mark is

In sum, there are no similar protectible elements at issue in this case.  Consequently, SDJ's purported trade dress fails the first two prongs of the Second Circuit's functionality test.  *Stormy Clime Ltd.*, 809 F.2d at 977.  *See also Car-Freshner Corp.*, 2015 WL 3385683, at *5 ("where the only similarities between the parties' trade dresses consist of unprotectable elements, a trade dress infringement claim must fail") (citing *Merriam–Webster, Inc. v. Random House, In*c., 35 F.3d 65, 71 (2d Cir. 1994) (finding no confusing similarity where the only similarities between the asserted trade dress and the accused trade dress were "standard" and "generic" elements)).  *Car-Freshner Corp.*, 2015 WL 3385683, at *6 (Plaintiff failed to come forward with any evidence that "the combination of the remaining, non-ornamental elements of its strip display" were non-functional).

> **2.    SDJ's purported trade dress fails the third prong of the Second Circuit's functionality test because it is not feasible for Apollo to make alternative arrangements to a stock container from the public domain that is widely used by other beauty cream companies.**

The third and final factor of the Second Circuit's functionality test requires SDJ to show "the feasibility of alternative arrangements of functional features that would not impair the utility of the product."  *Stormy Clime Ltd.*, 809 F.2d at 977.  SDJ cannot carry its burden; hence, SDJ's purported trade dress fails this prong of the test as well.

In 2014, SDJ noticed that TOLY was selling a functional container with a rounded bottom and an oversized lid at a beauty industry trade show.  (SUF ¶¶ 13-20.)  SDJ took TOLY's functional container and used it for the BUM BUM Product.  (SUF ¶¶ 14-23.)  This pre-existing,

---

prominently displayed on the top and on the side of the NUTRIUS® Product's lid, on the top of its blister pack, and on the front and on the side of its box trays.  (SUF ¶ 39.)  In stark contrast, SDJ's SOL DE JANEIRO mark is prominently displayed on the top of the BUM BUM Product's lid and on the front of its box.  (SUF ¶ 41.)  Apollo's prominent display of the NUTRIUS® mark shows that Apollo took clear steps to differentiate its product, which undermines any argument for finding SDJ's trade dress is non-functional.  *Stormy Clime Ltd.,* 809 F.2d at 977 (case for finding a non-functional trade dress weakens where accused party has taken some significant steps to differentiate its product such as defendant's prominent display of its DUCKSTER mark on the product's label, zipper pull, hang-tag, and plastic bag).

stock container is widely used in the beauty cream industry, as shown by the product examples set forth in the chart in Section F above. (SUF ¶¶ 28, 30.)

Purchasing this widely available, pre-existing, stock container allows beauty cream companies to enjoy a cost savings, as the molds used to manufacture the containers have already been developed and beauty cream companies do not have to invest and develop private molds to manufacture these containers. (SUF ¶ 29.) Apollo enjoyed a cost savings when it procured its container for the NUTRIUS® Product from one of several vendors that had already developed pre-existing, readily available, stock jars with rounded bottoms and oversized lids. (SUF ¶¶ 29, 35.)

SDJ cannot meet its burden and show it is feasible for Apollo to make alternative arrangements to the stock mold for this widely-used beauty cream container. SDJ's purported trade dress thus fails the third factor of the Second Circuit's functionality test. *Stormy Clime Ltd.*, 809 F.2d at 977. Moreover, because SDJ's purported trade dress fails all three prongs of the Second Circuit's functionality test, this Court should rule that SDJ's purported trade dress is functional and invalid.

