**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
APOLLO HEALTHCARE CORP. d/b/a APOLLO        :
HEALTH AND BEAUTY CARE,
                                            :
                                            :
                        Plaintiff,          :
                                            :          MEMORANDUM DECISION
            -against-                       :              AND ORDER
                                            :
SOL DE JANEIRO USA INC., and                :          22 Civ. 7719 (GBD)
SOL DE JANEIRO IP, INC.,                    :
                                            :
                        Defendants.         :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SOL DE JANEIRO USA INC., and                :
SOL DE JANEIRO IP, INC.,                    :
                                            :
                Counterclaim-Plaintiffs,    :
                                            :
        -against-                           :
                                            :
APOLLO HEALTHCARE CORP. d/b/a APOLLO        :
HEALTH AND BEAUTY CARE and COSTCO           :
WHOLESALE CORP.,                            :
                                            :
                Counterclaim-Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GEORGE B. DANIELS, United States District Judge:

Plaintiff Apollo Healthcare Corp. d/b/a Apollo Health and Beauty Care ("Apollo") brings this declaratory judgment action against defendants Sol de Janeiro USA Inc. and Sol de Janeiro IP, Inc. (collectively, "SDJ"). Apollo seeks a court order declaring SDJ's purported trade dress rights in the packaging of its BRAZILIAN BUM BUM CREAM product unenforceable. (*See* Second Am. Compl. ("SAC"), ECF No. 55.) SDJ counterclaims that Apollo and Costco Wholesale Corp. ("Costco") (collectively, the "Apollo Parties") infringed on its trade dress and trademark rights. (*See* ECF No. 67.) Two motions by the Apollo Parties are currently before this Court: (1) a motion for declaratory judgment pursuant Federal Rule of Civil Procedure No. 57 ("Rule 57"),

(Apollo's Statement of Undisputed Material Facts ("Apollo SUF"), ECF No. 424,) and (2) a cross motion for summary judgment on functionality, (ECF No. 437.)  Because SDJ has failed to raise a triable issue of fact on the dispositive issue of functionality, the Apollo Parties' cross motion for summary judgment is GRANTED and SDJ's counterclaim for trade dress infringement is dismissed.

## I.    BACKGROUND

### A.  SDJ's BRAZILIAN BUM BUM CREAM

In or around May 2014, Heela Yang and Marc Capra founded SDJ with the goal of creating a beauty brand that "celebrate[s] the natural beauty of all women."  (SDJ's Counterstatement of Material Facts ("SDJ CSMF"), ECF No. 435 ¶¶ 71–73.)  Around this same time, Yang developed the concept for SDJ's first product: BRAZILIAN BUM BUM CREAM.  (Apollo SUF ¶ 13; SDJ CSMF ¶ 74.)

In July 2014, Yang and two other individuals attended a cosmetics industry trade show in Las Vegas to "see what was out there and study."  (Apollo SUF ¶¶ 15, 17.)  While there, Yang noticed a stock jar displayed by TOLY, a third-party packaging vendor.  (*Id.* ¶ 19.)  The stock jar was all white, with a gently rounded bottom and a large, overhanging lid that protrudes over the jar body (the "TOLY Jar").  (*Id.* ¶ 19; SDJ CSMF ¶ 16.)  The TOLY Jar had been available for purchase via TOLY's web site since at least May 2013.  (Apollo SUF ¶ 20.)  In an interview, Yang described thinking in the moment, "oh my God . . . that's our Bum Bum cream jar."  (*Id.* ¶ 17.)

On August 8, 2014, TOLY sent SDJ a mock-up of the TOLY Jar with the BRAZILIAN BUM BUM CREAM product name depicted on the lid.  (*Id.* ¶ 22.)  Yang subsequently included pictures of the TOLY Jar in presentations she gave on founding SDJ and developing the brand's story.  (*Id.* ¶ 21.)

In April 2015, SDJ launched its BRAZILIAN BUM BUM CREAM in the United States. (SDJ CSMF ¶ 86.)  SDJ's purported trade dress rights in the BRAZILIAN BUM BUM CREAM packaging (the "Bum Bum Jar") consists of four elements: (1) a colored jar "that has no writing on it which is gently rounded at its bottom;" (2) "a large, overhanging lid that extends nearly half the height of the product and protrudes outward over the jar body;" (3) "a color-block combination of yellow and white components;" and (4) "the product name presented in capitalized dark-gray lettering framed by smaller text above and below." (*Id.* ¶ 89.)  Yang testified that the Bum Bum Jar was designed purely for aesthetics and with no regard to functionality.  (*See* Yang Decl. Excerpts A, ECF No. 433-1, at 170:12–14; 172:2–5.)  SDJ admits that Yang considered the TOLY Jar when she designed the Bum Bum Jar but asserts that this was just one of several sources of inspiration, including the beach culture of Brazil, SDJ's brand manifesto, and a "luxurious yellow and white clawfoot bathtub that Ms. Yang found when looking for inspiration outside of beauty industry packaging."  (SDJ CSMF ¶ 16.)  SDJ does not own a registered trademark in the Bum Bum Jar.  (SDJ CSMF ¶ 43.)  An image of the Bum Bum Jar is included below:



(*Id.* ¶ 88.)

SDJ uses the same round-bottom jars with large, overhanging lids for the packaging of its other body cream products.  (*Id.* ¶ 90.)  SDJ distinguishes its various body creams by changing the

3

color of the jar and the product name printed on the lid. (Apollo's Supplemental Statement of Undisputed Facts ("Apollo SSUF"), ECF No. 440, ¶ 155.) The color of the jar denotes both the fragrance of the body cream and the product benefits. (*Id.*) For example, the Bum Bum Jar is a sunshine-yellow color, which SDJ refers to as "Sol Yellow." (SDJ CSMF ¶ 90.) All SDJ products that use Sol Yellow have the same fragrance, Cheirosa 62. (Yang Decl. Excerpts B, ECF No. 442-1, at 186:18–21.) Similarly, all SDJ products with "coral" colored packaging have a "black amber plum and vanilla woods" fragrance, which SDJ calls "Cheirosa 40." (Menkis Decl. Tr., ECF No 426-8, at 153:6-17.) For SDJ's body creams, color also denotes product benefit. A Sol Yellow jar signals that the product has a "visibly firming" effect on a consumer's skin, while a coral-colored jar signals that the product "[g]ently [r]etexturizes [and] [b]rightens" skin. (Apollo SSUF ¶ 157.)



(Id. ¶¶ 156–57.)

## B. Apollo's Allegedly Infringing Product

Apollo is a beauty product manufacturer that produces and sells various products, including skin and body creams. (Apollo SUF ¶ 2.) Apollo sells some of its products through Costco, a retail giant that sells a wide variety of goods through its website and through members-only retail warehouses. (*Id.* ¶ 6.) Apollo and Costco have had a business relationship for over twenty years. (*Id.* ¶ 9.)

On November 27, 2020, Costco contacted SDJ to inquire about carrying SDJ products at Costco locations.  (SDJ CSMF ¶ 110.)  SDJ never responded.  (*Id.*)

On June 29, 2021, Costco emailed Apollo's Co-CEO a picture of the Bum Bum Jar and asked, "Could you create a body cream that would be similar to this one?" (*Id.* ¶ 111.)  Subsequent conversations between the Apollo Parties show that they intended to create a product that "capture[d] the entire sensorial and skin feel/performance experience of the target 'Bum Bum' brand." (*Id.* ¶ 113.)  Apollo later informed Costco that they had "secured . . . 'the exact same jar as [SDJ].'" (*Id.* ¶ 117.)  Costco's head buyer of beauty care products also told other Costco employees that Costco had "worked with Apollo . . . to create a dupe of the BRAZILIAN BUM BUM CREAM." (*Id.* ¶ 118.)

In June 2022, Costco began selling Apollo's NUTRIUS® Brazilian Body Butter Cream in its stores.  (SDJ CSMF ¶ 120.)  The NUTRIUS® product comes in a round, wide-mouthed jar with a gently rounded bottom and a large, overhanging lid that extends half the height of the product and protrudes outward over the jar body (the "Apollo Jar"). (*Id.* ¶ 66.)  Apollo claims that it procured the Apollo Jar from one of several vendors that had previously developed stock jars with rounded bottoms and oversized lids.  (Apollo SUF ¶ 35.)  The body of the Apollo Jar is white, and the lid is bright yellow, which Apollo describes as butter yellow.  (Oral Arg. Tr., ECF No. 463, at 21:22–22:3.)  Apollo claims that this butter yellow lid serves three functions: (1) It signifies that the product contains shea butter as an ingredient; (2) increases visibility in Costco's dimly lit warehouses; and (3) denotes an "almond/butter/coconut fragrance." (Apollo SUF ¶ 36–37.)  The product name is printed on the lid in black, capitalized letters, with the NUTRIUS® mark in smaller black text above and a list of ingredients below.  (*Id.* ¶ 39.)  Images of the NUTRIUS® product and displays are included below:

  

(*Id.*)  "Apollo sells over 91% of the NUTRIUS® product through Costco's warehouses."  (Apollo SUF ¶ 38.)