C.    **SDJ's Purported Trade Dress Is Nothing More Than the Assemblage of Functional Parts and the Combination of the Elements Is a Functional Whole.**

In the Second Circuit, "unique arrangements of purely functional features constitute a functional design." *Stormy Clime Ltd.*, 809 F.2d at 977-978. "[W]here the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to result in superior performance, it is semantic trickery to say that there is still some sort of separate 'overall appearance' which is non-functional." *Car-Freshner Corp.,* 2015 WL 3385683, at *5 (S.D.N.Y. May 26, 2015) (granting summary judgment where no reasonable factfinder could conclude that it was anything more than an assembling of functional parts); *see*

*generally Tough Traveler, Ltd. v. Outbound Prods.,* 60 F.3d 964, 971 (2d Cir. 1995) (Jacobs, J.,

concurring)[7] ("In my view, this case is governed by *Stormy Clime*. . .  Once the numerous

functional elements of a child carrier are accounted for. . . few arbitrary or decorative features can

be identified. . . functional features dominate the design of the two products."); *Schutte*

*Bagclosures Inc. v. Kwik Lok Corp.,* 193 F. Supp. 3d 245, 265 (S.D.N.Y. 2016) (finding that "each

feature of the [purported] trade dress [was] independently functional" and also finding "as a whole

the shape of the closure affect[ed] the cost and quality of the closure."), *aff'd,* 699 F. App'x 93 (2d

Cir. 2017).

> As this Court stated in *Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.* (*Diageo I*):
>
> . . . the whole is composed of its parts, and [defendant] legitimately lists and
> describes the function of each . . .This articulated presentation of the attributes of
> the bottle is not a violation of the anti-dissection rule, but a statement of the
> foundation for the conclusion that the combination of the elements is a functional
> whole.  The underlying policy is that an element that is necessary for the design to
> work is one that must be open to all comers.

283 F. Supp. 3d 182, 186-187 (S.D.N.Y. 2018) (citing *Jeffrey Milstein, Inc.,* 58 F.3d at 32 ("the

fact that a trade dress is composed exclusively of commonly used or functional elements might

suggest that dress should be regarded as unprotectible)).[8]

Here, every element of SDJ's purported trade dress is functional; hence, the combination

of the elements is a functional whole.  Any argument concerning the "overall appearance" of SDJ's

---

[7] *abrogated on other grounds, Salinger v. Colting,* 607 F.3d 68, 74-75 (2d Cir. 2010) (noting
abrogation of the Circuit's long-standing standard presuming irreparable injury for preliminary
injunctions in copyright cases).

[8] This Court's subsequent decision in *Diageo North America, Inc. v. W.J. Deutsch & Sons Ltd.*
(*Diageo II*), 626 F. Supp. 3d 635 (S.D.N.Y. 2022) does not change the importance of this Court's
statement in *Diageo I*.  In *Diageo II,* this Court ultimately found "the bottle design is not functional
because of evidence that it *increases the cost* of production . . . ."  *Id.* at 648 (emphasis added).
Here, using stock containers *decreases the cost* of production (*see* SUF ¶¶ 28-29), so the finding
in *Diageo II* does not apply.

purported trade dress being non-functional should be rejected as "semantic trickery." *Car-Freshner Corp.,* 2015 WL 3385683, at *5. This Court should thus grant the pending motion for declaratory judgment.

> **D.    This Court Should Find SDJ's Purported Trade Dress Is Functional Because The USPTO Refused SDJ's Prior Trade Dress Applications on Functionality Grounds.**

This Court should find SDJ's purported trade dress is functional for another reason. The USPTO invoked the functionality doctrine and refused SDJ's prior applications for purported trade dresses that included the shape of the BUM BUM Product's screw-on cap and the shape of its rounded jar. The USPTO's rulings are entitled to great weight. This Court should therefore rule that SDJ's purported trade dress is functional and grant the pending declaratory judgment motion.

SDJ filed its First Application with the USPTO for SDJ's purported three-dimensional trade dress that included a rounded jar with an elongated white cap over the rounded jar with wording on the cap as pictured below:



(SUF ¶¶ 52-53.)

The Examining Attorney concluded that SDJ's purported trade dress was functional and denied registration. (SUF ¶ 55 ("*the following elements* [that] *are functional: the shape of the screw-on cap and the shape of the rounded jar*.") (emphasis added).)