### C.  Procedural Background

On or about August 30, 2022, SDJ's former counsel sent a demand letter to Apollo, in which it claimed to own unregistered trade dress rights in the BRAZILIAN BUM BUM CREAM's "very distinctive packaging, comprised of a bright yellow tub with a white oversized cap/lid, and the product name printed in black around the outside of the cap/lid."  (ECF No. 142 ¶ 39–40.)

On September 9, 2022, Apollo initiated this action seeking a declaratory judgment that SDJ's purported trade dress is functional, unprotectable, and unenforceable.  (Compl., ECF No. 1.)  On June 6, 2023, Apollo filed its second amended complaint.  (Second Am. Compl., ECF No 55.)  SDJ then counterclaimed that the Apollo Jar infringes on its trade dress rights in the Bum Bum Jar and its trademark rights.  (ECF No. 67.)

On April 29, 2024, while the case was still before Judge Stanton, Apollo moved for summary judgment.  (ECF No. 137.)  On October 23, 2024, Judge Stanton issued an Opinion & Order, denying Apollo's motion for summary judgment on SDJ's trade dress and trademark infringement counterclaims.  *See Apollo Healthcare Corp. v. Sol de Janeiro USA Inc.*, No. 22 Civ. 7719 (LLS), 2024 WL 4555822, at *1 (S.D.N.Y. Oct. 23, 2024).  On functionality, Apollo presented evidence that every feature of the Bum Bum Jar serves a utilitarian purpose.  *See id.*

at *4.  But Judge Stanton credited Yang's testimony that the Bum Bum Jar's purported functional benefits had "'nothing to do with' the design of the product packaging, and that it 'was a hundred percent aesthetics.'"  *Id.* (internal citation omitted).  Judge Stanton held that this testimony created "genuine disputes of material fact that are best left for the jury."  *Id.*

On March 28, 2025, during a pretrial conference, the Apollo Parties presented newly produced evidence to Judge Stanton that they claimed was dispositive on the issue of functionality. (*See* Mar. 28, 2025, Hearing Tr., ECF No. 392, at 3:19–24.)  The new evidence included a May 2024 report to SDJ from an online brand protection company known as Authentix.  (Apollo SUF ¶ 42.)  The Authentix report included a comment from SDJ in which SDJ claimed to have "filed a 3d [3-dimensional] mark for the BRAZILIAN BUM BUM shape in the US."  (*Id.* ¶ 49 (alteration in original).)  Filing an application for trade dress application was necessary for Authentix to enforce SDJ's purported trade dress rights on online retail platforms like Amazon.  (*Id.* ¶ 51.)

From this report, the Apollo Parties learned that SDJ had filed multiple applications for a trade dress registration with the United States Patent and Trademark Office ("USPTO") during this litigation.  On March 8, 2024, SDJ applied to register a trademark in a mark consisting "of the wording 'BRAZILIAN BUM BUM' in dark gray block letters . . . on a white background forming the image of the lid of [a] jar, over a yellow jar bottom."  U.S. Trademark Application Serial No. 98440657 (filed Mar. 8, 2024).  This application makes clear, however, that "[t]he mark does not include the shape of the lid or jar as shown by the dashed lines."  *Id.*  The USPTO examining attorney approved this trademark application for publication on February 20, 2025.  *See id.*  An opposition after publication is currently pending before the Trademark Trial and Appeal Board ('TTAB").  *See id.*

7

On June 18, 2024, SDJ filed two trademark registration applications for the packaging design of its Bom Dia Bright and Beija Flor body creams. (SDJ CSMF ¶ 129.) Both applications defined the purported trade dress as a colored, rounded jar with an elongated opaque white cap over the rounded jar and gray wording on the cap. (Apollo SUF ¶¶ 53, 63;) *see also* U.S. Trademark Application Serial No. 98607110 (filed June 18, 2024); U.S. Trademark Application Serial No. 98607370 (filed June 18, 2024). It is undisputed that the body and lid shape of the Bom Dia Bright and Beija Flor jars are the same as the Bum Bum Jar. (*See* SDJ Reply, ECF No. 445, at 4.)



(SDJ CSMF ¶ 122.)