In its Response, SDJ submitted pictures of the purported trade dress in this case with its caramel-color bottom, along with pictures of virtually identical containers with a red/coral bottom, a pink bottom, and a blue bottom. (SUF ¶ 56.) SDJ then referenced these pictures and asserted that the "screw-on cap is elongated and overhangs the top of the rounded jar, with a distinctive space between the bottom of the cap and the jar, providing [SDJ's] packaging a distinctive look that identifies the goods as those of [SDJ]." (*Id.*)

The Examining Attorney rejected SDJ's assertion and found that *"the following elements are functional: the shape of the screw-on cap and the shape of the rounded jar . . . these elements are functional because (1) round wide-mouth jars are commonly used as product packaging for cosmetic and body products to facilitate easy user access to the product, especially for thicker creams and butters, and (2) screw on caps are used to seal product within a container for sanitation and preservation purposes.*" (SUF ¶¶ 57-60.)

 The Examining Attorney also attached examples of third-party beauty cream containers with rounded bottoms and oversized lids as evidence of functional containers in the market. (SUF ¶ 59.) The very first example was Apollo's NUTRIUS® Product container. (*Id.*) The Examining Attorney also found that "[t]he evidence of record . . . *from . . . Nutrius Body* [and others] . . . *shows that round, wide-mouth jars with screw on caps are a common feature of product packaging for cosmetic and body products.*" (SUF ¶ 58.) The Examining Attorney then issued a Final Refusal of SDJ's First Application. (SUF ¶¶ 57-60.)

SDJ filed a Second Application with the USPTO and defined its purported trade dress to include a pink rounded jar with an elongated white cap over a rounded jar with wording on the cap as pictured below:



(SUF ¶ 63.)

The Examining Attorney refused the Second Application and again found that "*[t]he drawing of applicant's applied-for three-dimensional mark is not acceptable because it includes functional elements. . . .* In the present case, *the following elements are functional: the shape of the screw-on cap and the shape of the rounded jar.*"  (SUF ¶ 64) (emphasis added.)  SDJ then abandoned the Second Application.  (SUF ¶ 65.)

> **1.    Under Second Circuit Law, This Court Should Take Judicial Notice of the USPTO's Refusals and Give Them "Great Weight" in This Court's Functionality Ruling.**

The Second Circuit recognizes that "[t]he P.T.O., as a specialized agency, 'has developed expertise in trademarks'" and has a "body of experience and informed judgment.'"  *City of N.Y. v. Henriquez*, 98 F.4th 402, 414 (2d Cir. 2024) (quoting *Cross Com. Media, Inc. v. Collective Inc*., 841 F.3d 155, 165 (2d Cir. 2016) (explaining that if the PTO has previously classified the mark before the court, then "the court will generally follow suit absent compelling grounds for disagreement") (other quotation omitted)).

Under Second Circuit law, the USPTO's determinations are entitled to "great weight."  *See id.* (according "great weight" to the P.T.O.'s conclusions); *Murphy Door Bed Co. v. Interior Sleep Sys.*, 874 F.2d 95, 101 (2d Cir. 1989) ("[T]he decision of the PTO, and certainly the TTAB, is to be accorded great weight.")*; Buti v. Impressa Perosa, S.R.L.*, 139 F.3d 98, 105 (2d Cir. 1998); *Gucci v. Gucci Shops, Inc.*, 688 F. Supp. 916, 927 (S.D.N.Y. 1988) ("The Court of Appeals in this