On August 2, 2024, the USPTO issued an Office Action, which determined that SDJ's Bom Dia Bright trademark was not registerable because the mark included functional elements that could not be protected as a trademark. (Apollo SUF ¶ 55.) Specifically, the Examining Attorney found that "the shape of the screw-on cap and the shape of the rounded jar" were functional "because jars are commonly used to hold cosmetic and body products, and screw-on caps are used to close jars/enclose product within a jar." (*Id.*)

On August 6, 2024, the USPTO refused SDJ's Beija Flor application for the same functionality reasons. (*Id.* ¶ 64.) SDJ did not respond to the Office Action, so its Beija Flor application was deemed abandoned on November 12, 2024. (*Id.* ¶ 65.)

On November 4, 2024, SDJ responded to the Office Action refusing its Bom Dia Bright application.  (*Id.* ¶ 56.)  On February 26, 2025, the Examining Attorney issued a Final Office Action that confirmed its initial refusal.  (*Id.* ¶ 57.)  In its final refusal, the Examining Attorney found that "jars with screw on caps are, by their very nature, functional because (1) round wide-mouth jars are used to facilitate easy user access to the product, especially for thicker creams and butters, and (2) screw on caps are used to seal product within a container for sanitation and preservation purposes."  (*Id.* ¶ 60.)  The Examining Attorney also attached several third-party beauty cream containers, including Apollo's NUTRIUS® product, to show that "round, wide-mouth jars with screw on caps are a common feature of product packaging for cosmetic and body products."  (*Id.* ¶¶ 58–59.)  SDJ's appeal of the final refusal is currently pending before the TTAB.

Judge Stanton agreed with the Apollo Parties that this new evidence required additional briefing on functionality.[1]  (Mar. 28, 2025, Hearing Tr. at 47:2–8.)  On April 25, 2025, Judge Stanton ordered that the issue be decided at a declaratory judgment hearing pursuant to Rule 57. (ECF No 413.)  On June 12, 2025, the Apollo Parties filed a motion for declaratory judgment pursuant to Rule 57.  (ECF No. 424.)  Rather than respond to the Apollo Parties' motion for declaratory judgment, SDJ instead moved for summary judgment on the issue of functionality. (ECF No. 429.)  On August 1, 2025, the Apollo Parties filed a cross motion for summary judgment on functionality.  (ECF No. 437.)

On November 13, 2025, the case was transferred to this Court.  (ECF No. 453.)  At oral argument, counsel for SDJ withdrew their motion for summary judgment on functionality.  (Oral

---

[1] At the March 28, 2025, hearing, Judge Stanton stated that reconsideration of the functionality issue, in light of the new evidence, had "very strong appeal," and doing so separate from trial would be "easy," "quick," and "decisive."  Mar. 28, 2025, Hearing Tr. at 26:13–16.  Additionally, counsel for the Apollo Parties stated that he did not "want to be presumptuous in thinking that your Honor would grant us another opportunity to go through a summary judgment motion on the functionality defense."  *Id.* at 11:14–19.  To which, Judge Stanton replied, "[b]ut, as a practical matter, this is new evidence, isn't it?"  *Id.* at 11:23–24.

Arg. Tr. at 42:25–43:25.)  Accordingly, the primary motion before this Court is the Apollo Parties'

cross motion for summary judgment on functionality.[2]

## II.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact

and [the movant] is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322–23 (1986).  A fact is material if it "might affect the outcome of the suit under the

governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of fact is

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quotation omitted).

The party seeking summary judgment has the burden of demonstrating that no genuine

issue of material fact exists.  *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 285-86 (2d Cir.

2002).  In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine

issue of material fact.  *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002).  To do so,

the opposing party "must do more than simply show that there is some metaphysical doubt as to

the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986),

and they "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v.

Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quotation omitted).  Rather, the opposing

---

[2] This Court does not see a need to separately address the Apollo Parties' motion for declaratory judgment pursuant to Rule 57.  At oral argument, counsel for the Apollo Parties stated that a Rule 57 hearing would only be necessary if this Court found there were "minor" issues of fact on functionality. (Oral Arg. Tr. at 34:1-17.)  In fact, they represented that this Court would not "need to go there" if it was able to rule on their cross motion for summary judgment.  (*Id.* at 35:16–18.)  The motions are also largely duplicative, so this Court ruling on one motion will necessarily decide the other.  More critically, there is no such thing as a separate "motion for declaratory judgment."  Courts grant declaratory relief pursuant to Rule 57 under the same standard as a Rule 56 motion for summary judgment.  *See Int'l Bhd. of Teamsters v. E. Conf. of Teamsters*, 160 F.R.D. 452, 457 (S.D.N.Y. 1995) ("The only way plaintiffs' motion [for a declaratory judgment] can be construed as being consistent with the Federal Rules is to construe it as a motion for summary judgment on an action for a declaratory judgment.")  Accordingly, this Court will exclusively focus on the Apollo Parties' Rule 56 cross motion for summary judgment.