circuit has previously noted that these refusals [by the PTO] are entitled to substantial weight."); *Syntex Lab'ys, Inc. v. Norwich Pharmacal Co.*, 315 F. Supp. 45, 52 (S.D.N.Y. 1970) (explaining that preliminary Patent Office determination was entitled to "substantial weight"), *aff'd*, 437 F.2d 566 (2d Cir. 1971); *W.E. Bassett Co. v. Revlon, Inc.*, 305 F. Supp. 581, 588 (S.D.N.Y. 1969) ("The unprecedented adoption by defendant of a mark featuring TRIM was accomplished in the teeth of a Patent Office refusal to register CUTI-TRIM because of likely confusion with plaintiff's mark. That determination, if not binding here, has substantial weight, as it should have had with defendant."), *aff'd in part, rev'd in part on other grounds*, 435 F.2d 656 (2d Cir. 1970).  *See also Fashion Exchange LLC v. Hybrid Promotions, LLC*, 697 F. Supp. 3d 86, 106 (S.D.N.Y. 2023) (recognizing that in this Court, the USPTO's finding are accorded due weight); *Eliya, Inc. v. Kohl's Corp.*, No. CV 15-2123, 2016 WL 929266, at *2 (E.D.N.Y. Feb. 22, 2016), *R&R adopted*, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016) (granting motion to dismiss relying on helpful and persuasive analysis of examining attorney who rejected four trademark applications for sneakers, partially due to functionality); *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 366-67 (E.D.N.Y. 2007).[9]

---

[9] Other circuits are in accord.  *See Flexible Steel Lacing Co.*, 955 F.3d at 648-49 (affirming summary judgment based on functionality relying, in part, on statements made during prosecution and the rejection of a different trade dress application due to functionality); *Adams Mfg. Corp. v. Rea*, Civ. No. 12–1430, 2014 WL 978116, *4, *5 (W.D. Pa. March 12, 2014) (granting summary judgment affirming Trademark Trial and Appeal Board's (TTAB's) decision that the trade dress was functional after viewing the design in its entirety and affirming the USPTO's examining attorney's refusal to register); *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, No. SACV 06–0827, 2008 WL 1913163, at *8 (C.D. Cal. Mar. 27, 2008) (PTO's refusal to register on the grounds that mark is generic is entitled to "great weight"), *aff'd*, 327 F. App'x 723 (9th Cir. 2009); *Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assurance Co.*, 943 F. Supp. 509, 523 (E.D. Pa. 1996) (PTO's refusal to register Defendant's marks is entitled to substantial consideration); *In re Water Gremlin Co.*, 635 F.2d 841, 844 (C.C.P.A. 1980) (affirming examiner's refusal to register package design where the circular shape of the container was commonplace).

Furthermore, "[t]he court may properly take judicial notice of official records of the [USPTO]." *Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010); *Am. Lecithin Co. v. Rebmann*, No. 12-CV-929, 2020 WL 4260989, at *9 (S.D.N.Y. July 24, 2020) (taking judicial notice of trademark registrations); *Knowles-Carter v. Feyonce, Inc*., 347 F. Supp. 3d 217, 221 n.2 (S.D.N.Y. 2018); *Kaplan, Inc. v. Yun,* 16 F. Supp. 3d 341, 345 (S.D.N.Y. 2014); *Saint Laurie Ltd. v. Yves Saint Laurent Am., Inc.*, No. 13 Civ. 6857, 2014 WL 12772088, *2, n.3 (S.D.N.Y. Sept. 30, 2014); *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers*, 894 F. Supp. 2d 288, 301 n.6 (S.D.N.Y. 2012); *see Yador v. Mowatt,* No. 19-CV-4128, 2024 WL 4145722, at *7 n.13 (E.D.N.Y. Sept. 11, 2024); *Solid 21, Inc. v. Breitling U.S.A., Inc.*, No. 3:19-cv-00514, 2021 WL 4430755, at *6-7 (D. Conn. Sept. 27, 2021) (taking judicial notice of Nonfinal Office action and noting that "[i]t is well-established that courts may take notice of USPTO records when analyzing trademark claims"), *vacated in part on other grounds*, 2021 WL 5868173 (D. Conn. Dec. 10, 2021), *aff'd*, 96 F.4th 265 (2d Cir. 2024); *MPC Franchise, LLC v. Tarntino*, 19 F. Supp. 3d 456, 463 n.21 (W.D.N.Y. 2014) .[10]

Here, the USPTO's decisions are directly on point because SDJ's purported trade dress for its BUM BUM Product and Apollo's NUTRIUS Product were both part of the record that led to the Examining Attorney's Final Refusal.  Indeed, in its Response to Office Action, SDJ highlighted pictures of its purported trade dress for its BUM BUM Product and argued that its overhanging lid and rounded jar serve as a source identifier.  (SUF ¶ 56.)  The Examining Attorney