party must produce "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007). In this regard, "[t]he mere existence of a scintilla of evidence supporting the non-movant's case is [] insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quotation omitted). In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *See id.*

## III.   THE APOLLO PARTIES' MOTION FOR SUMMARY JUDGMENT IS GRANTED

### A.  The Lanham Act and the Functionality Doctrine

The Lanham Act provides a cause of action when a person "uses in commerce any word, term, name, symbol, or device or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods." 15 U.S.C. § 1125(a)(1). This statutory protection extends to trade dress infringement. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773 (1992) ("[The Lanham Act] provides no basis for distinguishing between trademark and trade dress.") "The concept of trade dress encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product to the consumer." *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997).

Because SDJ asserts trade dress rights in an unregistered mark, they must prove that the purported trade dress is not functional. *See* 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.")

11

"The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995). "[F]unctional features can be protected only through the patent system, which grants a limited monopoly over such features until they are released into general use." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 218–19 (2d Cir. 2012). Protecting functional features through trademarks, which may be renewed in perpetuity, would "undermine the objectives of the patent laws" by "preventing some functional products from enriching the public domain." *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 977–78 (2d Cir. 1987). For this reason, "[t]rade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001).

In the Second Circuit, "a product feature is considered to be 'functional' in a utilitarian sense if it is (1) 'essential to the use or purpose of the article,' or if it (2) 'affects the cost or quality of the article.'" *Christian Louboutin*, 696 F.3d at 219 (quoting *Inwood Lab'ys, Inc. v. Ives Laby'ys, Inc.*, 456 U.S. 844, 850 n.10 (1982). Product features are essential when they are "dictated by the functions to be performed by the article." *Id.* (internal citation omitted). For a feature to be essential, it must do more than "merely accommodate[] a useful function." *Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 331 (2d Cir. 1983). A product feature affects the cost when it "permits the article to be manufactured at a lower cost" and the quality when it "constitutes an improvement in the operation of the goods." *Id.* (internal citation omitted).

Product features may also be functional in an aesthetic sense. A product feature is "aesthetically functional, and therefore ineligible for protection under the Lanham Act, where

12

protection of the mark *significantly* undermines competitors' ability to compete in the relevant market." *Christian Louboutin*, 696 F.3d at 222 (emphasis in original).  But where the feature in question is functional in a utilitarian sense, "there is no need to proceed further to consider if there is a competitive necessity for the feature." *TrafFix*, 532 U.S. at 33.

For courts assessing functionality, the key inquiry is whether "the particular combination and arrangement of design elements," rather than the individual elements, are functional. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 76 (2d Cir. 1985).  That said, "where the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to result in superior performance, it is semantic trickery to say that there is still some sort of separate 'overall appearance' which is non-functional*." Laurel Rd. Bank v. CommonBond*, Inc., No. 18 CIV. 7797 (ER), 2019 WL 1034188 (S.D.N.Y. Mar. 5, 2019) (quoting *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1013 (9th Cir. 1999)).  In circumstances in which some individual elements are functional and others are nonfunctional, it is the relationship and arrangement of those features that determines overall functionality.  *See In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1374 (Fed. Cir. 2012) ("[A] mark possessed of significant functional features should not qualify for trademark protection where insignificant elements of the design are non-functional."); 1 J. McCarthy, McCarthy On Trademarks And Unfair Competition § 7.76 (5th ed. 2026) ("Even if the overall combination of elements is functional, one or more individual parts might still be nonfunctional.").

**B.  The Bum Bum Jar is Functional**

As stated above, the Bum Bum Jar is composed of four elements: (1) a colored jar with no writing on it and a gently-rounded bottom; (2) "a large, overhanging lid that extends half the height of the product and protrudes outward over the jar body;" (3) "a color-block combination of yellow and white components;" and (4) "the product name presented in capitalized dark-gray lettering

framed by smaller text above and below." (SDJ CSMF ¶ 89.) To aid this Court's assessment of whether a triable issue of fact exists on the Bum Bum Jar's functionality, this Court will first consider the evidence of functionality for each element. Because the body and lid of the Bum Bum Jar work in tandem to form the overall shape of the jar, this Court will review those elements together.