---

[10] Other circuits have also taken judicial notice of USPTO records regarding functionality.  *See Rodan & Fields, LLC v. Estee Lauder Cos.*, No. 10–CV–02451, 2010 WL 3910178, at *1 & n.1 (N.D. Calif. Oct. 5, 2010) (taking judicial notice of USPTO's initial Office Action refusing to register claimed trade dress because its packaging is a "functional design" and "consists of a nondistinctive configuration," and is thus unregisterable).

rejected this argument.  Moreover, in the Final Office Action, the Examining Attorney included pictures of Apollo's NUTRIUS® Product as evidence of a trade dress that could not be protected under trademark law because it contained those same functional elements.  (SUF ¶¶ 57-60.)

The USPTO's refusals of SDJ's First Application and Second Application show that SDJ cannot get a trade dress registration for *any* trade dress definition that includes a rounded bottom and an oversized lid.  The Examining Attorney determined that the following elements are functional: "the shape of the screw-on cap and the shape of the rounded jar."  (SUF ¶¶ 55, 57, 64.) Those functional elements are at the heart of SDJ's definition of its purported trade dress in this case.  (ECF No. 67 at ¶ 137) (defining SDJ's purported trade dress to include "a colored jar which is gently rounded at its bottom; a large, overhanging lid that extends nearly half the height of the product and protrudes outward over the jar body (rather than screwing flush) . . .").

This Court should not depart from the USPTO's decisions absent compelling reasons. *Henriquez*, 98 F.4th at 414 (In giving "'great weight' to the P.T.O.'s conclusions," the Second Circuit "depart[s] from them only for 'compelling' reasons.").  Here, no compelling reasons exist. Accordingly, this Court should grant the Apollo's motion and declare SDJ's purported trade dress is functional and invalid.

> **E.    SDJ's Purported Trade Dress Definition Is An Unlawful Attempt To Usurp Patent Law And Should Be Rejected.**

This Court should find that SDJ's purported trade dress is invalid for yet another reason. Here, SDJ simply selected TOLY's pre-existing, functional container from the public domain. (ECF No. 343, ¶¶ 13-19.)  SDJ did not, and could not, apply for a patent on TOLY's pre-existing, functional container.  Now, SDJ is attempting to help itself to an unlawful monopoly of unlimited duration based on an unregistered, purported trade dress that is comprised of functional elements.

SDJ's attempt should be rejected, as it runs directly counter to the United States Supreme Court's decisions in *Qualitex* and *TrafFix* and the law in the Second Circuit.

"The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature. . . . If a product's functional features could be used as trademarks, however, a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity)." *Qualitex Co.*, 514 U.S. at 164-165; *TrafFix Devices, Inc.,* 532 U.S.at 29 ("Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products.  In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying.").

"Courts must proceed with caution in assessing claims to unregistered trademark protection in the design of products so as not to undermine the objectives of the patent laws." *Stormy Clime Ltd.*, 809 F.2d at 977-978; *see Jeffrey Milstein, Inc.,* 58 F.3d at 32.  "Since trademark protection extends for an unlimited period, expansive trade dress protection for the design of products would prevent some functional products from enriching the public domain."  *Stormy Clime Ltd.*, 809 F.2d at 978.  *See also Henri Bendel, Inc. v. Sears, Roebuck & Co*., 25 F. Supp. 2d 198, 202 (S.D.N.Y. 1998) ("[T]he functionality doctrine 'prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature.'") (quoting *Qualitex Co.*, 514 U.S. at 164).

"***This threat is particularly great when***, as in the instant case, ***a first manufacturer seeks broad trade dress protection for a product on the ground that its arrangement of predominantly***

*functional features is distinctive.*"  *Stormy Clime Ltd.,* 809 F.2d at 978 (emphasis added);

*Mechanical Plastics Corp. v. Titan Technologies, Inc.,* 823 F. Supp. 1137, 1145 (S.D.N.Y. 1993)

(quoting *Stormy Clime*) (emphasis in original).