### 1.    Shape of the Jar

The Apollo Parties contend that the body and lid of the Bum Bum Jar separately and collectively serve utilitarian purposes. The Apollo Parties' expert, Nikola Cline, opined that the rounded bottom jar "allows consumers to easily remove or scoop a cream out of the container with their fingers more easily than if the container had a square or circular bottom." (Cline Expert Report, ECF No. 426-20, at 19.) Cline further opined that "[r]ound bottom containers are also known to be strong and less brittle than containers with ninety-degree angle walls," which has the added effect of protecting the jars during "packaging, transport, merchandising and shipping to the end consumer." (*Id.*) Cline also stated that the oversized lid "allow[s] consumers who have cream residue on their hands to use the large surface area of the lid to grasp the lid with ease and tighten it to create a seal that preserves the remaining cream left in the container." (*Id.*)

SDJ has failed to introduce evidence from which a reasonable fact finder could refuse to credit Cline's position on these points. SDJ does not dispute Cline's conclusions that the body and lid of the jar affect the quality of the container. Rather, SDJ argues that the Bum Bum Jar's functional benefits "had nothing to do with the design of the product packaging and that it was a hundred percent aesthetics." (SDJ CSMF ¶ 31.) But SDJ's subjective intent, without more, does not negate evidence that the Bum Bum Jar serves utilitarian purposes. A functional article does not become nonfunctional simply because someone finds its form aesthetically pleasing. *See Leapers, Inc. v. SMTS, LLC*, 879 F.3d 731, 736–37 (6th Cir. 2018) ("[A] new windshield designed

solely for the purpose of making a sedan more visually appealing will nevertheless be deemed functional if the windshield turns out to be more aerodynamic or cheaper to produce than other designs.")  Holding otherwise would stretch trademark law into "the province of patent law" by creating intellectual property rights in articles that competitors would otherwise be free to use.  *See Qualitex*, 514 U.S. at 164.  Regardless of SDJ's aesthetic intent, they have failed to produce evidence challenging Cline's conclusions.  On this record, a reasonable factfinder could only conclude that the body and lid of the Bum Bum Jar "affect[] the quality of the [container]" and are therefore functional.  *Christian Louboutin*, 696 F.3d at 219.

The USPTO decisions on SDJ's related trade dress applications bolster this conclusion. While not conclusive, "a decision of the [USPTO] generally receives great deference." *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 260 (S.D.N.Y. 2016), aff'd, 699 F. App'x 93 (2d Cir. 2017); *see also Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989) ("[T]he decision of the [USPTO] . . . is to be accorded great weight.").  "And even where the PTO has not previously considered the particular mark at issue, courts may draw a measure of guidance from the way the agency has classified analogous marks." *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 166 (2d Cir. 2016).  Here, the USPTO Examining Attorney rejected two registration applications from SDJ—for body cream jars that utilize the same jar and lid shape as the Bum Bum Jar—on functionality grounds.  *See supra* section I.C.  In both refusals, the Examining Attorney identified "the shape of the screw-on cap and the shape of the rounded jar" as "functional matter [that] cannot be protected as a trademark." (Apollo SUF ¶¶ 55, 64.)  Further, in its final refusal of SDJ's Bom Dia Bright application, the Examining Attorney specifically noted that "round wide-mouth jars are used to facilitate easy user access to the product, especially for thicker creams and butters" and "screw on caps are used to seal product within a

15

container for sanitation and preservation purposes." (*Id.* ¶ 60.)  The USPTO's refusal to register practically identical jars on functionality grounds strongly supports the conclusion that the Bum Bum Jar's body and lid are functional.

Even if this Court were to prioritize SDJ's aesthetic intent, the body and lid of the Bum Bum Jar were still derived from style elements that SDJ found in the public domain.  As detailed above, the Bum Bum Jar shape is derived from the TOLY Jar, a stock jar from a third-party vendor that pre-dated SDJ's founding.  SDJ came across the TOLY Jar at a cosmetics industry trade show where TOLY was advertising its stock containers to the conference's attendees.  *See supra* section I.A.  Generally, style elements taken from the public domain are considered functional because their exclusive use would undermine effective competition.  *See Bubble Genius LLC v. Smith*, 239 F.Supp.3d 586, 596 (E.D.N.Y. 2017) (holding that effective competition in the novelty soap market requires free use of the periodic table of elements from the public domain); *see also Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 80–81 (2d Cir. 1990) (holding that "baroque style designs in the silverware market" were "public domain elements" that could not receive trademark protection).