"[C]ourts must be sensitive to whether a grant of trade dress protection would close all

avenues to a market that is otherwise open in the absence of a valid patent."  *Stormy Clime Ltd.,*

809 F.2d at 978 (citing *In re Deister Concentrator Co.* 289 F.2d 496, 504 (Cust. & Pat. App. 1961)

(noting that the reason for refusing to protect functional elements against copying is not that they

"cannot or do not indicate source to the purchasing public but that there is an overriding public

policy of preventing their monopolization, of preserving the public right to copy") (other citations

omitted).  "[T]his [functionality] test encourages those seeking trade dress protection for their

products to select distinctive non-functional identifying marks."  *Stormy Clime Ltd.,* 809 F.2d at

979.

In *Henri Bendel*, there were no less than twelve retailers and/or manufacturers of cosmetic

bags selling bags containing some or all of the extremely common features plaintiff sought to

protect in its purported trade dress.  25 F. Supp. 2d at 202.   The court found that "[a] reasonable

jury could only conclude, therefore, that these features are functional" and held that plaintiff

"cannot claim that these features are protected."  *Id.  See also Malaco Leaf, AB*, 287 F. Supp. 2d

at 367 (granting summary judgment on product design trade dress where it was generic and

functional).

Here, there are far more than twelve retailers and/or manufacturers that sell beauty cream

products in containers comprised of the extremely common features found in SDJ's purported

trade dress.  *See* chart in Section F, *supra.* (SUF ¶ 30.)  Here, as in *Henri Bendel,* a reasonable

factfinder "could only conclude, therefore, that these features are functional" and SDJ "cannot claim that these features are protected."  25 F. Supp. 2d at 202.

Finally, granting SDJ trade dress protection in a class of containers – *e.g.,* containers with oversized lids and rounded bottoms – would unduly limit competition and SDJ would be able to monopolize this class of containers in perpetuity.  *See Atlantis Silverworks, Inc.,* 1997 WL 128403, at *8 (rejecting purported trade dress as functional because "granting plaintiff trade dress protection in a class of rings – seed bead rings – would unduly limit competition. . . and plaintiff would be able to monopolize seed bead rings in perpetuity.")  Accordingly, this Court should grant the Apollo's motion for declaratory judgment on functionality grounds and dismiss SDJ's trade dress infringement claims.

## CONCLUSION

SDJ's purported trade dress is functional and unprotectable.  This Court should therefore grant declaratory judgment in favor of Apollo with respect to the First through Third Claims in Apollo's Second Amended Complaint.  (ECF No. 55, ¶¶, 44-88.)  This Court should also dismiss the trade dress infringement claims set forth in SDJ's Amended Counterclaim, First through Fourth Claims.  (ECF No. 67 ¶¶ 178-199.)

Dated: June 12, 2025                    By:      /s/Craig S. Krummen _____

Craig S. Krummen (*Admitted Pro Hac Vice*)
Tiffany A. Blofield (*Admitted Pro Hac Vice*)
Benjamin P. Gilford (*Admitted Pro Hac Vice*)
Molly R. Littman-Johnson (*Admitted Pro Hac Vice*)
GREENBERG TRAURIG, LLP
90 South 7th Street, Suite 3500
Minneapolis, Minnesota 55402
Phone: (612) 259-9719
Fax: (612) 677-3101
krummenc@gtlaw.com
blofieldt@gtlaw.com
gilfordb@gtlaw.com
molly.littman@gtlaw.com

Jonathan Peter Presvelis (5693197)
GREENBERG TRAURIG, LLP
1 Vanderbilt Ave
New York, New York 10017
Phone: (212) 801-9368
Fax: (212) 801-6400
presvelisj@gtlaw.com

*Counsel for Apollo Healthcare Corp. d/b/a Apollo Health and Beauty Care and Costco Wholesale Corp.*