While the parties contest the degree of similarity between the Bum Bum Jar and the TOLY Jar, it is undisputed that the Bum Bum Jar and the TOLY Jar are both gently rounded at the bottom and have large, overhanging lids that extend nearly half the height of the product and protrude outward over the jar of the body.  In other words, the basic shape of the jars—a crucial element of SDJ's purported trade dress—is substantially the same.  So even if the Bum Bum Jar's body and lid did not improve the quality of the container, which they do, SDJ would still be unable to claim trade dress protection in those aesthetic style elements.

### 2.    *Color-Block Combination*

The next element of the Bum Bum Jar is the "color-block combination of yellow and white components."  The Apollo Parties argue that the Bum Bum Jar's color-block combination serves the functional purpose of signifying fragrance and product benefits.  (Apollo Cross Mot., ECF No. 441, at 34.)  They support this claim by pointing to advertisements from SDJ depicting this color association.  (Apollo SSUF ¶ 155–57.)  Critically, SDJ's Rule 30(b)(6) witnesses, Yang and Hailey Menkis, confirmed this color-coding system in their deposition testimony.  (Yang Decl. Excerpts B at 186:18–21, 189:6–11; Menkis Decl. Tr. at 153:6-17.)

SDJ does not dispute that the colors are intentionally associated with certain fragrances and product benefits.  Rather, they argue that a color association could never be functional unless the color chosen communicates some inherent quality of the product.  (*See* Oral Arg. Tr. at 58:9–59:7 ("[L]et's say we had an orange product, orange-scented product and then we advertised it with [the color] orange—that would be functional or at least would be descriptive.").)  This Circuit's precedent says otherwise.  In *Sulzer Mixpac AG v. A&N Trading Co*, 988 F.3d 174, 177 (2d Cir. 2021), the Second Circuit considered whether colored mixing tips used in dental procedures were functional and, therefore, ineligible for trade dress protection.  Evidence elicited at a bench trial established that the plaintiff used color to signify the diameter of its mixing tips.  *Id.* at 183.  For example, evidence at trial showed that "all yellow mixing tips are 4.2 millimeters in diameter, all teal mixing tips are 6.5 millimeters in diameter and all blue mixing tips are 3.2 millimeters in diameter."  *Id.* at 179.  The color of the mixing tips also matched the color of a corresponding cartridge cap "to indicate the proper size and mixing ratio for the dental materials."  *Id.* at 180.  Despite this evidence, the district court concluded that the plaintiff's use of color was not functional because the "use of colors adds to the cost" of producing the mixing tips, and "other

17

companies in the industry use different colors or no colors for their . . . dental mixing tips." *Id.* at 180 (internal citations omitted).

The Second Circuit disagreed. The appellate court reversed the district court's holding on functionality and concluded that the plaintiff's use of color was functional because the color-coding system "enable[d] users to quickly match the proper mixing tip with the proper cartridge," which "improve[d] the operation of the goods." *Id.* at 183 (quoting *Christian Louboutin*, 696 F.3d at 219.) *Sulzer* did not require some inherent connection between the color and the object—4.2 millimeters is not inherently connected to yellow or any color for that matter. Rather, it was enough that an object's color communicates to the consumer some distinguishing feature, thereby limiting confusion and improving the quality of the goods.

The color of the Bum Bum Jar similarly improves the quality of the container. The undisputed evidence in the record shows that all SDJ products packaged in Sol Yellow have the same scent. Additionally, all body creams packaged in Sol Yellow provide a visibly tightening benefit. For the avid SDJ consumer, this color-coding very likely helps distinguish the Bum Bum Jar from other SDJ body cream jars, which are packaged in identically shaped jars. *See Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1203-04, 1207 (11th Cir. 2004) (holding that ice cream colors signifying flavor, (i.e., pink signified strawberry, white signified vanilla, and brown signified chocolate) were functional). The possibility that some consumers may pay no mind to these distinctions does not change this conclusion. "[T]he functionality doctrine does not require that a product's functional feature be the only reason why relevant consumers purchase it." *Sulzer*, 988 F.3d at 183.

Accordingly, the Bum-Bum Jar's "color-block combination of yellow and white components" is a functional feature.

18

3.    *Lettering*

The final element of the Bum Bum Jar is "the product name presented in capitalized dark-gray lettering framed by smaller text above and below." (SDJ CSMF ¶ 89.)  Courts in this district have previously held that plain typefaces over contrasting backgrounds are functional because they "enhance[] legibility and readability." *Laurel Rd. Bank*, 2019 WL 1034188, at *7.  Arranging text in a certain way can also create contrasts that catch the reader's attention and emphasize the product's name.  *See Chelo Pub. Inc. v. Focus Pub. Ltd.*, No. 94 Civ. 0123 (CSH), 1994 WL 391668, at *3 (S.D.N.Y. July 28, 1994) (holding that "placing the title of the magazine in a bold, easily visible typeface at the top of the cover" was "purely functional" because it ensured that the title would be visible in newsstands).  Here, SDJ's 30(b)(6) witness testified that the gray lettering on the Bum Bum Jar lid's white background provided a contrast for easy visibility and legibility. (Apollo SSUF ¶ 150.)  Further, SDJ does not seriously dispute Apollo's contention that SDJ used smaller text for the words below the product name as a subline to explain the benefit of the product and because sublines are usually placed below product names.  (*Id.* ¶ 146.)  Instead, SDJ merely states that this was "an aesthetics decision."  (SDJ Add'l CSMF, ECF No. 447 ¶ 146.)  For the reasons explained above, SDJ's aesthetic intent does not control whether a product feature is functional.  *See supra* section III.B.1.  The evidence before this Court establishes that the Bum Bum Jar's capitalized, dark-grey lettering and framed product name are functional features that enhance visibility and legibility.

4.    *The Combination and Arrangement of the Elements*

The Bum Bum Jar is no greater than the sum of its parts.  Each of the Bum Bum Jar's elements improve the operation of the container, which, in turn, affects the container's quality. Viewing these features together does not suddenly turn this assemblage of functional parts into nonfunctional trade dress.  Any reasonable factfinder, when confronted with this record, would

19

conclude that each of the jar's functional elements work in tandem to facilitate easy access to the cream inside and the associated product benefits.

SDJ's arguments to the contrary are unavailing. SDJ's main argument against functionality is the existence of market alternatives. To SDJ, the existence of different body cream packaging shows that the Bum Bum Jar is not functional because it is not essential for packaging body cream or an improvement over alternatives. (*See* SDJ Reply at 23–24.) Although SDJ is correct that the functionality inquiry starts by assessing whether the product feature is "essential to the use or purpose of the article," *Christian Louboutin*, 696 F.3d at 219, it does not end there. A product feature is also functional when it "affects the cost or quality of the article." *Id.* Here, Apollo has introduced uncontroverted evidence that each element of the Bum Bum Jar improves the container's quality.

Further, SDJ cites no authority to support their claim that a product feature is only functional if it improves upon alternative designs. Whether the Bum Bum Jar is less useful than alternative jars does not change the ways its design improves the quality of the container. *See TrafFix*, 532 U.S. at 33 ("Functionality having been established . . . there is no need . . . to engage . . . in speculation about other design possibilities."); *Arlington Specialties, Inc. v. Urb. Aid, Inc.*, 847 F.3d 415, 420 (7th Cir. 2017) (affirming the district court's decision granting summary judgment on functionality and refusing to "consider the availability of alternative designs" where "the undisputed evidence shows that the claimed design features affect product quality").

SDJ also argues that Apollo has failed to produce any of the "hallmark evidence of functionality," like advertisements that explicitly tout functional benefits and utility patents. (SDJ Mem. L. Supp., ECF No. 434, at 44.) But pointing out that certain probative evidence is not in the record merely shows "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at

586. Without a more concrete showing of evidence that gives rise to a genuine factual dispute, this is insufficient to defeat the Apollo Parties' motion for summary judgment.

In sum, the Apollo Parties have demonstrated that each element of the Bum Bum Jar is, both individually and collectively, a functional feature that improves the quality of the container. Because there is no triable issue of fact on functionality, the Apollo Parties are entitled to summary judgment on SDJ's trade dress infringement counterclaim.

## IV. CONCLUSION

The Apollo Parties' cross motion for summary judgment on functionality, (ECF No. 437), is GRANTED. Accordingly, SDJ's trade dress infringement counterclaim is DISMISSED.[3] The Clerk of Court is directed to close ECF Nos. 424, 429, and 437 accordingly.

Dated: March 17, 2026
New York, New York

SO ORDERED.

*George B Daniels*

GEORGE B. DANIELS
United States District Judge

---

[3] In light of this Court's ruling, all pending motions *in limine* before this Court are DENIED without prejudice. The only remaining issue for trial is SDJ's wordmark infringement claim. (*See* ECF No. 67.) The parties are granted leave to identify and renew those motions *in limine* that remain relevant to the remaining claim and consistent with this Court's Order. The Clerk of Court is directed to close the open motions at ECF Nos. 355, 356, 366, 374, 377, 380, 384, and 387.